1 | BENTLEY P. STANSBURY III, CASB No. 229102
bentley.stansbury@kyl.com
KEESAL, YOUNG & LOGAN
400 Oceangate
Long Beach, California 90802
Telephone: (562) 436-2000
Facsimile: (562) 436-7416

DAVID Y. LIVSHIZ (*pro hac vice to be filed*)
david.livshiz@freshfields.com
HENRY V. HUTTEN (*pro hac vice to be filed*)
henry.hutten@freshfields.com
GRACE W. BRODY (*pro hac vice to be filed*)
grace.brody@freshfields.com
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone: (212) 277-4000
Facsimile: (212) 277-4001

*Attorneys for Applicants Netgear Inc.
and Netgear Deutschland GmbH.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | CASE NO.: _____<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS** |

-1-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH. FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... 3

I.    PRELIMINARY STATEMENT ................................................................... 5

II.   FACTUAL BACKGROUND ........................................................................ 8

    A.   The Parties ........................................................................................... 8

    B.   Netgear Faces Patent Infringement Allegations In The German Proceedings ...................................................................... 8

    C.   Netgear's Defenses Rely On Qualcomm's Rights Regarding The Huawei Patents ........................................... 10

III.  REQUESTED DISCOVERY ....................................................................... 11

IV.   ARGUMENT ............................................................................................... 12

    A.   Netgear's Application Meets The Section 1782 Requirements ................... 14

        1.   Netgear Is an "Interested Person." ........................................ 14

        2.   The Evidence Is For Use in a Foreign Proceeding. ............. 14

        3.   Qualcomm Is "Found" in the Southern District of California ................................................................................ 16

    B.   The Intel Discretionary Factors Strongly Favor Granting Discovery ......... 16

        1.   The German Court May Not Compel Discovery of the Huawei Agreements. ................................................... 16

        2.   The German Court Is Not Hostile to This Application. ..................... 17

        3.   The Application Has Not Been Filed to Circumvent Any Law or Rule. ................................................................. 18

        4.   The Discovery Requests Are Not Unduly Intrusive or Burdensome. ........................................................... 19

V.    CONCLUSION ............................................................................................ 19

-2-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH. FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

# TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Advanced Micro Devices, Inc. v. Intel Corp.*,
 292 F.3d 664 (9th Cir. 2002) .......................................................................15

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
 673 F.3d 76 (2d Cir. 2012)............................................................................12

*In re Cal. State Teachers' Ret. Sys.*,
 No. 16-CV-4521, 2016 U.S. Dist. LEXIS 179897 (D.N.J. Dec. 28,
 2016) .............................................................................................................17

*In re Cierco Noguer*,
 No. 18-MC-498, 2019 U.S. Dist. LEXIS 35072 (S.D.N.Y. Mar. 5,
 2019) .............................................................................................................15

*Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*,
 747 F.3d 1262 (11th Cir. 2014) ....................................................................12

*In re Daimler AG*,
 No. 21-MC-00948, 2021 WL 3852729
 (S.D. Cal. Aug. 27, 2021) ............................................................. 15, 16, 17, 18

*Euromepa S.A. v. R. Esmerian, Inc.*,
 51 F.3d 1095 (2d Cir. 1995).........................................................................17

*Gushlak v. Gushlak*,
 486 F. App'x. 215 (2d Cir. 2012) ..................................................................5

*In re Hapag-Lloyd Aktiengesellschaft*,
 No. 21-MC-80107, 2021 WL 1899928 (N.D. Cal. May 12, 2021) ..............13

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
 633 F.3d 591 (7th Cir. 2011) ..................................................................16, 18

*Intel Corp v. Advanced Micro Devices, Inc.*,
 542 U.S. 241 (2004).............................................................................. *passim*

*In re IPCom GMBH & Co. KG*,
 No. 14-MC-80037, 2014 WL 12772090 (N.D. Cal. Apr. 10, 2014)..............18

*John Deere Ltd. v. Sperry Corp.*,
    754 F.2d 132 (3d Cir. 1985)..................................................................................13

*Kulzer GmbH v. Esschem, Inc.*,
    390 F. App'x 88 (3d Cir. 2010) ...........................................................................16

*In re LG Elecs. Deutschland GmbH*,
    No. 12-CV-1197, 2012 WL 1836283 (S.D. Cal. May 21, 2012) ................15, 18

*In re Malev Hungarian Airlines*,
    964 F.2d 97 (2d Cir. 1992).................................................................................13

*In re Mireskandari*,
    No. 12-CV-2865, 2012 WL 12877390 (S.D. Cal. Dec. 20, 2012) .....................13

*In re Motorola Mobility, LLC*,
    No. C 12-80243, 2012 WL 4936609 (N.D. Cal. Oct. 17, 2012) .......................18

*Nikon Corp. v. GlobalFoundries U.S., Inc.*,
    706 F. App'x 350 (9th Cir. 2017) .......................................................................17

*In re Nokia Techs. Oy*,
    No. 21-MC-1487, 2022 WL 788702 (S.D. Cal. Mar. 15, 2022) .......................16

*Palantir Techs., Inc. v. Abramowitz*,
    415 F. Supp. 3d 907 (N.D. Cal. 2019).........................................................14, 17

*In re Porsche Automobil Holding, S.E.*,
    No. 15-MC-417, 2016 WL 702327 (S.D.N.Y. Feb. 18, 2016)..........................17

*In re Procter & Gamble Co.*,
    334 F. Supp. 2d 1112 (E.D. Wis. 2004) .............................................................17

*In re Smith*,
    No. 12-CV-1930, 2012 WL 12885234 (S.D. Cal. Oct. 9, 2012)..................14, 16

*Weber v. Finker*,
    554 F.3d 1379 (11th Cir. 2009) .......................................................................154

**Statutes**

28 U.S.C. § 1782 ........................................................................................ *passim*

Applicants Netgear Inc. and Netgear Deutschland GmbH (collectively "Netgear"), by and through their undersigned attorneys, respectfully seek an order pursuant to 28 U.S.C. § 1782 ("Section 1782") to obtain discovery from Qualcomm Incorporated ("Qualcomm") for use in two foreign litigation proceedings (each, a "German Proceeding," and together, the "German Proceedings") in the Dusseldorf Regional Court in the Federal Republic of Germany (the "German Court"). Through this *ex parte* application (the "Application"),[1] Netgear seeks the production of an unquestionably relevant and narrow set of documents for use in the German Proceedings.

## I.    PRELIMINARY STATEMENT

The dispute underlying the German Proceedings concerns attempts by Huawei Technologies Co. Ltd. ("Huawei"), a Chinese technology company, to reap revenue by suing Netgear for alleged infringement of two wireless local area network technology patents, which Netgear did not infringe.

Netgear is a provider of networking technology products and offers networking, storage and security solutions for individuals, businesses, and service providers. Netgear's innovative and commercially successful products are the result of extensive and ongoing research and development activities.

In the German Proceedings, Huawei contends that certain access points[2] manufactured by Netgear infringe two patents (collectively, the "Huawei Patents")

---

[1]    "It is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*. The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." *Gushlak v. Gushlak*, 486 F. App'x. 215, 217 (2d Cir. 2012); *In re Letters Rogatory from Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976) ("Letters Rogatory are customarily received and appropriate action taken with respect thereto *ex parte*.").

[2]    An access point is a device that creates a wireless local area network. It receives data and converts this data to a wireless signal. It also sends and receives wireless signals to and from nearby wireless clients.

-5-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH. FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

relating to the Institute of Electrical and Electronic Engineers ("IEEE") 802.11ax wireless local area network ("Wi-Fi 6") standard—one of a few globally shared standards that different components of a wireless network must use to ensure compatibility. Huawei asserts that the Huawei Patents are "essential" to the Wi-Fi 6 standard because the Wi-Fi 6 standard cannot be implemented without implicating these patents.  It alleges that Netgear's implementation of the Wi-Fi 6 standard in its Wi-Fi 6 access points thus infringed the Huawei Patents.

A significant portion of the Netgear Wi-fi 6 access points at issue in the German Proceedings implement the Wi-Fi 6 standard by incorporating "Wi-Fi modem chipsets" supplied by Qualcomm. Wi-Fi modem chipsets are electronic components that include a full implementation of the Wi-Fi 6 standard and enable the access points to provide a wireless network to client devices.[3]

Because Netgear's allegedly infringing access points implement the Wi-Fi 6 standard using Qualcomm chipsets, an agreement between Qualcomm and Huawei (or their affiliates) regarding the Huawei Patents could allow Netgear to assert a defense of patent exhaustion and potentially, for this reason, avoid liability for alleged infringement of the Huawei Patents in the German Proceedings. Additionally, if the German Court finds that the Huawei Patents are "essential" for the Wi-Fi 6 standard, it will consider the terms of any agreement between Qualcomm and Huawei (or their affiliates) regarding the Huawei Patents to assess whether any license terms offered by Huawei to Netgear are fair, reasonable, and non-discriminatory ("FRAND").

Netgear has recently become aware that Qualcomm (or its affiliates) has concluded a set of agreements with Huawei (the "Huawei Agreements") concerning patents owned by Huawei, potentially including the Huawei Patents, that are highly relevant to, and potentially dispositive of, Netgear's defenses in the German

---

[3]   In this context, a client device is any computer hardware or software that requests access to the local area network.

- 6 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

Proceedings. Even though this set of agreements includes license agreements between Qualcomm and Huawei concerning patents owned by Huawei and is therefore likely to be highly probative of Netgear's defenses, Huawei has rejected Netgear's requests to produce the Huawei Agreements in the German Proceedings, and the German Court is unable to compel their production. Netgear thus seeks to obtain this information through this Application pursuant to 28 U.S.C. 1782. As demonstrated below, Netgear's Application should be granted.

<u>First</u>, Netgear satisfies all the statutory requirements for Section 1782 discovery. Each Netgear entity is a party to and therefore an interested person in the German Proceedings. Qualcomm is found in this District, and the requested discovery is for use in the German Proceedings. The requirements of Section 1782 are accordingly satisfied.

<u>Second</u>, the discretionary factors set out by the Supreme Court in *Intel Corp v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004), heavily favor granting the Application. The German Court lacks jurisdiction over Qualcomm and cannot compel it or Huawei to produce the discovery sought. Faced with similar situations, this Court and others have granted Section 1782 discovery in aid of German proceedings, finding Section 1782 discovery to be the most effective and efficient way to obtain relevant evidence. Additionally, German courts are not hostile to this Application, and German law in no way prohibits parties to German lawsuits from seeking evidence pursuant to Section 1782 or using such evidence in German proceedings after it is obtained. To the contrary, German courts routinely consider such evidence. Lastly, the requested discovery is extremely modest and its production would not impose an undue burden on Qualcomm.

In sum, Qualcomm has evidence that is highly relevant to Netgear's defenses in the German Proceedings brought by Huawei. Further, granting Netgear's Application to obtain this evidence would foster Section 1782's twin aims of providing efficient assistance to participants in international litigation and encouraging foreign countries to similarly assist U.S. courts. Netgear's Application should be granted.

## II. FACTUAL BACKGROUND

### A. The Parties

Applicant Netgear Inc. is a Delaware corporation with its principal place of business at 350 East Plumeria Drive, San Jose, California 95134.

Applicant Netgear Deutschland GmbH is a corporation incorporated in Germany with its registered address at Konrad-Zuse-Platz 1, 81829 Munich, Germany.

Applicants Netgear Inc. and Netgear Deutschland GmbH are, respectively, the parent company and a German affiliate company of the Netgear group, a provider of internet networking technology.

Qualcomm is a Delaware corporation with its principal place of business at 5775 Morehouse Drive, San Diego, California 92121. *See* Qualcomm Inc. Annual Report (Form 10-K) (Nov. 2, 2022). It designs and manufactures wireless technology products that are used in mobile devices and other wireless products. *See id.* at 6.

### B. Netgear Faces Patent Infringement Allegations in the German Proceedings

The German Proceedings concern a patent dispute between Netgear and Huawei, a Chinese technology company that attempts to generate revenue by suing companies for patent infringement in various countries, including Germany and China.

The two Huawei Patents that Huawei accuses Netgear of infringing relate to the Wi-Fi 6 standard. *See* Dorn Declaration ¶¶ 6-7.[4] The Wi-Fi 6 standard is one among the shared set of technical standards that different components within a wireless local area network must use to enable wireless network communications. *Id.* ¶ 6. In the two German Proceedings, Huawei contends that the Huawei Patents are "essential" to the Wi-Fi 6 standard and that Netgear's access points implementing the Wi-Fi 6 standard thus infringe the Huawei Patents. *See* Dorn Decl. ¶¶ 6-7.

---

[4] References to the "Dorn Decl." are to the Declaration of Stephan Dorn dated June 14, 2023, which is being filed contemporaneously with this memorandum of law.

- 8 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

Huawei initiated the two German Proceedings in March of 2022 in the German Court: one German Proceeding concerns European Patent ("EP") 3 337 077 (docket number 4c O 8/22); the second German Proceeding concerns EP 3 143 741 (docket number 4c O 9/22). Huawei alleges that Netgear infringed both Huawei Patents: (i) EP 3 337 077, titled "Wireless local area network information transmission method and apparatus"; and (ii) EP 3 143 741, titled "Method and transmitter for orthogonal frequency division multiple access (OFDMA) resource allocation." *See id.* ¶¶ 7-8. In both Proceedings, the German Court held an oral hearing on March 21, 2023 to discuss the parties' arguments regarding (i) the alleged infringement of the Huawei Patents, (ii) Netgear's compulsory license defense pursuant to European and German antitrust-laws (*i.e.*, the so-called FRAND defense) and (iii) Netgear's request for a stay of the German Proceedings during the pendency of separate proceedings in which the validity of the Huawei Patents will be determined (as described further below). *Id.* ¶ 8.

Netgear Deutschland GmbH has also commenced two parallel nullity proceedings (the "German Nullity Proceedings") (docket numbers 2 Ni 21/22 and 2 Ni 20/22) against Huawei in lawsuits that seek to invalidate the Huawei Patents and are pending before Germany's Federal Patent Court—the German court exclusively competent to hear nullity complaints. *Id.* ¶ 9.

On May 11, 2023, the German Court stayed the German Proceeding concerning EP 3 337 077 until the conclusion of the Nullity Proceedings before the Federal Patent Court. For the duration of this stay, the German Proceeding concerning EP 3 337 077 will remain pending. *See id*. ¶ 10. In the Nullity Proceedings, the Federal Patent Court will receive further written submissions by the parties, schedule a hearing and, after holding a hearing, render a judgment. While the German Proceeding concerning EP 3 377 077 will remain pending through this process, the German Court is likely to schedule further hearings or submissions in this Proceeding once the Federal Patent Court's decision in the Nullity Proceedings becomes final and binding. *See id*. ¶ 10.

///

- 9 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

Also on May 11, 2023, the German Court dismissed Huawei's complaint in the German Proceeding concerning EP 3 143 741. *Id.* However, this ruling can be appealed and is thus not yet final and binding on Huawei. *Id.* In addition, and as explained further in the Dorn Declaration, German procedural law allows Netgear to submit new documents and evidence on appeal, even if such documents and evidence were not submitted to the court of first instance. *Id.*

### C. Netgear's Defenses Rely on Qualcomm's Rights Regarding the Huawei Patents

A significant portion of the Netgear Wi-Fi 6 access points at issue in the German Proceedings implement the Wi-Fi 6 standard by incorporating Wi-Fi modem chipsets supplied by Qualcomm. Dorn Decl. ¶¶ 11-12. Qualcomm's Wi-Fi modem chipsets, which are electronic components that enable the access point to communicate over wireless networks, include an implementation of the Wi-Fi 6 standard. See id. ¶ 11.

Because the Wi-Fi 6 functionality is already fully implemented in the Wi-Fi chipsets that Qualcomm supplied to Netgear, any agreement between Huawei and Qualcomm in which Huawei grants rights in the Huawei Patents to Qualcomm, or which includes a covenant for Huawei not to sue Qualcomm with respect to the Huawei Patents (or to do so only after suing others), is directly relevant to determining whether Netgear's Wi-Fi 6-compliant access points infringe the Huawei Patents. See id. ¶ 13. Specifically, Huawei's grant of a license to Qualcomm in the Huawei Patents, covenant not to sue Qualcomm regarding the Huawei Patents or covenant to sue Qualcomm last with respect to the Huawei Patents may provide Netgear with a defense of patent

///

///

exhaustion,[5] which could result in a dismissal of the German Proceedings. *See id.* Under German law, the availability and scope of this defense depends on the specific wording of the provisions regarding the Huawei Patents. *See id.* While Netgear has sought this information from Huawei in connection with the German Proceedings, Huawei has declined to provide it, *see id.* ¶¶ 17, 22; meanwhile, because German law does not recognize the concept of pre-trial discovery, the German Court is unable to order either Huawei or Qualcomm to produce this obviously relevant and critical information. *See id.* ¶¶ 20-22.

Additionally, if the German Court finds that the Huawei Patents are "essential" to the Wi-Fi 6 standard, then Netgear may have a FRAND defense if the portfolio license terms offered by Huawei to Netgear are not fair, reasonable, and non-discriminatory. *See id.* ¶ 14. The German Court (or court sitting in appeal therefrom) will consider the terms of any of Huawei's agreements with Qualcomm relating to the Huawei Patents to assess the overall value and appropriateness of the portfolio license terms offered by Huawei to Netgear with respect to the Huawei Patents. *See id.*

## III.  REQUESTED DISCOVERY

Through this Application, Netgear seeks the Huawei Agreements:  agreements, including license agreements between Qualcomm and Huawei (or either of their affiliates) that relate to patents owned by Huawei, including but not limited to the Huawei Patents, that are in the possession, custody, and control of Qualcomm.  These

---

[5]    Exhaustion refers to a legal doctrine providing that once a product has been put on the market by a patent owner or by a third party with the consent of the patent owner, the patent owner cannot sue the purchaser for making use of, or even for reselling, the patented product. Rather, the patent owner's exclusive rights in the patented product have been exhausted once the product was put on the market with the consent of the patent owner.  As a result, the patentee can no longer control an item's subsequent use in commerce and such use does not constitute patent infringement. The principle of exhaustion may also apply if the product put on the market with consent of the patent owner is used as a component part of a larger device, as long as the consent of the patent owner encompasses this use.

- 11 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

documents are directly relevant to the German Proceedings, including any appeal therefrom.

Moreover, Qualcomm has publicly reported in its filings with the Securities Exchange Commission that it has concluded a set of agreements with Huawei that concern patents owned by Huawei, including a "long-term, global patent license agreement that contains a cross license granting rights to certain of Huawei's patents." *See* Dorn Decl. ¶ 15, n.3 (quoting Qualcomm Inc. 2020 Annual Report (Form 10-k) at 38 (Nov. 4, 2020)).

In short, the Huawei Agreements relate to patents owned by Huawei—potentially including the Huawei Patents at issue in the German Proceedings—and a license of the same. *See id.* ¶¶ 15-16. Netgear does not possess the Huawei Agreements and is unaware of the specific wording of the provisions therein relating to the Huawei Patents which, as explained above, will be decisive in the German Proceedings for the German Court's assessment of Netgear's patent exhaustion and FRAND defenses under German law. *Id.* ¶ 16.

## IV.  ARGUMENT

As demonstrated below, Netgear has satisfied all of Section 1782's statutory requirements, and the discretionary factors strongly favor granting the limited discovery requested here.

Section 1782 is "the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at 247. Over time, Congress has "substantially broadened the scope of assistance federal courts could provide for foreign proceedings." *Id.* at 247–49; *Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1269 (11th Cir. 2014) (noting that the evolution of Section 1782 demonstrates a Congressional desire to "broaden[] the scope of assistance" and to allow district courts to more readily grant discovery); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) ("The statute has, over the years,

been given increasingly broad applicability"). Today, Section 1782 allows a litigant in foreign proceedings to seek a "broad range of discovery" so as to "assist foreign tribunals in obtaining relevant information that the tribunals may find useful." *Intel*, 542 U.S. at 259, 262.

To obtain discovery under Section 1782, a party to a foreign proceeding need only demonstrate: (i) that the request is made by an interested person, (ii) that the evidence sought is for use in a proceeding in a foreign or international tribunal, and (iii) that the person from whom discovery is sought resides in the district of the court receiving the application. *Id.* at 246; *In re Mireskandari*, No. 12-CV-2865, 2012 WL 12877390, at *2 (S.D. Cal. Dec. 20, 2012).

Once Netgear establishes that Section 1782's statutory requirements are satisfied, this Court has discretion to grant the Application based on equitable considerations, including: (i) whether the discovery sought is within the reach of the foreign court, (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (iii) whether the Section 1782 request "conceals an attempt to circumvent foreign proof gathering restrictions," and (iv) whether the request is otherwise "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65.

Further, district courts must exercise their discretion under Section 1782 in light of the twin aims of the statute: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.* at 252; *In re Hapag-Lloyd Aktiengesellschaft*, No. 21-MC-80107, 2021 WL 1899928, at *2 (N.D. Cal. May 12, 2021) ("A district court's discretion is to be exercised in view of the twin aims of § 1782"). Thus, Section 1782 has been broadly interpreted to permit U.S. courts to grant "wide assistance" to foreign litigants. *See, e.g.*, *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 135 (3d Cir. 1985) ("The liberal intent to provide judicial assistance" has been "acknowledged" as Section 1782's "primary statutory goal"); *In re Malev*

- 13 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

*Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) ("imposing an additional burden" on Section 1782 applicants would "undermine the policy of improving procedures for assistance to foreign and international tribunals").

As explained below, the Court should exercise its discretion and grant Netgear its requested discovery. This exercise of discretion is particularly warranted here, as German courts accept discovery obtained in Section 1782 proceedings and the requested discovery is exceedingly narrow.

### A. Netgear's Application Meets the Section 1782 Requirements.

Netgear's Application indisputably satisfies the three statutory requirements: each Netgear entity is an "interested person" in the German Proceedings, which are foreign proceedings, and through this Application each seeks discovery from a subject residing within this Court's district (the "District"). *Intel*, 542 U.S. at 246–49.

#### 1. Netgear Is an "Interested Person."

Both Netgear applicants are named parties in the German Proceedings. Thus, there is "no doubt" that each qualifies as an "interested person" within the meaning of Section 1782. *Id.* at 256; *accord In re Smith*, No. 12-CV-1930, 2012 WL 12885234, at *2 (S.D. Cal. Oct. 9, 2012) ("As a named party in this action, [applicant] qualifies as an 'interested party.'").

#### 2. The Evidence Is For Use in a Foreign Proceeding.

Netgear easily meets the requirement that the evidence sought through a Section 1782 application be for use in a foreign proceeding. The German Proceedings—which are patent infringement lawsuits pending in the Dusseldorf Regional Court—satisfy the test for a foreign proceeding. *See, e.g.*, *Intel*, 542 U.S. at 258 ("the term 'tribunal' includes . . . conventional civil, commercial, criminal, and administrative courts" (citations omitted)); *Palantir Techs., Inc. v. Abramowitz,* 415 F. Supp. 3d 907, 909 (N.D. Cal. 2019) (granting a Section 1782 application for use in a patent dispute in the Munich I Regional Court).

///

- 14 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

Nor can there be any dispute that the evidence sought by this Application is "for use in" a foreign proceeding. To satisfy the "for use" prong, the evidence sought need only be relevant to the foreign proceeding. *See Weber v. Finker*, 554 F.3d 1379, 1384–85 (11th Cir. 2009) (Section 1782 discovery requests need only comply with the Fed. R. Civ. P. 26 standard for relevance). The evidence need not actually, or even probably, be discoverable or admissible in the foreign proceeding. *See Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002). Here, as explained above, the Huawei Agreements are directly relevant to Netgear's potential patent exhaustion and FRAND defenses in the German Proceedings. *See* Dorn Decl. ¶¶ 13-14, 19; *see also In re Daimler AG*, No. 21-MC-00948, 2021 WL 3852729, at *1 (S.D. Cal. Aug. 27, 2021) (granting Section 1782 application seeking Qualcomm agreements for use in patent exhaustion defense in German proceedings); *see also In re LG Elecs. Deutschland GmbH*, No. 12-CV-1197, 2012 WL 1836283, at *1 (S.D. Cal. May 21, 2012) (granting Section 1782 application seeking documents granting Qualcomm "any rights, protections, or licenses in or to any" patents at issue in infringement proceedings in Japan and Germany).

And even if there were a requirement that the requested Section 1782 discovery be admissible in the foreign proceeding (there is not), German law allows Netgear to submit to the German Court any documents it obtains through this Application, and the German Court would consider these documents. *See* Dorn Decl. ¶¶ 23-24. The same is true for any court sitting in appeal of the German Proceeding concerning EP 3 143 741, given that the applicable German rules allow Netgear to submit new evidence on appeal. *See id.* ¶¶ 10, 23; *see also In re Cierco Noguer*, No. 18-MC-498, 2019 U.S. Dist. LEXIS 35072, at *3 (S.D.N.Y. Mar. 5, 2019) ("Section 1782's 'for use' requirement was satisfied . . . because [p]etitioners had invoked a provision of Andorran law that appears to permit the introduction of new evidence on appeal . . . .")

///

### 3. Qualcomm Is "Found" in the Southern District of California.

Qualcomm "resides or is found" in this District because its principal place of business is in San Diego, California. *See* Qualcomm Inc. Annual Report (Form 10-K) (Nov. 2, 2022); *In re Nokia Techs. Oy*, No. 21-MC-1487, 2022 WL 788702, at *2 (S.D. Cal. Mar. 15, 2022); *see also In re Daimler AG*, 2021 WL 3852729, at *1 (finding that an application seeking discovery from Qualcomm satisfied Section 1782's statutory requirements).

### B. The *Intel* Discretionary Factors Strongly Favor Granting Discovery.

All four discretionary factors outlined by the Supreme Court in *Intel*, 542 U.S. at 264–65, also strongly favor granting the Application.

### 1. The German Court May Not Compel Discovery of the Huawei Agreements.

Where, as here, discovery sought through Section 1782 is not available in the foreign proceeding, the first *Intel* factor supports granting discovery. Because Qualcomm is not a participant in the German Proceedings, *see* Dorn Decl. ¶¶ 6-9, the German Court does not have jurisdiction over it and cannot compel it to produce the requested discovery. *See id.* ¶¶ 20-22; *see also Intel*, 542 U.S. at 264; *In re Smith*, 2012 WL 12885234, at *2 ("Symbolic is not a participant in the United Kingdom based lawsuit, so this factor weighs in favor of granting the application"). Moreover, although Huawei possesses a copy of the Huawei Agreements, it has refused to produce them, *see id.* ¶¶ 15-17, and the German Court cannot compel their production. *See id.* ¶¶ 20-22; *see also Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) (concluding the German litigant could not "obtain even remotely comparable discovery by utilizing German procedures"); *Kulzer GmbH v. Esschem, Inc.*, 390 F. App'x 88, 92 (3d Cir. 2010) ("German civil procedure does not offer a mechanism for general pretrial

///

///

discovery comparable to that obtainable in the United States . . . .").[6] Given the German Court's inability to compel production of the requested discovery, Netgear's "need for § 1782(a) aid" is "apparent." *Intel*, 542 U.S. at 264; *see also In re Daimler AG*, 2021 WL 3852729, at *1 (determining that the first *Intel* factor was satisfied where, as here, Huawei was party to agreements with Qualcomm that were sought pursuant to Section 1782).

Further, the documents sought from Qualcomm through this Application are likely located in the United States, making it more efficient to obtain that evidence through the compulsion power of a U.S. court. *See, e.g., In re Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1115 (E.D. Wis. 2004) (granting Section 1782 discovery from a party to a foreign proceeding because the evidence was located in the United States and could be more efficiently obtained through a U.S. court); *see also Nikon Corp. v. GlobalFoundries U.S., Inc.*, 706 F. App'x 350, 351 (9th Cir. 2017) (affirming grant of a Section 1782 application targeting "documents located both in the United States and abroad").

The first discretionary factor therefore supports the grant of discovery here.

### 2. The German Court Is Not Hostile to This Application.

In evaluating this factor, courts should find in favor of discovery absent a "clear directive"—meaning "authoritative proof"—from the foreign country's judicial, executive or legislative declarations that specifically rejects the use of evidence gathered through Section 1782 proceedings. *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995); *see also Palantir Techs.*, 415 F. Supp. 3d at 915

---

[6]   *See also In re Cal. State Teachers' Ret. Sys.*, No. 16-CV-4521, 2016 U.S. Dist. LEXIS 179897, at *7 (D.N.J. Dec. 28, 2016) ("there is no concept of discovery in Germany"); *In re Porsche Automobil Holding, S.E.*, No, 15-MC-417, 2016 WL 702327, at *8 (S.D.N.Y. Feb. 18, 2016) (noting in a Section 1782 proceeding that "there is little question that [the German court] cannot and, in any case, would not order the type (and scope) of evidentiary production sought by Porsche in this Court.").

- 17 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

(explaining that "courts tend to err on the side of permitting discovery" when no such authoritative proof is offered (citation omitted)).

Here, there is no such clear, authoritative proof. To the contrary, there is every reason to believe that the German Court, as well as any court overseeing the appeal of the German Proceeding concerning EP 3 143 741, would appreciate and benefit from this Court's assistance. *See* Dorn Decl. ¶¶ 23–24, 26-27. Indeed, this Court and others have previously granted discovery pursuant to Section 1782 for use in German patent litigations. *See, e.g.*, *In re Daimler AG*, 2021 WL 3852729, at *1; *In re LG Elecs. Deutschland GmbH*, 2012 WL 1836283, at *3; *see also Heraeus*, 633 F.3d at 597 ("There is nothing to suggest that the German court would be affronted by [the applicant's] recourse to U.S. discovery or would refuse to admit any evidence, or at least any probative evidence"). Thus, the second *Intel* factor weighs in favor of granting discovery.

### 3. The Application Has Not Been Filed to Circumvent Any Law or Rule.

The Application is brought in good faith and does not seek to circumvent German restrictions with respect to gathering evidence or other policies. To the contrary, German law in no way prohibits the parties from seeking the assistance of U.S. courts in obtaining evidence. *See* Dorn Decl. ¶¶ 25-27. Moreover, there is no law, rule of evidence, or rule of procedure in the German Proceedings that prohibits Netgear from filing this Application or from seeking and obtaining the discovery requested here and using it in the German Proceedings. *See id.* ¶ 25.  Therefore, the third *Intel* factor favors granting the Application. *See, e.g.*, *In re IPCom GMBH & Co. KG*, No. 14-MC-80037, 2014 WL 12772090, at *3 (N.D. Cal. Apr. 10, 2014) ("Nothing in [applicant]'s request suggests its subpoena application constitutes an attempt to circumvent [German] proof-gathering restrictions."); *In re Motorola Mobility, LLC*, No. C 12-80243, 2012 WL 4936609, at *2 (N.D. Cal. Oct. 17, 2012) ("Because there is no

///

indication in the record of an attempt to subvert a foreign tribunal's restrictions, the court finds that this factor weights in favor of [the applicant].").

### 4. The Discovery Requests Are Not Unduly Intrusive or Burdensome.

Finally, the requested discovery is extremely modest in scope yet highly relevant. Netgear seeks only agreements relating to Huawei's patents, including the Huawei Patents that are in dispute in the German Proceedings. As explained above, the Huawei Agreements could very well provide Netgear with a patent exhaustion defense that could lead to the dismissal of the German Proceedings, or affirmation of the dismissal of the German Proceeding concerning EP 3 143 741.  Moreover, and also as explained above, the Huawei Agreements will materially, assist the German Court in determining the value and appropriateness of the portfolio license terms that Huawei offered to Netgear. Given that the discovery requested is focused, highly relevant, and necessary for a fair and just resolution of the German Proceedings, the fourth *Intel* factor also favors Netgear's Application.

## V. CONCLUSION

For the foregoing reasons, Netgear respectfully requests that the Court grant its Application and issue an Order pursuant to 28 U.S.C. § 1782: (i) authorizing Netgear to serve Qualcomm with the subpoena attached as Exhibit A to the Declaration of Henry V. Hutten, which is being filed contemporaneously herewith, (ii) directing Qualcomm

///

///

to produce the documents responsive to the subpoena, and (iii) granting such other relief as this Court deems just and proper.

DATED:  June 14, 2023          /s/  Bentley P. Stansbury, III
BENTLEY P. STANSBURY III
KEESAL, YOUNG & LOGAN

DAVID Y. LIVSHIZ (*pro hac vice*)
HENRY V. HUTTEN (*pro hac vice*)
GRACE W. BRODY (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER US LLP

*Pro Hac Vice Applications Forthcoming*

*Attorneys for Applicants Netgear Inc. and Netgear Deutschland GmbH*