BENTLEY P. STANSBURY III, CASB No. 229102
bentley.stansbury@kyl.com
KEESAL, YOUNG & LOGAN
400 Oceangate
Long Beach, California 90802
Telephone: (562) 436-2000
Facsimile: (562) 436-7416

DAVID Y. LIVSHIZ (*pro hac vice to be filed*)
david.livshiz@freshfields.com
HENRY V. HUTTEN (*pro hac vice to be filed*)
henry.hutten@freshfields.com
GRACE W. BRODY (*pro hac vice to be filed*)
grace.brody@freshfields.com
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone: (212) 277-4000
Facsimile: (212) 277-4001

*Attorneys for Applicants Netgear Inc.
and Netgear Deutschland GmbH*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | CASE NO.:<br><br>**DECLARATION OF STEPHAN DORN IN SUPPORT OF EX PARTE APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS** |

Pursuant to 28 U.S.C. § 1746, I, Stephan Dorn declare as follows:

1. I am an attorney admitted to practice in Germany and an associated lawyer in the Dusseldorf office of the law firm Freshfields Bruckhaus Deringer PartG mbB, which represents Netgear Inc. and Netgear Deutschland GmbH (collectively

"Netgear") in two lawsuits in Germany (each a "German Proceeding" and, together, the "German Proceedings") brought by Huawei Technologies Co. Ltd. ("Huawei").

2. I studied law at the Rheinische-Friedrich-Wilhelms-University Bonn and completed my Referendariat (legal clerkship) in the circuit of the Cologne Higher Regional Court. I have been admitted as a Rechtsanwalt (attorney at law) to practice before the German courts since 2013.

3. Before joining Freshfields, I worked at Hogan Lovells International LLP in the field of patent litigation for six years.

4. In 2011, I completed Dr. iur. (PhD in law) studies at the Rheinische-Friedrich-Wilhelms-University Bonn with a doctoral thesis published under the title "Technische Standardisierung im Spannungsfeld von Immaterialgüterrecht, Kartellrecht und Innovation" (Technical Standardization in the Field of Conflict between Intellectual Property Law, Antitrust Law and Innovation), supervised by Prof. Dr. Matthias Leistner, LL.M. (Cambridge), holding the Chair for Civil Law, Intellectual Property and Competition Law at the Rheinische-Friedrich-Wilhelms-University Bonn.

5. I submit this Declaration in support of Netgear's *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for Use in Foreign Proceedings. I make this Declaration based on my own personal knowledge and documents that I have reviewed.

## I. BACKGROUND OF THE PARTIES' DISPUTE

6. In the German Proceedings, Huawei asserts that Netgear has infringed Huawei's patents. In particular, Huawei alleges that its patents are essential to the Institute of Electrical and Electronic Engineers ("IEEE") 802.11ax wireless local area network ("Wi-Fi 6") standard, and that Netgear infringed its patents by implementing this standard in Netgear's products (specifically, certain access points).[1]

---

[1] An access point is a device that creates a wireless local area network. It receives data and converts this data to a wireless signal. It also sends and receives wireless signals to and from nearby wireless clients.

The Wi-Fi 6 standard is one among several shared sets of technical standards that different components within a wireless local area network must use to enable wireless network communications.

7. In the German Proceedings, Huawei is currently asserting that Netgear infringed two patents (collectively, the "Huawei Patents"):

a. EP 3 337 077 ("EP 077"), titled *Wireless local area network information transmission method and apparatus*," filed by Huawei on August 31, 2016.

b. EP 3 143 741 ("EP 741"), titled *Method and transmitter for orthogonal frequency division multiple access (OFDMA) resource allocation*," filed by Huawei on June 12, 2015.

8. The German Proceedings are pending in the Dusseldorf Regional Court (the "German Court"). Huawei initiated the German Proceedings in March of 2022. In one of the German Proceedings, Huawei has asserted the infringement EP 077 (docket number 4c O 8/22). In the other German Proceeding, Huawei has asserted the infringement of EP 741 (docket number 4c O 9/22). In both Proceedings, the German Court held an oral hearing on March 21, 2023 to discuss the parties' arguments regarding (i) the alleged infringement of the Huawei Patents, (ii) Netgear's compulsory license defense pursuant to European and German antitrust-laws (*i.e.*, the so-called FRAND defense) and (iii) Netgear's request for a stay of the German Proceedings during the pendency of separate proceedings in which the validity of the Huawei Patents will be determined (as described further below).

9. Netgear Deutschland GmbH has also commenced parallel nullity proceedings (the "German Nullity Proceedings") (docket numbers 2 Ni 21/22 and 2 Ni 20/22) that seek to invalidate the Huawei Patents and are pending before Germany's Federal Patent Court—the German court exclusively competent to hear nullity complaints.

10. On May 11, 2023, the German Court stayed the German Proceeding concerning EP 077 until the conclusion of the Nullity Proceedings before the Federal

Patent Court. For the duration of this stay, the German Proceeding concerning EP 077 will remain pending. In the Nullity Proceedings, the Federal Patent Court will receive further written submissions by the parties, schedule a hearing and, after holding a hearing, render a judgment. While the German Proceeding concerning EP 3 377 077 will remain pending throughout this process, the German Court is likely to schedule further hearings or submissions in this Proceeding once the Federal Patent Court's decision in the Nullity Proceedings becomes final and binding. Also on May 11, 2023, the German Court dismissed Huawei's complaint in the German Proceeding concerning EP 741. However, this ruling can be appealed and is thus not yet final and binding on Huawei. In addition, German procedural law allows Netgear to submit new documents and evidence on appeal, even if they were not submitted to the court of first instance.[2]

11. As stated above, the dispute underlying the German Proceedings concerns Huawei's assertion that Netgear's Wi-Fi 6 access points that implement the Wi-Fi 6 standard infringe the Huawei Patents. These access points implement the Wi-Fi 6 functionality through the incorporation of "modem chipsets." Wi-Fi modem chipsets are a set of electric components that include a full implementation of the Wi-Fi 6 standard. Upon integration into an electronic device, such as an access point, these Wi-

---

[2] Section 529, paragraph 1 of the German Code of Civil Procedure allows "[t]he court of appeal is to base its hearing and decision on," *inter alia*, "[n]ew facts and circumstances insofar as these may be permissibly considered." Section 531, paragraph 2, sentence 1 of the German Code of Civil Procedure provides, in turn, that "[n]ew means of challenge or defense" may be permitted on appeal if, among other things, they "were not asserted in the proceedings before the court of first instance, without this being due to the negligence of the party." And case law in Germany is clear that, for this purpose, there is no negligence if, as here, "a new means of challenge or defense has arisen only after the conclusion of the oral proceedings in the first instance." (German Federal Court of Justice, decision of May 17, 2011 – X ZR 77/10, GRUR 2011, 853, marginal no. 12).

Fi modem chipsets enable the device to provide a wireless local area network to client devices.[3]

12. A significant portion of the Netgear Wi-Fi 6 access points that are subject to the German Proceedings implement the Wi-Fi 6 functionality through the incorporation of Wi-Fi modem chipsets supplied by Qualcomm Incorporated ("Qualcomm") to Netgear pursuant to a contract between Netgear and Qualcomm.

13. Because the Wi-Fi 6 functionality is already fully implemented in the Wi-Fi chipsets that Qualcomm supplied to Netgear, any agreement between Huawei and Qualcomm in which Huawei grants rights in the Huawei Patents to Qualcomm, or which includes a covenant for Huawei not to sue Qualcomm with respect to the Huawei Patents (or to do so only after suing others), is directly relevant to, and may be dispositive of, the claims Huawei asserts against Netgear in the German Proceedings. In particular, Huawei's grant of a license to Qualcomm in the Huawei Patents, covenant not to sue Qualcomm regarding the Huawei Patents or covenant to sue Qualcomm last with respect to the Huawei Patents may provide Netgear with a defense of patent exhaustion, which could result in a dismissal of the German Proceedings.[4] Indeed, the German Federal Court of Justice—Germany's highest court for patent infringement proceedings—recently determined that patent exhaustion can be based on a patent

---

[3] In this context, a client device is any computer hardware or software that requests access to the local area network.

[4] Exhaustion refers to a legal doctrine providing that once a product has been put on the market by a patent owner or by a third party with the consent of the patent owner, the patent owner cannot sue the purchaser for making use of, or even for reselling, the patented product. Rather, the patent owner's exclusive rights in the patented product have been exhausted once the product was put on the market with the consent of the patent owner. As a result, the patentee can no longer control an item's subsequent use in commerce and such use does not constitute patent infringement. The principle of exhaustion may also apply if the product put on the market with consent of the patent owner is used as a component part of a larger device, as long as the consent of the patent owner encompasses this use.

owner's covenant not to sue a licensee of the product, or covenant to sue such licensee last, depending on the specific wording of the covenant (cf. Federal Court of Justice, decision of January 23, 2023, X ZR 123/20, GRUR 2023, 474). The scope and availability of the patent exhaustion defense available to Netgear in the German Proceedings therefore depends on the exact formulation of the provisions in the agreements that Netgear seeks pursuant to 28 U.S.C. § 1782 ("Section 1782") in the above-captioned proceeding (as described further below).

14. Furthermore, existing rights relating to the Huawei Patents, such as those granted to Qualcomm, are also relevant for the determination of the overall value and appropriateness of the portfolio license terms offered by Huawei to Netgear. Specifically, if the Huawei Patents are deemed "essential" to the Wi-Fi 6 standard, the German Court (or court sitting in appeal therefrom) will consider Qualcomm's agreements regarding the Huawei Patents as part of Netgear's potential defense based on Huawei's obligation to offer fair, reasonable, and non-discriminatory ("FRAND") licensing terms.

15. Netgear has become aware, and Huawei has confirmed, that Qualcomm has concluded a set of agreements with Huawei (the "Huawei Agreements") concerning patents owned by Huawei, potentially including the Huawei Patents, as reported by Qualcomm itself. *See* Qualcomm Licensees Search, https://qaualcomm.com/licensing#licensee-search (last visited May 10, 2023). The existence of license agreements between Qualcomm and Huawei, covering patents owned by Huawei, is also publicly known from Qualcomm's public disclosures to the U.S. Securities and Exchange Commission.[5]

---

[5] *See* Qualcomm Inc. 2020 Annual Report (Form 10-K) at 38 (Nov. 4, 2020) ("In July 2020, we entered into a settlement agreement with Huawei to resolve our prior dispute related to our license agreement that expired on December 31, 2019. We also entered into a new long-term, global patent license agreement that contains a cross license granting rights to certain of Huawei's patents and applies to sales of certain

16. As can be seen from the paragraph above, the Huawei Agreements (including any amendments and other ancillary documents) relate to license agreements between Qualcomm and Huawei, and may concern some of the Huawei Patents, including Qualcomm's potential license of the same. Netgear does not possess the Huawei Agreements and is unaware of the specific wording of the provisions therein relating to the Huawei Patents, which, as explained above, will be decisive in the German Proceedings for the German Court's assessment of Netgear's patent exhaustion and FRAND defenses under German law.

17. Even though Netgear has asked Huawei for the Huawei Agreements, Huawei has refused to provide them.

## II. NETGEAR'S REQUESTED SECTION 1782 DISCOVERY

18. I have reviewed the document requests that Netgear seeks to serve on Qualcomm through its instant application pursuant to Section 1782. Specifically, Netgear requests that Qualcomm produce any agreement between Qualcomm and Huawei regarding any patents, including any amendments, side letters, and ancillary agreements.

19. For the reasons described above, the discovery Netgear seeks will materially assist the German Court, including any court sitting in appeal therefrom, in adjudicating the dispute between Huawei and Netgear. The discovery that Netgear seeks is particularly relevant with regards to the question of patent exhaustion which, if present, would prevent Huawei from asserting its exhausted patent rights against Netgear in the German Proceedings. Furthermore, any rights Qualcomm has to the

---

wireless products by Huawei beginning on January 1, 2020."); Qualcomm Inc. 2021 Annual Report (Form 10-K) at 42 (Nov. 3, 2021) (similar); Qualcomm Inc. 2022 Annual Report (Form 10-K) at F-29 (Nov. 2, 2022) ("Unallocated revenues in fiscal 2020 were comprised of licensing revenues from Huawei resulting from the settlement agreement signed in July 2020 and royalties for sales made in the March 2020 and June 2020 quarters under a new global patent license agreement signed in July 2020.").

Huawei Patents—which, for the reasons described above are likely to be found in the Huawei Agreements—will also impact the overall value of the portfolio license terms offered by Huawei to Netgear, which the German Courts will also have to assess.

### III. AUTHORITY OF THE GERMAN COURTS

20. Germany is a civil law country where the concept of discovery and/or document production does not exist under procedural law. Furthermore, under German law, a German court does not have authority to compel a third party—or even a party itself—to provide documents.

21. Thus, the German Court cannot compel Huawei to produce the Huawei Agreements, even though such documents are directly relevant and highly material to the issues raised by Netgear in the German Proceedings. The German Court can only request the submission of documents particularly specified or referenced by a party to the German Proceedings and does not have the authority to investigate or to order the investigation of facts or documents not already specified by the parties to the action. Furthermore, the German Court is not authorized to compel a party of the German Proceedings (Huawei) or a third party (Qualcomm) to submit documents at all.

22. Netgear has previously informed the German Court of Huawei's refusal to provide license agreements such as the Huawei Agreements. However, based on the rules explained above, even if the German Court decided that Huawei should produce the Huawei Agreements to Netgear, the German Court could not compel Huawei to do so, and Huawei has thus far opposed providing these documents.

### IV. RECEPTIVITY OF THE GERMAN COURTS TO EVIDENCE PROCURED THROUGH US DISCOVERY ASSISTANCE

23. While German courts cannot order the type of discovery available through Section 1782, they will nevertheless be receptive to evidence obtained through Section 1782 proceedings in the United States. Under German law, any documents obtained pursuant to Section 1782 can be formally introduced into the German Proceedings, and the German Court, including the court overseeing any appeal of the

German Proceeding concerning EP 741, would consider this evidence—without prejudice to decisions about the admission and consideration of any particular document introduced according to general German rules regarding the admissibility of evidence.

24. Specifically, due to the constitutional right of access to the courts according to article 103 para 1 of the German Basic Law, and the obligation to investigate the facts of the case to the extent possible (and necessary) according to Section 286 para. 1 of the German Code of Civil Procedure, German courts must generally consider all evidence submitted into legal proceedings. *See* Federal Supreme Court, decision of 19 June 2002, NJOZ, 2002, 2019 el sew. While there is no Federal Supreme Court decision addressing the issue of Section 1782 discovery specifically, the Federal Supreme Court of Germany has confirmed that the enforcement of a US judgement in Germany is not precluded when the judgment was based on evidence obtained in pre-trial discovery proceedings in the United States. *See* Federal Supreme Court, decision of 4 June 1992, NJW 1992, 3096, 3099 (holding that the reliance on evidence obtained through US discovery does not violate German public order). German literature has interpreted this holding as supporting German courts' receptivity to submission of evidence obtained pursuant to Section 1782. *See, e.g.*, Schonknecht, Beweisbeschaffung in den USA zur Verwendung in deutschen Verfahren, GRURInt 2011, 1000, 1007 with reference to Eschenfelder, Verwertbarkeit von Discovery-Ergebnissen in deutschen Zivilverfahren, RIW 2006, 443, 447; *see also* Müller-Stoy, Grundzüge des U.S.-amerikanischen Patentverletzungsverfahrens, GRUR Int. 2005, 558, 563.

25. Furthermore, there is no law, rule of evidence, or rule of procedure in German civil proceedings that prohibits a party from seeking discovery pursuant to Section 1782, and then using any evidence obtained through a Section 1782 application in German court proceedings. Rather, the presentation of documents is generally admissible evidence in Germany, see Section 415 Code of Civil Procedure;

"Urkundenbeweis," and Netgear is entitled to submit evidence in support of its position in German proceedings, regardless of whether the evidence has been obtained pursuant to Section 1782.

26. Indeed, I have personally submitted information and documents, including license agreements like those requested by Netgear here, that were obtained pursuant to discovery proceedings under 28 U.S.C. § 1782 in several German proceedings. In none of those cases did the court ever doubt whether such evidence was admissible. In all cases, the court simply proceeded to take the evidence into consideration.

27. As the German Court would accept the formal introduction of the documents that Netgear requests here, a US court's order requiring the production of these documents would not offend the German Court or violate any order of such Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of June, 2023, at Duesseldorf, Germany

/s/ *Stephan Dorn*

Stephan Dorn