1  BENTLEY P. STANSBURY III, CASB No. 229102
   bentley.stansbury@kyl.com
2  KEESAL, YOUNG & LOGAN
   400 Oceangate
3  Long Beach, California 90802
   Telephone:  (562) 436-2000
4  Facsimile:   (562) 436-7416

5  DAVID Y. LIVSHIZ (*pro hac vice*)
   david.livshiz@freshfields.com
6  HENRY V. HUTTEN (*pro hac vice*)
   henry.hutten@freshfields.com
7  GRACE W. BRODY (*pro hac vice*)
   grace.brody@freshfields.com
8  FRESHFIELDS BRUCKHAUS DERINGER US LLP
   601 Lexington Avenue, 31st Floor
9  New York, New York 10022
   Telephone:  (212) 277-4000
10 Facsimile:   (212) 277-4001

11 *Attorneys for Applicants Netgear Inc.*
   *and Netgear Deutschland GmbH.*

13 **UNITED STATES DISTRICT COURT**

14 **SOUTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| IN RE: *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | CASE NO.: 3:23-MC-00794-BLM |
|  | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH TO MODIFY PROTECTIVE ORDER** |

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT .................................................................1

II.  FACTUAL BACKGROUND..................................................................3

   A.  THE GERMAN PROCEEDINGS.............................................3

   B.  THE UPC PROCEEDING. ..........................................................5

   C.  QUALCOMM'S REFUSAL TO MODIFY THE PROTECTIVE ORDER. .........7

III. REQUESTED RELIEF ..........................................................................9

IV.  ARGUMENT.........................................................................................9

   A.  MODIFICATION IS PLAINLY MERITED BY BINDING NINTH CIRCUIT PRECEDENT ......................................10

      1.  The Documents At Issue Are Relevant to the UPC Proceeding.............................................................11

      2.  Qualcomm Has No Reliance or Other Valid Interests that Will Be Harmed By the Limited Modification Sought Here.  Netgear Will Suffer Substantial Prejudice Without Modification...........................................12

   B.  SECTION 1782 ALSO STRONGLY FAVORS MODIFYING THE PROTECTIVE ORDER ........................................14

      1.  Section 1782 Contains No Restrictions on Subsequent Uses of Discovery Material Obtained Pursuant to the Statute...................................................................15

      2.  The Merits of Section 1782 Strongly Favor Modification.............................................................16

V.   CONCLUSION.....................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

*Advanced Micro Devices, Inc. v. Intel Corp.*,
    292 F.3d 664 (9th Cir. 2002) ............................................17

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
    966 F.2d 470 (9th Cir. 1992) .......................................... 9, 10, 11, 12

*CBS Interactive, Inc. v. Etilize, Inc.*,
    257 F.R.D. 195 (N.D. Cal. 2009)..........................................10

*Euromepa S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095(2d Cir. 1995)..........................................19

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
    331 F.3d 1122 (9th Cir. 2003) ..................................... 2, 10, 11, 13, 14

*Glock v. Glock, Inc.*,
    797 F.3d 1002 (11th Cir. 2005) ..........................................15

*Infineon Techs AG v. Green Power Techs Ltd.*,
    247 F.R.D. 1 (D.D.C. 2005)..................................... 12, 13, 15

*In re Accent Delight Int'l Ltd.*,
    2017 U.S. Dist. LEXIS 211058 (S.D.N.Y. Dec. 22, 2017) ........................15, 16

*In re Accent Delight Int'l Ltd.*,
    869 F.3d 121 (2d Cir. 2017)..........................................15

*In re Daimler AG*,
    2021 WL 3852729 (S.D. Cal. Aug. 27, 2021) ...........................17, 19

*In re LG Elecs. Deutschland GmbH*,
    2012 WL 1836283 (S.D. Cal. May 21, 2012) ..................................17

*In re Malev Hungarian Airlines*,
    964 F.2d 97 (2d Cir. 1992) ..........................................18

*In re Motorola Mobility, LLC*,
    2012 WL 4936609 (N.D. Cal. Oct. 17, 2012) ..................................19

*In re Nokia Techs. Oy*,
    2022 WL 788702 (S.D. Cal. Mar. 15, 2022) .......................................................17

*In re Porsche Automobil Holding, S.E.*,
    2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ........................................................19

*In re Smith*,
    2012 WL 12885234 (S.D. Cal. Oct. 9, 2012) ...............................................16, 18

*Intel Corp v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004).......................................................................................3, 16

*John Deere Ltd. v. Sperry Corp.*,
    754 F.2d 132 (3d Cir. 1985) ...............................................................................18

*Kraszewski v. State Farm Gen. Ins. Co.*,
    139 F.R.D. 156 (N.D. Cal. 1991)........................................... 11, 12, 13, 14

*Olympic Refining Co. v. Carter*,
    332 F.3d 260 (9th Cir. 1964) ................................................. 10, 12, 14

*Oracle Corp. v. SAP AG*,
    2010 WL 545842 (N.D. Cal. Feb. 12, 2010) ........................................ 11, 12, 14

*Palantir Techs., Inc. v. Abramowitz*,
    415 F. Supp. 3d 907 (N.D. Cal. 2019)................................................................19

*Sleep Number Corp. v. Sizewise Rentals LLC*,
    2019 WL 12536127 (C.D. Cal. Sept. 26, 2019) .................................................12

*United Nuclear Corp. v. Cranford Ins. Co.*,
    905 F.2 1424 (10th Cir. 1990) ...........................................................................10

*Verizon Cal. Inc. v. Ronald A. Katz Tech. Licensing, L.P.*,
    214 F.R.D. 583 (C.D. Cal. 2003)............................................ 7, 9, 10, 11, 12, 13

*Weber v. Finker*,
    554 F.3d 1379 (11th Cir. 2009) .........................................................................17

**Statutes**

28 U.S.C. § 1782 .......................................................................... *passim*

1    Applicants Netgear Inc. and Netgear Deutschland GmbH (together, "**Netgear**")
2    respectfully seek an order modifying the blanket protective order (the "**Protective**
3    **Order**," or "**PO**," Dkt. No. 20) in the above-captioned miscellaneous proceeding (the
4    "**1782 Proceeding**") so that Netgear may use documents already produced by Qualcomm
5    Incorporated ("**Qualcomm**") in a lawsuit (the "**UPC Proceeding**") pending in the local
6    division of Unified Patent Court (the "**UPC**") in Munich, Germany. Netgear makes this
7    *ex parte* application (the "**Application**") for good cause in light of its need to use these
8    documents in its statement of defense, which must be filed in the UPC Proceeding on
9    November 17, 2023.

10   **I.    PRELIMINARY STATEMENT**

11   Netgear has obtained discovery from Qualcomm pursuant to 28 U.S.C. § 1782
12   ("**Section 1782**") in this 1782 Proceeding for use in lawsuits in the national courts of
13   Germany (the "**German Proceedings**"). In the German Proceedings, Huawei
14   Technologies Co. Ltd. ("**Huawei**"), contends that certain access points[1] made by Netgear
15   infringe its European patents related to the Institute of Electrical and Electronic Engineers
16   802.11ax wireless local area network standard (the "**Wi-Fi 6 Standard**")—one of a few
17   globally shared standards that wireless network components use to ensure compatibility.

18   A large portion of the Netgear access points accused in the German Proceedings
19   implement the Wi-Fi 6 Standard by incorporating Wi-Fi modem chipsets sold by
20   Qualcomm.[2] Thus, Netgear brought this Section 1782 Proceeding, seeking Qualcomm's
21   license and other agreements with Huawei regarding Huawei's patents. As shown in
22   Netgear's application (the "**1782 Application**") for Section 1782 discovery, these
23   agreements are critical to Netgear's patent-exhaustion defense in the German
24   Proceedings. This Court granted the 1782 Application on August 31, 2023. After
25   negotiating a blanket Protective Order, Qualcomm ▇▇▇▇▇▇▇▇▇▇▇▇▇

---

26
27   [1]    An access point is a device that creates a wireless local area network.
28   [2]    Wi-Fi modem chipsets are electronic components that implement the Wi-Fi 6
     Standard and enable access points to provide a wireless network to client devices.

1    ██████████████████████████████████████████████████████████████████.

2    On August 7, 2023—nearly two months after Netgear started this Section 1782

3    Proceeding—Netgear was served with Huawei's complaint in the UPC Proceeding. In

4    the UPC Proceeding, Huawei alleges that the same access points at issue in the German

5    Proceedings infringe one of Huawei's European patents which, just as in the German

6    Proceedings, Huawei contends is essential to the Wi-Fi 6 Standard. Because the same

7    devices—*i.e.*, access points that implement the Wi-Fi 6 Standard using Qualcomm's

8    modem chipsets—are accused in both the UPC and German Proceedings, and because

9    the standards for patent exhaustion are virtually the same in all Proceedings, the ████████

10   ████████████████████████████████████████████████████████████████████

11   ███████████████████████████████████████

12   Therefore, Netgear seeks to modify the Protective Order to allow it to use

13   discovery material produced by Qualcomm in the UPC Proceeding, with all other

14   protections of the Protective Order remaining in place. This request should be granted.

15   *First*, Ninth Circuit precedent "strongly favors" modification of protective orders

16   to allow use of relevant documents in collateral litigation, since this promotes judicial

17   efficiency by "avoiding the wasteful duplication of discovery" efforts. *Foltz v. State*

18   *Farm Mut. Auto. Ins. Co*., 331 F.3d 1122, 1131 (9th Cir. 2003). Thus, the Ninth Circuit

19   has instructed that where, as here, protections will continue to exist for any private or

20   confidential information, requests to modify a protective order "should generally be

21   granted." *Id.* at 1332.

22   *Second*, modification will cause Qualcomm no prejudice. The strict requirements

23   of the Protective Order will continue to apply to any of Qualcomm's confidential

24   documents Netgear uses in the UPC Proceeding, and the UPC itself has strict

25   confidentiality protections limiting third-party access that Netgear must (and will) ask

26   the UPC to impose if it submits confidential Qualcomm information to that court. As a

27   result, Qualcomm cannot contend that its confidential information will be exposed if

28   Netgear uses its documents in the UPC Proceeding. By contrast, denying modification

may prevent Netgear from using documents that are critical for, and potentially dipositive of, its defense of the UPC Proceeding. In the very least, denial will require Netgear to duplicate its discovery efforts, wasting both its own resources, and those of the courts.

This can end the inquiry. Ninth Circuit precedent strongly favoring modification controls even when a movant seeks to modify a protective order to use documents in non-US lawsuits. But if it helps the Court to evaluate the requirements of Section 1782 and related case law, these too strongly favor modification. Netgear is a named party in the UPC Proceeding that seeks discovery from Qualcomm, which is found in this district, for use in the UPC Proceeding, satisfying Section 1782's statutory requirements. Section 1782's four discretionary factors also favor modification. First, it is unclear if the UPC can or will compel Huawei to produce its █████████████████████████ ███████████████, making the need for Section 1782 assistance apparent. Second, there is no indication that the UPC would not welcome discovery assistance from this Court. Third, Netgear is not trying to circumvent any non-US proof gathering requirements. Fourth, modifying the Protective Order would impose zero burden on Qualcomm, since it has already produced the documents Netgear seeks to use in the UPC Proceeding.

The Supreme Court's instruction that district courts should exercise their discretion under Section 1782 to further the statute's aim of "providing efficient assistance to participants in international litigation" also favors modifying the Protective Order. *Intel Corp v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004). Without modification, Netgear will be forced into the needlessly wasteful exercise of burdening this Court with a new Section 1782 petition (or the UPC with discovery requests) seeking the same documents Netgear already obtained here. In short, the Protective Order should be amended, no matter which standard is applied.

## II.    FACTUAL BACKGROUND

### A.    The German Proceedings

The German Proceedings concern a patent dispute between Netgear and Huawei. The two patents that Huawei accuses Netgear of infringing relate to the Wi-Fi 6 Standard.

1  Dorn Decl. ¶¶ 6-7.[3] The Wi-Fi 6 Standard is one among the shared set of technical
2  standards that different components within a wireless local area network must use to
3  enable wireless network communications. *Id.* ¶ 6. In the German Proceedings, Huawei
4  contends that its patents are "essential" to the Wi-Fi 6 Standard, and that Netgear's access
5  points implementing this Standard thus infringe its patents. *Id.* ¶¶ 6-7. Importantly, a
6  significant portion of the access points that Huawei accuses of infringement in the
7  German Proceedings implement Wi-Fi 6 functionality through incorporation of Wi-Fi
8  modem chipsets supplied by Qualcomm. Dorn Decl. ¶ 12.[4]

9      Huawei initiated the German Proceedings in March of 2022: one German
10 Proceeding concerns European Patent ("**EP**") 3 337 077; the second German Proceeding
11 concerns EP 3 143 741. *See id.* ¶¶ 7-8. On May 11, 2023, the German court dismissed
12 Huawei's complaint in the German Proceeding concerning EP 3 143 741. *Id.* ¶ 10. On
13 August 11, 2023, Huawei appealed this decision to the Dusseldorf Higher Regional Court
14 (the "**German Appellate Court**"), Dorn Reply Decl. ¶ 4, and, on October 31, 2023,
15 Netgear filed its defense of Huawei's appeal. Dorn PO Decl. ¶ 7.

16     In its defense of Huawei's appeal, Netgear submitted to the German Appellate
17 Court ████████████████████████ between ████████████
18 ████ that ████████████████████████████. *Id.* ¶ 8. This ████
19 ████████ proves that ████████████████████████



20 _____

21 [3]    References to the "Dorn Decl.," "Dorn Reply Decl." and "Dorn PO Decl." and
22 exhibits thereto are, respectively, to the Declarations of Stephan Dorn in Support of the
   (i) the Application, Dkt. No. 1-3, (ii) Netgear's Reply, Dkt. No. 16-1, and (iii) Netgear's
23 Application to Modify Protective Order, the latter of which is being filed with this
24 memorandum.

25 [4]    As a result, Netgear brought this 1782 Application seeking license and other
   patent-related agreements between Qualcomm and Huawei in support of, *inter alia*,
26 Netgear's defense of patent exhaustion in the German Proceedings, which can be based
27 on, *inter alia*, any license or other rights that Huawei granted to Qualcomm in its patents,
   including any Huawei covenants not to sue Qualcomm with respect to Huawei's patents,
28 or to sue Qualcomm only after exhausting other options. *See* Dorn Decl. ¶¶ 12-13.

1  ████████████████████████████████████████████████

2  ████████████████████████████████████████████████

3  ████████████████████████████████████████████████

4  ████████████████████████████████████████████████

5  ████████████████████████████████████ This is critical to

6  Netgear's defense of patent exhaustion because, under German law, patent exhaustion

7  can be based on a patent owner's covenant not to sue a licensee of a product, or covenant

8  to sue such licensee last, depending on the wording of the covenant. *Id.*

### B.    The UPC Proceeding.

On August 7, 2023, well after Netgear filed the Application on June 14, 2023, Huawei served Netgear with a complaint that it filed against Netgear in the Munich Local Division of the UPC.[5] Dorn PO Declaration ¶ 9.[6] Huawei alleges that the same Netgear access points at issue in the German Proceedings (that incorporate the Wi-Fi 6 Standard through modem chipsets sold by Qualcomm) also infringe Huawei's EP 3 611 989. *Id.* As in the German Proceedings, Huawei contends that its patent is essential to the operation of the Wi-Fi 6 Standard, and that Netgear's sale and distribution of access points that implement the Wi-Fi 6 Standard infringe Huawei's patent. *Id.*

Critically, virtually identical standards will apply to Netgear's exhaustion defense in both the German Proceedings and the UPC Proceeding. *Id.* ¶ 10. Under German law, the doctrine of exhaustion is rooted in well-settled case law, and the German Federal Supreme Court has recently expanded the doctrine so that it can be based on a patent

---

[5]    The UPC is a newly established international court with jurisdiction over European patents that are designated to participating European Union member states and whose owners have not opted them out of UPC jurisdiction. For a time, national courts of EU Members will also have jurisdiction over European patents. Dorn PO Decl. ¶ 9 n.5.

[6]    On July 7, 2023—well after this section 1782 Proceeding commenced—Huawei informed Netgear that it filed suit before the UPC. Netgear was unaware of the contents of the complaint until it was served on Netgear on August 7, 2023. Dorn PO Decl. ¶ 9 n.4.

owner's covenant not to sue a licensee of the product, or covenant to sue such licensee last, even if that covenant is included in an agreement that is governed by "foreign" law. *Id.* And, as explained in the Dorn PO Declaration, the UPC is very likely to take the same approach given that it is bound by statute to follow the laws of the European Union as applied by the Court of Justice of the European Union, which also resoundingly acknowledges the doctrine of exhaustion. *Id.* Thus, the ████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████. *Id.* ¶ 11. Netgear's statement of defense in the UPC Proceeding is due on November 17, 2023, and Netgear would be prejudiced substantially if it could not submit the ████████████ ████████████ to the UPC when it files its statement of defense, ████████████████ ██████████████████████████████████████████████ *Id.*

The UPC "assigns the highest priority for the protection of trade secrets" and confidential information submitted to the UPC. *Id.* ¶ 12. The UPC can order such information to be treated as confidential, so that third parties authorized to inspect the court file are unable to access this information. *Id.* ¶¶ 12-13. The UPC can also order access to documents filed with that court to be restricted to a specific, limited number of persons (so that third-party access is prohibited) and can exclude the public from oral hearings discussing confidential information. *Id.* These protections can be requested when confidential documents are filed with the UPC, and at the time someone seeks to access the court file. *Id.* Huawei is the only party suing Netgear in the UPC Proceeding, *id.* ¶ 14, and Qualcomm has represented to Huawei that it is "not concerned" with Huawei's access to Designated Material, since Huawei "is in possession of its agreements with Qualcomm." *Id.* ¶ 14 & Ex. A at 2.

The UPC's rules might in theory allow Netgear to expend its and the UPC's resources needlessly by asking the UPC to require Huawei to produce ████████████ ██████████████████████████████████████████████████████████

- 6 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH TO MODIFY PROTECTIVE ORDER                Case No. 3:23-MC-00794-BLM

█████████. *See id.* ¶ 15. However, the UPC is a newly established international court with jurisdiction over participating EU members; it is far from clear if the UPC could make Huawei (which is based in China) produce documents if it refused the UPC's order. *Id.* It is also far from clear how restrictively the UPC will interpret its discovery rules, and it is therefore uncertain whether the UPC would order Huawei to produce t████████ ████████ in the first place. *Id.*

### C.    Qualcomm's Refusal To Modify the Protective Order.

Netgear and Qualcomm negotiated a blanket Protective Order[7] covering discovery materials produced by Qualcomm. *See* PO ¶¶ 1, 4, 7, 13. This Order has strict protections for all discovery that Qualcomm designates as confidential ("**Designated Material**"), ████████████████████████████████. The Protective Order generally prevents a "Receiving Party" from giving even its own employees, or those of the parties to the so-called "Foreign Actions," access to Designated Material, except to the extent that Qualcomm agrees otherwise, or access is required by law for any Designated Material that Netgear submits to the courts in the German Proceedings. *Id.* ¶¶ 19-20, 22-23. If Netgear submits any Designated Material to these courts, it must ask the courts to restrict access to such Material "to the greatest extent permissible under applicable law." *Id.* ¶¶ 22-23. Finally, the Protective Order allows Netgear to use Designated Material only in connection with the "Foreign Actions," which include only the German Proceedings. *Id.* ¶¶ 3, 13.

This Court granted the 1782 Application on August 31, 2023, *see* Dkt. No. 17, and Netgear served a document subpoena (the "**1782 Subpoena**") on Qualcomm the same

---

[7]    A "blanket" protective order "allows a party producing . . . a particular document to initially determine whether such item is confidential without court intervention." *Verizon Cal. Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, 214 F.R.D. 583, 586 (C.D. Cal. 2003). *See also* PO ¶¶ 2, 4, 7, 13 (allowing Qualcomm to designate documents as confidential if it "believes in good faith" that they contain confidential information).

day. *See* Hutten PO Decl. ¶ 4 & Ex. A.[8] Qualcomm served its responses to the 1782 Subpoena on September 14, 2023, in which it agreed to produce certain responsive documents subject to a protective order. *See id.* ¶ 4 & Ex. B.

From the outset of the parties' negotiation of the Protective Order, Netgear asked that the definition of "Foreign Actions" be expanded to include the UPC Proceeding, so that Netgear could use Designated Material in the UPC Proceeding, subject to all the substantial protections in the Protective Order. *See* Hutten PO Decl. ¶ 5 & Ex. C at 2, 8-9. Qualcomm refused Netgear's request. *Id.* at ¶ 5 & Ex. C at 1, 8. Rather than delay document production while continuing to discuss the issue, Qualcomm offered to continue to "consider" Netgear's request after it produced documents and to make "an amendment to the PO at a later date" "if [it] can get comfortable" with Netgear's request. *Id.* ¶ 6 & Ex. C at 1. Because Netgear would not know whether it was necessary to continue the discussion (and potentially seek this Court's relief) until after it received Qualcomm's documents, Netgear agreed to Qualcomm's suggestion. *Id.* ¶ 6 & Ex. C at 1. Thus, the Protective Order was entered "without prejudice to the right" to "apply . . . for modification" at "any time." PO ¶ 32.[9]

Netgear and Qualcomm jointly submitted the proposed, stipulated blanket Protective Order to this Court on October 16, 2023. *See* Dkt. No. 19. The Court entered the Order on October 17, 2023. *See* Dkt. No. 20. Qualcomm waited a full week to produce

---

[8]      References to the "Hutten PO Decl." and exhibits thereto are to the Declaration of Henry V. Hutten in Support of Netgear's Application to Modify Protective Order, which is being submitted contemporaneously with this memorandum.

[9]      The Protective Order has a bevy of provisions retaining this Court's authority to adjudicate disputes over the Protective Order. *See id.* at ¶ 17 (allowing "Applicants [to] seek an order from this Court to alter the status of" Designated Material); ¶ 19 (contemplating that, if "ordered by the Court," Netgear may disclose Designated Material to persons beyond those identified in the Protective Order); ¶ 22 (authorizing similar relief on an "order of this Court"); ¶ 26 (providing a procedure "in this action" to seek Court relief for a dispute about whether an "Outside Consultant" can access to Designated Material); ¶ 32 (allowing Netgear to seek to modify the Protective Order "at any time").

█████████████████████ on October 24, 2023, *see* Hutten PO Decl. ¶ 7 & Ex. D, even though it had already gathered and sent the same documents to Huawei on October 12, 2023, in anticipation of its document production to Netgear. *See* Dorn PO Decl. ¶ 14 & Ex. A.

Netgear diligently reviewed Qualcomm's document production and, on October 25, 2023—just one day after Qualcomm produced documents—Netgear informed Qualcomm that it still sought to use documents in the UPC Proceeding. Hutten PO Decl. ¶ 7 & Ex. D at 7. Qualcomm still would not agree. *Id.* ¶ 7 & Ex. D at 6-7. Rather, Qualcomm claimed that Netgear should restart the discovery process from scratch and try to obtain from Huawei in the UPC Proceeding the same documents that Qualcomm had already produced to Netgear here. *See id.* Despite Netgear's numerous and diligent attempts to convince Qualcomm to agree to modify the Protective Order, Qualcomm has not changed its position. *See id.* ¶ 7 & Ex. D at 2-6. In light of the November 17, 2023 deadline for its a statement of defense in the UPC Proceeding, Netgear informed Qualcomm on November 7, 2023 that it intended to seek court relief if the parties could not reach an agreement by November 8, 2023. *See id.* ¶ 8 Ex. D at 2. On November 8, 2023, Netgear informed Qualcomm that it intended to file this *ex parte* Application on November 9, 2023. *See id.* ¶ 8 Ex. D at 1.

## III.    REQUESTED RELIEF

Through this Application, Netgear respectfully requests that the Court modify the Protective Order to include the UPC Proceeding in the definition of the "Foreign Actions" in connection with which Netgear can use Designated Material, as reflected in Exhibit E to the Hutten PO Declaration.

## IV.    ARGUMENT

"[A] district court retains the power to modify or lift protective orders it has entered." *Verizon Cal.*, 214 F.R.D. at 585-86 (citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 470, 473 (9th Cir. 1992)). Where, as here, a movant shows that

1   modification will "meet the reasonable needs" of parties "in other litigation," the

2   opposing party must show good cause for continued protection. *See Beckman*, 966 F.2d

3   at 475-76 (quoting *Olympic Refining Co. v. Carter*, 332 F.3d 260, 264 (9th Cir. 1964));

4   *Verizon Cal.*, 214 F.R.D. at 586 (ordering modification when the opponent "has not met

5   its burden of demonstrating why the protective order should not be modified").

6       The Ninth Circuit "strongly favors access to discovery materials to meet the needs

7   of parties engaged in collateral litigation" because "[a]llowing the fruits of one litigation

8   to facilitate preparation in other cases advances the interests of judicial economy by

9   avoiding the wasteful duplication of discovery." *Foltz v. State Farm Mut. Auto. Ins. Co.*,

10   331 F.3d 1122, 1131 (9th Cir. 2003); *Beckman*, 966 F.2d at 475 ("Ninth Circuit precedent

11   strongly favors disclosure to meet the needs of parties in pending litigation," including

12   "the reasonable needs of other parties in other litigation"). "Where reasonable restrictions

13   on collateral disclosure will continue to protect an affected party's legitimate interests in

14   privacy, a collateral litigant's request to the issuing court to modify an otherwise proper

15   protective order so that collateral litigants are not precluded from obtaining relevant

16   material should generally be granted." *Foltz*, 331 F.3d at 1132.[10]

17   ## A.    Modification Is Plainly Merited By Binding Ninth Circuit Precedent

18       "The *Foltz* court set out a two-step inquiry." *Oracle Corp. v. SAP AG*, 2010 WL

19

20   ---

    [10]    Qualcomm has claimed and may argue here, that this 1782 Proceeding ended when

21   it produced documents on October 24, 2023, and that there is therefore no justiciable case

    or controversy for this Court to decide. This ignores the drove of provisions in the

22   Protective Order retaining this Court's authority to adjudicate disputes regarding the

    same. *See supra* n. 9. It also ignores that district courts retain "inherent authority to grant

23   a motion to modify a protective order." *CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D.

24   195, 201 (N.D. Cal. 2009); *see also Beckman*, 966 F.2d at 473 (noting that "the district

    court retained the power to modify the protective order" and citing *United Nuclear Corp.

25   v. Cranford Ins. Co.*, 905 F.2 1424, 1427 (10th Cir. 1990) for the proposition that the

26   "court retains [the] power to modify [a] protective order even if [the] underlying suit is

    dismissed."). Qualcomm also could not have offered in good faith to defer discussions

27   about the UPC issue until after it produced documents if it truly believed that this 1782

28   Proceeding terminated upon its document production.

545842, at *1 (N.D. Cal. Feb. 12, 2010). When evaluating a request to modify a protective order so that discovery can be used in collateral litigation, courts must first assess "the relevance of the protected discovery to the collateral proceedings," including the "degree of overlap in facts, parties, and issues between the suit covered by the protective order and the collateral proceedings." *Foltz*, 331 F.3d at 1132. Second, the Court should "weigh the countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery." *Id.* at 1333. "Reliance will be less with a blanket [protective] order, because it is by nature overinclusive." *Id.* (citing *Beckman*, 966 F.2d at 476). Reliance is reduced even more when a protective order is entered "without prejudice to the right" to "seek modification." *Kraszewski v. State Farm Gen. Ins. Co.*, 139 F.R.D. 156, 159 (N.D. Cal. 1991). These standards plainly favor modification here.

### 1.    The Documents At Issue Are Relevant to the UPC Proceeding.

The UPC Proceeding and German Proceedings have a towering degree of overlap. As shown above, Huawei and Netgear are parties to the German Proceedings and UPC Proceeding. In all Proceedings, Huawei claims that the patents that Netgear allegedly infringed are essential to the operation of the Wi-Fi 6 Standard. In all these Proceedings, Huawei accuses the same devices: Netgear's access points that incorporate the Wi-Fi 6 Standard through modem chipsets sold by Qualcomm. In all Proceedings, Netgear's exhaustion defenses can be based on covenant not to sue a licensee or to sue a licensee after exhausting other remedies. Thus, ███████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████    As a result, modification would "meet[] the reasonable needs of the parties" to the UPC Proceeding, and good cause exists for modification. *Beckman*, 996 F.2d at 475-76 (allowing modification where the primary and collateral lawsuits were "the same type of action"); *Verizon Cal.*, 214 F.R.D. at 586 (modifying a protective order when the documents sought for use in the collateral lawsuit "concern[ed] claims or issues similar to those raised in the [main] action"); *Sleep Number Corp. v. Sizewise Rentals LLC*, 2019 WL 12536127, at *3-4 (C.D. Cal. Sept. 26, 2019) ("good

- 11 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH TO MODIFY PROTECTIVE ORDER    Case No. 3:23-MC-00794-BLM

1  cause" existed "for modifying the protective order so that the term 'action' extends to the

2  IPR proceedings" when movant made "at least a colorable argument" that documents at

3  issue were "relevant to the IPR proceedings").[11]

### 2. Qualcomm Has No Reliance or Other Valid Interests that Will Be Harmed By the Limited Modification Sought Here. Netgear Will Suffer Substantial Prejudice Without Modification.

6  Qualcomm has no reliance or other interests that would be damaged by the modest

7  Protective-Order modification Netgear seeks here.

8  To begin, the Protective Order is a blanket protective order for which Qualcomm

9  has "never made a 'good cause' showing under Fed. R. Civ. P. 26(c) justifying initial

10  protection." *Beckman*, 966 F.2d at 476. As a result, it "may not rely solely on the

11  [P]rotective [O]rder to 'justify refusal when there is a reasonable request for disclosure.'"

12  *Verizon Cal.*, 214 F.R.D. at 586 (quoting *Beckman*, 966 F.3d at 476 and *Olympic Refining*

13  *Co.*, 332 F.2d at 264-66)); *Oracle Corp.*, 2010 WL 545842, at *2 ("[B]ecause there is a

14  blanket protective order in this case, Defendant's reliance interest is diminished."). Thus,

15  any argument that Qualcomm produced documents in reliance on the current Protective

16  Order is "beside the point." *Verizon Cal.*, 214 F.R.D. at 586. Qualcomm also agreed to

17  continue evaluating Netgear's request to use Designated Material in the UPC Proceeding

18  after entry of the Protective Order, *see* Hutten PO Decl. ¶ 6 & Ex. D at 1, and agreed that

19  the Protective Order was "entered without prejudice" to Netgear's right "to apply to this

20  Court at any time for modification." PO ¶ 32; *see also Kraszewski*, 139 F.R.D. at 158-59

21  (rejecting the argument that the party opposing modification produced documents in

---

[11]    *Accord Oracle*, 2010 WL 545842, at *2 (movant "met the *Fotlz* test when its "anticipated litigation in Europe would be based on the same facts as alleged in this case"); *Kraszewski*, 139 F.R.D. at 160 (granting modification when "the similarities between the cases are obvious, as is the fact that" the discovery in the first action "will be pertinent" to the second lawsuit); *Infineon Techs AG v. Green Power Techs Ltd.*, 247 F.R.D. 1, 2-3 (D.D.C. 2005) (allowing modification so that, as here, movant could use documents "in related patent litigation between the [same] parties in Germany" and finding "good cause" where documents were "highly relevant to the German litigation").

1  reliance on a protective order that limited the use of discovery to a single action where

2  that order had a "modification provision to which both parties agreed").

3          More importantly, Qualcomm cannot claim that modification imposes any undue

4  risk to its trade secrets or other confidential information. The only plaintiff in the UPC

5  Proceeding that may access Designated Material is Huawei, and Qualcomm has already

6  sent Huawei all the documents it produced to Netgear here. *See* Dorn PO Decl. ¶ 14 &

7  Ex. A. In addition, other than using Designed Material in the UPC Proceeding, Netgear's

8  use of Designated Material will still comply with the Protective Order to which

9  Qualcomm stipulated. If Netgear submits any Designated Material to the UPC, it must

10 ask that Court to restrict access "to the greatest extent permissible under applicable law."

11 *See* PO ¶¶ 22-23. And as explained above, the UPC "assigns the highest priority for the

12 protection of trade secrets," including by offering substantial protections for, and

13 restricting non-party access to, trade secrets and other confidential information on the

14 UPC's court file. Dorn PO Decl. ¶ 12. Thus, Qualcomm will suffer no undue prejudice,

15 which weighs in favor of modification. *See e.g., Foltz*, 331 F.3d at 1134 ("Any trade

16 secrets, financial information, and third-party medical or personnel information can be

17 protected by placing the [party seeking modification] under the same use and disclosure

18 restrictions contained in the original protective order."); *Verizon Cal.*, 214 F.R.D. at 586

19 (party who had produced documents and was opposing modification would "not suffer

20 any unfair prejudice" if documents were used in collateral litigation, when the documents

21 otherwise "remain[ed] subject to the" original protective order); *Infineon Techs*, 247

22 F.R.D. at 3 (modifying protective order to allow use of documents for litigation in

23 Germany when, as here, the movant agreed "to be bound by the terms of the [original]

24 [p]rotective [o]rder and any of [the] documents provided to the German court can be

25 submitted as confidential").

26          By contrast, and as described above, there is doubt about whether the UPC—a

27 newly constituted tribunal whose jurisdiction extends only to EU member states—could

28 enforce a document production order against Huawei, a company located in China. It is

also uncertain whether the UPC would issue such an order in the first place. Thus, without modification of the Protective Order, Netgear risks being deprived of the ability to use the ████████████████ in the UPC Proceeding, even though that ████████ ███████████████████████████████████. Dorn Decl. ¶¶ 10-11.

In addition, even if Netgear could obtain the ████████████████ from Huawei in the UPC Proceeding, that would not weigh against modification. *See Olympic Refining Co.*, 332 F.3d at 266 ("It is immaterial that [the movant] could possibly obtain the same information through the process of propounding its own [discovery requests]" in the collateral lawsuit); *Kraszewski*, 139 F.R.D. at 159 (same). The Ninth Circuit "strongly favors" modifying protective orders in this context because it "advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Foltz*, 331 F.3d at 1131. Qualcomm's bold contention that Netgear should re-start discovery from scratch—by asking the UPC to make Huawei produce documents Netgear already has—is diametrically at odds with that goal, and the needless waste of resources entailed in that exercise would prejudice Netgear and the UPC substantially. "It simply does not make sense to force [Netgear] to reinvent the wheel and to promulgate discovery requests" when "the same discovery has already taken place in this action." *Kraszewksi*, 139 F.R.D. at 160.

In sum, the test articulated by the Ninth Circuit in *Foltz* s overwhelmingly favors modification here.

**B.     Section 1782 Also Strongly Favors Modifying the Protective Order**

The binding precedent in *Foltz* applies just as forcefully when a movant seeks to modify a protective order to use discovery materials in litigation abroad. *See Oracle*, 2010 WL 545842, at *3 ("*Foltz* rather than § 1782 governs" a request to amend a protective order so documents can be used in European litigation); *Infineon*, 247 F.R.D., at 4 (Section "1782 [wa]s not controlling" when movant sought to modify a protective order to use documents in a German lawsuit). Thus, the Court need not look beyond the *Foltz* factors before granting this Application.

1  But if it would help the Court to evaluate the requirements of Section 1782, this
2  will only provide another reason to modify the Protective Order, as shown below.

3  **1.    Section 1782 Contains No Restrictions on Subsequent Uses of Discovery Material Obtained Pursuant to the Statute.**

4  As here, where there is no order to the contrary, discovery is taken in a Section
5  1782 proceeding "in accordance with the Federal Rules of Civil Procedure." 28 U.S.C.
6  § 1782(a). And "the Federal Rules of Civil Procedure do not regulate what litigants may
7  do with discovery after it lawfully has been obtained." *In re Accent Delight Int'l Ltd.*,
8  869 F.3d 121, 133-34 (2d Cir. 2017); *Glock v. Glock, Inc.*, 797 F.3d 1002, 1007-08 (11th
9  Cir. 2005) (similar). Thus, "Section 1782 does not prevent an applicant who lawfully has
10  obtained discovery under the statute with respect to one foreign proceeding from using
11  the discovery elsewhere unless the district court orders otherwise." *In re Accent Delight*,
12  869 F.3d at 133-34 (rejecting the argument that "a Section 1782 applicant must satisfy
13  the statutory requirements for each foreign proceeding for which he or she wishes to use
14  the requested discovery"); *Glock*, 797 F.3d at 1006 (finding "nothing in the language of
15  [Section] 1782 that purports to limit later uses of evidence that have been properly
16  obtained under [Section] 1782").[12] Rather, a Section 1782 applicant should be allowed to
17  use discovery material in non-US proceedings beyond those named in an original 1782
18  application unless the opposing party "can show bad faith or other chicanery." *In re
19  Accent Delight Int'l Ltd.*, 2017 U.S. Dist. LEXIS 211058, at *6 (S.D.N.Y. Dec. 22, 2017)
20  (granting leave to use previously obtained 1782 discovery material in additional non-US
21  proceedings and rejecting the argument "that the Court should apply the requirements of
22  Section 1782 anew in exercising [its] discretion").

23  Here, no bad faith or chicanery exists. The UPC Proceeding was commenced by

24

---

[12]   While the Eleventh Circuit Court of Appeals in *Glock* considered whether discovery previously produced pursuant to Section 1782 can be used in a later US lawsuit, the court's analysis applies just as much to whether Section 1782 discovery material can be used in a later non-US lawsuit. *See In re Accent Delight Int'l Limited*, 869 F.3d at 134 (finding *Glock's* reasoning "relevant and persuasive" to this issue).

1   Huawei. Netgear was served well after it started this 1782 Proceeding. Netgear told
2   Qualcomm from the start of the negotiation of the Protective-Order that it sought to use
3   discovery in the UPC Proceeding. In an effort to avoid burdening Qualcomm and this
4   Court unnecessarily, Netgear agreed to the current Protective Order so that it could press
5   its request to modify the Protective Order only if the documents Qualcomm produced
6   were relevant to the UPC Proceeding. Netgear now seeks only a modest change to the
7   Protective Order so it can use documents to defend the UPC Proceeding, subject to the
8   strict protections already in the Protective Order. Thus, modifying the Protective Order
9   is appropriate here. *See Accent Delight*, 2017 U.S. Dist. LEXIS 211058, at *9 (allowing
10  1782 applicant's use of documents in additional Section 1782 proceedings when, *inter*
11  *alia*, the opposing party could not "plausibly allege bad faith").

12              **2.      The Merits of Section 1782 Strongly Favor Modification**

13  If this Court considers the merits of Section 1782, it will find that they too strongly
14  favor modification. As explained below, Section 1782's statutory requirements are easily
15  met, and each *Intel* factor guiding this court's discretion under the statute also favors
16  discovery.

17  ***Section 1782's Elements Are Easily Satisfied.*** To satisfy Section 1782's elements,
18  Netgear need only show that: (i) the request is made by an interested person, (ii) the
19  evidence sought is for use in a proceeding in a foreign or international tribunal, and
20  (iii) the person from whom discovery is sought resides in this Court's district. *Intel Corp.*,
21  542 U.S. at 246. Those requirements plainly are met here.

22  *First*, both Netgear applicants are named parties in the UPC Proceeding. *See* Dorn
23  PO Decl. ¶ 9. There is "no doubt" that each is as an "interested person" for purposes of
24  Section 1782. *Intel*, 542 U.S. at 256; *In re Smith*, 2012 WL 12885234, at *2 (S.D. Cal.
25  Oct. 9, 2012) ("As a named party in this action, [applicant] qualifies as an 'interested
26  party.'").

27  *Second*, the UPC Proceeding, a patent infringement lawsuit pending before the
28  UPC, is a foreign proceeding. The UPC is also an "international tribunal" within the

1   meaning of 28 U.S.C. § 1782(a). *Intel*, 542 U.S. at 258 ("the term 'tribunal' . . . includes

2   . . . conventional civil, commercial, criminal, and administrative courts").

3       Netgear also seeks documents "for use" in the proceeding pending before the UPC.

4   To satisfy the "for use" prong, the evidence sought need only be relevant to the foreign

5   proceeding. *Weber v. Finker*, 554 F.3d 1379, 1384–85 (11th Cir. 2009) (Section 1782

6   discovery requests need only comply with the Rule 26 relevance standard). The evidence

7   need not actually, or even probably, be discoverable or admissible in the foreign

8   proceeding. *See Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir.

9   2002). Here, as explained above, ██████████████████████████████████████

10  ████████████████████████████████████. Dorn PO Decl. ¶¶ 10-11; *In re*

11  *Daimler AG*, 2021 WL 3852729, at *1 (S.D. Cal. Aug. 27, 2021) (granting Section 1782

12  application seeking Qualcomm agreements for use in patent exhaustion defense); *In re*

13  *LG Elecs. Deutschland GmbH*, 2012 WL 1836283, at *1 (S.D. Cal. May 21, 2012)

14  (granting Section 1782 application seeking documents granting Qualcomm "any rights,

15  protections, or licenses in or to any" patents at issue in infringement proceedings in Japan

16  and Germany). And even if there were a requirement that the requested Section 1782

17  discovery be admissible in the foreign proceeding, UPC rules allow Netgear to submit to

18  the UPC any documents it obtains through the Application, and the UPC would consider

19  the documents. Dorn PO Decl. ¶¶ 19-21.

20      *Third*, Qualcomm "resides or is found" in this District because its principal place

21  of business is in San Diego, California. *See* Qualcomm Inc. Annual Report (Form 10-K)

22  (Nov. 2, 2022); *In re Nokia Techs. Oy*, 2022 WL 788702, at *2 (S.D. Cal. Mar. 15, 2022);

23  *In re Daimler AG*, 2021 WL 3852729, at *1 (an application seeking discovery from

24  Qualcomm met Section 1782's requirements). Section 1782's elements thus are satisfied.

25      ***All Discretionary Factors Favor Granting the Application.*** Since Netgear has

26  satisfied the statutory requirements of Section 1782, this Court has discretion to grant the

27  Application based on four non-exclusive factors articulated by the Supreme court in *Intel*:

28  (i) whether the discovery sought is within the reach of the foreign court, (ii) "the nature

of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (iii) whether the Section 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions," and (iv) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65.

District courts must exercise their discretion under Section 1782 in light of the twin aims of the statute: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Id.* at 252. Thus, Section 1782 has been broadly interpreted to permit U.S. courts to grant "wide assistance" to foreign litigants. *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 135 (3d Cir. 1985) ("The liberal intent to provide judicial assistance" has been "acknowledged" as Section 1782's "primary statutory goal"); *In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) ("imposing an additional burden" on Section 1782 applicants would "undermine the policy of improving procedures for assistance to foreign and international tribunals").

All these factors favor allowing Netgear to use Designated Material in the UPC Proceeding, especially in light of Section 1782's animating purpose of providing foreign litigants with efficient means of discovery assistance.

*First*, Qualcomm is not a party to the UPC Proceeding, and the UPC cannot order Qualcomm to produce its agreements with Huawei. *In re Smith*, 2012 WL 12885234, at *2 ("Symbolic is not a participant in the United Kingdom based lawsuit, so this factor weighs in favor of granting the [a]pplication"); Dorn PO Decl. ¶ 17. Although Huawei is a party to the UPC Proceeding and presumably possesses ███████████████, there is doubt about whether the UPC—a newly constituted tribunal whose jurisdiction extends only to EU member states—could enforce an order requiring Huawei, which is in China, to produce this document. *See* Dorn PO Decl. ¶¶ 15, 18. It is also unclear whether it would issue such an order in the first place. *Id.* As a result, Netgear's "need for § 1782(a) aid" is "apparent." *Intel*, 542 U.S. at 264; *see also In re Daimler AG*, 2021

1  WL 3852729, at *1 (the first *Intel* factor was satisfied where, as here, Huawei was party

2  to agreements with Qualcomm that were sought pursuant to Section 1782); *In re Porsche*

3  *Automobil Holding SE*, 2016 WL 702327, at *8 (S.D.N.Y. Feb. 18, 2016) (granting

4  Section 1782 discovery when the non-US court "cannot and, in any case, would not order

5  the type (and scope) of evidentiary production sought by Porsche in this Court").

6       *Second*, the UPC is not hostile to discovery obtained in this Section 1782

7  Proceeding. In evaluating this second *Intel* factor, courts should find in favor of discovery

8  absent a "clear directive"—meaning "authoritative proof"—from the foreign authority

9  that specifically rejects the use of evidence gathered through Section 1782. *Euromepa*

10  *S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995); *Palantir Techs, Inc. v.*

11  *Abramowitz*, 415 F. Supp. 3d 907, 915 (N.D. Cal. 2019) ("courts tend to err on the side

12  of . . . discovery" when no authoritative proof is offered). Here, there is no clear,

13  authoritative proof.  To the contrary, there is every reason to believe that the UPC would

14  appreciate and benefit from this Court's assistance. *See* Dorn Decl. ¶¶ 19-22.

15       *Third*, Netgear seeks to modify the Protective Order in good faith without seeking

16  to circumvent restrictions on evidence gathering or other policies or procedures. *Id*. There

17  is no law, rule of evidence, or rule of procedure in the UPC that bars Netgear from seeking

18  and obtaining the discovery requested here and using it in the UPC Proceeding. *See id.*

19  Therefore, the third *Intel* factor favors granting this Application. *In re Motorola Mobility,*

20  *LLC*, 2012 WL 4936609, at *2 (N.D. Cal. Oct. 17, 2012) ("Because there is no indication

21  in the record of an attempt to subvert a foreign tribunal's restrictions, the court finds that

22  this factor weights in favor of [the applicant].").

23       *Fourth*, Netgear's request to amend the Protective Order would impose zero

24  burden on Qualcomm. Qualcomm has already produced the documents Netgear seeks to

25  use in the UPC Proceeding and would have to do nothing additional or different if

26  Netgear were authorized to do so. Rather, Netgear intends to use only a single, highly

27  relevant, and potentially dispositive document—██████████████████—in the

28  UPC Proceeding, subject to all the protections in the Protective Order and the

- 19 -

1  confidentiality protections that must (and will) be requested for any Designated Material
2  submitted to the UPC. Thus, the request to amend the Protective Order is neither unduly
3  burdensome or unduly intrusive, and the fourth *Intel* factor favors discovery.

4      *Finally*, Section 1782's animating purpose that must guide this Court's
5  discretion—"providing efficient assistance to participants in international litigation,"
6  *Intel*, 542 U.S. at 252—militates heavily in favor of allowing Netgear to use Designated
7  Material in connection with the UPC Proceeding. Requiring Netgear to start the discovery
8  process again from scratch in a new Section 1782 Proceeding or a fresh discovery request
9  before the UPC would needlessly waste judicial resources by requiring Netgear to
10  undertake gratuitously duplicative discovery efforts to obtain documents that it already
11  obtained lawfully in this Section 1782 Proceeding.

12  **V.   CONCLUSION**

13      For the foregoing reasons, Netgear respectfully requests that the Court issue an
14  order (i) modifying the Protective Order to include the UPC Proceeding in the definition
15  of "Foreign Actions," as reflected in Exhibit E to the Hutten PO Declaration, and
16  (ii) granting such other relief as this Court deems just and proper.

17

18  DATED:  November 9, 2023       /s/  Bentley P. Stansbury, III
19                              BENTLEY P. STANSBURY III
                            KEESAL, YOUNG & LOGAN
20
21                              DAVID Y. LIVSHIZ (*pro hac vice*)
                            HENRY V. HUTTEN (*pro hac vice*)
22                              GRACE W. BRODY (*pro hac vice*)
23                              FRESHFIELDS BRUCKHAUS DERINGER US
                            LLP
24
25                              *Attorneys for Applicants Netgear Inc. and*
                            *Netgear Deutschland GmbH*
26

27

28