DAVID KAYS, ESQ. (SBN 120798)
*dkays@mffmlaw.com*
WILLIAM SIAMAS (SBN 133111)
*wsiamas@mffmlaw.com*
MORGAN FRANICH FREDKIN SIAMAS & KAYS LLP
333 W. San Carlos Street, Suite 1050
San Jose, California 95110-2735
Telephone:    (408) 288-8288
Facsimile:    (408) 288-8325

Attorneys for Respondent
*QUALCOMM INCORPORATED*

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | Case No. 3:23-MC-794-BLM<br><br>Date/Time: No Hearing Set<br><br>Hon. Barbara Lynn Major<br>U.S. Magistrate Judge |

## QUALCOMM'S OPPOSITION TO NETGEAR'S
## EX PARTE APPLICATION TO MODIFY PROTECTIVE ORDER

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................. 1

BACKGROUND .................................................................................................. 5

    I.    Netgear's Filing Of This Section 1782 Action Relating To The German Actions .................................................................................................. 5

    II.   Qualcomm's Response To Netgear's Section 1782 Application ........................ 7

    III.   The Qualcomm-Huawei License Agreements ..................................................... 9

        A.  Confidentiality ................................................................................ 9

        B.  Lack of Relevancy To The Huawei Patents ..................................... 10

    IV.   The UPC Proceeding ........................................................................ 10

ARGUMENT ...................................................................................................... 12

    I.    Overview ........................................................................................ 12

    II.   The Court No Longer Has Subject Matter Jurisdiction To Modify The Protective Order To Expand Its Scope To Authorize Use of Qualcomm Discovery In The UPC Proceeding ...................................................... 13

        A.  Netgear Is Specifically Prohibited From Using The Confidential License Agreements Outside of the German Actions ................................. 16

        B.  The Section 1782 Proceeding Is Over ............................................ 18

    III.   The Court is Required To Consider the Section 1782 Factors ......................... 18

        A.  Section 1782 Provides The Controlling Law ................................... 18

        B.  The Section 1782 Factors Militate Against Granting The Application ....... 21

            1.  The Mandatory Factors Are Not Satisfied .................................. 21

               a.  "For Use" Requirement ...................................................... 21

               b.  Trade Secrets Are Not Discoverable Under Section 1782 ............... 21

            2.  Section 1782's Discretionary Factors ...................................... 22

               a.  Discovery Is Available From Huawei In The UPC ...................... 22

               b.  Undue Burden ................................................................ 23

    IV.   Even Under The Standards for Modifying Protective Orders, The Application Should Be Denied ........................................................................ 24

CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

Page

**Cases**

*Andover Healthcare, Inc. v. 3M Co.*,
   2014 U.S.Dist.LEXIS 141605 (D.Minn. Oct. 6, 2014) .............................................2, 23

*Apple Inc. v. Samsung Elecs. Co.*,
   727 F.3d 1214 (Fed. Cir. 2013)..........................................................................22

*Application Pursuant 28 U.S.C. § 1782 of Japan Display*,
   2021 U.S.Dist.LEXIS 243636 ...........................................................................21

*Arcesium LLC v. Advent Software, Inc.*,
   2022 U.S.Dist.LEXIS 37781 (S.D.N.Y. Mar. 3, 2022) .....................................8

*Baxalta Inc. v. Genentech, Inc.*,
   2016 U.S.Dist.LEXIS 195669 (N.D.Cal. Aug. 9, 2016) ...............................2, 23

*Beckman Indus. v. Int'l Ins. Co.*,
   966 F.2d 470 (9th Cir. 1992) ......................................................................18, 19

*Bouvier v. Adelson (In re Accent Delight Int'l Ltd.)*,
   869 F.3d 121 (2d Cir. 2017)...............................................................................16

*Brown Bag Software v. Symantec Corp.*
   960 F.2d 1465(9th Cir. 1992) .............................................................................24

*CBS Interactive, Inc. v. Etilize, Inc.*,
   257 F.R.D. 195 (N.D. Cal. 2009)...................................................................18, 24

*CPC Patent Techs. PTY Ltd. v. Apple, Inc.*,
   34 F.4th 801 (9th Cir. 2022) ..........................................................................5, 18

*CytoSport, Inc. v. Vital Pharms., Inc.*,
   2010 U.S.Dist.LEXIS 45602 (E.D.Cal. May 10, 2010) .....................................24

*Dataquill Ltd. v. High Tech Computer Corp.*,
   2011 U.S.Dist.LEXIS 159980 (S.D.Cal. Sep. 1, 2011) .......................................9

*DiscoverOrg Data, LLC v. Bitnine Global, Inc.*,
   2020 U.S.Dist.LEXIS 208506 (N.D.Cal. Nov. 6, 2020) ....................................22

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
   331 F.3d 1122 (9th Cir. 2003) ...........................................................................19

*Glock v. Glock, Inc.*,
     797 F.3d 1002 (11th Cir. 2015) ..................................................................16, 17

*In re Application of Babcock Borsig AG*,
     583 F.Supp.2d 233 (D.Mass. 2008) ...................................................................22

*In re Application of LG Elecs. Deutschland GMBH*,
     2012 U.S.Dist.LEXIS 70570 (S.D.Cal. May 21, 2012)......................................22

*In re Digitechnic*,
     2007 U.S.Dist.LEXIS 33708 (W.D.Wash. May 8, 2007)..............................3, 22

*In re Electronic Arts, Inc.*,
     298 Fed. Appx. 568 (9th Cir. 2008) ...................................................................22

*In re Jenoptik AG*,
     109 F.3d 721 (Fed. Cir. 1997)......................................................................19, 20

*In re Kegel*,
     67 F.Supp.3d 1054 (D.N.D. 2014)................................................5, 14, 15, 18

*In re Oasis Focus Fund LP*,
     2022 U.S.Dist.LEXIS 225755 (S.D.Cal. Dec. 14, 2022)......................................3

*In re Oasis Focus Fund LP*,
     2022 U.S.Dist.LEXIS 225755 (S.D.Cal. Dec. 14, 2022)..............................13, 22

*In re POSCO*,
     794 F.3d 1372 ......................................................................................................20

*In re Quadre Invs., L.P.*,
     2023 U.S.Dist.LEXIS 194178 (S.D.Cal. Oct. 27, 2023) ....................13, 15, 21

*In re Rigby*,
     2013 U.S.Dist.LEXIS 23251 (S.D.Cal. Feb. 19, 2013) ....................................22

*In re Schlich*,
     893 F.3d 40 (1st Cir. 2018)................................................................................21

*Infineon Techs. AG v. Green Power Techs. Ltd.*,
     247 F.R.D. 1 (D.D.C. 2005)................................................................................20

*Intel Corp. v. Advanced Micro Devices, Inc.*
     (2004) 542 U.S. 241............................................................................................13

*Intel Corp. v. VIA Techs., Inc.*
     198 F.R.D. 525 (N.D.Cal. 2000).........................................................................24

*Khrapunov v. Prosyankin,*
   931 F.3d 922 (9th Cir. 2019) .......................................................................13, 17

*Kraszewski v. State Farm Gen. Ins. Co.*,
   139 F.R.D. 156 (N.D.Cal. 1991) ...................................................................23

*Mad Catz Interactive, Inc. v. Razor USA, Ltd.,*
   2014 U.S.Dist.LEXIS 115896 (S.D.Cal. Aug. 19, 2014) .............................25

*Mangouras v. Boggs,*
   980 F.3d 88 (2d Cir. 2020).............................................................................17

*MMI, Inc. v. Baja, Inc.*,
   743 F.Supp.2d 1101 (D.Ariz. 2010) .............................................................22

*Nidec Corp. v. Victor Co.*,
   249 F.R.D. 575 (N.D.Cal. 2007) .....................................................................3

*Olympic Refining Co. v. Carter*
   332 F.2d 260 (9th Cir. 1964) ........................................................................23

*Oracle Corp. v. SAP AG,*
   2010 U.S.Dist.LEXIS 20811 (N.D.Cal. Feb. 11, 2010) ................................19

*PCT Int'l Inc. v. Holland Elecs. LLC*,
   2014 U.S.Dist.LEXIS 162218 (D.Ariz. Nov. 18, 2014)................................22

*Philips v. Ford Motor Co.*,
   2016 U.S. Dist. LEXIS 176826 (N.D. Cal. Dec. 20, 2016)...........................22

*Pioneer Corp. v. Technicolor, Inc.*
   2018 U.S.Dist.LEXIS 221308 (C.D.Cal. Sep. 12, 2018)..........................2, 23

*Qualcomm Inc. v. Broadcom Corp.*,
   2006 U.S.Dist.LEXIS 111888 (S.D.Cal. Aug. 14, 2006) ................................9

*Rodman v. Safeway Inc.*,
   2014 WL 12787874 (N.D. Cal. Aug. 22, 2014) ............................................22

*RSA Protective Techs., LLC v. Delta Sci. Corp.*,
   2021 U.S.Dist.LEXIS 215969 (C.D.Cal. Nov. 8, 2021)..................................8

*United States v. Global Fishing, Inc. (In re Premises Located at 840 140th Ave. NE,*
   *Bellevue)* 634 F.3d 557 (9th Cir. 2011) ........................................................18

*Williams v. Cty. of San Diego*,
   2019 U.S.Dist.LEXIS 196967 (S.D.Cal. Nov. 13, 2019) ................................3

## Statutes

18 U.S.C. §§ 1831-1837 .................................................................................21

18 U.S.C. § 1839(3)(A)-(B) ..............................................................................9

28 U.S.C. § 1782 ..................................................................................1, 5, 8

28 U.S.C. § 1782(a) ...........................................................................7, 13, 21

Cal. Civ. Code § 3426.1(d) ...............................................................................9

Cal. Evid. Code § 1060 ....................................................................................21

## Rules

Fed. R. Civ. P. 26 .........................................................................................9, 13

Fed. R. Civ. P. 26(c)(7) ..................................................................................21

Fed. R. Civ. P. 26(c)(1)(G) .............................................................................17

Fed. R. Civ. P. 27 ............................................................................................20

Fed. R. Civ. P. 45 ............................................................................................13

Fed. R. Civ. P. 45(c)(3)(B) ............................................................................7, 9

UPC Rule 23 ....................................................................................................20

UPC Rule 24(f) ...........................................................................................4, 11

UPC Rule 24(j) ...........................................................................................4, 11

UPC Rule 27(1)(a) ..........................................................................................11

UPC Rule 103 ..................................................................................................11

UPC Rule 190 ..............................................................................................1, 2

UPC Rule 190(1) .............................................................................................11

UPC Rule 190(3) .............................................................................................11

# **INTRODUCTION**

Under the guise of an *ex parte* application to modify the Protective Order in this proceeding, Netgear, Inc. and Netgear Deutschland GmbH (collectively, "Netgear"), seek to circumvent the requirements of 28 U.S.C. § 1782 ("Section 1782") in order to use confidential license agreements that were produced by Qualcomm Incorporated ("Qualcomm") solely for use in two specific foreign actions in Germany, in an entirely different foreign action before a different foreign court, the Unified Patent Court ("UPC"), that was not the subject of their Section 1782 application.  In so doing, Netgear seeks to bypass Section 1782 and invoke liberal rules applicable to modifying protective orders entered in U.S. litigation for use in other related U.S. litigation. No case supports Netgear's argument that these rules govern over the requirements of Section 1782.

The discovery at issue consists of confidential license rights granted to Qualcomm by Huawei Technologies Co. Ltd. ("Huawei"), the party who is suing Netgear for patent infringement in the German and UPC actions.  Aside from relevancy issues (see more on that below), two of the chief considerations under Section 1782 are (1) whether the information sought is available directly from a party litigant in the foreign proceeding; and (2) whether measures are in place in the foreign tribunal to protect the continued confidentiality of the information.  Both considerations were satisfied in connection with Netgear's 1782 application seeking the discovery in connection with the German actions because discovery is prohibited in Germany and court records are not accessible to the public. Qualcomm was satisfied that, notwithstanding the fact the licensed rights do not relate to the technology that is the subject of the patents at issue (See, Declaration of Fabian Gonell ["Gonell Decl."] ¶ 5; Declaration of David A. Kays ["Kays Decl."] ¶ 5), Netgear had no avenue of obtaining that information and, further, that the confidentiality of the licenses would be protected in the German actions.

The opposite conditions exist in the UPC proceeding, where party discovery is allowed and court records are open to the public.  UPC Rule 190 authorizes Netgear to seek the production of the license agreements directly from Huawei upon making a "reasoned

request" based on "plausible evidence." Invoking this process would allow Huawei to present any opposing arguments, including lack of relevancy, and seek a protective "order that the evidence be disclosed to certain named persons only and be subject to appropriate terms of non-disclosure" pending a determination of the issue.  However, Netgear's *ex parte* request eschews Rule 190 in favor of burdening Qualcomm and the Court, and even goes as far as asserting that the Rule 190 process presents a "needless waste of resources." (MPAs p. 14:14-15) However, Rule 190 provides the *most efficient* and *least wasteful* mechanism to resolve the dispute because it requires efforts and resources to be expended only by the participants in the UPC proceeding and avoids imposing unnecessary burdens on non-party Qualcomm and this Court.

Further, as noted, the Rule 190 procedure provides a mechanism for the UPC to issue a suitable order to protect the confidentiality of the Qualcomm-Huawei license agreements in that proceeding.  Netgear agrees that the "UPC can order such information to be treated as confidential" (MPAs p. 6:13-24) but provides no explanation as to why Netgear has done nothing to secure such an order.  Instead, Netgear recklessly asks this Court to authorize it to "use" and "submit" the confidential license agreements in the UPC without any confidentiality protections in place. (Netgear's *Ex Parte* MPAs to modify protective order ["MPAs"] p. 1:7-9; Dorn PO Decl. ¶ 11).  Indeed, in failing to seek a protective order in the UPC, Netgear is disregarding the terms of the protective order entered by this Court, which affirmatively obligates Netgear to "make all reasonable efforts to ensure that access to such Material is accorded the maximum level of protection available under applicable law." (Protective Order § 23) Section 1782 subpoenas are routinely rejected as "unduly burdensome" where, as here, there are concerns that U.S. confidential information may not be protected or enforced in the foreign proceeding. *Andover Healthcare, Inc. v. 3M Co.*, 2014 U.S.Dist.LEXIS 141605, at *18 (D.Minn. Oct. 6, 2014), aff'd 817 F.3d 621 (8th Cir. 2016); *Baxalta Inc. v. Genentech, Inc.,* 2016 U.S.Dist.LEXIS 195669, at *28-29 (N.D.Cal. Aug. 9, 2016); *Pioneer Corp. v. Technicolor, Inc.* 2018 U.S.Dist.LEXIS 221308, at *32  (C.D.Cal. Sep. 12, 2018).

Netgear's repeated expressions of uncertainty and doubt regarding whether the UPC would grant its request to seek the discovery directly from Huawei or enforce its discovery orders because of that court's newness and lack of precedent (MPAs pp. 6:13-24, 7:1-6, 13:28-14:1, 18:22-26) are unsupported. There is no evidence that the UPC would ignore its own rules and, further, it seems extremely improbable that Huawei, the claimant in the UPC, would defy an order compelling it to produce license agreements that Netgear claims provides it with an absolute defense to Huawei's claims, particularly in light of UPC Rule 190(7), which states that "If a party fails to comply with an order to produce evidence, the Court shall take such failure into account when deciding on the issue in question." But even if these fears had any basis, they favor *denial* of the application because the same concerns could be expressed about the UPC's willingness or ability to enforce confidentiality orders.

Further, it is noteworthy that Netgear has, since filing its *ex parte* application, informed the UPC in its Statement of Defence filed on November 17, 2023, that it intends to seek discovery of the Qualcomm-Huawei license agreements directly from Huawei under Rule 190. (Kays Decl., Ex. E) This new circumstance provides a basis to deny Netgear's *ex parte* application. Qualcomm is not a party to the UPC litigation and should not be unnecessarily burdened by Netgear's discovery request or having to invoke confidentiality protections in the foreign proceeding when these things can be obtained directly from the claimant in the that proceeding. *In re Oasis Focus Fund LP*, 2022 U.S.Dist.LEXIS 225755, at *21 (S.D.Cal. Dec. 14, 2022) ("the key issue [under Section 1782] is whether the material is obtainable through the foreign proceeding"); *In re Digitechnic*, 2007 U.S.Dist.LEXIS 33708, at *10 (W.D.Wash. May 8, 2007) ("there is nevertheless no reason that this Court should overlook Digitechnic's failure to attempt any discovery measures in France in making the discretionary decision now before it"). Under Rule 45, "there is simply no reason to burden nonparties when the documents sought are in possession of the party defendant." *Williams v. Cty. of San Diego*, 2019 U.S.Dist.LEXIS 196967, at *25-26 (S.D.Cal. Nov. 13, 2019), citing *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 577 (N.D.Cal. 2007). Nor should this Court be burdened with this motion when Netgear has sufficient remedies in the UPC.

Netgear's assertion that it needed to modify this Court's 1782 Protective Order before November 17, 2023 so that it could "submit" the Qualcomm-Huawei license agreements with its "Statement of Defence" in the UPC proceeding (MPAs p. 1:4-8; Dorn PO Decl. ¶ 11) was a complete ruse. The UPC rules do not require the "filing" or "submission" of evidentiary materials. Under UPC Rule 24(f), (j), a Statement of Defence is simply a pleading that requires the defendant to identify "the evidence relied on … where available, and an indication of any further evidence that will be offered in support" and "a list of the documents." Netgear could (and did) meet the UPC requirements by identifying the Qualcomm-Huawei license agreements in its Statement of Defence without burdening this Court with its *ex parte* request.

Also disingenuous is Netgear's effort to blame its delay in seeking relief on the supposed late service of the UPC proceeding (MPAs pp. 5, fn. 6; 16:1-3) because Netgear refused a request made by the UPC Judge on July 3, 2023 – the day the action was filed – to accept service electronically. (Kays Decl., Ex. A)  But even after Netgear was finally served through the Hague Convention in early-August, it still had three months to file a Statement of Defence (UPC Rule 23).  Netgear had no excuse in waiting to the last minute to submit its request on an *ex parte* basis.

Section 1782 does not contemplate taking shortcuts or bypassing its provisions, especially where confidential and commercially sensitive information is sought.  Nor are its requirements relaxed once a court has granted a Section 1782 application allowing use of discovery in one foreign tribunal.  There are material differences between foreign courts and jurisdictions regarding their approaches to handling U.S. confidential and commercially sensitive information.  Qualcomm understands how its confidential information will be protected in the German actions.  The absence of a protective order entered by the UPC, where records are publicly accessible, is a valid concern and the burden should be on Netgear to secure confidentiality protections in that foreign court.

Finally, the Court no longer has subject matter jurisdiction as this Section 1782 proceeding has been concluded. "Once the district court has ruled on the parties' [§ 1782]

motion[] . . . there is no further case or controversy before the district court." *CPC Patent Techs. PTY Ltd. v. Apple, Inc.*, 34 F.4th 801, 806 (9th Cir. 2022).  A district court has no jurisdiction to consider a collateral request for permission to use the discovery in an entirely different foreign proceeding that was not identified in the original Section 1782 application. In *In re Kegel,* 67 F.Supp.3d 1054, 1059 (D.N.D. 2014).  Unlike the cases cited in Netgear's application, all of which involved litigation pending in the U.S. and are otherwise distinguishable, *Kegel* is the only case found by Qualcomm that deals with the situation here, i.e., whether a district court, after having granted a Section 1782 application for discovery for use in one foreign tribunal has authority to make a further order allowing the discovery to be used in a different foreign tribunal.  *Kegel* holds that district courts have no such power, and that the applicant must file an application under Section 1782 that satisfies the statute's mandatory and discretionary factors in relation to the different tribunal.

In short, Netgear's *ex parte* application seeking to modify the protective order entered in this action should be denied.

## **BACKGROUND**

### I.    **Netgear's Filing Of This Section 1782 Action Relating To The German Actions**

On June 14, 2023, Netgear instituted this action by filing an *ex parte* application under authority of Section 1782 seeking authorization to obtain discovery from Qualcomm – specifically license agreements between Qualcomm and Huawei – "for use in two foreign litigation proceedings … in the Dusseldorf Regional Court in the Federal Republic of Germany." (Dkt. 1, Application; Dkt. 1-1, Section 1782 MPAs, p. 5:3-6) In its Section 1782 application, Netgear asserted:

(i)  In the German actions, "Huawei contends that certain access points manufactured by Netgear infringe two patents (collectively, the 'Huawei Patents') relating to the Institute of Electrical and Electronic Engineers ("IEEE") 802.11ax wireless local area network ('Wi-Fi 6') standard." (Section 1782 MPAs p. 5:19 - p. 6:2).  In this context, "access points" mean a Netgear product "that creates a wireless local area network," e.g., a Wi-fi router.  (*Id.* p. 5, fn. 2)

(ii) a "significant portion of the Netgear Wi-Fi 6 access points at issue … implement the Wi-Fi 6 standard by incorporating 'Wi-Fi modem chipsets' supplied by Qualcomm" (*Id.*, p. 6:9-10); and therefore,

(iii) a license agreement between Qualcomm and Huawei "regarding the Huawei Patents could allow Netgear to assert a defense of patent exhaustion and potentially, for this reason avoid liability for alleged infringement of the Huawei Patents in the German Proceedings." (Section 1782 MPAs, p. 6:15-17)

Netgear's Section 1782 subpoena was clearly a "fishing expedition."  Netgear learned from SEC filings that Qualcomm had recently entered into agreements with Huawei that included Huawei granting a cross license to Qualcomm for "certain Huawei technology." (Section 1782 MPAs p. 12:3-8) But since the terms of the license agreements are confidential, Netgear had no way of knowing whether the licenses granted by Huawei to Qualcomm related to the Huawei Patents at issue or even more generally to the Wi-Fi 6 Standard. Nevertheless, Netgear speculated in its Section 1782 application that if the cross-license happened to grant Qualcomm rights in the two Huawei patents at issue in the German actions this "could allow Netgear to assert a defense of patent exhaustion and potentially … avoid liability …." (Section 1782 MPAs, p. 6:15-16; see also pp. 6:24-25 ["potentially including the Huawei Patents" and "potentially dispositive"]; 12:9-10 ["potentially"]; 15:8-9 ["potential patent exhaustion"]) Netgear acknowledged that its "potential" license defense turned entirely on whether the Qualcomm-Huawei license agreements granted Qualcomm rights in the Huawei Patents at issue in the German actions. (*Id.* p. 10:7-8 ["Netgear's Defenses Rely on Qualcomm's Rights Regarding the Huawei Patents"])

Netgear contended that its Section 1782 application met all minimal requirements of the statute and that that the Court should exercise its discretion in favor of granting the request because "[t]he German court … cannot compel it or Huawei to produce the discovery sought," "Section 1782 discovery in aid of German proceedings … [is] the most effective and efficient way to obtain relevant evidence" (Section 1782 MPAs, p. 7:14-18) and "[g]iven the German Court's inability to compel production of the requested discovery, Netgear's

'need for § 1782(a) aid' is 'apparent.'" (*Id.* p. 17:1-3) Based on the above contentions, Netgear sought authorization under Section 1782 to serve a subpoena on Qualcomm seeking license agreements between Qualcomm and Huawei for use in the German actions. (Dkt. 1-2, Subpoena, p. 13)

## II.    Qualcomm's Response To Netgear's Section 1782 Application.

After receiving Netgear's application, Qualcomm's counsel reached out to Netgear's counsel to inform Netgear that, contrary to what was suspected or hoped by Netgear, the Huawei licenses to Qualcomm did not relate to Wi-Fi 6 technology.  (Kays Decl. ¶¶ 5, 6) Qualcomm's counsel further informed Netgear's counsel that the terms of the license agreements contained highly confidential and sensitive business information that Qualcomm was required to keep confidential. (*Id.* ¶ 7) Qualcomm's counsel hoped that this information would be accepted and that Netgear would withdraw its application. Netgear, however, refused to do so. (*Id.* ¶ 6)

Although Qualcomm has the right to object to the disclosure of its trade secrets and other confidential business information (FRCP Rule 45(c)(3)(B); 28 U.S.C. § 1782(a)), it is not uncommon for Qualcomm to accommodate limited disclosures to aid the courts and participants in third party litigation provided that adequate confidentiality provisions are implemented and enforceable. Maintaining confidentiality, although always of paramount importance, is less of a concern in U.S. cases given the broad powers conferred upon the courts to implement confidentiality orders, the resources available for courts, and the track record of enforcement in the U.S. (Kays Decl. ¶ 11) Qualcomm's confidentiality concerns are far greater when it is subpoenaed to produce information for use in foreign jurisdictions. Qualcomm approaches each Section 1782 action differently, with the response turning on, *inter alia*, the nature and degree to which confidentiality protections are in place; the availability and assurances that confidentiality measures will and can be enforced; the subpoenaing party's need for the information and its relevance to the proceeding.  (*Id.*)

In this case, Qualcomm was aware from its own experience that Netgear had no ability in the German actions to obtain discovery directly from Huawei, that records in German

proceedings are not accessible to the public and thus, to the extent a confidential document was filed in the German proceedings, it would retain its confidentiality. (Kays Decl. ¶ 10) Qualcomm chose not to burden the Court by opposing the application. Instead, after filing a response to the application stating that it did not oppose the application while reserving certain rights, it negotiated with Netgear the terms of a stipulated Protective Order to protect the confidentiality of the Qualcomm-Huawei license agreements (*Id*. ¶¶ 12, 13), which was entered by this Court on October 17, 2023. (Dkt. 20)  On October 24, 2023, Qualcomm produced redacted copies of the confidential license agreements designated "Outside Attorneys' Only" pursuant to the terms of the Protective Order. (*Id.* ¶ 13) Netgear has not raised any issue or dispute regarding the production made in this case. (*Id.*)

Consistent with the object of Netgear's Section 1782 application, the Protective Order limits the use of the confidential Qualcomm-Huawei license agreements to only the German actions. (Dkt. 20, Protective Order §§ 3, 13)

Netgear's *ex parte* application labels and repeatedly characterizes the Protective Order as a "blanket protective order." (MPAs, caption, footer, and pp. 1, 7, 8, 11, 12) This is a mischaracterization.  A blanket protective order is one that "cover[s] all documents and testimony produced in the lawsuit … even if that discovery would have been required to be disclosed in the absence of a protective order." *Arcesium LLC v. Advent Software, Inc.*, 2022 U.S.Dist.LEXIS 37781, at *8-9 (S.D.N.Y. Mar. 3, 2022)  A protective order is not "blanket" if it is "specifically focused on protecting certain documents or certain deponents for a particular reason." *Id*.  In addition, a protective order that requires the producing party to exercise good faith in designating materials as confidential and permits the opposing party to challenge the designation is not considered a blanket protective order. *Id.* at *10.  Similarly, a protective order that imposes limits on the information that may be designated confidential is not a blanket protective order.  *RSA Protective Techs., LLC v. Delta Sci. Corp.,* 2021 U.S.Dist.LEXIS 215969, at *8, fn. 2 (C.D.Cal. Nov. 8, 2021)

Here, the sole object of Netgear's Section 1782 application was to seek one category of documents: specific patent license agreements between Huawei and Qualcomm, which are

commonly viewed in this district, and beyond, to be confidential and entitled to protection under a protective order. *Qualcomm Inc. v. Broadcom Corp.*, 2006 U.S.Dist.LEXIS 111888, at *37 (S.D.Cal. Aug. 14, 2006); *Dataquill Ltd. v. High Tech Computer Corp.*, 2011 U.S.Dist.LEXIS 159980, at *5 (S.D.Cal. Sep. 1, 2011). Before the Protective Order was negotiated, Qualcomm informed Netgear that the license agreements were held strictly confidential and contained commercially sensitive information. The only documents that were going to be produced and designated confidential under the Protective Order were the confidential license agreements. Further, the Protective Order permits Qualcomm to designate as confidential only those documents that Qualcomm believes, in good faith, qualifies for protection under FRCP Rule 26. (Protective Order §§ 2, 4) The Protective Order permits Netgear to challenge the confidentiality designation (*Id*. § 15), which Netgear has never done. The Protective Order is not a "blanket" protective order.

## III.    The Qualcomm-Huawei License Agreements

### A.    Confidentiality

The Qualcomm-Huawei license agreements that were produced in response to Netgear's subpoena contain confidentiality provisions that prohibit the disclosure of their terms and obligate Qualcomm and Huawei to take steps to prevent unnecessary disclosure including through securing a protective order. (Kays Decl. ¶ 7) More broadly, Qualcomm keeps the terms of all of its license agreements strictly confidential because the detailed terms are specifically tailored to meet the relationship needs of Qualcomm and the licensee and if disclosed, other companies could use the information as leverage to command more favorable terms during their negotiations with Qualcomm or the licensee. (Gonell Decl. ¶ 9) Qualcomm's license agreements are subject to strict confidentiality protocols and are not shared outside of Qualcomm except under strict non-disclosure or confidentiality agreements. (Id. ¶ 8) Thus, the financial and business information contained in the license agreements qualify as trade secrets under both California and federal law. Cal. Civ. Code § 3426.1(d); 18 U.S.C. § 1839(3)(A)-(B), and are entitled to protection against unwarranted disclosure under FRCP Rule 45(c)(3)(B).

### B.    Lack of Relevancy To The Huawei Patents

Netgear's *ex parte* application to modify the Protective Order asserts that of the three confidential license agreements produced by Qualcomm, the relevant license agreement is the "2020 License Agreement." (MPAs p. 4:16-17) Netgear contends, without reference to any of its terms, that "[t]his License Agreement proves that Huawei granted Qualcomm a license to incorporate Huawei's "patented technology" into the Qualcomm chipsets that Qualcomm sells for incorporation into the access points that are accused in the German (and UPC) Proceedings." (*Id.* p. 4:18 – p. 5:2, citing Dorn PO Declaration at ¶ 8 which asserts the same conclusion).  This argument is deceptive.  Although it may be true that the 2020 License Agreement licenses Qualcomm to use certain of Huawei's patented technology, as Qualcomm explained to Netgear from the outset, it does <u>not</u> license any rights in the Wi-Fi 6 technology at issue in the foreign actions. (Gonell Decl. ¶ 5; Kays Decl. ¶¶ 5, 6)

## IV.    The UPC Proceeding

On July 3, 2023, Huawei filed an action against Netgear in the UPC alleging infringement of a different European Patent relating to Wi-Fi 6 than the two patents at issue in the German actions.  (Kays Decl. Ex. E) On that same day, the Presiding Judge in the UPC proceeding contacted Netgear's in-house counsel by email to notify her of the action and ask whether Netgear would accept service of the complaint via email.  (*Id.*)  Netgear declined the UPC judge's request, insisting that the UPC effect service through the Hague Convention, which did not occur until August, 2023.  (*Id.*)

The UPC is a brand-new court established effective June 1, 2023, by agreement of seventeen Member States of the European Union to decide claims for infringement and validity of Unitary Patents and European Patents. (Kays Decl. ¶ 18, Ex. B, European Union web page) Because the UPC is so new, very little is known about it other than the information published on its website.  Although the UPC has reasonably detailed Rules of Procedure, in the five months of its existence it has yet to develop much in the way of decisional law interpreting or applying its own rules, let alone deciding any actual patent infringement cases. It is truly a "new frontier."

According to its organization agreement, the UPC court is comprised of a Court of First Instance, a Court of Appeal and a Registry. (Kays Decl. ¶ 19, Ex. C, Agreement on a Unified Patent Court, Art. 6 § 1) The Court of First Instance is headquartered in Paris and has divisions in London and Munich. (*Id.* Art. 7, § 2) The Registry, located in Luxemborg, is created to "keep records of all cases before the Court." (*Id.* Art. 10, §§ 1, 3) Except as provided in the organizing agreement or Rules of Procedure, "the register kept by the Registry shall be public." (*Id.* Art. 10, § 1)

According to the Rules of Procedure, UPC proceedings consist of five stages (1) a written procedure that involves identifying claims and defenses; (2) an interim procedure that involves case management, scheduling and discovery matters; (3) an oral procedure, which constitutes the hearing for a decision on the merits; (4) a procedure for the award of damages; and (5) a procedure for costs. (Kays Decl., Ex. D, Rule 10(a)-(e)) During the written procedure, a defendant has three months after being served with the complaint to lodge a "Statement of defence." (Rule 23) The Statement of defence shall contain general information about the parties and anticipated defenses, including "the evidence relied on … where available, and an indication of any further evidence [that] will be offered in support" and "a list of the documents … referred to in the Statement of defence …." (Rule 24 (f), (j)) The Statement of defence is required to be lodged with and reviewed by the publicly accessible Registry. (Rule 27(1)(a))

During the interim procedure, the judge may make various orders related to case management and discovery of information, including ordering the parties to produce evidence and lodge specific documents. (Rule 103) During this stage, a party may seek an order for the production documents or other evidence "in the control of the other party" upon a "reasoned request … specifying such evidence." (Rule 190(1)) A party opposing the request is entitled to "an opportunity to be heard" and may seek an appropriate order to protect confidentiality including an order that the "evidence be disclosed to certain named persons only and subject to appropriate terms of non-disclosure." (Rule 190(1), (3))

# ARGUMENT

## I.    Overview

Netgear's *ex parte* application seeking to modify the Protective Order to authorize the 1782 discovery obtained solely for use in the German actions to be used in the UPC, should be denied for three broad reasons.

First, this Court no longer has jurisdiction to grant the relief requested through a motion to amend a protective order.  Instead, Netgear must proceed under Section 1782 and must offer proof that satisfies all the mandatory and discretionary factors to be evaluated under that statute.  The Court should reject Netgear's invitation to apply the "liberal" rules that relate to modifying U.S. protective orders to allow discovery in other U.S. cases to authorize Section 1782 discovery to be used in a proceeding that was not identified (or evaluated) in Netgear's original Section 1782 application. None of the cases cited by Netgear are applicable to the situation here.

Second, to the extent this Court construes Netgear's *ex parte* application to modify the Protective Order as one brought under Section 1782, the application should be denied because the mandatory "for use" requirement is not satisfied, and because the request seeks privileged material that is beyond the reach of Section 1782.  The Court should also deny the application under Section 1782's discretionary factors because the discovery is available directly from Huawei in the UPC proceeding, the license agreements are not relevant and the request imposes an undue burden on Qualcomm because confidentiality protections are not in place in the UPC and the onus to seek and obtain such protections should be on the party participants, Huawei and Netgear, and not Qualcomm, which is not party.

Third, even if the Court were to apply here the rules applicable to modifying protective orders to allow use in collateral U.S. litigation, Netgear's request should be denied because Netgear cannot show prejudice flowing from the terms of the Protective Order as written or that the license agreements are relevant to the patents at issue in the UPC proceeding.

Based on each of the foregoing grounds, Netgear's *ex parte* application should be denied.

## II.     The Court No Longer Has Subject Matter Jurisdiction To Modify The Protective Order To Expand Its Scope To Authorize Use of Qualcomm Discovery In The UPC Proceeding.

The exclusive procedure by which a non-governmental entity[1] may invoke the power of a district court to order the production of documents or other discovery located in the U.S. for use in a foreign proceeding is to file an "application" meeting the requirements of Section 1782. 28 U.S.C. § 1782(a). A Section 1782 application must satisfy three threshold or "mandatory" requirements: (1) the person from whom the discovery is sought must reside or be found in the district where the application is made; (2) the discovery is "for use in a proceeding in a foreign or international tribunal" and (3) the application is made by an "interested person." *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019)

But even if these mandatory requirements are met, "the district court still retains substantial discretion to permit or deny the requested discovery." *Khrapunov*, at 926, citing *Intel Corp. v. Advanced Micro Devices, Inc.* (2004) 542 U.S. 241, 264 ("a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so").  In exercising its discretion, a district court "must consider: (1) whether "the[] evidence . . . may be unobtainable absent § 1782(a) aid"; (2) "the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the petitioners are "attempt[ing] to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery is "unduly intrusive or burdensome." *In re Quadre Invs., L.P.*, 2023 U.S.Dist.LEXIS 194178, at *8 (S.D.Cal. Oct. 27, 2023), citing *Intel*, 542 U.S. at 264-65.  And because "[a] § 1782 application is also subject to Fed. R. Civ. P. 26 and 45, the applicant "must show that the discovery is relevant to the claims and defenses in the foreign tribunal." *In re Quadre Invs., L.P.*, at *8; *In re Oasis Focus Fund LP*, 2022 U.S.Dist.LEXIS 225755, at *33-34 (S.D.Cal. Dec. 14, 2022)

While Netgear's *ex parte* application to modify the Protective Order seeks discovery from Qualcomm for use in a foreign tribunal – the UPC – it is not brought under Section

---

[1] A district court's authority to order foreign discovery may also be invoked upon receipt of "letter rogatory issued, or request made, by a foreign or international tribunal." 28 U.S.C. § 1782(a).

1782.  Instead, it seeks such authorization under the general rules regarding a district court's "inherent authority" to modify its protective orders and Ninth Circuit precedent that purportedly "favors" modification to allow for discovery in one U.S. action to be used in other related U.S. actions. (MPAs, pp. 9-14) Those standards do not apply here. No case supports Netgear's argument that authorization for obtaining foreign discovery can be granted under the rules applicable to modifying protective orders, while bypassing Section 1782's requirements.

Netgear's Section 1782 application that gave rise to this case sought authorization to obtain discovery from Qualcomm "for use" only in the German actions. (Application, Dkt. 1-1, Section 1782 MPAs, p. 5:3-6) Netgear's Section 1782 application neither identified nor sought authorization to seek discovery for use in the UPC proceeding. The Court limited Netgear's access to confidential materials "for use in the German actions" (Protective Order §§ 13, 3) Qualcomm has complied with the subpoena and Protective Order by producing responsive documents for use by Netgear in the German actions. There is no further controversy between the parties relating to Netgear's Section 1782 application and the case tendered by that application is over.

In *In re Kegel,* 67 F.Supp.3d 1054, a section 1782 application was sought and granted against a U.S. citizen to obtain discovery for use in a proceeding in Quebec, Canada.  The applicant then filed a motion with the same district court for a "supplemental order" to allow use of the same discovery in a different Canadian action in Ontario.  The district court denied the motion, holding that "if Kegel [the applicant] wants this court's assistance, he must follow the prerequisites of § 1782(a), which is the only authority the court has to provide it." *Id.* at 1060.

In so ruling, the district court rejected the applicant's contention that once discovery is obtained for use in one foreign action, there is no longer any impediment to its use in other foreign proceedings.  The district court ruled the mandatory "for use" requirement of Section 1782 "suggest[s] that any order issued by the federal court would be limited to the specific proceeding or proceedings for which the evidence is sought when the request for the §

1782(a) order is made." *Id.* at 1057; *See In re Quadre Invs., L.P.,* 2023 U.S.Dist.LEXIS 194178, at *8-9 ("To satisfy the [mandatory] 'for use' requirement [under 1782] applicants must show that the material requested is tethered to a specific foreign proceeding and is relevant" to that proceeding).

The *Kegel* district court further noted that many of the discretionary factors that must be evaluated under Section 1782 are "proceeding specific," "including the opportunity to assert any legally applicable privileges, which conceivably could be different for different proceedings." *Kegel*, 67 F.Supp.3d at 1057.

The *Kegel* court also ruled that it no longer had subject matter jurisdiction given that the objects of the action were satisfied when the subpoenaed party provided the discovery for use in the Quebec proceeding as ordered and to the satisfaction of the applicant. *Id.* at 1059. The court held that "[t]he authority granted to the court by § 1782(a) is limited to the court issuing an order providing assistance for the gathering of the evidence that is the subject of the order and, perhaps, later enforcing any conditions imposed by the court in its order" and that "the court's § 1782(a) order was satisfied when … [the subpoenaed party] provided the deposition testimony and documents that were the subject of the order … There is nothing in § 1782(a) which suggests that, once an order issued pursuant to the section has been satisfied, the court would have continuing jurisdiction except, perhaps, to enforce any conditions or limitations imposed in its order." *Id.*

Netgear's application makes the same assertions that were rejected in *Kegel*, i.e., (1) that it may seek authorization to use Section 1782 discovery that is tethered to one foreign action in another foreign action without complying with the procedural or substantive requirements of Section 1782 (MPAs, pp. 9-15) and (2) this Court has jurisdiction because it retained "authority to adjudicate disputes regarding the [protective order]" and has "inherent authority'" to modify a protective order "even if the underlying suit is dismissed." (*Id.* p. 10, fn. 10)

Neither assertion has merit.

### A.    Netgear Is Specifically Prohibited From Using The Confidential License Agreements Outside of the German Actions.

Netgear asserts *Bouvier v. Adelson* (*In re Accent Delight Int'l Ltd.*), 869 F.3d 121 (2d Cir. 2017) and *Glock v. Glock, Inc.*, 797 F.3d 1002 (11th Cir. 2015) support a proposition that "a Section 1782 applicant should be allowed to use discovery material in non-US proceedings beyond those named in an original 1782 application unless the opposing party can show bad faith or other chicanery." (Moving MPAs, p. 15) This is a blatant misstatement of those cases.

In *Bouvier*, a Section 1782 application was filed seeking authorization for discovery for use in proceedings in Monaco, France and Singapore. *Bouvier*, 869 F.3d at 126.  The 1782 respondent was an U.S. auctioneer which had dealings with one Bouvier, who was accused by the petitioners in three foreign actions of committing fraud with respect to various art deals.

The district court granted the application and issued an order that, *inter alia*, allowed use of the discovery in all three of the actions that were identified in the application. *Id.* at 127.  Bouvier, an intervenor in the Section 1782 action, filed an appeal. On appeal, the Second Circuit rejected his argument that the Section 1782 order should be reversed because the district court considered the Section 1782 factors only in relation to the Monaco action. The court reasoned that Section 1782 grants district courts broad authority to prescribe the practice and procedure, that to the extent that the order does not prescribe otherwise, the Federal Rules of Civil Procedure apply and that those rules "do not regulate what litigants may do with discovery after it lawfully has been obtained." *Id.* at 135.  *Bouvier* stated its holding as follows:

> "we hold that Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise." *Id.*

There is no indication in the opinion the Section 1782 discovery included trade secrets or other highly confidential information and no discussion regarding confidentiality concerns in the foreign actions.

*Bouvier* is obviously distinguishable from our case because Netgear's Section 1782 application did <u>not</u> seek authorization to use the discovery in the UPC and this Court's Protective Order specifically prohibits use of the discovery in any proceeding other than the German actions. In *Mangouras v. Boggs,* 980 F.3d 88 (2d Cir. 2020) the same circuit court distinguished *Bouvier* on this very ground as "the French proceeding was included in the original application and the district court had affirmatively granted the applicant the right to use the materials in that proceeding." *Id.* at 97.

Further, *Bouvier* did not involve considerations of protecting highly confidential and trade secret information of the type at issue here.  FRCP 26(c)(1)(G) specifically authorizes district courts to issue orders "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or revealed only in a specified way."  *Bouvier* did not endorse the broad assertion of Netgear that confidential information produced under a confidentiality protective order specifically for one foreign action could be used in a different foreign action where confidentiality may not be protected. "It is axiomatic that cases are not authority for issues not considered." *Khrapunov,* 931 F.3d at 933.

*Glock,* 797 F.3d 1002, involved a Section 1782 application by a wife against her husband for discovery to be used in a German divorce and related proceedings. The protective order provided that the materials could be used "in a proceeding to which Applicant is a party" and provided that if the applicant wanted to use the information outside the German proceedings "she shall first request and obtain leave of the Court to do so.…" *Id.* at 1010-1011.  The wife filed a subsequent RICO case in the United States and sought leave under the protective order to use the discovery in the U.S. litigation.  The district court granted the request, which was affirmed by the Eleventh Circuit, holding there is nothing in Section 1782 that prevents the discovery produced from later being used in U.S. litigation (*Id.* at 1009-1010) and that the protective order in that case explicitly permitted the wife "'to use' the § 1782 evidence in any litigation anywhere in the world, in which she is involved, provided that she first obtains leave of court to do so." *Id.* at 1011.

*Glock* is distinguishable because Netgear's *ex parte* application does not seek to use

the discovery in U.S. litigation (where it can be protected) but in a different foreign tribunal not identified in the Section 1782 application, in which no protective measures are currently in place and which, according to Netgear, has no ability to enforce its own confidentiality orders. Moreover, the Protective Order explicitly limits use of the discovery only to the German actions.

### B. The Section 1782 Proceeding Is Over

Netgear's assertion that district courts "retain inherent authority to grant a motion to modify a protective order" including after dismissal (Moving MPAs p. 10, fn. 10) is an overstatement and inapplicable to Section 1782.  Netgear cites *CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 201 (N.D. Cal. 2009) and *Beckman Indus. v. Int'l Ins. Co.,* 966 F.2d 470 (9th Cir. 1992), but neither case involved Section 1782 or actions that were closed. In *CBS*, the motion to modify the protective order was made in a pending federal action to allow use of the materials in a parallel U.S. state court action. *CBS Interactive, Inc.*, 257 F.R.D. at 205.)  In *Beckman*, after upholding an order that permitted a third party to intervene in an action to seek access to materials, the court held that a district court could properly modify a protective order to allow the intervenors access to discovery for use in parallel U.S. state court proceedings.  *Id.*, 966 F.2d at 476.

Actions under Section 1782 are different. "Once the district court has ruled on the parties' [§ 1782] motion[] . . . there is no further case or controversy before the district court." *CPC Patent Techs. PTY Ltd. v. Apple, Inc.*, 34 F.4th 801, 806 (9th Cir. 2022); *United States v. Global Fishing, Inc. (In re Premises Located at 840 140th Ave. NE, Bellevue)* 634 F.3d 557, 566 (9th Cir. 2011) (same). Section 1782(a) jurisdiction is terminated once the subpoenaed party complies with the discovery order. *In re Kegel,* 67 F.Supp.3d at 1059.

## III. The Court is Required To Consider the Section 1782 Factors

### A. Section 1782 Provides The Controlling Law

Setting aside the jurisdictional issue raised above, Netgear's assertion that its motion is governed by the body of law pertaining to motions to modify U.S. protective orders, and not Section 1782, is without merit. The primary cases cited by Netgear, *Foltz v. State Farm*

*Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003) and *Beckman Indus. v. Int'l Ins. Co.,* 966 F.2d 470 (MPAs, p. 10:1 – p. 11:11) do not involve Section 1782 or discovery sought for use in foreign proceedings. Both cases involved modifying U.S. protective orders to allow use in related U.S. proceedings, which generally is favored because it "advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Foltz*, 331 F.3d at 1131, citing *Beckman*, 966 F.2d at 475. However, the policy favoring "judicial economy" and avoiding "duplicative discovery" in parallel U.S. proceedings does not extend to foreign jurisdictions and are not identified as pertinent factors under Section 1782. *Intel,* 542 U.S. at 264-265.

*Oracle Corp. v. SAP AG*, 2010 U.S.Dist.LEXIS 20811 (N.D.Cal. Feb. 11, 2010), also relied on by Netgear, involved U.S. litigation between two U.S. companies in which a protective order was granted allowing discovery to be used only in connection with that U.S. proceeding.  Oracle filed a motion to amend the protective order to allow the material to be disclosed to foreign counsel "to allow Oracle to reach an informed decision whether to initiate foreign proceedings" against SAP. *Id.* at *9. The magistrate judge acknowledged that "[u]nlike the situation here … *Foltz* involved collateral litigation in the United States rather than potential collateral litigation abroad. The parties dispute whether the foreign location of the potential collateral litigation makes a difference to the analysis." *Id.* at *6-7.  The court stated it "does not agree with Defendants that § 1782 governs this motion. The statute applies to court orders for new discovery to be conducted exclusively for use in a foreign proceeding separate from any litigation pending before the United States court; it does not govern the discretion of a court to modify a protective order to allow access to information already obtained in the regular course of discovery in a case pending before it." *Id.* at *8, citing *In re Jenoptik AG*, 109 F.3d 721, 723 (Fed. Cir. 1997).

*Oracle* is distinguishable on three major grounds.  First, it involved a protective order issued in connection with discovery in U.S. litigation and not a "foreign proceeding separate from any litigation pending before the United States court." *Id.* at * 8.  As the *Oracle* court stated, Section 1782 <u>does</u> <u>apply</u> "to court orders for new discovery to be conducted

exclusively for use in a foreign proceeding separate from any litigation pending before the United States court." *Id.*   Here, of course, the Protective Order covers only discovery for use in a foreign proceeding and Netgear seeks an order for discovery to be conducted exclusively for use in another foreign proceeding, the UPC, and without any connection to U.S. litigation. Thus, even under *Oracle*, Section 1782 applies.

Second, the modification sought in *Oracle* was simply to allow foreign counsel to review the material so that counsel could advise whether grounds existed to file a foreign proceeding. The *Oracle* court noted that Section 1782 would become "worthy of consideration if and when European proceedings commence." *Id.* at *9.  Here, the Protective Order already permits Netgear's outside counsel to review the license agreements and that counsel, Stephan Dorn, is the same in both the German and UPC proceedings. (Dorn PO Decl. ¶ 2) Netgear and Attorney Dorn state that they intend to "submit" the confidential 2020 License Agreement to the UPC when they file Netgear's Statement of defence.  (Dorn PO Decl. ¶ 11; MPAs, p. 1:4-8).  But as noted, under UPC Rules, a Statement of defence is lodged with and reviewed by unknown persons in the Registry (UPC Rules 23 and 27), and potentially others because the Registry records are open to the public. (Agreement on a Unified Patent Court, Art. 10, § 1) Since Netgear intends to "submit" confidential materials in the UPC, Section 1782 is at least "worthy of consideration" under *Oracle*.

Third, the *Oracle* court's ruling that Section 1782 does not govern the modification of a protective order if it is issued in connection with discovery in U.S. litigation is questionable because the case it relied upon, *Jenoptik*,[2] was abrogated by the Federal Circuit that decided it.  *Jenoptik* ruled, like *Oracle*, "Case law interpreting the requirements of section 1782 is not relevant to a determination whether a protective order may be modified to permit the release of deposition testimony, already discovered, to another court." *Id.*, 109 F.3d at 723. However, in *In re POSCO*, 794 F.3d 1372, the same Federal Circuit questioned *Jenoptik* because it was "issued before *Intel*, which clarified the broad scope of § 1782 and the considerations

---

[2] *Infineon Techs. AG v. Green Power Techs. Ltd.,* 247 F.R.D. 1, 4 (D.D.C. 2005), also cited by Netgear, also specifically relies on *Jenoptik*.  However, *Infineon* went on to apply *Intel*'s Section 1782 factors. *Id.* at * 4-5.

underlying the statute" and is "not controlling here." *Id.* at 1376, fn. 1. *POSCO* went on to hold that "the considerations articulated under § 1782 and Intel are relevant to that issue and must be considered" in determining whether to modify a protective order governing discovery in U.S. litigation to permit use in a foreign proceeding. *Id.*, 794 F.3d at 1376-1377.

### B.    The Section 1782 Factors Militate Against Granting The Application.

The factors that must be evaluated under Section 1782 favor denial of Netgear's *ex parte* application.

#### 1.    The Mandatory Factors Are Not Satisfied

##### a.    "For Use" Requirement

Netgear has not established that the license agreements are "for use" in the UPC tribunal. Section 1782 requires a showing that "the material requested is tethered to a specific foreign proceeding and is relevant [to that proceeding]." *In re Quadre Invs., L.P.*, 2023 U.S.Dist.LEXIS 194178, at *8-9; *Application Pursuant 28 U.S.C. § 1782 of Japan Display,* 2021 U.S.Dist.LEXIS 243636, at *20; *In re Schlich*, 893 F.3d 40, 52 (1st Cir. 2018) ("for use" factor "incorporates a relevance requirement"); see Netgear's MPAs  p. 17:4-6 ("To satisfy the "for use" prong, the evidence sought need only be relevant to the foreign proceeding.")   Netgear has not established relevance because it has not shown, and cannot possibly show, that the Qualcomm-Huawei licenses grant Netgear any rights in Wi-Fi 6 technology or the Huawei patents that are at issue in the UPC.   Therefore, no showing has been made that the license agreements are relevant to or "for use" in the UPC.

##### b.    Trade Secrets Are Not Discoverable Under Section 1782

Section 1782(a) states that "[a] person may not be compelled … to produce a document or other thing in violation of any legally applicable privilege." "[T]he owner of a trade secret has a privilege to refuse to disclose the secret, and to prevent another from disclosing it, if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice." Cal. Evid. Code § 1060; Fed. R. Civ. P. 45(c)(3)(B)(i); Fed. R. Civ. P. 26(c)(7); see, also 18 USCS §§ 1831-1837.  In *Intel*, the Supreme Court ruled that both "§ 1782(a)'s preservation of legally applicable privileges … and the controls on discovery available to the

District Court," including Rule 26(c)'s protections for trade secret or other confidential research, development, or commercial information, are available "to prevent discovery of … business secrets and other confidential information." *Intel*, 542 U.S. at 266.

Qualcomm has established that its license agreements qualify as trade secrets (Gonell Decl. ¶¶ 8, 9) Cases routinely grant trade secret protection to commercial license agreements. *DiscoverOrg Data, LLC v. Bitnine Global, Inc.*, 2020 U.S.Dist.LEXIS 208506, at *6-7 (N.D.Cal. Nov. 6, 2020); *In re Electronic Arts, Inc.*, 298 Fed. Appx. 568, 569 (9th Cir. 2008); *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1224 (Fed. Cir. 2013); *Philips v. Ford Motor Co.*, 2016 U.S. Dist. LEXIS 176826 (N.D. Cal. Dec. 20, 2016); *Rodman v. Safeway Inc.*, 2014 WL 12787874, at *2 (N.D. Cal. Aug. 22, 2014); *MMI, Inc. v. Baja, Inc.*, 743 F.Supp.2d 1101, 1105-1106 (D.Ariz. 2010); *PCT Int'l Inc. v. Holland Elecs. LLC*, 2014 U.S.Dist.LEXIS 162218, at *23 (D.Ariz. Nov. 18, 2014)

## 2.    Section 1782's Discretionary Factors

### a.    Discovery Is Available From Huawei In The UPC.

"The first factor considers whether the person from whom discovery is sought is a party to the foreign proceeding, …[but] 'the key issue is whether the material is obtainable through the foreign proceeding.'" *In re Oasis Focus Fund LP,* 2022 U.S.Dist.LEXIS 225755, at *19. A district court may deny a Section 1782 request where the materials may be obtained directly from a party through discovery available in the foreign proceeding. *Id.*; *In re Rigby* 2013 U.S.Dist.LEXIS 23251, at *5 (S.D.Cal. Feb. 19, 2013) ("the Court is permitted, in deciding how to exercise its discretion, to consider whether the applicant has availed itself of discovery procedures in the foreign forum"); *In re Application of LG Elecs. Deutschland GMBH*, 2012 U.S.Dist.LEXIS 70570, at *5 (S.D.Cal. May 21, 2012) (same); *In re Application of Babcock Borsig AG,* 583 F.Supp.2d 233, 241 (D.Mass. 2008); *In re Digitechnic*, 2007 U.S.Dist.LEXIS 33708, at *10 (W.D.Wash. May 8, 2007).  Netgear's unsubstantiated assertion that "there is doubt about whether the UPC—a newly constituted tribunal whose jurisdiction extends only to EU member states—could enforce a document production order against Huawei" is not only speculative, but not a basis to ignore this factor.

1   *In re Digitechnic*, 2007 U.S.Dist.LEXIS 33708, at \*10 ("Digitechnic's assertion that it has
2   not attempted to use any French procedures due to perceived futility is unavailing.")

3       Netgear's contention that "even if Netgear could obtain the 2020 License Agreement
4   from Huawei in the UPC Proceeding, that would not weigh against modification" (MPAs, p.
5   14:5-7) is without merit.  The two cases cited, *Olympic Refining Co. v. Carter* (9th Cir. 1964)
6   332 F.2d 260, 266 and *Kraszewski v. State Farm Gen. Ins. Co.*, 139 F.R.D. 156, 157
7   (N.D.Cal. 1991) did not involve Section 1782.

8                     **b.    Undue Burden**

9       Even short of trade secret protection, confidential and commercially sensitive business
10  information is protected against unwarranted disclosure under Section 1782 unless the
11  proponent establishes that its confidentiality will be maintained in the foreign proceeding.
12  *Andover Healthcare, Inc. v. 3M Co.*, 2014 U.S.Dist.LEXIS 141605, at \*18 (finding Section
13  1782 request unduly burdensome "in light of the highly sensitive nature of the requested
14  discovery, and the lack of certainty that its confidentiality can be maintained"); *Baxalta Inc.*
15  *v. Genentech, Inc.*, 2016 U.S.Dist.LEXIS 195669, at \*28-29 (rejecting Section 1782
16  subpoena for confidential licensing agreements where the applicant had "not articulated any
17  relevance to the Japanese action" and made no showing that the Japanese court would
18  "sufficiently protect Genentech's confidential information in that forum if it were disclosed
19  either inadvertently or intentionally"); *Pioneer Corp. v. Technicolor, Inc.* 2018
20  U.S.Dist.LEXIS 221308, at \*32 (finding undue burden where Section 1782 subpoena sought
21  the production of business records that contained highly confidential information, and that
22  there was no mechanism in place that would protect such information).

23      The Protective Order obligates Netgear, before it files or submits Qualcomm
24  confidential materials to a court, to "make all reasonable efforts to ensure that access to such
25  Material is accorded the maximum level of protection available under applicable law."
26  (Protective Order § 23) However, Netgear, who wishes to submit the license agreements to
27  the UPC, has taken no steps to seek protection of the license agreements.  Without such
28  protections, Netgear's application seeks to jeopardize the confidentiality of Qualcomm

confidential information or require Qualcomm to incur the trouble and expense to go to the UPC and request confidentiality orders despite the fact it is not a party to that proceeding. That is unduly burdensome.

Netgear's contention that its request "impose zero burden on Qualcomm" because it "would have to do nothing additional or different" (MPAs p. 19:23-24) is absurd.  Subjecting Qualcomm to the additional risk of disclosure of its secrets by virtue of Netgear's use or submission of them in the UPC is unduly burdensome, as is requiring Qualcomm to seek confidentiality protections in the UPC when it is not a party to that proceeding.

## IV.    Even Under The Standards for Modifying Protective Orders, The Application Should Be Denied.

Even if the Court accepts Netgear's invitation to bypass Section 1782, Netgear's application should denied under the standards applicable to modifying a U.S. protective order. A party seeking to modify a protective order must show good cause exists, which requires a showing that specific prejudice or harm will result if the motion is not granted. *Brown Bag Software v. Symantec Corp.* (9th Cir. 1992) 960 F.2d 1465, 1472; *CytoSport, Inc. v. Vital Pharms., Inc.,* 2010 U.S.Dist.LEXIS 45602, at *7 (E.D.Cal. May 10, 2010); *Intel Corp. v. VIA Techs., Inc.* 198 F.R.D. 525, 528 (N.D.Cal. 2000); *CBS Interactive, Inc. v. Etilize, Inc.,* 257 F.R.D. at 201.

 Netgear has not satisfied this showing because, unlike in the German actions, Netgear not only has the ability to obtain the discovery directly from Huawei in the UPC without burdening Qualcomm or this Court with a modification to the protective order, but it has also actually taken steps to do so. (Kays Decl. ¶ 21, Ex. E)  In *Brown Bag Software*, 960 F.2d 1465, the Ninth Circuit affirmed a denial of a request to modify a protective order to allow in house counsel to review confidential information because the protective order contained an alternative procedure for counsel to be informed of the information and counsel had not availed itself of that procedure. *Id.* at 1472.

In addition, in evaluating a motion to modify a protective order "[t]he risk of disclosure of confidential information to competitors must be weighed against the risk of

actual prejudice that protection of this information will impair the prosecution or defense of the parties' claims. A showing that the protective order increases the difficulty of managing litigation, without more, does not constitute actual prejudice." *Mad Catz Interactive, Inc. v. Razor USA, Ltd.,* 2014 U.S.Dist.LEXIS 115896, at *15-16   (S.D.Cal. Aug. 19, 2014) Netgear's intended use of Qualcomm confidential information in the UPC, whose records are open to the public and where no protective orders are currently in place, imposes too much of risk on Qualcomm. Pursuant to the process it has already started, Netgear can seek the information by order of the UPC and in so doing, can secure from the UPC suitable confidentiality protections that can be evaluated by Qualcomm, and this Court if necessary.

Further, Netgear has not "demonstrate[d] the relevance of the protected discovery to the collateral UPC proceedings and its general discoverability therein." *Foltz,* 331 F.3d at 1132.  The license agreements grant no rights to Netgear in the Huawei patents at issue in the UPC proceeding and therefore they are completely irrelevant to that proceeding.

## CONCLUSION

For the reasons stated above, Qualcomm requests that Netgear's *ex parte* application should be denied.

Dated: November 22, 2023

Respectfully submitted,
MORGAN FRANICH FREDKIN
SIAMAS & KAYS LLP

By:   */s/ David A. Kays*
DAVID A. KAYS, ESQ.
Attorneys for Defendant
Qualcomm Technologies, Inc.