DAVID KAYS, ESQ. (SBN 120798)
*dkays@mffmlaw.com*
WILLIAM SIAMAS (SBN 133111)
*wsiamas@mffmlaw.com*
MORGAN FRANICH FREDKIN SIAMAS & KAYS LLP
333 W. San Carlos Street, Suite 1050
San Jose, California 95110-2735
Telephone:    (408) 288-8288
Facsimile:    (408) 288-8325

Attorneys for Respondent
*QUALCOMM INCORPORATED*

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | Case No. 3:23-MC-00794-BLM<br><br>**DECLARATION OF DAVID A. KAYS IN SUPPORT OF QUALCOMM'S OPPOSITION TO NETGEAR'S EX PARTE APPLICATION TO MODIFY PROTECTIVE ORDER**<br><br>Date/Time: No hearing set<br><br>Hon. Barbara Lynn Major<br>U.S. Magistrate Judge |

I, David A. Kays, declare:

1.    I am a partner in the firm of Morgan Franich Fredkin Siamas & Kays, counsel for record to Qualcomm Incorporated ("Qualcomm") in the above-referenced matter, an application for order under 28 U.S.C. § 1782 ("Section 1782") permitting Netgear, Inc. and Netgear Deutschland GMBH (collectively "Netgear") to serve a subpoena on Qualcomm seeking information for use in two proceedings pending in the Dusseldorf Regional Court in the Federal Republic of Germany ("the German actions").  I make this declaration in support of Qualcomm's opposition to Netgear's *ex parte* application to modify the protective order entered in this action to allow Netgear to use or submit Qualcomm confidential information

1

DECL. OF DAVID A. KAYS ISO QUALCOMM'S OPPOSITION TO                           CASE NO: 3:23-MC-794-BLM (S.D. Cal.)
EX PARTE APPLICATION TO MODIFY PROTECTIVE ORDER

in a foreign action filed in the Unified Patent Court ("UPC") at its division in Munich Germany (the "UPC action). I have personal knowledge of the matters contained herein and, if called upon to testify, could competently testify thereto.

2. Netgear filed its Section 1782 application on June 14, 2023 (Dkt. 1) seeking authorization from this Court to serve a subpoena on Qualcomm for license agreements between Qualcomm and Huawei Technologies Co., Ltd. ("Huawei") that Netgear asserted "might" provide it with a defense to the patent infringement claims alleged by Huawei in the German actions.

3. I have represented Qualcomm in first and third party matters since 2007, including numerous proceedings where discovery was sought from Qualcomm under Section 1782 for use in foreign proceedings, including foreign proceedings in Germany. As such, I am familiar with the practices and procedures in the German courts regarding the handling of confidential information. I understood from that experience and was comfortable that court records and filings in German actions are not accessible to the public, and that discovery is not permitted, making it significantly easier to protect Qualcomm confidential information against unwarranted disclosure in connection with such proceedings than in other foreign jurisdictions. Apart from the Section 1782 matters in which I have represented it, Qualcomm has its own experience litigating in the German courts. Based on this experience, Qualcomm determined that the most practical and efficient way to respond to Netgear's Section 1782 application would be to not oppose the application, but instead preserve all of Qualcomm's rights in connection with responding to the proposed subpoena.

4. Accordingly, on August 18, 2023, Qualcomm filed its response to Netgear's 1782 application (Dkt. 15), informing the Court that it did not oppose the application, but did so without conceding it had anything responsive or relevant to produce and reserving the right to "(1) make objections to and challenge the substance of Netgear's discovery requests, including objections under Federal Rule of Civil Procedure 45, (2) seek a Protective Order governing the treatment of Qualcomm's confidential information in the event Qualcomm has any responsive or relevant materials to produce and (3) move to quash the subpoena." On

August 31, 2023 the Court issued its Order granting the application (Dkt. 17) and Netgear served Qualcomm with its subpoena that same day. Qualcomm timely served a response to Netgear's Section 1782 subpoena that raised numerous objections and offered to meet and confer with Netgear to narrow the requests and produce responsive documents subject to a suitable protective order.

5.     Although Qualcomm had license agreements with Huawei in which Huawei granted Qualcomm rights to certain Huawei technologies and patents, I learned from Qualcomm none of those agreements related to the technology (wireless local area standard 802.11ax or Wi-Fi 6) at issue in the German proceedings. I understand from speaking with Tobias Hessel, Huawei's outside counsel in the German and UPC actions, that Huawei has the same understanding.

6.     But because the entire justification for Netgear's 1782 application was that the Qualcomm-Huawei license agreements might potentially grant Qualcomm rights to Huawei's Wi-Fi 6 technology at issue in the German actions, I had several meet and confer discussions, and exchanged multiple emails with Netgear's counsel, Henry Hutton, regarding the subpoena in which I informed him that the Qualcomm-Huawei license agreements conveyed no Wi-Fi 6 rights to Qualcomm. These communications included a conference call in which my Qualcomm in-house counsel for this matter, David Greenfield, explained the same thing to Mr. Hutton and Stephan Dorn, Netgear's outside counsel in the German actions. We hoped that this information would be accepted at face value and that Netgear would withdraw its request. Unfortunately, Netgear's counsel would not agree to do so.

7.     During these meet and confer communications, I also informed Mr. Hutton that the Qualcomm-Huawei license agreements were confidential, that the parties were required to keep their terms confidential and take measures to maintain their confidentiality, and that Qualcomm was contractually required to give Huawei notice before any production could take place.

8.     Notwithstanding that the premise for Netgear's 1782 application was not correct, rather than burden the Court with a discovery dispute, Qualcomm ultimately reached

an agreement with Netgear whereby Qualcomm would respond to the subpoena by producing, subject to a suitable protective order, the Qualcomm-Huawei license agreements for use in the German actions.

9.    During our discussions regarding the terms of the protective order, Mr. Hutton informed me that Huawei had also sued Netgear in the UPC action and that he wanted the protective order to be drafted to allow Netgear to use the Qualcomm-Huawei license agreements in that proceeding. This was news to me. The UPC action was not mentioned in Netgear's Section 1782 application or the court's order granting that application. At the time, I had never heard of the UPC and knew nothing about it or its the practices and procedures.

10.    I also assumed that – as has been the case in every Section 1782 proceeding I have handled, including the German actions in this Section 1782 proceeding – that Netgear was making the request because there was no discovery or other mechanism in the UPC through which Netgear could obtain the Qualcomm-Huawei license agreements directly from Huawei.

11.    In responding to Section 1782 applications that seek Qualcomm confidential information for use in foreign proceedings, one of the primary considerations is the degree to which confidentiality and non-disclosure mechanisms are enforceable in the foreign proceeding at issue. While always important, maintaining confidentiality in litigation is less of a concern in U.S. cases given the broad powers conferred upon federal and state courts to implement confidentiality orders, and the resources available for and track record of enforcement in the U.S. Far greater concerns exist when Qualcomm is subpoenaed to produce confidential information for use in foreign jurisdictions. Qualcomm approaches each foreign court differently, with the response turning on the nature and degree to which confidentiality protections are in place in the foreign jurisdiction; the availability and assurances that confidentiality measures will and can be enforced in that jurisdiction; and the subpoenaing party's need for the information and its relevance to the foreign proceeding.

12.    Because I knew nothing about the UPC, I told Mr. Hutton that I would consider his request, but that I did not have time to look into it because I was preparing for a multiple-

week jury trial in a state court action that was set to begin the following week. Because Qualcomm takes a practical view of discovery of discovery matters, I told Mr. Hutton that if Qualcomm could get comfortable with the UPC proceedings, then we might be able to agree to modify the protective order to allow Netgear to use the discovery in the UPC. As I told Mr. Hutton on September 28, 2023: "…if you can provide more information on how confidential information is handled/protected in the UPC we are willing to discuss the issue. But I don't think it makes sense to hold up getting the agreements for use in the Dusseldorf action while we are working that out (assuming it can be worked out without a separate 1782 application)." (Hutton Decl., Ex. C, p. 8.)  However, I never told Mr. Hutton that if Qualcomm did not agree to use in the UPC that Netgear could seek authorization through a motion to modify the protective order or by bypassing the requirements of Section 1782.

13. On October 24, 2023, after agreeing on terms of a suitable protective order that was entered by the Court (Dkt. 20), and which specifically limits the use the use of any material produced solely to the German actions (Protective Order, §§ 3, 13), Qualcomm produced redacted copies of the confidential Qualcomm-Huawei license agreements designated "Outside Attorneys' Only" pursuant to the terms of the Protective Order. Netgear has not raised any issue or dispute regarding the production made by Qualcomm in this case.

14. After Qualcomm produced the license agreements for use in the German actions, Mr. Hutton reiterated his request to allow Netgear to use the confidential Qualcomm-Huawei license agreements in the UPC. By this time, my state court trial had settled, which gave me an opportunity to locate and review some of the rules and procedures of the UPC. Significantly, from my review of those rules I was surprised to learn that discovery was available in the UPC such that Netgear could obtain the Qualcomm-Huawei license agreements directly from Huawei in that proceeding. As I told Mr. Hutton in an October 26, 2023 email in which I informed him that Qualcomm could not agree to the use of the Qualcomm-Huawei license agreements in the UPC and that Netgear should have filed a 1782 application for use in that proceeding: "…a 1782 application for use of the Qualcomm/Huawei agreements in the UPC is not appropriate because, unlike in the

Dusseldorf court, discovery is allowed in the UPC.  *See* UPC Rules of Procedure, Rule 190 – Order to produce evidence "('Where a party has presented reasonably available and plausible evidence in support of its claims and has, in substantiating those claims, specified evidence which lies in the control of the other party…the Court may on a request by the party specifying such evidence, order that other party…to produce such evidence.');  s*ee also* Rule 170 – Means of evidence and means of obtaining evidence…(3. Means of obtaining evidence shall include…ordering a party…to produce evidence.)"  (Hutton Decl., Ex. D, p.6)

15.     I was also concerned that UPC records are open to the public and that no confidentiality order was in place to protect the information, as well as the lack of any precedent or information regarding how the UPC would treat confidential information or enforce any of its orders relating to such information.

16.     Further, I could not understand, and neither Mr. Hutton nor Mr. Dorn could ever clearly explain during our meet and confers, how the Qualcomm-Huawei license agreements could even be relevant to the UPC proceeding given that the agreements convey no rights to the Wi-Fi 6 technology at issue in that proceeding (or the German actions for that matter.)  I also asked Mssrs. Hutton and Dorn why they were not seeking the Qualcomm-Huawei license agreements from Huawei via UPC Rule 190 that authorized a procedure whereby Netgear could seek the license agreements directly from Huawei, that Huawei could participate in that procedure to make its own relevancy arguments and seek appropriate orders to protect the confidentiality of the disclosure – all without the need to burden Qualcomm or this Court.  That procedure made the most sense to me and I requested Mr. Hutton and Mr. Dorn to employ the procedures available under UPC Rule 190.  In response, Mr. Dorn told me that seeking such an order under Rule 190 would be useless because the UPC had no power to even enforce its own discovery orders, to which I responded that if that was the case, then I had the same concerns with respect to any confidentiality order the UPC might make regarding the confidential Qualcomm-Huawei license agreements.  Mr. Dorn makes the same point – "there is doubt about whether the UPC could enforce an order requiring Huawei to produce documents" – in his declaration submitted in support of

1    Netgear's application to modify the Protective Order. (Dorn Decl. ¶ 15)

2         17.    A few hours after I had this conversation, Netgear filed its *ex parte* application

3    seeking on an expedited basis, an order to modify the protective order to allow the

4    confidential Qualcomm-Huawei license agreements to be used in the UPC.  After receipt of

5    Netgear's *ex parte* application, I contacted Huawei's outside counsel, Mr. Tobias Hessel, to

6    find out the status of the UPC proceeding.  Mr. Hessel informed me that Netgear had known

7    about the UPC proceeding since July 3, 2023, the date the action was filed.  Mr. Hessel had

8    been cc'd on an email chain between the UPC Presiding Judge-Rapporteur, Dr. Matthias

9    Zigann, and Netgear's in-house counsel, Anna Lam, regarding whether Netgear would accept

10   service electronically.  A true and correct of that email chain is attached hereto as Exhibit A.

11   As can be seen from Ms. Lam's July 6, 2023 response, Netgear declined Judge Zigann's

12   request to be served via "friendly e-mail" and demanded the pleading be served through

13   procedures specified under the Hague Convention.  As a result, Netgear was not formally

14   served with Huawei's UPC complaint until August 7, 2023. (Dorn Decl. ¶ 9)

15        18.    According to its official website (https://www.unified-patent-court.org/en), the

16   UPC is a brand-new court established effective June 1, 2023 by agreement of seventeen

17   Member States of the European Union to decide claims for infringement and validity of

18   Unitary Patents and European Patents. Attached hereto as Exhibit B is a printout from that

19   web page.

20        19.    The "Agreement on a Unified Patent Court" is published in the Official Journal

21   of the European Union in English at https://www.unified-patent-court.org/en/court/legal-

22   documents?field_legal_doc_type_target_id=24&field_doc_keywords_target_id.    Attached

23   hereto as Exhibit C are relevant excerpts from that Agreement comprising Articles 6, 7 and

24   10.

25        20.    The UPC Rules of Procedure are published at https://www.unified-patent-

26   court.org/sites/default/files/upc_documents/rop_en_25_july_2022_final_consolidated_publ

27   ished_on_website.pdf  Attached hereto as Exhibit D are relevant excerpts from those rules

28   comprising Rules 10, 23, 24, 27, 103, 170 and 190.

21.    On November 17, 2023, Netgear filed its Statement of Defense ("SoD") with the UPC.  Attached hereto as Exhibit E is a true and correct copy of excerpts from Netgear's SoD that relate to the Qualcomm-Huawei license agreements that was provided to me by Mr. Hessel.  Not only does Netgear reference the Qualcomm-Huawei license agreements and the purported exhaustion argument based thereon, Netgear also requests the UPC to order Huawei to produce the Qualcomm-Huawei license agreements for use in the UPC pursuant to UPC Rules 170 and 190 ("Furthermore, at the latest interim hearing pursuant to Rule 104(e) UPC, we will request the applicant's [Huawei's] license agreements with…Qualcomm…by way of an order for reference pursuant to Rules 170.3 (a), 190 UPC…In the event of non-compliance with these submission orders, we will apply for the imposition of severe periodic penalty payments pursuant to Art. 82(4) UPCA and other sanctions pursuant to Rule 190.4(b) UPCA against the applicant.") Notably, notwithstanding Netgear's knowledge that confidentiality is an important issue to Qualcomm, this request by Netgear in the SoD is not accompanied by a request to treat the Qualcomm-Huawei license agreements as confidential pursuant to the UPC rules that Netgear touts in its application. (Dorn Decl. ¶¶ 12-13)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on November 22, 2023, at San Jose, California.



DAVID A. KAYS

DECL. OF DAVID A. KAYS ISO QUALCOMM'S OPPOSITION TO
EX PARTE APPLICATION TO MODIFY PROTECTIVE ORDER

CASE NO: 3:23-MC-794-BLM (S.D. Cal.)

# EXHIBIT A

# [EXT] WG: ACT_459771/2023 UPC_CFI_9/2023

**matthias.zigann@unifiedpatentcourt.org** <matthias.zigann@unifiedpatentcourt.org>

Thu 7/6/2023 10:32 PM

To:Tobias.Hessel@CliffordChance.com <Tobias.Hessel@CliffordChance.com>

📎 2 attachments (228 KB)

ATT00001.png; ATT00002.jpg;

Dear Mr. Hessel,

please find enclosed communication to the defendant.

Kind regards

**Dr. Matthias Zigann**
Presiding Judge **-** Local Division Munich
E-Mail: matthias.zigann@unifiedpatentcourt.org



Court of First Instance – Local Division Munich
Gericht erster Instanz – Lokalkammer München
Tribunal de première Instance – Division Locale Munich
Denisstraße 5, DE-80335 München, Germany
www.unified-patent-court.org

---

**Von:** Matthias Zigann <matthias.zigann@unifiedpatentcourt.org>
**Gesendet:** Freitag, 7. Juli 2023 07:30
**An:** 'Anna Lam' <Anna.Lam@Netgear.com>
**Betreff:** AW: ACT_459771/2023 UPC_CFI_9/2023

Dear Ms. Lam,

thank you for your e-mail.

Indeed, the Unified Patent Court (UPC) comes with some new rules both the parties and the judges must get familiar with. So, for example, Rules 270 ff. of the Rules of Procedure (RoP) for the Unified Patent Court foresee as a default method of service a "friendly e-mail", meaning that the recipient is free to accept service that way. If service via friendly e-mail is not possible, the other methods are to be applied including among others service according to the Hague Convention.

Communication to the court is covered by Rule 8.4 RoP:

*Except where these Rules provide otherwise, a party shall not communicate with the Court without
informing the other party. Where such communication is in writing, the communication should be copied
to the other party unless these Rules provide that the Court will supply a copy to the other party.*

In my opinion this is to be applied to a communication of the judge towards one of the parties as well. That's the reason why I included opposing counsel in my email. I did not coordinate this request with opposing counsel first. In fact opposing counsel stated in a brief of 23 June 2023 following the results of the formal checks according to Rule 16 RoP that he included your e-mail-address in the statement of claim and in the Case Management System (CMS) according to Rule 13.1.d RoP because you had been involved in the licensing talks but that you had not communicated prior to filing

that you will accept service for the defendants by e-mail. But I decided to give it a try anyhow.

As you decided not to accept service on the defendants by way of friendly e-mail the court will now start effecting service using the other ways provided for by the RoP. The documents to be served that way will include the statement of claim and a code, one code for each defendant, to hand over to your UPC representative(s) to log into the CMS. Further communication to the parties will then be handled via the CMS.

I must inform opposing counsel of this communication.

Kind regards

**Dr. Matthias Zigann**
Presiding Judge **-** Local Division Munich
E-Mail: matthias.zigann@unifiedpatentcourt.org



Court of First Instance – Local Division Munich
Gericht erster Instanz – Lokalkammer München
Tribunal de première Instance – Division Locale Munich
Denisstraße 5, DE-80335 München, Germany
www.unified-patent-court.org

**Von:** Anna Lam <Anna.Lam@Netgear.com>
**Gesendet:** Donnerstag, 6. Juli 2023 21:53
**An:** Matthias Zigann <matthias.zigann@unifiedpatentcourt.org>
**Betreff:** RE: ACT_459771/2023 UPC_CFI_9/2023

Dear Honorable Presiding Judge Zigann:

I confirm receipt of your email.

I was a little surprised by this email. I have never received an informal email from a Judge in place of formal procedures in a case that has not yet been served. This looks unusual for an US lawyer. I take it from your email that apparently a case has been filed against Netgear in the recently established Unified Patent Court. Although Netgear followed the development of the Unified Patent Court with great interest, Netgear is not yet familiar with the implications of this new system and its procedures, including the implications of accepting service of documents initiating court proceedings via email for Netgear and its affiliated companies.

Therefore, please understand that I cannot accept service for the defendants via email and do not agree on behalf of Netgear with the procedure suggested in your email.

As I am sure you are aware, the United States designated a central authority for international service of court documents under the Hague Convention. I understand specific rules on the service of initial court documents also exist within Germany and the EU. We kindly ask that service be effected in accordance with the applicable international laws which were entered into to provide reliable service of process to protect the rights of the defendants, in particular when confronted with a legal dispute in another jurisdiction.

As an aside, I also noted with some concern that you included opposing counsel in your email sent directly to me. Please note that Netgear, so far, is not represented by legal counsel for UPC proceedings. I trust that including opposing counsel in your email does not suggest the Court has coordinated this request with opposing counsel first. I removed opposing counsel from this reply in order to avoid us directly communicating with opposing counsel without being advised by US or other outside counsel.

Sincerely yours,

Anna Lam

Sr. Director, Legal

**M**  408.332.4158

**E**  anna.lam@netgear.com

netgear.com

---

**From:** Matthias Zigann <matthias.zigann@unifiedpatentcourt.org>
**Sent:** Monday, July 3, 2023 6:55 AM
**To:** Anna Lam <Anna.Lam@Netgear.com>
**Cc:** tobias.hessel@cliffordchance.com
**Subject:** ACT_459771/2023 UPC_CFI_9/2023

This message has originated from an **External Source**. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email. To report this email as suspicious forward to reportphishing@netgear.com. For any questions don't hesitate to reach out to helpdesk@netgear.com.

Dear Ms. Lam,

I am the Judge Rapporteur in the infringement action by Huawei Technologies Co. Ltd. concerning EP 3 611 989 against the defendants:

1) Netgear Inc.
2) Netgear Deutschland GmbH
3) Netgear International Limited

At this stage of the proceedings the service on the defendants is due.

As you have been involved in the licensing talks, I wanted to ask whether you are willing to accept service for the defendants via e-mail.

If so, the clerks will send you three codes via e-mail (one code per defendant). With these codes your UPC representative will be able to access the UPC Case Management System (CMS) and download the documents (e. g. statement of claim and appendixes).

Kind regards

**Dr. Matthias Zigann**
Presiding Judge **-** Local Division Munich
E-Mail: matthias.zigann@unifiedpatentcourt.org

Court of First Instance – Local Division Munich
Gericht erster Instanz – Lokalkammer München
Tribunal de première Instance – Division Locale Munich
Denisstraße 5, DE-80335 München, Germany
www.unified-patent-court.org

This e-mail, including attachments, may include confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed. If the reader of this e-mail is not the intended recipient or his or her authorized

agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately.

# EXHIBIT B

A single patent court for Member States of the European Union

EN    FR    DE

Search

Show menu



Court Presentation

[Home](#)

# UPC Structure



The UPC is an international court common to currently seventeen EU Member States, in which the Agreement on a Unified Patent Court (UPCA) is in force. The UPCA can be ratified by any of the other seven EU Member States which have signed it at any time. Furthermore, any of the remaining EU Member States could still accede to it anytime.

The UPC offers a uniform, specialised, and efficient framework for patent litigation at a European level. It hears both infringement and revocation actions. The Court has exclusive jurisdiction in respect of "classic" European patents and European patents with unitary effect (Unitary Patents). The exclusive jurisdiction regarding "classic" European patents is, however, subject to exceptions during a transitional period of seven years. During this period, actions concerning "classic" European patents may still be brought before national courts or other competent national authorities. Furthermore, "classic" European patents can be opted out entirely from the UPC's jurisdiction.

The Court comprises a Court of First Instance, a Court of Appeal, and a Registry. In addition a Patent Mediation and Arbitration Centre is foreseen to foster amicable settlements.

The Court is composed of judges from all over Europe. The panels comprise both legally and technically qualified judges with great expertise in patent litigation.

**Court of First Instance**

The Court of First Instance has a decentralised structure and comprises a central division in Paris with a section in Munich, as well as various local divisions and a regional division located all over Europe. Read more about the Court's locations.

The Court of First Instance hears various types of actions, which are listed in Art. 32 of the UPCA.

The President of the Court of First Instance is Ms Florence Butin.

Any panel of the Local Divisions in Brussels, Copenhagen, Helsinki, Lisbon, Ljubljana and Vienna sits in a multinational composition of three legally qualified judges pursuant to Article 8(2) of the UPCA.

Any panel of the Local Divisions in Düsseldorf, Hamburg, Mannheim, Munich, Paris, Milan and The Hague sits in a multinational composition of three legally qualified judges pursuant to Article 8(3) UPCA.

Any panel of the Nordic Baltic Regional Division in Stockholm/Riga/Tallinn/Vilnius sits in a multinational composition of three legally qualified judges pursuant to Article 8(4) UPCA.

An additional technically qualified judge with qualifications and experience in the field of technology concerned is allocated to any panel of a local or regional division pursuant to Article 8(5) UPCA.

Any panel of the Central Division sits in a multinational composition of two legally qualified judges and one technically qualified judge with qualifications and experience in the field of technology concerned pursuant to Article 8(6) UPCA.

Any panel of the Court of First Instance is chaired by a legally qualified judge.

**Court of Appeal**

The Court of Appeal has its seat in Luxembourg and decides on appeals against decisions of the Court of First Instance and on requests for rehearing of final decisions of the Court.

The President of the Court of Appeal is Dr Klaus Grabinski, who is also the chairperson of the Presidium of the Court.

Any panel of the Court of Appeal sits in a multinational composition of three legally qualified judges and two technically qualified judges with qualifications and experience in the field of technology concerned pursuant to Article 9(1) UPCA.

Any panel dealing with actions under Article 32(1)(i) sits in a multinational composition of three legally qualified judges pursuant to Article 9(2) UPCA.

Any panel of the Court of Appeal is chaired by a legally qualified judge

## Important links

Legal Documents

UPC-EPO legal text publication on Unitary Patent system

Contact

European Patent Academy



Enter the CMS



Visit the EPO

Legal Notice / Imprint    Privacy Policy / Data Protection    Terms and Conditions

© 2023 Unified Patent Court

# EXHIBIT C

# Official Journal

## C 175

## of the European Union



English edition

**Information and Notices**

**Volume 56**

**20 June 2013**

ISSN 1977-091X

| Notice No | Contents | Page |
|---|---|---|

IV  *Notices*

NOTICES FROM EUROPEAN UNION INSTITUTIONS, BODIES, OFFICES AND AGENCIES

**Council**

2013/C 175/01    Agreement on a Unified Patent Court ............................................................    1



**EN**

Price:
EUR 3

20.6.2013    EN    Official Journal of the European Union    C 175/3

(d) 'EPC' means the Convention on the Grant of European Patents of 5 October 1973, including any subsequent amendments.

(e) 'European patent' means a patent granted under the provisions of the EPC, which does not benefit from unitary effect by virtue of Regulation (EU) No 1257/2012.

(f) 'European patent with unitary effect' means a patent granted under the provisions of the EPC which benefits from unitary effect by virtue of Regulation (EU) No 1257/2012.

(g) 'Patent' means a European patent and/or a European patent with unitary effect.

(h) 'Supplementary protection certificate' means a supplementary protection certificate granted under Regulation (EC) No 469/2009 (¹) or under Regulation (EC) No 1610/96 (²).

(i) 'Statute' means the Statute of the Court as set out in Annex I, which shall be an integral part of this Agreement.

(j) 'Rules of Procedure' means the Rules of Procedure of the Court, as established in accordance with Article 41.

## Article 3

### Scope of application

This Agreement shall apply to any:

(a) European patent with unitary effect;

(b) supplementary protection certificate issued for a product protected by a patent;

(c) European patent which has not yet lapsed at the date of entry into force of this Agreement or was granted after that date, without prejudice to Article 83; and

(d) European patent application which is pending at the date of entry into force of this Agreement or which is filed after that date, without prejudice to Article 83.

## Article 4

### Legal status

1. The Court shall have legal personality in each Contracting Member State and shall enjoy the most extensive legal capacity accorded to legal persons under the national law of that State.

2. The Court shall be represented by the President of the Court of Appeal who shall be elected in accordance with the Statute.

## Article 5

### Liability

1. The contractual liability of the Court shall be governed by the law applicable to the contract in question in accordance with Regulation (EC) No 593/2008 (³) (Rome I), where applicable, or failing that in accordance with the law of the Member State of the court seized.

2. The non-contractual liability of the Court in respect of any damage caused by it or its staff in the performance of their duties, to the extent that it is not a civil and commercial matter within the meaning of Regulation (EC) No 864/2007 (⁴) (Rome II), shall be governed by the law of the Contracting Member State in which the damage occurred. This provision is without prejudice to the application of Article 22.

3. The court with jurisdiction to settle disputes under paragraph 2 shall be a court of the Contracting Member State in which the damage occurred.

### CHAPTER II

### Institutional provisions

## Article 6

### The Court

1. The Court shall comprise a Court of First Instance, a Court of Appeal and a Registry.

2. The Court shall perform the functions assigned to it by this Agreement.

## Article 7

### The Court of First Instance

1. The Court of First Instance shall comprise a central division as well as local and regional divisions.

(¹) Regulation (EC) No 469/2009 of the European Parliament and of the Council of 6 May 2009 concerning the supplementary protection certificate for medicinal products (OJ L 152, 16.6.2009, p. 1) including any subsequent amendments.
(²) Regulation (EC) No 1610/96 of the European Parliament and of the Council of 23 July 1996 concerning the creation of a supplementary certificate for plant protection products (OJ L 198, 8.8.1996, p. 30) including any subsequent amendments.

(³) Regulation (EC) No 593/2008 of the European Parliament and of the Council of 17 June 2008 on the law applicable to contractual obligations (Rome I) (OJ L 177, 4.7.2008, p. 6) including any subsequent amendments.
(⁴) Regulation (EC) No 864/2007 of the European Parliament and of the Council of 11 July 2007 on the law applicable to non-contractual obligations (Rome II) (OJ L 199, 31.7.2007, p. 40) including any subsequent amendments.

C 175/4    EN    Official Journal of the European Union    20.6.2013

2. The central division shall have its seat in Paris, with sections in London and Munich. The cases before the central division shall be distributed in accordance with Annex II, which shall form an integral part of this Agreement.

3. A local division shall be set up in a Contracting Member State upon its request in accordance with the Statute. A Contracting Member State hosting a local division shall designate its seat.

4. An additional local division shall be set up in a Contracting Member State upon its request for every one hundred patent cases per calendar year that have been commenced in that Contracting Member State during three successive years prior to or subsequent to the date of entry into force of this Agreement. The number of local divisions in one Contracting Member State shall not exceed four.

5. A regional division shall be set up for two or more Contracting Member States, upon their request in accordance with the Statute. Such Contracting Member States shall designate the seat of the division concerned. The regional division may hear cases in multiple locations.

### Article 8

### Composition of the panels of the Court of First Instance

1. Any panel of the Court of First Instance shall have a multinational composition. Without prejudice to paragraph 5 of this Article and to Article 33(3)(a), it shall sit in a composition of three judges.

2. Any panel of a local division in a Contracting Member State where, during a period of three successive years prior or subsequent to the entry into force of this Agreement, less than fifty patent cases per calendar year on average have been commenced shall sit in a composition of one legally qualified judge who is a national of the Contracting Member State hosting the local division concerned and two legally qualified judges who are not nationals of the Contracting Member State concerned and are allocated from the Pool of Judges in accordance with Article 18(3) on a case by case basis.

3. Notwithstanding paragraph 2, any panel of a local division in a Contracting Member State where, during a period of three successive years prior or subsequent to the entry into force of this Agreement, fifty or more patent cases per calendar year on average have been commenced, shall sit in a composition of two legally qualified judges who are nationals of the Contracting Member State hosting the local division concerned and one legally qualified judge who is not a national of the Contracting Member State concerned and is allocated from the Pool of Judges in accordance with Article 18(3). Such third judge

shall serve at the local division on a long term basis, where this is necessary for the efficient functioning of divisions with a high work load.

4. Any panel of a regional division shall sit in a composition of two legally qualified judges chosen from a regional list of judges, who shall be nationals of the Contracting Member States concerned, and one legally qualified judge who shall not be a national of the Contracting Member States concerned and who shall be allocated from the Pool of Judges in accordance with Article 18(3).

5. Upon request by one of the parties, any panel of a local or regional division shall request the President of the Court of First Instance to allocate from the Pool of Judges in accordance with Article 18(3) an additional technically qualified judge with qualifications and experience in the field of technology concerned. Moreover, any panel of a local or regional division may, after having heard the parties, submit such request on its own initiative, where it deems this appropriate.

In cases where such a technically qualified judge is allocated, no further technically qualified judge may be allocated under Article 33(3)(a).

6. Any panel of the central division shall sit in a composition of two legally qualified judges who are nationals of different Contracting Member States and one technically qualified judge allocated from the Pool of Judges in accordance with Article 18(3) with qualifications and experience in the field of technology concerned. However, any panel of the central division dealing with actions under Article 32(1)(i) shall sit in a composition of three legally qualified judges who are nationals of different Contracting Member States.

7. Notwithstanding paragraphs 1 to 6 and in accordance with the Rules of Procedure, parties may agree to have their case heard by a single legally qualified judge.

8. Any panel of the Court of First Instance shall be chaired by a legally qualified judge.

### Article 9

### The Court of Appeal

1. Any panel of the Court of Appeal shall sit in a multinational composition of five judges. It shall sit in a composition of three legally qualified judges who are nationals of different Contracting Member States and two technically qualified judges with qualifications and experience in the field of technology concerned. Those technically qualified judges shall be assigned to the panel by the President of the Court of Appeal from the pool of judges in accordance with Article 18.

20.6.2013          EN          Official Journal of the European Union          C 175/5

2.    Notwithstanding paragraph 1, a panel dealing with actions under Article 32(1)(i) shall sit in a composition of three legally qualified judges who are nationals of different Contracting Member States.

3.    Any panel of the Court of Appeal shall be chaired by a legally qualified judge.

4.    The panels of the Court of Appeal shall be set up in accordance with the Statute.

5.    The Court of Appeal shall have its seat in Luxembourg.

## Article 10

### The Registry

1.    A Registry shall be set up at the seat of the Court of Appeal. It shall be managed by the Registrar and perform the functions assigned to it in accordance with the Statute. Subject to conditions set out in this Agreement and the Rules of Procedure, the register kept by the Registry shall be public.

2.    Sub-registries shall be set up at all divisions of the Court of First Instance.

3.    The Registry shall keep records of all cases before the Court. Upon filing, the sub-registry concerned shall notify every case to the Registry.

4.    The Court shall appoint the Registrar in accordance with Article 22 of the Statute and lay down the rules governing the Registrar's service.

## Article 11

### Committees

An Administrative Committee, a Budget Committee and an Advisory Committee shall be set up in order to ensure the effective implementation and operation of this Agreement. They shall in particular exercise the duties foreseen by this Agreement and the Statute.

## Article 12

### The Administrative Committee

1.    The Administrative Committee shall be composed of one representative of each Contracting Member State. The European Commission shall be represented at the meetings of the Administrative Committee as observer.

2.    Each Contracting Member State shall have one vote.

3.    The Administrative Committee shall adopt its decisions by a majority of three quarters of the Contracting Member States represented and voting, except where this Agreement or the Statute provides otherwise.

4.    The Administrative Committee shall adopt its rules of procedure.

5.    The Administrative Committee shall elect a chairperson from among its members for a term of three years. That term shall be renewable.

## Article 13

### The Budget Committee

1.    The Budget Committee shall be composed of one representative of each Contracting Member State.

2.    Each Contracting Member State shall have one vote.

3.    The Budget Committee shall take its decisions by a simple majority of the representatives of the Contracting Member States. However, a majority of three-quarters of the representatives of Contracting Member States shall be required for the adoption of the budget.

4.    The Budget Committee shall adopt its rules of procedure.

5.    The Budget Committee shall elect a chairperson from among its members for a term of three years. That term shall be renewable.

## Article 14

### The Advisory Committee

1.    The Advisory Committee shall:

(a) assist the Administrative Committee in the preparation of the appointment of judges of the Court;

(b) make proposals to the Presidium referred to in Article 15 of the Statute on the guidelines for the training framework for judges referred to in Article 19; and

(c) deliver opinions to the Administrative Committee concerning the requirements for qualifications referred to in Article 48(2).

2.    The Advisory Committee shall comprise patent judges and practitioners in patent law and patent litigation with the highest recognised competence. They shall be appointed, in accordance with the procedure laid down in the Statute, for a term of six years. That term shall be renewable.

C 175/6    EN    Official Journal of the European Union    20.6.2013

3.    The composition of the Advisory Committee shall ensure a broad range of relevant expertise and the representation of each of the Contracting Member States. The members of the Advisory Committee shall be completely independent in the performance of their duties and shall not be bound by any instructions.

4.    The Advisory Committee shall adopt its rules of procedure.

5.    The Advisory Committee shall elect a chairperson from among its members for a term of three years. That term shall be renewable.

### CHAPTER III

### Judges of the Court

#### Article 15

#### Eligibility criteria for the appointment of judges

1.    The Court shall comprise both legally qualified judges and technically qualified judges. Judges shall ensure the highest standards of competence and shall have proven experience in the field of patent litigation.

2.    Legally qualified judges shall possess the qualifications required for appointment to judicial offices in a Contracting Member State.

3.    Technically qualified judges shall have a university degree and proven expertise in a field of technology. They shall also have proven knowledge of civil law and procedure relevant in patent litigation.

#### Article 16

#### Appointment procedure

1.    The Advisory Committee shall establish a list of the most suitable candidates to be appointed as judges of the Court, in accordance with the Statute.

2.    On the basis of that list, the Administrative Committee shall appoint the judges of the Court acting by common accord.

3.    The implementing provisions for the appointment of judges are set out in the Statute.

#### Article 17

#### Judicial independence and impartiality

1.    The Court, its judges and the Registrar shall enjoy judicial independence. In the performance of their duties, the judges shall not be bound by any instructions.

2.    Legally qualified judges, as well as technically qualified judges who are full-time judges of the Court, may not engage in any other occupation, whether gainful or not, unless an exception is granted by the Administrative Committee.

3.    Notwithstanding paragraph 2, the exercise of the office of judges shall not exclude the exercise of other judicial functions at national level.

4.    The exercise of the office of technically qualified judges who are part-time judges of the Court shall not exclude the exercise of other functions provided there is no conflict of interest.

5.    In case of a conflict of interest, the judge concerned shall not take part in proceedings. Rules governing conflicts of interest are set out in the Statute.

#### Article 18

#### Pool of Judges

1.    A Pool of Judges shall be established in accordance with the Statute.

2.    The Pool of Judges shall be composed of all legally qualified judges and technically qualified judges from the Court of First Instance who are full-time or part-time judges of the Court. The Pool of Judges shall include at least one technically qualified judge per field of technology with the relevant qualifications and experience. The technically qualified judges from the Pool of Judges shall also be available to the Court of Appeal.

3.    Where so provided by this Agreement or the Statute, the judges from the Pool of Judges shall be allocated to the division concerned by the President of the Court of First Instance. The allocation of judges shall be based on their legal or technical expertise, linguistic skills and relevant experience. The allocation of judges shall guarantee the same high quality of work and the same high level of legal and technical expertise in all panels of the Court of First Instance.

#### Article 19

#### Training framework

1.    A training framework for judges, the details of which are set out in the Statute, shall be set up in order to improve and increase available patent litigation expertise and to ensure a broad geographic distribution of such specific knowledge and experience. The facilities for that framework shall be situated in Budapest.

2.    The training framework shall in particular focus on:

(a)    internships in national patent courts or divisions of the Court of First Instance hearing a substantial number of patent litigation cases;

# EXHIBIT D



# Rules of Procedure of the Unified Patent Court

**as adopted by decision of the Administrative Committee on 8 July 2022**

**entry into force: 1 September 2022**

## PART 1 – PROCEDURES BEFORE THE COURT OF FIRST INSTANCE

### Rule 10 – Stages of the proceedings (*inter partes* proceedings)

Proceedings before the Court of First Instance shall consist of the following stages:

(a) a written procedure;

(b) an interim procedure, which may include an interim conference with the parties;

(c) an oral procedure which, subject to Rules 116.1 and 117, shall include an oral hearing of the parties unless the Court dispenses with the oral hearing with the agreement of the parties;

(d) a procedure for the award of damages, which may include a procedure to lay open books;

(e) a procedure for cost decisions.

*Relation with Agreement: Articles 52, 68 and 69*

### Rule 11 – Settlement

1. At any stage of the proceedings, if the Court is of the opinion that the dispute is suitable for a settlement, it may propose that the parties make use of the facilities of the Patent Mediation and Arbitration Centre ("the Centre") in order to settle or to explore a settlement of the dispute. In particular, the judge-rapporteur shall during the interim procedure, especially at an interim conference in accordance with Rule 104(d), explore with the parties the possibility of a settlement, including through mediation and/or arbitration, using the facilities of the Centre. Parties who choose mediation in an attempt to settle a dispute are subsequently not prevented from initiating judicial proceedings before the Court in relation to that dispute by the expiry of limitation or prescription periods during the mediation process, which will stay the limitation or prescription periods until the end of the mediation process. If mediation proceedings are terminated without a dispute settlement agreement, the period shall continue to run from that moment.

2. Pursuant to Rule 365 the Court shall, if requested by the parties, by decision confirm the terms of any settlement or arbitral award by consent (irrespective of whether it was reached using the facilities of the Centre or otherwise), including a term which obliges the patent owner to limit, surrender or agree to the revocation of a patent or not to assert it against the other party and/or third parties. The parties may agree on costs to be awarded or may request the Court to decide on costs to be awarded in accordance with Rules 150 to 156 *mutatis mutandis*.

3. Save for the purpose of enforcing the terms of any such settlement agreement by any person no opinion expressed, suggestion made, proposal put forward, concession made or document drawn up for the purposes of settlement may be relied on as evidence by the Court or the parties in proceedings before the Court or any other court unless such matter was expressed to be made on an open basis and freely disclosable to the Court or any other court.

*Relation with Agreement: Articles 35, 52(2) and 79*

## CHAPTER 1 – WRITTEN PROCEDURE

## SECTION 1 – INFRINGEMENT ACTION

### Rule 12 – Exchange of written pleadings (infringement action)

1. The written procedure shall consist of:

(a) the lodging of a Statement of claim (by the claimant) [Rule 13];

(b) the lodging of a Statement of defence (by the defendant) [Rules 23 and 24]; and, optionally

(c) the lodging of a Reply to the Statement of defence (by the claimant) [Rule 29(b)]; and

(d) the lodging of a Rejoinder to the Reply (by the defendant) [Rule 29(c)].

2. The Statement of defence may include a Counterclaim for revocation [Rule 25.1].

3. If a Counterclaim for revocation is lodged:

(a) the claimant and any proprietor who becomes a party pursuant to Rule 25.2 (hereinafter in this Rule 12 and Rules 29 to 32, "the proprietor") shall lodge a Defence to the Counterclaim for revocation [Rule 29(a)], which may include an Application to amend the patent by the proprietor [Rule 30];

(b) the defendant may lodge a Reply to the Defence to the Counterclaim [Rule 29(d)]; and

(c) the claimant and the proprietor may lodge a Rejoinder to the Reply to the Defence to the Counterclaim [Rule 29(e)].

4. If an Application to amend the patent is lodged by the proprietor, the defendant shall lodge a Defence to the Application to amend the patent in the Reply to the Defence to the Counterclaim, the proprietor may lodge a Reply to the Defence to the Application to amend and the defendant may lodge a Rejoinder to such Reply [Rule 32].

5. The judge-rapporteur may allow the exchange of further written pleadings, within time periods to be specified [Rule 36].

### STATEMENT OF CLAIM

### Rule 13 – Contents of the Statement of claim

1. The claimant shall lodge a Statement of claim with the division chosen by him [Article 33 of the Agreement] which shall contain:

(a) the name of the claimant, and, where the claimant is a corporate entity, the location of its registered office, and of the claimant's representative;

(b) the name of the party against whom the Statement is made (the defendant), and, where the defendant is a corporate entity, the location of its registered office;

(c) postal and electronic addresses for service on the claimant and the names of the persons authorised to accept service;

2. Where the value of the infringement action exceeds EUR 500.000, the claimant shall pay a value-based fee for the infringement action, in accordance with Part 6. Rule 16.3 to .5 shall apply *mutatis mutandis*.

STATEMENT OF DEFENCE

### Rule 23 – Lodging of the Statement of defence

The defendant shall lodge a Statement of defence within three months of service of the Statement of claim.

### Rule 24 – Contents of the Statement of defence

The Statement of defence shall contain:

(a) the names of the defendant and of the defendant's representative;

(b) postal and electronic addresses for service on the defendant and the names and addresses of the persons authorised to accept service;

(c) the action number of the file;

(d) an indication whether the defendant has lodged a Preliminary objection [Rule 19];

(e) an indication of the facts relied on, including any challenge to the facts relied on by the claimant;

(f) the evidence relied on [Rule 170.1], where available, and an indication of any further evidence which will be offered in support;

(g) the reasons why the action shall fail, arguments of law and any argument arising from the provisions of Article 28 of the Agreement and where appropriate any challenge to the claimant's proposed claim interpretation;

(h) an indication of any order the defendant will seek in respect of the infringement action during the interim procedure [Rule 104(e)];

(i) a statement whether the defendant disputes the claimant's assessment of the value of the infringement action and the grounds for such dispute; and

(j) a list of the documents, including any witness statements, referred to in the Statement of defence together with any request that all or part of any such document need not be translated and/or any request pursuant to Rule 262.2 or Rule 262A. Rule 13.2 and .3 shall apply *mutatis mutandis.*

### Rule 25 – Counterclaim for revocation

1. If the Statement of defence includes an assertion that the patent alleged to be infringed is invalid the Statement of defence shall include a Counterclaim against the proprietor of the patent for revocation of said patent in accordance with Rule 42. The Counterclaim for revocation shall contain:

(a) an indication of the extent to which revocation of the patent is requested;

(b) one or more grounds for revocation, which shall as far as possible be supported by arguments of law, and where appropriate an explanation of the defendant's proposed claim construction;

(c) an indication of the facts relied on;

(d) the evidence relied on, where available, and an indication of any further evidence which will be offered in support;

(e) an indication of any order the defendant will seek during the interim procedure [Rule 104(e)];

(f) a statement of his position, if any, on the options provided for in Article 33(3) of the Agreement and Rule 37.4;

(g) a list of the documents, including any witness statements, referred to in the Counterclaim for revocation together with any request that all or part of any such documents need not be translated and/or any request pursuant to Rule 262.2 or Rule 262A. Rule 13.2 and .3 shall apply *mutatis mutandis*; and

(h) insofar as the proprietor of the patent is not claimant in the infringement proceedings, the information required by Rule 13.1(b) and (d) in respect of said proprietor.

2. Where the claimant is not the proprietor or not the only proprietor of the patent concerned, the Registry shall as soon as practicable serve a copy of the Counterclaim for revocation on the relevant proprietor in accordance with Rule 13.1(e) and shall supply a copy of each document referred to in paragraph 1(h). Rule 271 shall apply *mutatis mutandis*. The proprietor in question shall become a party to the revocation proceedings and shall be treated as defendant in all subsequent proceedings. The proprietor shall provide details pursuant to Rule 13.1(e) if not already provided by the claimant.

## Rule 26 – Fee for the Counterclaim for revocation

The defendant shall pay the fee for the Counterclaim for revocation in accordance with Part 6. Rule 15.2 shall apply *mutatis mutandis*.

## Rule 27 – Examination as to formal requirements of the Statement of defence and Counterclaim for revocation

1. The Registry shall, as soon as practicable after the lodging of the Statement of defence:

(a) examine whether the requirements of Rule 24(a) to (d) have been complied with; and

(b) if the Statement of defence includes a Counterclaim for revocation, examine whether the requirements of Rule 25.1(g) and (h), and the obligation to pay the fee pursuant to Rule 26 has been complied with.

2. If the Registry considers that the Statement of defence or the Counterclaim for revocation does not comply with any of the requirements referred to in paragraph 1, it shall as soon as practicable invite the defendant to:

(a) correct the deficiencies noted, within 14 days of service of such notification; and

(b) where applicable, pay the fee for the Counterclaim for revocation, within said 14 days.

3. The Registry shall at the same time inform the defendant that if the defendant fails to correct the deficiencies or pay the fee within the time stated, a decision by default may be given, in accordance with Rule 355.

4. If the defendant fails to correct the deficiencies or to pay the fee for the Counterclaim for revocation, as appropriate, within said 14 days, the Registry shall inform the judge-rapporteur who may give a decision by default. He may give the defendant an opportunity to be heard beforehand.

## Rule 28 – Further schedule

As soon as practicable after service of the Statement of defence, the judge-rapporteur shall, after consulting the parties, set a date and time for an interim conference (where necessary [Rule 101.1]) and set a date for the oral hearing. The judge-rapporteur may set one alternative date.

### DEFENCE TO THE COUNTERCLAIM FOR REVOCATION, REPLY TO THE STATEMENT OF THE DEFENCE AND APPLICATION TO AMEND THE PATENT AND REJOINDER TO THE REPLY

## Rule 29 – Lodging of Defence to the Counterclaim for revocation, Reply to the Statement of defence and Rejoinder to the Reply

(a) Within two months of service of a Statement of defence which includes a Counterclaim for revocation, the claimant shall lodge a Defence to the Counterclaim for revocation together with any Reply to the Statement of defence and any Application to amend the patent pursuant to Rule 30, if applicable.

(b) Within two months of service of a Statement of defence which does not include a Counterclaim for revocation, the claimant may lodge a Reply to the Statement of defence.

(c) Within one month of service of a Reply to the Statement of defence which does not include a Counterclaim for revocation the defendant may lodge a Rejoinder to the Reply to the Statement of defence. The Rejoinder to the Reply to the Statement of defence shall be limited to a response to the matters raised in the Reply to the Statement of defence.

(d) Within two months of service of the Defence to Counterclaim the defendant may lodge a Reply to the Defence to the Counterclaim together with any Rejoinder to the Reply to the Statement of defence and any Defence to an Application to amend the patent pursuant to Rule 32, if applicable.

(e) Within one month of the service of the Reply to the Defence to the Counterclaim, the claimant may lodge a Rejoinder to the Reply together with any Reply to the Defence to an Application to amend the patent pursuant to Rule 32, if applicable. The Rejoinder to the Reply to the Statement of defence shall be limited to a response to the matters raised in the Reply to the Statement of defence.

(f) Where the claimant is not the proprietor of the patent, all references to the claimant in this Rule 29 regarding an Application to amend the patent shall be read as including the proprietor.

## Rule 29A – Contents of the Defence to the Counterclaim

The Defence to the Counterclaim for revocation shall contain:

(a) an indication of the facts relied on, including any challenge to the facts relied on by the defendant;

(b) the evidence relied on [Rule 170.1], where available, and an indication of any further evidence which will be offered in support;

(c) the reasons why the Counterclaim for revocation shall fail, including arguments of law and any argument as to why any dependent claim of the patent is independently valid;

## CHAPTER 2 – INTERIM PROCEDURE

### Rule 101 – Role of the judge-rapporteur (Case management)

1. During the interim procedure, the judge-rapporteur shall make all necessary preparations for the oral hearing. He may in particular, where appropriate, and subject to the mandate of the panel, hold an interim conference with the parties which may be held on more than one occasion and may exercise the powers provided for in Rule 334.

2. The judge-rapporteur shall have the obligation to ensure a fair, orderly and efficient interim procedure.

3. Without prejudice to the principle of proportionality, the judge-rapporteur shall complete the interim procedure within three months of the closure of the written procedure.

*Relation with Agreement: Articles 43 and 52(2)*

### Rule 102 – Referral to the panel

1. The judge-rapporteur may refer any matter to the panel for decision and the panel may of its own motion review any decision or order of the judge-rapporteur or the conduct of the interim procedure.

2. Any party may request that a decision or order of the judge-rapporteur be referred to the panel for a review pursuant to Rule 333. Pending review, the decision or order of the judge-rapporteur shall be effective.

### Rule 103 – Preparation for the interim conference

1. Whether or not the judge-rapporteur decides to hold an interim conference, he may order the parties, within time periods to be specified, in particular to:

(a) provide further clarification on specific points;

(b) answer specific questions;

(c) produce evidence;

(d) lodge specific documents including each party's summary of the orders to be sought at the interim conference.

The judge-rapporteur shall at the same time inform the party concerned that if the party fails to comply with the order within the time period specified, a decision by default may be given in accordance with Rule 355.

2. If a party fails to comply with an order of the judge-rapporteur within the time period specified, the judge-rapporteur may give a decision by default pursuant to Rule 355.

### INTERIM CONFERENCE

### Rule 104 – Aim of the interim conference

The interim conference shall enable the judge-rapporteur to:

(a) identify main issues and determine which relevant facts are in dispute;

(b) where appropriate, clarify the position of the parties as regards those issues and facts;

(c) establish a schedule for the further progress of the proceedings;

(d) explore with the parties the possibilities to settle the dispute or to make use of the facilities of the Centre;

(e) where appropriate, issue orders regarding production of further pleadings, documents, experts (including court experts), experiments, inspections, further written evidence, the matters to be the subject of oral evidence and the scope of questions to be put to the witnesses;

(f) where appropriate, but only in the presence of the parties, hold preparatory discussions with witnesses and experts with a view to properly preparing for the oral hearing;

(g) make any other decision or order as he deems necessary for the preparation of the oral hearing including, after consultation with the presiding judge, an order for a separate hearing of witnesses and experts before the panel;

(h) set a date for any separate hearing pursuant to point (g) of this Rule, confirm the date for the oral hearing and order, where appropriate, after consultation with the presiding judge and the parties that the oral hearing or a separate hearing of witnesses and experts be wholly or partly by video conference in accordance with Rule 112.3;

(i) decide the value of the action in accordance with Rule 370.6.;

(j) decide the value of the proceeding for the purpose of applying the scale of ceilings for recoverable costs (Rule 152.3);

(k) order the parties to submit, in advance of the decision at the oral hearing, a preliminary estimate of the legal costs that they will seek to recover.

*Relation with Agreement: Article 52(2)*

## Rule 105 – Holding the interim conference

1. The interim conference should, where practicable, be held by telephone conference or by video conference.

2. On request by a party, subject to paragraph 1 and the approval of the judge-rapporteur, the interim conference may be held in Court. If the interim conference is held in Court, it shall be open to the public unless the Court decides to make it, to the extent necessary, confidential in the interests of one or both parties or third parties or in the general interests of justice or public order.

3. The judge-rapporteur may hold the interim conference in any language agreed by the parties' representatives.

4. Rule 103 shall apply *mutatis mutandis*.

5. Following the interim conference, the judge-rapporteur shall issue an order setting out the decisions taken.

## PART 2 – EVIDENCE

### Rule 170 – Means of evidence and means of obtaining evidence

1. In proceedings before the Court, the means of evidence shall include in particular the following:

(a) written evidence, whether printed, hand-written or drawn, in particular documents, written witness statements, plans, drawings, photographs;

(b) expert reports and reports on experiments carried out for the purpose of the proceedings;

(c) physical objects, in particular devices, products, embodiments, exhibits, models;

(d) electronic files and audio/video recordings.

2. Means of obtaining evidence shall include in particular the following:

(a) hearing of the parties;

(b) requests for information;

(c) production of documents;

(d) summoning, hearing and questioning of witnesses;

(e) appointing, receiving opinions from, summoning and hearing and questioning of experts;

(f) ordering inspection of a place or a physical object;

(g) conducting comparative tests and experiments;

(h) sworn statements in writing (written witness statements).

3. Means of obtaining evidence shall further include [Article 59 and 60 of the Agreement]:

(a) ordering a party or a third party to produce evidence;

(b) ordering measures to preserve evidence.

### Rule 171 – Offering of evidence

1. A party making a statement of fact that is contested or likely to be contested by the other party shall indicate the means of evidence to prove it. In case of failure to indicate the means of evidence regarding a contested fact, the Court shall take such failure into account when deciding the issue in question.

2. A statement of fact that is not specifically contested by any party shall be held to be true as between the parties.

### Rule 172 – Duty to produce evidence

1. Evidence available to a party regarding a statement of fact that is contested or likely to be contested by the other party must be produced by the party making that statement of fact.

# CHAPTER 3 – ORDER TO PRODUCE EVIDENCE AND TO COMMUNICATE INFORMATION

## ORDER TO PRODUCE EVIDENCE

### Rule 190 – Order to produce evidence

1. Where a party has presented reasonably available and plausible evidence in support of its claims and has, in substantiating those claims, specified evidence which lies in the control of the other party or a third party, the Court may on a reasoned request by the party specifying such evidence, order that other party or third party to produce such evidence. For the protection of confidential information the Court may order that the evidence be disclosed to certain named persons only and be subject to appropriate terms of non-disclosure.

2. During the written and interim procedures, a party may request such an order to produce evidence.

3. The judge-rapporteur may make such order in the written procedure or in the interim procedure having given the other/third party an opportunity to be heard.

4. An order to produce evidence shall in particular specify:

(a) under which conditions, in what form and within what time period the evidence shall be produced;

(b) any sanction which may be imposed if the evidence is not produced according to the order.

5. Where the Court orders a third party to produce evidence, the interests of that third party shall be duly taken into account.

6. An order to produce evidence shall be subject to the provisions of Rules 179.3, 287 and 288. The order shall indicate that an appeal may be brought in accordance with Article 73 of the Agreement and Rule 220.1.

7. If a party fails to comply with an order to produce evidence, the Court shall take such failure into account when deciding on the issue in question.

*Relation with Agreement: Article 59*

## ORDER TO COMMUNICATE INFORMATION

### Rule 191 – Application for order to communicate information

The Court may in response to a reasoned request by a party order the other party or any third party to communicate such information in the control of that other party or third party as is specified in Article 67 of the Agreement or such other information as is reasonably necessary for the purpose of advancing that party's case. Rule 190.1 second sentence, .5 and .6 shall apply *mutatis mutandis*.

*Relation with the Agreement: Article 67*

# EXHIBIT E


**Freshfields Bruckhaus Deringer**

**Ref.: Infringement case**
**ACT_459771/2023**
**UPC_CFI_9/2023**

**Ref.: Cancellation case**
**ACT_586627/2023**
**UPC_CFI_9/2023**

Düsseldorf
Freshfields Bruckhaus Deringer
Rechtsanwälte Steuerberater PartG mbB
Feldmühleplatz 1
40545 Düsseldorf
T +49 211 49 79 0 (Head Office)
    +49 211 4979 356 (direct dial)
F +49 211 49 79 103
E frank-erich.hufnagel@freshfields.com
    stephan.dorn@freshfields.com
    henning.gutheil@freshfields.com
www.freshfields.com

Doc. No.
EUROPE-LEGAL-279840678/11

Our sign
177023-0001 FEH/StD/HGu
N6898-003-UPIEPPe

Unified Patent Court
Court of First Instance
- Local Chamber Munich -
Denisstrasse 3
80335 Munich

STATEMENT OF DEFENSE (R. 23 F. VERFO EPG) AND
COUNTERCLAIM FOR ANNULMENT (R. 25 VERFO EPG) OF
NOVEMBER 17, 2023

Huawei Technologies Co. Ltd
./.
Netgear Inc.

Netgear Germany GmbH

Netgear International Limited

Freshfields Bruckhaus Deringer Rechtsanwälte Steuerberater Partnerschaftsgesellschaft mit beschränkter Berufshaftung (Freshfields Bruckhaus Deringer Rechtsanwälte Steuerberater PartG mbB) has its registered office in Frankfurt am Main and is entered in the partnership register of the Local Court of Frankfurt am Main under registration number PR 2677. Further regulatory information can be found at www.freshfields.com/support/legal-notice.

and qualification are also referred to as "partners".

Ⓦ Freshfields Bruckhaus Deringer

2 | 176

## INFORMATION ACCORDING TO RULE 24 VERFO EPG

| | |
|---|---|
| **Defendant** | **Netgear Inc.** |
| (Rule 24 lit. a) VerfO EPG) | |
| Defendant representative | **Dr. Stephan Dorn** |
| (Rule 24 lit. a) VerfO EPG) | Freshfields Bruckhaus Deringer Rechtsanwälte Steuerberater PartG mbB, Düsseldorf |
| | |
| Postal address for service of the defendant | 350 E Plumeria Dr, San Jose, CA 95134, USA |
| (Rule 24 lit. b) VerfO EPG) | |
| Electronic delivery address | Anna.lam@netgear.com |
| (Rule 24 lit. b) VerfO EPG) | |
| Authorized recipient | **Dr. Stephan Dorn** |
| (Rule 24 lit. b) VerfO EPG) | Freshfields Bruckhaus Deringer Rechtsanwälte Steuerberater PartG mbB, Feldmühleplatz 1, 40545 Düsseldorf, Germany cms.unified-patent-court.org or Stephan.Dorn@freshfields.com |
| | |
| **Defendant** | **Netgear Germany GmbH** |
| (Rule 24 lit. a) VerfO EPG) | |
| Defendant representative | **Dr. Stephan Dorn** |
| (Rule 24 lit. a) VerfO EPG) | Freshfields Bruckhaus Deringer Rechtsanwälte Steuerberater PartG mbB, Düsseldorf |
| | |
| Postal address for service of the defendant | Konrad-Zuse-Platz 1, 81829 Munich |
| (Rule 24 lit. b) VerfO EPG) | |
| Electronic delivery address | Anna.lam@netgear.com |
| (Rule 24 lit. b) VerfO EPG) | |
| Authorized recipient | **Dr. Stephan Dorn** |
| (Rule 24 lit. b) VerfO EPG) | Freshfields Bruckhaus Deringer Rechtsanwälte Steuerberater PartG mbB, Feldmühleplatz 1, 40545 Düsseldorf, Germany cms.unified-patent-court.org or Stephan.Dorn@freshfields.com |

*Continued on next page*

 Freshfields Bruckhaus Deringer

106 | 176

**h)       Request for submission of license agreements**

(389)   Furthermore, at the latest at the interim hearing pursuant to Rule 104 (e) UPC, we will request the applicant to produce <u>the</u> applicant's license agreements with the company

- **Qualcomm**

Freshfields Bruckhaus Deringer

by way of an order for reference pursuant to Rules 170.3 (a), 190 EPC. License agreements with this company may also give rise to external rights in favor of these suppliers of modem chips, which are to be treated as a license in favor of the defendant (see **G.** above).

(390)   In the event of non-compliance with these submission orders, we will apply for the imposition of severe periodic penalty payments pursuant to Art. 82(4) UPCA and other sanctions pursuant to Rule 190.4(b) UPCA against the applicant.

**b)**      **Impermissible conditions**

**aa)**     **Coupling with licensing of non-essential patents**