BENTLEY P. STANSBURY III, CASB No. 229102
bentley.stansbury@kyl.com
KEESAL, YOUNG & LOGAN
400 Oceangate
Long Beach, California 90802
Telephone: (562) 436-2000
Facsimile: (562) 436-7416

DAVID Y. LIVSHIZ (*pro hac vice*)
david.livshiz@freshfields.com
HENRY V. HUTTEN (*pro hac vice*)
henry.hutten@freshfields.com
GRACE W. BRODY (*pro hac vice*)
grace.brody@freshfields.com
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone: (212) 277-4000
Facsimile: (212) 277-4001

*Attorneys for Applicants Netgear Inc.
and Netgear Deutschland GmbH.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| IN RE: *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | CASE NO.: 3:23-MC-00794-BLM<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH TO MODIFY PROTECTIVE ORDER** |

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ................................................................................1

II.   ARGUMENT .........................................................................................................2

   A.  THIS COURT HAS AUTHORITY TO MODIFY THE PROTECTIVE ORDER. ............................................................................................................ 2

   B.  SECTION 1782 CONTAINS NO RESTRICTIONS ON SUBSEQUENT USES OF DISCOVERY MATERIAL OBTAINED PURSUANT TO THE STATUTE. ................................................................................................... 2

   C.  NINTH CIRCUIT PRECEDENT APPLIES HERE AND PLAINLY FAVORS MODIFICATION ................................................................................ 4

      1.  The ███████████████ is Extremely Relevant............................... 5

      2.  Netgear Will Suffer Substantial Prejudice Without Modification. ......................................................................................... 7

      3.  Modification Will Not Prejudice Qualcomm ............................................. 7

   D.  SECTION 1782 ALSO STRONGLY FAVORS MODIFYING THE PROTECTIVE ORDER ........................................................................................ 9

      1.  Section 1782's Elements Are Satisfied ........................................................ 9

      2.  All *Intel* Factors Favor Modification ......................................................... 9

III.   CONCLUSION .................................................................................................. 10

- ii -

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH TO MODIFY BLANKET PROTECTIVE ORDER   CASE NO.: 3:23-MC-00794-BLM

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Advanced Micro Devices, Inc. v. Intel Corp.*,
   292 F.3d 664 (9th Cir. 2002) ................................................................................5

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
   966 F.2d 470 (9th Cir. 1992) ............................................................ 2, 4, 5, 6, 9

*CPC Pat. Techs. PTY Ltd. v. Apple, Inc.*
   2023 U.S. Dist. LEXIS 92666 (N.D. Cal. Jan. 3, 2023) ...................................10

*CPC Patent Techs. PTY Ltd. v. Apple, Inc.*,
   34 F.4th 801 (9th Cir. 2022) ................................................................................2

*Fed. Open Mkt. Comm. of the Fed. Rsrv. Sys. v. Merrill*,
   443 U.S. 340 (1970) ...........................................................................................10

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
   331 F.3d 1122 (9th Cir. 2003) ............................................................. 5, 6, 7, 8, 9

*Glock v. Glock, Inc.*,
   797 F.3d 1002 (11th Cir. 2015) ......................................................................3, 4

*In re Gov't of Ghana*,
   2011 WL 2652755 (W.D. MO. June 6, 2011) ....................................................9

*Infineon Techs. AG v. Green Power Techs. Ltd.*,
   247 F.R.D. 1 (D.D.C. 2005) ................................................................................5

*In re Accent Delight Int'l Ltd.*,
   2017 U.S. Dist. LEXIS 211058 (S.D.N.Y. Dec. 22, 2017) .................................4

*In re Accent Delight Int'l Ltd.*,
   869 F.3d 121 (2d Cir. 2017)............................................................................3, 4

*In re Alpine Partners L.P.*,
   635 F.Supp.3d 900 (N.D. Cal. 2022) ..................................................................9

*In re Bayer AG*,
   146 F.3d 188 (3d Cir. 1998) ..............................................................................10

*In re Kegel*
    67 F. Supp. 3d 1054 (D.N.D. 2014)..............................................................2, 3, 4

*In re Motorola Mobility LLC*,
    2013 WL 831554 (S.D. Cal. Feb. 1, 2013)........................................................10

*In re Roz Trading Ltd.*,
    469 F. Supp. 2d 1221 (N.D. Ga. 2006)..............................................................10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004)............................................................................................9

*Olympic Refining Co. v. Carter*,
    332 F.2d 260 (9th Cir. 1964) .............................................................................9

*Oracle Corp. v. SAP AG*,
    2010 WL 545842 (N.D. Cal. Feb. 12, 2010) ..................................................5, 6

*Palantir Techs., Inc. v. Abramowitz*,
    415 F. Supp. 3d 907 (N.D. Cal. 2019)..............................................................10

*Suraju v. Yahoo!, Inc.*,
    2022 WL 3365086 (N.D. Cal. July 13, 2022) ....................................................9

*United States v. Glob. Fishing, Inc.*
    634 F.3d 557 (9th Cir. 2011) .............................................................................2

**Statutes**

28 U.S.C. § 1782 ........................................................................................ *passim*

- iv -

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH TO MODIFY BLANKET PROTECTIVE ORDER   CASE NO.: 3:23-MC-00794-BLM

Netgear[1] respectfully submits this reply memorandum in further support of its Application (Dkt. No. 22) to modify the blanket Protective Order in this 1782 Proceeding so that Netgear may use documents produced by Qualcomm in the UPC Proceeding.

## I.   PRELIMINARY STATEMENT

Netgear is being sued in the UPC Proceeding for patent infringement based on modem chipsets made and sold by Qualcomm. The parties, the facts, and the relevant law are nearly identical in the UPC Proceeding and the German Proceedings for which Netgear has already been allowed to take Section 1782 discovery from Qualcomm. Netgear seeks to modify the Protective Order to use in the UPC Proceeding just a single, but critical, document—the ▓▓▓▓▓▓▓▓▓▓—already produced by Qualcomm here, subject to the same robust protections already in the Protective Order, and the strict safeguards for any of Qualcomm's confidential information submitted to the UPC.

As Netgear has shown, *see* Mem at 15-16, every court of appeal to consider the issue has held that Section 1782 does not prevent a person who has lawfully obtained Section 1782 discovery from using that discovery in further legal proceedings, without needing to meet Section 1782's requirements for the further proceedings (which are satisfied here in any event). Thus, the Federal Rules—and the Ninth Circuit precedent interpreting them—apply here and heavily favor modification. *See* 28 U.S.C. § 1782(a) (requiring 1782 discovery to be taken "in accordance" with the Federal Rules absent an order otherwise). Yet Qualcomm claims that Netgear should restart discovery in the UPC Proceeding, where Netgear may not be able to obtain the ▓▓▓▓▓▓▓▓▓▓, based on the facially dubious claim that this Court's Protective Order, along with the rules of

---

[1]   Capitalized terms not defined herein have the meaning ascribed to them in Netgear's memorandum of law in support of the Application (the "**Memorandum**" or "**Mem**.," Dkt. No. 22-1). References to an "**Opposition**" or "**Opp.**" are to Qualcomm's memorandum of law in objection to the Application, Dkt. No. 26. References to the "Dorn PO Decl." and the "Dorn Reply Decl." are to the declaration of Stephan Dorn submitted in support of the Application, Dkt. No. 22-2, and the declaration of Stephan Dorn submitted along with this reply memorandum.

the UPC—an international patent court—will not protect Qualcomm's supposed trade secrets. As shown below, neither that nor any other objection to the Application has merit.

## II. ARGUMENT

### A. This Court Has Authority To Modify the Protective Order.

The Ninth Circuit has held that a district court "retained the power to modify [a] protective order" even when the underlying suit "was settled and dismissed." *Beckman Ind. v. Int'l Ins. Co.*, 966 F.2d 470, 471, 473 (9th Cir. 1992);[2] Mem. at n. 10. Qualcomm also stipulated to a Protective Order allowing any party to ask to modify it "*at any time*." PO ¶ 32 (emphasis added). Yet Qualcomm still claims that this Court lacks "jurisdiction to consider" the Application. Opp. at 4-5, 15, 18. The only relevant authority[3] Qualcomm cites in support of this remarkable claim is a single opinion that specifically contemplates that a court might "have continuing jurisdiction" to "enforce any conditions or limitations imposed" by an order issued pursuant to Section 1782. *In re Kegel*, 67 F. Supp. 3d 1054, 1059 (D.N.D. 2014). Here, the Protective Order is full of provisions that allow the parties to seek relief from, enforce, or seek to modify the Protective Order. *See* Mem. at 8 n. 9. Thus, this Court has jurisdiction to amend the Protective Order pursuant to binding precedent, *see* Mem. n. 10, as well as the authority cited by Qualcomm.

### B. Section 1782 Contains No Restrictions on Subsequent Uses of Discovery Material Obtained Pursuant to the Statute.

---

[2] Qualcomm argues that *Beckman* does not control because it was not a Section 1782 case. Opp. at 18. But that makes no difference. If a district court can modify a protective order even after dismissal, it can surely do so after entering a Section 1782 order.

[3] Qualcomm cites two opinions stating that "[o]nce the district court has ruled on the parties' [§ 1782] motion," there "is no further case or controversy." Opp. at 18 (citing *CPC Patent Techs. PTY Ltd. v. Apple, Inc.*, 34 F.4th 801, 806 (9th Cir. 2022) and *United States v. Glob. Fishing, Inc.* 634 F.3d 557, 566 (9th Cir. 2011)). These opinions stand only for the proposition that a Section 1782 case is "final" and thus can be appealed if a district court enters a Section 1782 order and "the only relief sought by [applicant] was court-ordered discovery." *E.g.*, *CPC*, 24 F.4th at 806. They have no bearing on, and do not displace, *Beckman's* holding that the court retained authority to modify a protective order even after the underlying suit was dismissed. *Beckman*, 966 F.2d at 471, 473.

Qualcomm accuses Netgear of trying to "bypass" the requirements of Section 1782. Opp. at 1, 24. But the Second and Eleventh Circuit Courts of Appeal have analyzed Section 1782 thoroughly and determined that once an applicant obtains discovery under the statute, as Netgear has done here, nothing therein prevents the applicant from using the discovery in additional proceedings, even without satisfying Section 1782's requirements for the additional proceedings. Mem. at 15; *In re Accent Delight Int'l Ltd*, 869 F.3d 121, 135 (2d Cir. 2017) ("Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the court orders otherwise"); *Glock v. Glock, Inc.*, 797 F.3d 1002, 1010 (11th Cir. 2015) (Section 1782 "does not preclude, as a matter of law, the use of evidence procured pursuant to it in subsequent" US litigation).

In response, Qualcomm identifies a single opinion, Opp. at 14, in which a district court found it "questionable" whether "evidence obtained for a specific proceeding pursuant to § 1782(a) order can freely be used in other proceedings" absent "express permission" of the court, and without "input" from "the person from whom the evidence was obtained." *Kegel*, 67 F. Supp. at 1058. But here, of course, Netgear has asked for this Court's "express permission" and Qualcomm has provided "input."[4]

Qualcomm also tries to distinguish *Accent Delight* and *Glock* because, in those cases, the applicant either (i) identified the additional foreign proceedings for which it sought discovery in its initial application, Opp. at 16-17, or (ii) sought to use Section 1782 discovery in subsequent US litigation. *Id.* at 17-18. Neither fact makes a difference: in each case, the courts held that Section 1782 is silent on the subsequent use of discovery

---

[4] The court in *Kegel* stated that Section 1782's authorization of discovery for "use in *a* proceeding" is "some suggestion that any order issued by the federal court would be limited to the specific proceeding . . . for which the evidence is sought when the request for the § 1782(a) order is made." 67 F.Supp.3d at 1057. But the fact that an applicant must show that discovery is for use in "at least one specific proceeding" has "no bearing on the question" of "what, if any limits Section 1782 places on an applicant's ability to use the discovery obtained under the statute *after* it has lawfully been obtained for use in one particular forum." *Accent Delight*, 869 F.3d at 133; *Accord Glock*, 797 F.3d at 1006.

- 3 -

obtained under the statute, that the Federal Rules applicable in Section 1782 proceedings impose no limits on such use, and that Section 1782 therefore does not prevent an applicant from using lawfully obtained Section 1782 discovery in additional proceedings. *See Glock* 797 F.3d at 1007-10; *Accent Delight*, 869 F.3d at 133-35. As proof, at least one court, in reliance on these cases, permitted the use of 1782 discovery in non-US proceedings *beyond* those named in a 1782 application, even when, as here, the 1782 protective order initially barred the applicants from doing so, and without requiring 1782's requirements to be met for the new proceedings. *In re Accent Delight Int'l Ltd.*, 2017 U.S. Dist. LEXIS 211058, at *2, *4-9 (S.D.N.Y. Dec. 22, 2017) (allowing 1782 discovery to be used in UK and Swiss lawsuits when the 1782 application sought discovery only for use in lawsuits in Monaco, France and Singapore, and the initial protective order barred applicants from using discovery "in other legal proceedings").[5]

### C.  Ninth Circuit Precedent Applies Here and Plainly Favors Modification.

Since Section 1782 is silent on later uses of discovery that have been obtained under the statute, the Federal Rules govern. *See Accent Delight*, 869 F.3d at 134-35; *Glock*, 797 F.3d at 1007-10. Thus, Ninth Circuit precedent interpreting those Rules applies here, and "strongly favors" modification of protective orders "to meet the needs of parties in pending litigation." Mem. at 10 (quoting *Beckman*, 966 F.2d at 475 and *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003)). If, as here, discovery is relevant to a collateral lawsuit and "restrictions on collateral disclosure will continue to protect . . . legitimate interests in privacy," requests to modify protective orders "should generally be granted." *Id.* at 10 (quoting *Foltz*, 331 F.3d at 1132).

Qualcomm claims *Foltz* and *Beckman* are not binding because they were not Section 1782 proceedings, and the animating purpose of these decisions—"advanc[ing]

---

[5]  This decision, cited Mem. at 16, guts Qualcomm's claims that "*Kegel* is the only case found by Qualcomm" that addresses "whether a district court, after having granted a Section 1782 application for discovery for use in one foreign tribunal has authority to make a further order allowing the discovery to be used in a different foreign tribunal" and that "[n]one of the cases cited by Netgear are applicable" here. Opp. at 12, 5.

- 4 -

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH TO MODIFY BLANKET PROTECTIVE ORDER    CASE NO.: 3:23-MC-00794-BLM

the interests of judicial economy by avoiding the wasteful duplication of discovery," *Foltz*, 331 F.3d at 1131; *Beckman*, 966 F.2d at 475—"does not extend to foreign jurisdictions." Opp. at 18-19. Not so. The "twin aims of Section 1782" include "providing *efficient assistance* to participants in international litigation." *Advanced Micro Devices v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002) (emphasis added). Efficiency animates both Section 1782 and *Foltz* and weighs against requiring Netgear to propound new discovery requests in the UPC, just to seek discovery that Netgear already obtained here.

More fundamentally, *Foltz* and *Beckman* relied on the Federal Rules of Civil Procedure to render decisions favoring the modification of protective orders so that documents could be used in collateral litigation. *Foltz,* 331 F.3d at 1133 (instructing district courts to consider whether a party opposing modification has shown "good cause" for protection as "required by Rule 26(c)"); *Beckman*, 966 F.2d at 476 (analyzing whether "good cause" existed for protection under "the Rule 26(c) test"). And Section 1782 discovery proceeds "in accordance with the Federal Rules of Civil Procedure" unless this Court orders otherwise, 28 U.S.C. § 1782(a), which it has not done here. Thus, *Foltz* and *Beckman* are equally applicable to, and binding on, the Application here. *See Oracle Corp. v. SAP AG*, 2010 WL 545842, at *3 (N.D. Cal. Feb. 12, 2020) ("Foltz rather than § 1782 governs" a request to amend a protective order so documents can be used abroad); *Infineon Techs. AG v. Green Power Techs. Ltd.*, 247 F.R.D. 1, 4 (D.D.C. 2005) (similar).[6] Critically, *Foltz* and *Beckman* overwhelmingly favor modifying the Protective Order.

### 1. The ▬▬▬▬▬▬▬▬▬▬ is Extremely Relevant.

The UPC Proceeding and the German Proceedings (for which Qualcomm agreed to produce documents) involve nearly identical parties, the same accused devices, similar

---

[6] Qualcomm argues that, even under *Oracle's* reasoning, Section 1782 applies "to court orders for new discovery to be conducted exclusively for use in a foreign proceeding." Opp. at 19-20 (quoting *Oracle*). Netgear is not requesting "new discovery" here. Qualcomm also claims Section 1782 is "at least 'worthy of consideration'" . Opp. at 20. Netgear agrees that Section 1782 can be considered here, but that hardly means that *Foltz* and *Beckman* lack the force of binding precedent.

1  patents, and the same relevant law. Mem. at 5-6; Dorn PO Decl. ¶¶ 10-11. The accused
2  devices in the UPC and German Proceedings allegedly violate Huawei's patents by
3  incorporating modem chipsets sold by Qualcomm. Thus, ████████████████████
4  ████████████████████████████████████████████████████████████████████
5  ████████████████████████████████████████████████—allow
6  Netgear to show that Huawei has exhausted its patent rights. *See* Mem. at 5-6; Dorn PO
7  Decl. ¶¶ 8, 10-11. Thus, the ████████████████ is relevant to, and critical for,
8  Netgear's defense of the UPC Proceeding. Dorn PO Decl. ¶ 11; Dorn Reply Decl. ¶ 20.
9      Qualcomm—without support from a German- or UPC-qualified lawyer—argues
10  that the ████████████████████████████████████████████████████████████
11  ████████████████████████████████ Opp. at 10, 21. That is wrong.
12  Under German law, when covenants provide a licensee with broad-based protections
13  from a patent holder's lawsuit, the licenses they create are not limited to the particular
14  patents covered by the agreement containing the covenants, or even to the general subject
15  matter to which these patents relate. Dorn Reply Decl. ¶ 21. And Qualcomm does not
16  contest Netgear's showing that the UPC will follow German law here. Mem. at 6; Dorn
17  PO Decl. ¶ 10. Thus, the ████████████████████████████████████████
18  ████████████████, Dorn Reply Decl. ¶¶ 22-23—is relevant to the UPC Proceeding,
19  no matter whether ████████████████████████. *Id.* ¶¶ 21-24. This more than suffices
20  to show that Netgear seeks modification to meet its reasonable litigation needs in the
21  UPC Proceeding. *See* Mem. at 11-12; *Foltz*, 331 F.3d at 1132-1133 (courts should make
22  "only a rough estimate of relevance" to determine "whether the protective order will bar
23  the collateral litigants from gaining access to the discovery already conducted.").[7]

---

[7]  Finally, Netgear has already submitted the ████████████████ to the German Appellate Court in support of its exhaustion defense, *see* Dorn PO Decl. ¶ 8, and has spent valuable resources asking permission to do the same in the UPC Proceeding. Netgear plainly would not have done this if the ████████████████████ was irrelevant.

**2.      Netgear Will Suffer Substantial Prejudice Without Modification.**

As Netgear has shown, (i) it is unclear whether the UPC's rules allow it to order Huawei to produce the ███████████████, and (ii) the UPC's rules do not authorize the UPC to force Huawei to produce this document; the UPC can only draw an adverse inference from Huawei's refusal to do so. *See* Mem. 6-7; Dorn PO Decl. ¶ 15.

Qualcomm does not engage with these points, except to call them "unsupported." Opp. at 3. Which provides no reason to accept Qualcomm's bald conclusion that the ███ ███████████ "is available directly from Huawei in the UPC proceeding." Opp. at 12, 22. On the contrary, the UPC rules require Netgear to substantiate its request for the ███████████████ with "evidence" of what the document will prove. Dorn Reply Decl. ¶ 6. But the Protective Order prevents Netgear from referring to the content of the ███████████████ in the UPC Proceeding, *see* PO ¶¶ 3, 13, which will hinder Netgear's ability to substantiate its document request,[8] or to make arguments about what inferences the UPC should draw if Huawei refuses to comply with a production order, particularly because exhaustion depends on the specific wording of the covenants in a license agreement. Dorn Reply Decl. ¶¶ 6-9. Thus, without modification of the Protective Order, there is a very real risk that Netgear would be deprived of the chance to show the UPC that Huawei had exhausted its patent rights, or even argue that the UPC should infer as much in light of Huawei's refusal to produce the ███████████████. *Id.*

**3.      Modification Will Not Prejudice Qualcomm**

Qualcomm argues that granting the Application would impose an undue risk of exposing its trade secrets. *See* Opp. at 24-25. Qualcomm's entire argument is based on its claim that, in the UPC, "court records" are "open to the public" and can be viewed by "unknown persons" and "others." *Id.* at 1, 3, 20, 25. This is wrong. Netgear cannot provide Qualcomm's Designated Material to the UPC unless it submits the ███████ ███████ as evidence or includes it (or information derived therefrom) in a pleading or

---

[8] The UPC also can decline to order production, *even if* Netgear properly substantiates its request. *See* Dorn Reply Decl. ¶ 8.

- 7 -

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH TO MODIFY BLANKET PROTECTIVE ORDER   CASE NO.: 3:23-MC-00794-BLM

1   other writing filed with that court. Dorn Reply Decl. ¶ 13. And, critically, the UPC's rules
2   establish that these records are *not available* to the public unless someone makes a motion
3   on notice to Netgear seeking access. *Id.*[9] Indeed, the UPC recently issued an order
4   authorizing a litigant to seek confidentiality protections "in the event" that "third parties"
5   requested a "access to the file." *Id.* ¶¶ 12-13. And, as required by the Protective Order,
6   Netgear will request confidentiality protections when it submits any Designated Material
7   to the UPC, and the UPC rules allow for robust protections. *See id.* ¶ 14; Dorn PO Decl.
8   ¶¶ 12-13. This will protect any Qualcomm confidential information that Netgear submits
9   to the UPC, *even if* a third party requests access. *See* Dorn Reply Decl. ¶¶ 10-14.[10]

10      Thus, any risk to Qualcomm's trade secrets from Netgear's use of the ▇▇▇▇▇▇
11  ▇▇▇▇▇▇ in the UPC Proceeding are more than adequately addressed by this Court's
12  Protective Order and the protections in the UPC Proceeding.[11] *See Foltz*, 331 F.3d at 1133
13  ("[A]ny legitimate interest . . . in continued secrecy" can "be accommodated by placing
14  [the collateral litigants] under the same restrictions on use and disclosure contained in the
15  original protective order."); *Olympic Refining Co. v. Carter*, 332 F.2d 260, 266 (9th Cir.
16  1964) (allowing modification of protective order to use discovery in collateral litigation
17  "subject to reasonable restrictions as to disclosure" even when "information contained"

---

[9]  In any event, Qualcomm claims that the "financial and business information" in the ▇▇▇▇▇▇▇▇▇▇▇▇ deserve protection, Opp. at 9, but has redacted *all* the financial terms from the 2020 License Agreement that it produced to Netgear, *see* Dorn Reply Decl. Ex. B, negating the risk of disclosure of these terms.

[10] Contrary to Qualcomm's aspersions on the UPC's "willingness or ability to enforce" its confidentiality orders, Opp. at 3, 10, 18, the UPC has just last month issued an order requiring confidential treatment of trade secrets and limiting access to such secrets to the parties' attorneys of record and only three employees of the party litigating against the entity whose trade secrets are being protected. Dorn Reply Decl. ¶¶ 11-12.

[11] Qualcomm accuses Netgear of "recklessly" risking exposure of its trade secrets by filing the Application here without first asking the UPC to put a "protective order[] . . . in place." Opp. at 2, 4, 23, 25. This accusation is full of hyperbole, but bereft of common sense: it would be absurd to ask the UPC to seal Designated Material that Netgear has not submitted (and currently cannot submit) to the UPC. *See* Dorn Reply Decl. ¶¶ 15-19.

- 8 -

therein constituted "trade secrets or sensitive competitive information").

In sum, *Foltz* and *Beckman* overwhelmingly favor modification here.

### D. Section 1782 Also Strongly Favors Modifying the Protective Order

Netgear has shown that Section 1782 also strongly favors modification of the Protective Order. Mem. at 14-20. Qualcomm does not show otherwise.

#### 1. Section 1782's Elements Are Satisfied

Qualcomm argues that the ▮▮▮▮▮▮▮▮▮▮▮▮ is not relevant to, and therefore not "for use" in the UPC Proceeding. Opp. at 21. As shown above, the 2020 License Agreement is highly relevant, which satisfies the "for use" requirement. Mem. at 16-17; *In re Alpine Partners L.P.*, 635 F.Supp.3d 900, 908 (N.D. Cal. 2022) ("To be 'for use' in a foreign proceeding, the information sought must be relevant, and courts should be permissive in interpreting that standard."); *Suraju v. Yahoo!, Inc.*, 2022 WL 3365086, at *5 (N.D. Cal. July 13, 2022) ("Courts are permissive in construing whether discovery sought is relevant to the claims and defenses at issue in the foreign tribunal.").

#### 2. All *Intel* Factors Favor Modification

Netgear has shown that all four *Intel* factors favor modifying the Protective Order. Mem. at 17-20. Qualcomm does not challenge the second or third factors but contends that Netgear can obtain the ▮▮▮▮▮▮▮▮▮▮▮▮ in the UPC Proceeding, and that modifying the Protective Order would be unduly burdensome because Qualcomm's confidential information would be exposed. Opp. at 22-24. Both claims lack merit.

*First*, Qualcomm's claim that Netgear can obtain "discovery directly from Huawei in the UPC," *id.* at 24, ignores the real risks described above that Netgear will not be able to do so, to its substantial detriment. Thus, the first *Intel* factor favors modifying the Protective Order. *In re Gov't of Ghana*, 2011 WL 2652755, at *5 (W.D. MO. June 6, 2011) (granting discovery when, as here, it "is the surest way to ensure that [applicant] obtains the discovery it seeks"); *In re Roz Trading Ltd.*, 469 F. Supp. 2d 1221, 1230 (N.D. Ga. 2006) ("Discovery is particularly appropriate where, as here, the practical availability of documents requested through other means of discovery is uncertain."). *See also In re*

*Motorola Mobility LLC*, 2013 WL 831554, at *2 (S.D. Cal. Feb. 1, 2013) (rejecting Qualcomm's argument that applicant should first have requested documents in the non-US proceeding and noting that "there is no requirement to seek discovery from a party to the foreign litigation before seeking Section 1782 discovery from a third party.").[12]

*Second*, as shown above, any of Qualcomm's confidential information will be more than adequately protected by the Protective Order and strict protections in the UPC Proceeding. Thus, Qualcomm's claim that modification of the Protective Order is unduly burdensome, *see* Opp. at 23-24, should be rejected.[13] *See CPC Patent Techs. PTY Ltd. V. Apple, Inc.*, 2023 U.S. Dist. LEXIS 92666, at *13 (N.D. Cal. Jan. 3, 2023) (a "stipulated protective order" in the 1782 proceeding would "protect any confidential information," even when, unlike here "the protections that would be afforded in [the non-US] court are unknown"); *Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 917 (N.D. Cal. 2019) (confidential nature of discovery did not weigh against discovery where, as here, "[t]he protective order" in the 1782 action "binds [the parties]," and the applicant "provided evidence" that the non-US court "has strict confidentiality rules").

## III.   CONCLUSION

For the foregoing reasons, and those in Netgear's initial Memorandum, Netgear respectfully requests that the Court (i) modify the Protective Order to include the UPC Proceeding in the definition of "Foreign Actions," as reflected in Exhibit E to the Hutten PO Declaration, and (ii) grant such other relief as this Court deems just and proper.

---

[12]   *Accord In re Bayer AG*, 146 F.3d 188, 195-96 (3d Cir. 1998) (Rejecting "quasi-exhaustion" argument that Bayer could have gone to Spanish Court to seek production of materials before coming to the United States and invoking § 1782).

[13]   For the same reason, the Court should reject Qualcomm's claim that the documents it already produced voluntarily to Netgear are not discoverable because they contain trade secrets. S*ee* Opp. at 21-22; *Fed. Open Mkt. Comm. of the Fed. Rsrv. Sys. v. Merrill*, 443 U.S. 340, 362 (1970) ("there is no absolute privilege for trade secrets and similar confidential information."); *In re CPC*, 2023 U.S. Dist. LEXIS, at *13 (rejecting the claim that there is a "source code exception to Section 1782" that protects confidential information from disclosure, when, as here, a 1782 protective order would suffice).

- 10 -

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH TO MODIFY BLANKET PROTECTIVE ORDER           CASE NO.: 3:23-MC-00794-BLM

DATED: December 1, 2023

/s/ *Bentley P. Stansbury*
Bentley P. Stansbury III
KEESAL, YOUNG & LOGAN

David Y. Livshiz (*pro hac vice*)
Henry V. Hutten (*pro hac vice*)
Grace W. Brody (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER US LLP

*Attorneys for Applicants Netgear Inc. and Netgear Deutschland GmbH*