

BENTLEY P. STANSBURY III, CASB No. 229102
bentley.stansbury@kyl.com
KEESAL, YOUNG & LOGAN
400 Oceangate
Long Beach, California 90802
Telephone:  (562) 436-2000
Facsimile:   (562) 436-7416

DAVID Y. LIVSHIZ (*pro hac vice*)
david.livshiz@freshfields.com
HENRY V. HUTTEN (*pro hac vice*)
henry.hutten@freshfields.com
GRACE W. BRODY (*pro hac vice*)
grace.brody@freshfields.com
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone:  (212) 277-4000
Facsimile:   (212) 277-4001

*Attorneys for Applicants Netgear Inc.*
*and Netgear Deutschland GmbH.*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

IN RE: *EX PARTE* APPLICATION OF
NETGEAR INC. AND NETGEAR
DEUTSCHLAND GMBH FOR AN
ORDER PURSUANT TO 28 U.S.C.
§ 1782 TO OBTAIN DISCOVERY FOR
USE IN FOREIGN PROCEEDINGS

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.: 3:23-MC-00794-BLM

*EX PARTE* APPLICATION OF
NETGEAR INC. AND NETGEAR
GMBH TO MODIFY PROTECTIVE
ORDER

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, pursuant to the Rule VIII of the Hon. Barbara Lynn Major's Chambers Rules-Civil Cases (the "**Chamber Rules**") and Civil Local Rule 83.3.g, Netgear Inc. and Netgear Deutschland GmbH (together, "**Netgear**") hereby apply to this Court *ex parte* for an order modifying the blanket protective order (the "**Protective Order**," or "**PO**," Dkt. No. 20)[1] in the above-captioned miscellaneous proceeding (the "**1782 Proceeding**") so that Netgear may use documents already produced by Qualcomm Incorporated ("**Qualcomm**") in a lawsuit (the "**UPC Proceeding**") pending in the local division of Unified Patent Court (the "**UPC**") in Munich, Germany. Netgear makes this *ex parte* application (the "**Application**") for good cause in light of its need to use these documents in its statement of defense in the UPC Proceeding, which must be filed by November 17, 2023.

This Application is based upon the information herein, the accompanying Declarations of Henry V. Hutten (the "**Hutten PO Decl.**") and Stephan Dorn (the "**Dorn PO Decl.**") in Support of Netgear's Application, and the accompanying Memorandum of Points and Authorities. As shown in those documents, Netgear has acted diligently in seeking modification of the Protective Order and, through no fault of its own, will suffer substantial prejudice if its Application is heard by regularly noticed motion procedures.

In particular, Netgear is a defendant in the UPC Proceeding, but was not served with the complaint for that Proceeding until August 7, 2023, *see* Dorn PO Decl. ¶ 9, nearly two months after it commenced this Section 1782 Proceeding on June 14, 2023 seeking discovery from Qualcomm pursuant to 28 U.S.C. § 1782 ("**Section 1782**") for use in two patent-infringement lawsuits pending against Netgear in the national courts of Germany (the "**German Proceedings**"). *See* Dorn PO Decl. ¶¶ 4-6. Thus, Netgear

---

[1] References to a "Dkt. No." or "Dkt. Nos." that are unaccompanied by a case captioned are to the ECF docket numbers in this 1782 Proceeding.

could not have requested to use Qualcomm's documents in the UPC Proceeding when it filed its original application (the "**1782 Application**").

This Court granted the 1782 Application on August 31, 2023, *see* Dkt. No. 17, and Netgear served a document subpoena (the "**1782 Subpoena**") on Qualcomm the same day. *See* Hutten PO Decl. ¶ 4 & Ex A. Qualcomm served its responses to the 1782 Subpoena on September 14, 2023, in which it agreed to produce certain responsive documents subject to a protective order. *See id.* ¶ 4 & Ex B at 3, 7, 8. From the outset of the negotiation of the stipulated Protective Order, Netgear informed Qualcomm that it sought to use in the UPC Proceeding the same documents that Qualcomm produced here. Qualcomm would not agree. *See id.* ¶ 5 & Ex. C at 1-2, 8-9.

In an effort to avoid burdening Qualcomm and this Court unnecessarily, Netgear agreed with Qualcomm's suggestion to stipulate to the current Protective Order (which does not allow Netgear to use Qualcomm's discovery material in the UPC Proceeding, *see* PO ¶¶ 3, 13) and to seek amendment of the Protective Order at a later date if necessary—with the potential agreement of Qualcomm. *See id.* ¶ 6 & Ex. C at 1. This way, Netgear would press its request to modify the Protective Order only if the documents Qualcomm produced were relevant to the UPC Proceeding. *See id.* ¶ 6.

Qualcomm did not produce documents until October 24, 2023, *see* Hutten PO Decl. ¶ 7 & Ex. D. at 10, a date that, on its own, would not have allowed Netgear to have this Application heard on a regularly noticed motion before its November 17, 2023 deadline to file its statement of defense in the UPC Proceeding. *See* Local Civil Rule 7.1(e)(1). Netgear diligently reviewed the documents produced by Qualcomm and informed Qualcomm on October 25, 2023—the day after Qualcomm produced documents—that Netgear still sought to use documents in the UPC Proceeding. *See* Hutten PO Decl. ¶ 7 & Ex. D at 7. Qualcomm informed Netgear on October 26, 2023 that it still would not agree. *Id.* ¶ 7 & Ex. D at 6-7. Despite Netgear's diligent and numerous attempts over the next 12 days to convince Qualcomm to agree to modify the Protective Order, Qualcomm has not changed its position. *See id.* at ¶ 7 & Ex. D at 2-6.

In light of the November 17, 2023 deadline to file its statement of defense in the UPC Proceeding, Netgear informed Qualcomm on November 7, 2023 that it believed that the parties were at an impasse, and that Netgear intended to seek court relief if the parties could not reach an agreement by November 8, 2023. *See id.* ¶ 8 & Ex. D at 2. On November 8, 2023, Netgear informed Qualcomm that it intended to file this *ex parte* Application on November 9, 2023. *See id.* ¶ 8 & Ex. D at 1.

As explained in the accompanying Memorandum of Points and Authorities and Dorn PO Declaration, the UPC Proceeding involves the same parties, concerns the same claims, is based on same facts, and is governed by similar law as the German Proceedings. *See* Dorn PO Decl. ¶¶ 9-10. As a result, certain of the discovery material that Qualcomm has produced for Netgear's use in the German Proceedings is also critically relevant to, and potentially dispositive of, Netgear's defense to the UPC Proceedings. *Id.* ¶¶ 9-11.

But the Protective Order currently allows Netgear to submit documents produced by Qualcomm (and any information derived therefrom) only in this Section 1782 Proceeding and the German Proceedings. *See* PO ¶¶ 3, 13, 19.e, 23-24. Therefore, unless this Court is able to hear this Application and render an order before the November 17, 2023 deadline—which cannot happen on a regularly noticed motion— Netgear will be deprived of the opportunity to present a factual basis for its defense when it files its statement of defense in the UPC Proceeding. *See* Dorn Decl. ¶ 11.

As a result, Netgear is entitled to have this Application heard on an *ex parte* basis. *See Testone v. Barlean's Organic Oils, LLC*, 2020 U.S. Dist. LEXIS 95131, at *7 (S.D. Cal. May 29, 2020) (movant was entitled to be heard *ex parte* when, as here, it acted "expeditiously" and "addressed 'why the regular noticed motion procedures must be bypassed.'"); *Sleep No. Corp. v. Sizewize Rentals, LLC*, 2019 WL 12536127, at *1, *3 (C.D. Cal. Sept. 26, 2019) (movant was entitled to be heard *ex parte* when seeking to amend a protective order to use documents in collateral litigation when, as here, there was "no indication of gamesmanship or attempting to create tactical advantage" and the

1   "expedited timeline" of the collateral proceeding necessitated the *ex parte* process).

2       Netgear respectfully requests that the Court set a briefing schedule for this

3   Application that will allow it to render a decision before November 17, 2023.

4

5   DATED:  November 9, 2023

6                                       /s/   Bentley P. Stansbury, III

7                                       BENTLEY P. STANSBURY III
                                        KEESAL, YOUNG & LOGAN
8

9                                       DAVID Y. LIVSHIZ (*pro hac vice*)
                                        HENRY V. HUTTEN (*pro hac vice*)
10                                      GRACE W. BRODY (*pro hac vice*)
                                        FRESHFIELDS BRUCKHAUS DERINGER US
11                                      LLP

12

13                                      *Attorneys for Applicants Netgear Inc. and*
                                        *Netgear Deutschland GmbH*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case Name:   *In Re Ex Parte Application of Netgear Inc. and Netgear Deutschland GMBH for an Order pursuant to 28 USC 1782 to obtain discovery for use in foreign proceedings*
Case No.:       3:23-mc-00794-BLM
KYL File No.: 8882-1

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is Keesal, Young & Logan, 400 Oceangate, Suite 1400, Long Beach, California  90802.

On November 9, 2023, I served the foregoing documents described as ***EX PARTE APPLICATION OF NETGEAR INC. AND NETGEAR GMBH TO MODIFY PROTECTIVE ORDER*** on the parties in this action as follows:

| | |
|---|---|
| David A Kays<br>Donn Waslif<br>Freeda Y. Lugo<br>**MORGAN FRANICH FREDKIN SIAMAS & KAYS LLP**<br>333 W. San Carlos Street<br>Suite 1050<br>San Jose, CA 95110<br>(408)288-8288<br>Fax: (408)288-8325<br>Email: dkays@mffmlaw.com<br>dwaslif@mffmlaw.com<br>flugo@mffmlaw.com<br>mbatalla@mffmlaw.com<br>avillafana@mffmlaw.com | Attorneys for Respondent, QUALCOMM INCORPORATED |

☑       BY OVERNIGHT DELIVERY:  I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the above-named persons at the addresses exhibited therewith.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

Executed on November 9, 2023 at Long Beach, California.

I declare under penalty of perjury under the laws of the State of California and United States of America that the foregoing is true and correct.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_____
CASEY L. THOMAS

- 1 -

1
2
3
4

BENTLEY P. STANSBURY III, CASB No. 229102
bentley.stansbury@kyl.com
KEESAL, YOUNG & LOGAN
400 Oceangate
Long Beach, California 90802
Telephone:   (562) 436-2000
Facsimile:   (562) 436-7416

5
6
7
8
9
10

DAVID Y. LIVSHIZ (*pro hac vice*)
david.livshiz@freshfields.com
HENRY V. HUTTEN (*pro hac vice*)
henry.hutten@freshfields.com
GRACE W. BRODY (*pro hac vice*)
grace.brody@freshfields.com
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone:   (212) 277-4000
Facsimile:   (212) 277-4001

11
12

*Attorneys for Applicants Netgear Inc.*
*and Netgear Deutschland GmbH.*

13

**UNITED STATES DISTRICT COURT**

14

**SOUTHERN DISTRICT OF CALIFORNIA**

15
16
17
18
19
20
21
22
23

IN RE: *EX PARTE* APPLICATION OF
NETGEAR INC. AND NETGEAR
DEUTSCHLAND GMBH FOR AN
ORDER PURSUANT TO 28 U.S.C.
§ 1782 TO OBTAIN DISCOVERY FOR
USE IN FOREIGN PROCEEDINGS

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.: 3:23-MC-00794-BLM

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF *EX
PARTE* APPLICATION OF
NETGEAR INC. AND NETGEAR
DEUTSCHLAND GMBH TO
MODIFY PROTECTIVE ORDER**

24
25
26
27
28

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ................................................................1

II.    FACTUAL BACKGROUND...................................................................3

   A.   THE GERMAN PROCEEDINGS.........................................................3

   B.   THE UPC PROCEEDING. ..................................................................5

   C.   QUALCOMM'S REFUSAL TO MODIFY THE PROTECTIVE ORDER. .........7

III.   REQUESTED RELIEF .........................................................................9

IV.    ARGUMENT .......................................................................................9

   A.   MODIFICATION IS PLAINLY MERITED BY BINDING NINTH
      CIRCUIT PRECEDENT ...................................................................10

        1.   The Documents At Issue Are Relevant to the UPC
           Proceeding. ........................................................................11

        2.   Qualcomm Has No Reliance or Other Valid Interests
           that Will Be Harmed By the Limited Modification
           Sought Here.  Netgear Will Suffer Substantial Prejudice
           Without Modification.........................................................12

   B.   SECTION 1782 ALSO STRONGLY FAVORS MODIFYING THE
      PROTECTIVE ORDER ....................................................................14

        1.   Section 1782 Contains No Restrictions on Subsequent
           Uses of Discovery Material Obtained Pursuant to the
           Statute.................................................................................15

        2.   The Merits of Section 1782 Strongly Favor
           Modification .......................................................................16

V.     CONCLUSION....................................................................................20

- ii -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR
DEUTSCHLAND GMBH TO MODIFY PROTECTIVE ORDER    Case No. 3:23-MC-00794-BLM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**                                             **Page(s)**

*Advanced Micro Devices, Inc. v. Intel Corp.,*
292 F.3d 664 (9th Cir. 2002) ............................................................17

*Beckman Indus., Inc. v. Int'l Ins. Co.,*
966 F.2d 470 (9th Cir. 1992) ........................................... 9, 10, 11, 12

*CBS Interactive, Inc. v. Etilize, Inc.,*
257 F.R.D. 195 (N.D. Cal. 2009)........................................................10

*Euromepa S.A. v. R. Esmerian, Inc.,*
51 F.3d 1095(2d Cir. 1995)................................................................19

*Foltz v. State Farm Mut. Auto. Ins. Co.,*
331 F.3d 1122 (9th Cir. 2003) ................................... 2, 10, 11, 13, 14

*Glock v. Glock, Inc.,*
797 F.3d 1002 (11th Cir. 2005) .........................................................15

*Infineon Techs AG v. Green Power Techs Ltd.,*
247 F.R.D. 1 (D.D.C. 2005)..................................................... 12, 13, 15

*In re Accent Delight Int'l Ltd.,*
2017 U.S. Dist. LEXIS 211058 (S.D.N.Y. Dec. 22, 2017) ........................15, 16

*In re Accent Delight Int'l Ltd.,*
869 F.3d 121 (2d Cir. 2017)................................................................15

*In re Daimler AG,*
2021 WL 3852729 (S.D. Cal. Aug. 27, 2021) ...........................................17, 19

*In re LG Elecs. Deutschland GmbH,*
2012 WL 1836283 (S.D. Cal. May 21, 2012) ...................................17

*In re Malev Hungarian Airlines,*
964 F.2d 97 (2d Cir. 1992) ................................................................18

*In re Motorola Mobility, LLC,*
2012 WL 4936609 (N.D. Cal. Oct. 17, 2012) ...................................19

- iii -

*In re Nokia Techs. Oy*,
    2022 WL 788702 (S.D. Cal. Mar. 15, 2022) ......................................................17

*In re Porsche Automobil Holding, S.E.*,
    2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) .....................................................19

*In re Smith*,
    2012 WL 12885234 (S.D. Cal. Oct. 9, 2012) ..............................................16, 18

*Intel Corp v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ......................................................................................3, 16

*John Deere Ltd. v. Sperry Corp.*,
    754 F.2d 132 (3d Cir. 1985) ...............................................................................18

*Kraszewski v. State Farm Gen. Ins. Co.*,
    139 F.R.D. 156 (N.D. Cal. 1991)...................................................... 11, 12, 13, 14

*Olympic Refining Co. v. Carter*,
    332 F.3d 260 (9th Cir. 1964) ..................................................................10, 12, 14

*Oracle Corp. v. SAP AG*,
    2010 WL 545842 (N.D. Cal. Feb. 12, 2010) .........................................11, 12, 14

*Palantir Techs., Inc. v. Abramowitz*,
    415 F. Supp. 3d 907 (N.D. Cal. 2019).................................................................19

*Sleep Number Corp. v. Sizewise Rentals LLC*,
    2019 WL 12536127 (C.D. Cal. Sept. 26, 2019) ..................................................12

*United Nuclear Corp. v. Cranford Ins. Co.*,
    905 F.2 1424 (10th Cir. 1990) ............................................................................10

*Verizon Cal. Inc. v. Ronald A. Katz Tech. Licensing, L.P.*,
    214 F.R.D. 583 (C.D. Cal. 2003).............................................. 7, 9, 10, 11, 12, 13

*Weber v. Finker*,
    554 F.3d 1379 (11th Cir. 2009) ..........................................................................17

**Statutes**

28 U.S.C. § 1782 ............................................................................... *passim*

Applicants Netgear Inc. and Netgear Deutschland GmbH (together, "**Netgear**") respectfully seek an order modifying the blanket protective order (the "**Protective Order**," or "**PO**," Dkt. No. 20) in the above-captioned miscellaneous proceeding (the "**1782 Proceeding**") so that Netgear may use documents already produced by Qualcomm Incorporated ("**Qualcomm**") in a lawsuit (the "**UPC Proceeding**") pending in the local division of Unified Patent Court (the "**UPC**") in Munich, Germany. Netgear makes this *ex parte* application (the "**Application**") for good cause in light of its need to use these documents in its statement of defense, which must be filed in the UPC Proceeding on November 17, 2023.

## I.    PRELIMINARY STATEMENT

Netgear has obtained discovery from Qualcomm pursuant to 28 U.S.C. § 1782 ("**Section 1782**") in this 1782 Proceeding for use in lawsuits in the national courts of Germany (the "**German Proceedings**"). In the German Proceedings, Huawei Technologies Co. Ltd. ("**Huawei**"), contends that certain access points[1] made by Netgear infringe its European patents related to the Institute of Electrical and Electronic Engineers 802.11ax wireless local area network standard (the "**Wi-Fi 6 Standard**")—one of a few globally shared standards that wireless network components use to ensure compatibility.

A large portion of the Netgear access points accused in the German Proceedings implement the Wi-Fi 6 Standard by incorporating Wi-Fi modem chipsets sold by Qualcomm.[2] Thus, Netgear brought this Section 1782 Proceeding, seeking Qualcomm's license and other agreements with Huawei regarding Huawei's patents. As shown in Netgear's application (the "**1782 Application**") for Section 1782 discovery, these agreements are critical to Netgear's patent-exhaustion defense in the German Proceedings. This Court granted the 1782 Application on August 31, 2023. After negotiating a blanket Protective Order, Qualcomm produced three agreements, one of

---

[1]    An access point is a device that creates a wireless local area network.

[2]    Wi-Fi modem chipsets are electronic components that implement the Wi-Fi 6 Standard and enable access points to provide a wireless network to client devices.

which Netgear filed in the German Proceedings to support its patent-exhaustion defense.

On August 7, 2023—nearly two months after Netgear started this Section 1782 Proceeding—Netgear was served with Huawei's complaint in the UPC Proceeding. In the UPC Proceeding, Huawei alleges that the same access points at issue in the German Proceedings infringe one of Huawei's European patents which, just as in the German Proceedings, Huawei contends is essential to the Wi-Fi 6 Standard. Because the same devices—*i.e.*, access points that implement the Wi-Fi 6 Standard using Qualcomm's modem chipsets—are accused in both the UPC and German Proceedings, and because the standards for patent exhaustion are virtually the same in all Proceedings, the Huawei agreements produced by Qualcomm here are just as relevant to, and probative of, Netgear's exhaustion defense in the UPC Proceeding.

Therefore, Netgear seeks to modify the Protective Order to allow it to use discovery material produced by Qualcomm in the UPC Proceeding, with all other protections of the Protective Order remaining in place. This request should be granted.

*First*, Ninth Circuit precedent "strongly favors" modification of protective orders to allow use of relevant documents in collateral litigation, since this promotes judicial efficiency by "avoiding the wasteful duplication of discovery" efforts. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003). Thus, the Ninth Circuit has instructed that where, as here, protections will continue to exist for any private or confidential information, requests to modify a protective order "should generally be granted." *Id.* at 1332.

*Second*, modification will cause Qualcomm no prejudice. The strict requirements of the Protective Order will continue to apply to any of Qualcomm's confidential documents Netgear uses in the UPC Proceeding, and the UPC itself has strict confidentiality protections limiting third-party access that Netgear must (and will) ask the UPC to impose if it submits confidential Qualcomm information to that court. As a result, Qualcomm cannot contend that its confidential information will be exposed if Netgear uses its documents in the UPC Proceeding. By contrast, denying modification

1  may prevent Netgear from using documents that are critical for, and potentially dipositive
2  of, its defense of the UPC Proceeding. In the very least, denial will require Netgear to
3  duplicate its discovery efforts, wasting both its own resources, and those of the courts.

4  This can end the inquiry. Ninth Circuit precedent strongly favoring modification
5  controls even when a movant seeks to modify a protective order to use documents in non-
6  US lawsuits. But if it helps the Court to evaluate the requirements of Section 1782 and
7  related case law, these too strongly favor modification. Netgear is a named party in the
8  UPC Proceeding that seeks discovery from Qualcomm, which is found in this district, for
9  use in the UPC Proceeding, satisfying Section 1782's statutory requirements. Section
10  1782's four discretionary factors also favor modification. First, it is unclear if the UPC
11  can or will compel Huawei to produce its license and other patent-related agreements
12  with Qualcomm, making the need for Section 1782 assistance apparent. Second, there is
13  no indication that the UPC would not welcome discovery assistance from this Court.
14  Third, Netgear is not trying to circumvent any non-US proof gathering requirements.
15  Fourth, modifying the Protective Order would impose zero burden on Qualcomm, since
16  it has already produced the documents Netgear seeks to use in the UPC Proceeding.

17  The Supreme Court's instruction that district courts should exercise their discretion
18  under Section 1782 to further the statute's aim of "providing efficient assistance to
19  participants in international litigation" also favors modifying the Protective Order. *Intel*
20  *Corp v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004). Without modification,
21  Netgear will be forced into the needlessly wasteful exercise of burdening this Court with
22  a new Section 1782 petition (or the UPC with discovery requests) seeking the same
23  documents Netgear already obtained here. In short, the Protective Order should be
24  amended, no matter which standard is applied.

25  ## II.    FACTUAL BACKGROUND

26  ### A.    The German Proceedings

27  The German Proceedings concern a patent dispute between Netgear and Huawei.
28  The two patents that Huawei accuses Netgear of infringing relate to the Wi-Fi 6 Standard.

Dorn Decl. ¶¶ 6-7.[3] The Wi-Fi 6 Standard is one among the shared set of technical standards that different components within a wireless local area network must use to enable wireless network communications. *Id.* ¶ 6. In the German Proceedings, Huawei contends that its patents are "essential" to the Wi-Fi 6 Standard, and that Netgear's access points implementing this Standard thus infringe its patents. *Id.* ¶¶ 6-7. Importantly, a significant portion of the access points that Huawei accuses of infringement in the German Proceedings implement Wi-Fi 6 functionality through incorporation of Wi-Fi modem chipsets supplied by Qualcomm. Dorn Decl. ¶ 12.[4]

Huawei initiated the German Proceedings in March of 2022: one German Proceeding concerns European Patent ("**EP**") 3 337 077; the second German Proceeding concerns EP 3 143 741. *See id.* ¶¶ 7-8. On May 11, 2023, the German court dismissed Huawei's complaint in the German Proceeding concerning EP 3 143 741. *Id.* ¶ 10. On August 11, 2023, Huawei appealed this decision to the Dusseldorf Higher Regional Court (the "**German Appellate Court**"), Dorn Reply Decl. ¶ 4, and, on October 31, 2023, Netgear filed its defense of Huawei's appeal. Dorn PO Decl. ¶ 7.

In its defense of Huawei's appeal, Netgear submitted to the German Appellate Court a License Agreement (the "**2020 License Agreement**") between Qualcomm and Huawei that Qualcomm produced in this Section 1782 Proceeding. *Id.* ¶ 8. This License Agreement proves that Huawei granted Qualcomm a license to incorporate Huawei's

---

[3]    References to the "Dorn Decl.," "Dorn Reply Decl." and "Dorn PO Decl." and exhibits thereto are, respectively, to the Declarations of Stephan Dorn in Support of the (i) the Application, Dkt. No. 1-3, (ii) Netgear's Reply, Dkt. No. 16-1, and (iii) Netgear's Application to Modify Protective Order, the latter of which is being filed with this memorandum.

[4]    As a result, Netgear brought this 1782 Application seeking license and other patent-related agreements between Qualcomm and Huawei in support of, *inter alia*, Netgear's defense of patent exhaustion in the German Proceedings, which can be based on, *inter alia*, any license or other rights that Huawei granted to Qualcomm in its patents, including any Huawei covenants not to sue Qualcomm with respect to Huawei's patents, or to sue Qualcomm only after exhausting other options. *See* Dorn Decl. ¶¶ 12-13.

- 4 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR
DEUTSCHLAND GMBH TO MODIFY PROTECTIVE ORDER       Case No. 3:23-MC-00794-BLM

patented technology into the Qualcomm chipsets that Qualcomm sells for incorporation into the access points that are accused in the German (and UPC) Proceedings. It proves further that Huawei's only remedy for Qualcomm's use of Huawei's intellectual property rights is a license, and that Huawei's sole financial remuneration from this license is to be determined in arbitration proceedings commencing in 2024. *Id.* This is critical to Netgear's defense of patent exhaustion because, under German law, patent exhaustion can be based on a patent owner's covenant not to sue a licensee of a product, or covenant to sue such licensee last, depending on the wording of the covenant. *Id.*

**B.    The UPC Proceeding.**

On August 7, 2023, well after Netgear filed the Application on June 14, 2023, Huawei served Netgear with a complaint that it filed against Netgear in the Munich Local Division of the UPC.[5] Dorn PO Declaration ¶ 9.[6] Huawei alleges that the same Netgear access points at issue in the German Proceedings (that incorporate the Wi-Fi 6 Standard through modem chipsets sold by Qualcomm) also infringe Huawei's EP 3 611 989. *Id.* As in the German Proceedings, Huawei contends that its patent is essential to the operation of the Wi-Fi 6 Standard, and that Netgear's sale and distribution of access points that implement the Wi-Fi 6 Standard infringe Huawei's patent. *Id.*

Critically, virtually identical standards will apply to Netgear's exhaustion defense in both the German Proceedings and the UPC Proceeding. *Id.* ¶ 10. Under German law, the doctrine of exhaustion is rooted in well-settled case law, and the German Federal Supreme Court has recently expanded the doctrine so that it can be based on a patent

---

[5]    The UPC is a newly established international court with jurisdiction over European patents that are designated to participating European Union member states and whose owners have not opted them out of UPC jurisdiction. For a time, national courts of EU Members will also have jurisdiction over European patents.  Dorn PO Decl. ¶ 9 n.5.

[6]    On July 7, 2023—well after this section 1782 Proceeding commenced—Huawei informed Netgear that it filed suit before the UPC. Netgear was unaware of the contents of the complaint until it was served on Netgear on August 7, 2023. Dorn PO Decl. ¶ 9 n.4.

owner's covenant not to sue a licensee of the product, or covenant to sue such licensee last, even if that covenant is included in an agreement that is governed by "foreign" law. *Id.* And, as explained in the Dorn PO Declaration, the UPC is very likely to take the same approach given that it is bound by statute to follow the laws of the European Union as applied by the Court of Justice of the European Union, which also resoundingly acknowledges the doctrine of exhaustion. *Id.* Thus, the 2020 License Agreement that Qualcomm produced for Netgear's use in the German Proceedings is just as relevant to, and equally critical for, Netgear's exhaustion defense in the UPC Proceeding. *Id.* ¶ 11. Netgear's statement of defense in the UPC Proceeding is due on November 17, 2023, and Netgear would be prejudiced substantially if it could not submit the 2020 License Agreement to the UPC when it files its statement of defense, since it would be deprived of the ability to provide factual support for its defense of patent exhaustion. *Id.*

The UPC "assigns the highest priority for the protection of trade secrets" and confidential information submitted to the UPC. *Id.* ¶ 12. The UPC can order such information to be treated as confidential, so that third parties authorized to inspect the court file are unable to access this information. *Id.* ¶¶ 12-13. The UPC can also order access to documents filed with that court to be restricted to a specific, limited number of persons (so that third-party access is prohibited) and can exclude the public from oral hearings discussing confidential information. *Id.* These protections can be requested when confidential documents are filed with the UPC, and at the time someone seeks to access the court file. *Id.* Huawei is the only party suing Netgear in the UPC Proceeding, *id.* ¶ 14, and Qualcomm has represented to Huawei that it is "not concerned" with Huawei's access to Designated Material, since Huawei "is in possession of its agreements with Qualcomm." *Id.* ¶ 14 & Ex. A at 2.

The UPC's rules might in theory allow Netgear to expend its and the UPC's resources needlessly by asking the UPC to require Huawei to produce the 2020 License Agreement that Netgear has already obtained from Qualcomm in this Section 1782

Proceeding. *See id.* ¶ 15. However, the UPC is a newly established international court with jurisdiction over participating EU members; it is far from clear if the UPC could make Huawei (which is based in China) produce documents if it refused the UPC's order. *Id.* It is also far from clear how restrictively the UPC will interpret its discovery rules, and it is therefore uncertain whether the UPC would order Huawei to produce the 2020 License Agreement in the first place. *Id.*

### C.    Qualcomm's Refusal To Modify the Protective Order.

Netgear and Qualcomm negotiated a blanket Protective Order[7] covering discovery materials produced by Qualcomm. *See* PO ¶¶ 1, 4, 7, 13. This Order has strict protections for all discovery that Qualcomm designates as confidential ("**Designated Material**"), including the 2020 License Agreement. The Protective Order generally prevents a "Receiving Party" from giving even its own employees, or those of the parties to the so-called "Foreign Actions," access to Designated Material, except to the extent that Qualcomm agrees otherwise, or access is required by law for any Designated Material that Netgear submits to the courts in the German Proceedings. *Id.* ¶¶ 19-20, 22-23. If Netgear submits any Designated Material to these courts, it must ask the courts to restrict access to such Material "to the greatest extent permissible under applicable law." *Id.* ¶¶ 22-23. Finally, the Protective Order allows Netgear to use Designated Material only in connection with the "Foreign Actions," which include only the German Proceedings. *Id.* ¶¶ 3, 13.

This Court granted the 1782 Application on August 31, 2023, *see* Dkt. No. 17, and Netgear served a document subpoena (the "**1782 Subpoena**") on Qualcomm the same

---

[7]    A "blanket" protective order "allows a party producing . . . a particular document to initially determine whether such item is confidential without court intervention." *Verizon Cal. Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, 214 F.R.D. 583, 586 (C.D. Cal. 2003). *See also* PO ¶¶ 2, 4, 7, 13 (allowing Qualcomm to designate documents as confidential if it "believes in good faith" that they contain confidential information).

day. *See* Hutten PO Decl. ¶ 4 & Ex. A.[8] Qualcomm served its responses to the 1782 Subpoena on September 14, 2023, in which it agreed to produce certain responsive documents subject to a protective order. *See id.* ¶ 4 & Ex. B.

From the outset of the parties' negotiation of the Protective Order, Netgear asked that the definition of "Foreign Actions" be expanded to include the UPC Proceeding, so that Netgear could use Designated Material in the UPC Proceeding, subject to all the substantial protections in the Protective Order. *See* Hutten PO Decl. ¶ 5 & Ex. C at 2, 8-9. Qualcomm refused Netgear's request. *Id.* at ¶ 5 & Ex. C at 1, 8. Rather than delay document production while continuing to discuss the issue, Qualcomm offered to continue to "consider" Netgear's request after it produced documents and to make "an amendment to the PO at a later date" "if [it] can get comfortable" with Netgear's request. *Id.* ¶ 6 & Ex. C at 1. Because Netgear would not know whether it was necessary to continue the discussion (and potentially seek this Court's relief) until after it received Qualcomm's documents, Netgear agreed to Qualcomm's suggestion. *Id.* ¶ 6 & Ex. C at 1. Thus, the Protective Order was entered "without prejudice to the right" to "apply . . . for modification" at "any time." PO ¶ 32.[9]

Netgear and Qualcomm jointly submitted the proposed, stipulated blanket Protective Order to this Court on October 16, 2023. *See* Dkt. No. 19. The Court entered the Order on October 17, 2023. *See* Dkt. No. 20. Qualcomm waited a full week to produce

---

[8]     References to the "Hutten PO Decl." and exhibits thereto are to the Declaration of Henry V. Hutten in Support of Netgear's Application to Modify Protective Order, which is being submitted contemporaneously with this memorandum.

[9]     The Protective Order has a bevy of provisions retaining this Court's authority to adjudicate disputes over the Protective Order. *See id.* at ¶ 17 (allowing "Applicants [to] seek an order from this Court to alter the status of" Designated Material); ¶ 19 (contemplating that, if "ordered by the Court," Netgear may disclose Designated Material to persons beyond those identified in the Protective Order); ¶ 22 (authorizing similar relief on an "order of this Court"); ¶ 26 (providing a procedure "in this action" to seek Court relief for a dispute about whether an "Outside Consultant" can access to Designated Material); ¶ 32 (allowing Netgear to seek to modify the Protective Order "at any time").

just three agreements to Netgear on October 24, 2023, *see* Hutten PO Decl. ¶ 7 & Ex. D, even though it had already gathered and sent the same documents to Huawei on October 12, 2023, in anticipation of its document production to Netgear. *See* Dorn PO Decl. ¶ 14 & Ex. A.

Netgear diligently reviewed Qualcomm's document production and, on October 25, 2023—just one day after Qualcomm produced documents—Netgear informed Qualcomm that it still sought to use documents in the UPC Proceeding. Hutten PO Decl. ¶ 7 & Ex. D at 7. Qualcomm still would not agree. *Id.* ¶ 7 & Ex. D at 6-7. Rather, Qualcomm claimed that Netgear should restart the discovery process from scratch and try to obtain from Huawei in the UPC Proceeding the same documents that Qualcomm had already produced to Netgear here. *See id.* Despite Netgear's numerous and diligent attempts to convince Qualcomm to agree to modify the Protective Order, Qualcomm has not changed its position. *See id.* ¶ 7 & Ex. D at 2-6. In light of the November 17, 2023 deadline for its a statement of defense in the UPC Proceeding, Netgear informed Qualcomm on November 7, 2023 that it intended to seek court relief if the parties could not reach an agreement by November 8, 2023. *See id.* ¶ 8 Ex. D at 2. On November 8, 2023, Netgear informed Qualcomm that it intended to file this *ex parte* Application on November 9, 2023. *See id.* ¶ 8 Ex. D at 1.

## III.    REQUESTED RELIEF

Through this Application, Netgear respectfully requests that the Court modify the Protective Order to include the UPC Proceeding in the definition of the "Foreign Actions" in connection with which Netgear can use Designated Material, as reflected in Exhibit E to the Hutten PO Declaration.

## IV.    ARGUMENT

"[A] district court retains the power to modify or lift protective orders it has entered." *Verizon Cal.*, 214 F.R.D. at 585-86 (citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 470, 473 (9th Cir. 1992)). Where, as here, a movant shows that

- 9 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR
DEUTSCHLAND GMBH TO MODIFY PROTECTIVE ORDER    Case No. 3:23-MC-00794-BLM

modification will "meet the reasonable needs" of parties "in other litigation," the opposing party must show good cause for continued protection. *See Beckman*, 966 F.2d at 475-76 (quoting *Olympic Refining Co. v. Carter*, 332 F.3d 260, 264 (9th Cir. 1964)); *Verizon Cal.*, 214 F.R.D. at 586 (ordering modification when the opponent "has not met its burden of demonstrating why the protective order should not be modified").

The Ninth Circuit "strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation" because "[a]llowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003); *Beckman*, 966 F.2d at 475 ("Ninth Circuit precedent strongly favors disclosure to meet the needs of parties in pending litigation," including "the reasonable needs of other parties in other litigation"). "Where reasonable restrictions on collateral disclosure will continue to protect an affected party's legitimate interests in privacy, a collateral litigant's request to the issuing court to modify an otherwise proper protective order so that collateral litigants are not precluded from obtaining relevant material should generally be granted." *Foltz*, 331 F.3d at 1132.[10]

## A.    Modification Is Plainly Merited By Binding Ninth Circuit Precedent

"The *Foltz* court set out a two-step inquiry." *Oracle Corp. v. SAP AG*, 2010 WL

---

[10]    Qualcomm has claimed and may argue here, that this 1782 Proceeding ended when it produced documents on October 24, 2023, and that there is therefore no justiciable case or controversy for this Court to decide. This ignores the drove of provisions in the Protective Order retaining this Court's authority to adjudicate disputes regarding the same. *See supra* n. 9. It also ignores that district courts retain "inherent authority to grant a motion to modify a protective order." *CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 201 (N.D. Cal. 2009); *see also Beckman*, 966 F.2d at 473 (noting that "the district court retained the power to modify the protective order" and citing *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2 1424, 1427 (10th Cir. 1990) for the proposition that the "court retains [the] power to modify [a] protective order even if [the] underlying suit is dismissed."). Qualcomm also could not have offered in good faith to defer discussions about the UPC issue until after it produced documents if it truly believed that this 1782 Proceeding terminated upon its document production.

545842, at *1 (N.D. Cal. Feb. 12, 2010). When evaluating a request to modify a protective order so that discovery can be used in collateral litigation, courts must first assess "the relevance of the protected discovery to the collateral proceedings," including the "degree of overlap in facts, parties, and issues between the suit covered by the protective order and the collateral proceedings." *Foltz*, 331 F.3d at 1132. Second, the Court should "weigh the countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery." *Id.* at 1333. "Reliance will be less with a blanket [protective] order, because it is by nature overinclusive." *Id.* (citing *Beckman*, 966 F.2d at 476). Reliance is reduced even more when a protective order is entered "without prejudice to the right" to "seek modification." *Kraszewski v. State Farm Gen. Ins. Co.*, 139 F.R.D. 156, 159 (N.D. Cal. 1991). These standards plainly favor modification here.

### 1.    The Documents At Issue Are Relevant to the UPC Proceeding.

The UPC Proceeding and German Proceedings have a towering degree of overlap. As shown above, Huawei and Netgear are parties to the German Proceedings and UPC Proceeding. In all Proceedings, Huawei claims that the patents that Netgear allegedly infringed are essential to the operation of the Wi-Fi 6 Standard. In all these Proceedings, Huawei accuses the same devices: Netgear's access points that incorporate the Wi-Fi 6 Standard through modem chipsets sold by Qualcomm. In all Proceedings, Netgear's exhaustion defenses can be based on covenant not to sue a licensee or to sue a licensee after exhausting other remedies. Thus, the 2020 License Agreement—which includes just those types of covenants—is relevant to, and may be dispositive of, Netgear's exhaustion defense in the UPC Proceeding. As a result, modification would "meet[] the reasonable needs of the parties" to the UPC Proceeding, and good cause exists for modification. *Beckman*, 996 F.2d at 475-76 (allowing modification where the primary and collateral lawsuits were "the same type of action"); *Verizon Cal.*, 214 F.R.D. at 586 (modifying a protective order when the documents sought for use in the collateral lawsuit "concern[ed] claims or issues similar to those raised in the [main] action"); *Sleep Number Corp. v. Sizewise Rentals LLC*, 2019 WL 12536127, at *3-4 (C.D. Cal. Sept. 26, 2019) ("good

- 11 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR
DEUTSCHLAND GMBH TO MODIFY PROTECTIVE ORDER     Case No. 3:23-MC-00794-BLM

cause" existed "for modifying the protective order so that the term 'action' extends to the IPR proceedings" when movant made "at least a colorable argument" that documents at issue were "relevant to the IPR proceedings").[11]

### 2. Qualcomm Has No Reliance or Other Valid Interests that Will Be Harmed By the Limited Modification Sought Here. Netgear Will Suffer Substantial Prejudice Without Modification.

Qualcomm has no reliance or other interests that would be damaged by the modest Protective-Order modification Netgear seeks here.

To begin, the Protective Order is a blanket protective order for which Qualcomm has "never made a 'good cause' showing under Fed. R. Civ. P. 26(c) justifying initial protection." *Beckman*, 966 F.2d at 476. As a result, it "may not rely solely on the [P]rotective [O]rder to 'justify refusal when there is a reasonable request for disclosure.'" *Verizon Cal.*, 214 F.R.D. at 586 (quoting *Beckman*, 966 F.3d at 476 and *Olympic Refining Co.*, 332 F.2d at 264-66)); *Oracle Corp.*, 2010 WL 545842, at *2 ("[B]ecause there is a blanket protective order in this case, Defendant's reliance interest is diminished."). Thus, any argument that Qualcomm produced documents in reliance on the current Protective Order is "beside the point." *Verizon Cal.*, 214 F.R.D. at 586. Qualcomm also agreed to continue evaluating Netgear's request to use Designated Material in the UPC Proceeding after entry of the Protective Order, *see* Hutten PO Decl. ¶ 6 & Ex. D at 1, and agreed that the Protective Order was "entered without prejudice" to Netgear's right "to apply to this Court at any time for modification." PO ¶ 32; *see also Kraszewski*, 139 F.R.D. at 158-59 (rejecting the argument that the party opposing modification produced documents in

---

[11]    *Accord Oracle*, 2010 WL 545842, at *2 (movant "met the *Fotlz* test when its "anticipated litigation in Europe would be based on the same facts as alleged in this case"); *Kraszewski*, 139 F.R.D. at 160 (granting modification when "the similarities between the cases are obvious, as is the fact that" the discovery in the first action "will be pertinent" to the second lawsuit); *Infineon Techs AG v. Green Power Techs Ltd.*, 247 F.R.D. 1, 2-3 (D.D.C. 2005) (allowing modification so that, as here, movant could use documents "in related patent litigation between the [same] parties in Germany" and finding "good cause" where documents were "highly relevant to the German litigation").

reliance on a protective order that limited the use of discovery to a single action where that order had a "modification provision to which both parties agreed").

More importantly, Qualcomm cannot claim that modification imposes any undue risk to its trade secrets or other confidential information. The only plaintiff in the UPC Proceeding that may access Designated Material is Huawei, and Qualcomm has already sent Huawei all the documents it produced to Netgear here. *See* Dorn PO Decl. ¶ 14 & Ex. A. In addition, other than using Designed Material in the UPC Proceeding, Netgear's use of Designated Material will still comply with the Protective Order to which Qualcomm stipulated. If Netgear submits any Designated Material to the UPC, it must ask that Court to restrict access "to the greatest extent permissible under applicable law." *See* PO ¶¶ 22-23. And as explained above, the UPC "assigns the highest priority for the protection of trade secrets," including by offering substantial protections for, and restricting non-party access to, trade secrets and other confidential information on the UPC's court file. Dorn PO Decl. ¶ 12. Thus, Qualcomm will suffer no undue prejudice, which weighs in favor of modification. *See e.g., Foltz*, 331 F.3d at 1134 ("Any trade secrets, financial information, and third-party medical or personnel information can be protected by placing the [party seeking modification] under the same use and disclosure restrictions contained in the original protective order."); *Verizon Cal.*, 214 F.R.D. at 586 (party who had produced documents and was opposing modification would "not suffer any unfair prejudice" if documents were used in collateral litigation, when the documents otherwise "remain[ed] subject to the" original protective order); *Infineon Techs*, 247 F.R.D. at 3 (modifying protective order to allow use of documents for litigation in Germany when, as here, the movant agreed "to be bound by the terms of the [original] [p]rotective [o]rder and any of [the] documents provided to the German court can be submitted as confidential").

By contrast, and as described above, there is doubt about whether the UPC—a newly constituted tribunal whose jurisdiction extends only to EU member states—could enforce a document production order against Huawei, a company located in China. It is

1  also uncertain whether the UPC would issue such an order in the first place. Thus, without

2  modification of the Protective Order, Netgear risks being deprived of the ability to use

3  the 2020 License Agreement in the UPC Proceeding, even though that Agreement is

4  highly probative, and potentially dispositive, of its defenses there. Dorn Decl. ¶¶ 10-11.

5      In addition, even if Netgear could obtain the 2020 License Agreement from

6  Huawei in the UPC Proceeding, that would not weigh against modification. *See Olympic*

7  *Refining Co.*, 332 F.3d at 266 ("It is immaterial that [the movant] could possibly obtain

8  the same information through the process of propounding its own [discovery requests]"

9  in the collateral lawsuit); *Kraszewski*, 139 F.R.D. at 159 (same). The Ninth Circuit

10 "strongly favors" modifying protective orders in this context because it "advances the

11 interests of judicial economy by avoiding the wasteful duplication of discovery." *Foltz*,

12 331 F.3d at 1131. Qualcomm's bold contention that Netgear should re-start discovery

13 from scratch—by asking the UPC to make Huawei produce documents Netgear already

14 has—is diametrically at odds with that goal, and the needless waste of resources entailed

15 in that exercise would prejudice Netgear and the UPC substantially. "It simply does not

16 make sense to force [Netgear] to reinvent the wheel and to promulgate discovery

17 requests" when "the same discovery has already taken place in this action." *Kraszewksi*,

18 139 F.R.D. at 160.

19     In sum, the test articulated by the Ninth Circuit in *Foltz* s overwhelmingly favors

20 modification here.

21 **B.    Section 1782 Also Strongly Favors Modifying the Protective Order**

22     The binding precedent in *Foltz* applies just as forcefully when a movant seeks to

23 modify a protective order to use discovery materials in litigation abroad. *See Oracle*,

24 2010 WL 545842, at *3 ("*Foltz* rather than § 1782 governs" a request to amend a

25 protective order so documents can be used in European litigation); *Infineon*, 247 F.R.D.,

26 at 4 (Section "1782 [wa]s not controlling" when movant sought to modify a protective

27 order to use documents in a German lawsuit). Thus, the Court need not look beyond the

28 *Foltz* factors before granting this Application.

But if it would help the Court to evaluate the requirements of Section 1782, this will only provide another reason to modify the Protective Order, as shown below.

### 1. Section 1782 Contains No Restrictions on Subsequent Uses of Discovery Material Obtained Pursuant to the Statute.

As here, where there is no order to the contrary, discovery is taken in a Section 1782 proceeding "in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782(a). And "the Federal Rules of Civil Procedure do not regulate what litigants may do with discovery after it lawfully has been obtained." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 133-34 (2d Cir. 2017); *Glock v. Glock, Inc.*, 797 F.3d 1002, 1007-08 (11th Cir. 2005) (similar). Thus, "Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise." *In re Accent Delight*, 869 F.3d at 133-34 (rejecting the argument that "a Section 1782 applicant must satisfy the statutory requirements for each foreign proceeding for which he or she wishes to use the requested discovery"); *Glock*, 797 F.3d at 1006 (finding "nothing in the language of [Section] 1782 that purports to limit later uses of evidence that have been properly obtained under [Section] 1782").[12] Rather, a Section 1782 applicant should be allowed to use discovery material in non-US proceedings beyond those named in an original 1782 application unless the opposing party "can show bad faith or other chicanery." *In re Accent Delight Int'l Ltd.*, 2017 U.S. Dist. LEXIS 211058, at *6 (S.D.N.Y. Dec. 22, 2017) (granting leave to use previously obtained 1782 discovery material in additional non-US proceedings and rejecting the argument "that the Court should apply the requirements of Section 1782 anew in exercising [its] discretion").

Here, no bad faith or chicanery exists. The UPC Proceeding was commenced by

---

[12]    While the Eleventh Circuit Court of Appeals in *Glock* considered whether discovery previously produced pursuant to Section 1782 can be used in a later US lawsuit, the court's analysis applies just as much to whether Section 1782 discovery material can be used in a later non-US lawsuit. *See In re Accent Delight Int'l Limited*, 869 F.3d at 134 (finding *Glock's* reasoning "relevant and persuasive" to this issue).

Huawei. Netgear was served well after it started this 1782 Proceeding. Netgear told Qualcomm from the start of the negotiation of the Protective-Order that it sought to use discovery in the UPC Proceeding. In an effort to avoid burdening Qualcomm and this Court unnecessarily, Netgear agreed to the current Protective Order so that it could press its request to modify the Protective Order only if the documents Qualcomm produced were relevant to the UPC Proceeding. Netgear now seeks only a modest change to the Protective Order so it can use documents to defend the UPC Proceeding, subject to the strict protections already in the Protective Order. Thus, modifying the Protective Order is appropriate here. *See Accent Delight*, 2017 U.S. Dist. LEXIS 211058, at *9 (allowing 1782 applicant's use of documents in additional Section 1782 proceedings when, *inter alia*, the opposing party could not "plausibly allege bad faith").

### 2.    The Merits of Section 1782 Strongly Favor Modification

If this Court considers the merits of Section 1782, it will find that they too strongly favor modification. As explained below, Section 1782's statutory requirements are easily met, and each *Intel* factor guiding this court's discretion under the statute also favors discovery.

***Section 1782's Elements Are Easily Satisfied.*** To satisfy Section 1782's elements, Netgear need only show that: (i) the request is made by an interested person, (ii) the evidence sought is for use in a proceeding in a foreign or international tribunal, and (iii) the person from whom discovery is sought resides in this Court's district. *Intel Corp.*, 542 U.S. at 246. Those requirements plainly are met here.

*First*, both Netgear applicants are named parties in the UPC Proceeding. *See* Dorn PO Decl. ¶ 9. There is "no doubt" that each is as an "interested person" for purposes of Section 1782. *Intel*, 542 U.S. at 256; *In re Smith*, 2012 WL 12885234, at *2 (S.D. Cal. Oct. 9, 2012) ("As a named party in this action, [applicant] qualifies as an 'interested party.'").

*Second*, the UPC Proceeding, a patent infringement lawsuit pending before the UPC, is a foreign proceeding. The UPC is also an "international tribunal" within the

meaning of 28 U.S.C. § 1782(a). *Intel*, 542 U.S. at 258 ("the term 'tribunal' . . . includes . . . conventional civil, commercial, criminal, and administrative courts").

Netgear also seeks documents "for use" in the proceeding pending before the UPC. To satisfy the "for use" prong, the evidence sought need only be relevant to the foreign proceeding. *Weber v. Finker*, 554 F.3d 1379, 1384–85 (11th Cir. 2009) (Section 1782 discovery requests need only comply with the Rule 26 relevance standard). The evidence need not actually, or even probably, be discoverable or admissible in the foreign proceeding. *See Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002). Here, as explained above, the 2020 License Agreement is highly relevant to Netgear's exhaustion defense in the UPC Proceeding. Dorn PO Decl. ¶¶ 10-11; *In re Daimler AG*, 2021 WL 3852729, at *1 (S.D. Cal. Aug. 27, 2021) (granting Section 1782 application seeking Qualcomm agreements for use in patent exhaustion defense); *In re LG Elecs. Deutschland GmbH*, 2012 WL 1836283, at *1 (S.D. Cal. May 21, 2012) (granting Section 1782 application seeking documents granting Qualcomm "any rights, protections, or licenses in or to any" patents at issue in infringement proceedings in Japan and Germany). And even if there were a requirement that the requested Section 1782 discovery be admissible in the foreign proceeding, UPC rules allow Netgear to submit to the UPC any documents it obtains through the Application, and the UPC would consider the documents. Dorn PO Decl. ¶¶ 19-21.

*Third*, Qualcomm "resides or is found" in this District because its principal place of business is in San Diego, California. *See* Qualcomm Inc. Annual Report (Form 10-K) (Nov. 2, 2022); *In re Nokia Techs. Oy*, 2022 WL 788702, at *2 (S.D. Cal. Mar. 15, 2022); *In re Daimler AG*, 2021 WL 3852729, at *1 (an application seeking discovery from Qualcomm met Section 1782's requirements). Section 1782's elements thus are satisfied.

***All Discretionary Factors Favor Granting the Application.*** Since Netgear has satisfied the statutory requirements of Section 1782, this Court has discretion to grant the Application based on four non-exclusive factors articulated by the Supreme court in *Intel*: (i) whether the discovery sought is within the reach of the foreign court, (ii) "the nature

of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (iii) whether the Section 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions," and (iv) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65.

District courts must exercise their discretion under Section 1782 in light of the twin aims of the statute: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Id.* at 252. Thus, Section 1782 has been broadly interpreted to permit U.S. courts to grant "wide assistance" to foreign litigants. *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 135 (3d Cir. 1985) ("The liberal intent to provide judicial assistance" has been "acknowledged" as Section 1782's "primary statutory goal"); *In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) ("imposing an additional burden" on Section 1782 applicants would "undermine the policy of improving procedures for assistance to foreign and international tribunals").

All these factors favor allowing Netgear to use Designated Material in the UPC Proceeding, especially in light of Section 1782's animating purpose of providing foreign litigants with efficient means of discovery assistance.

*First*, Qualcomm is not a party to the UPC Proceeding, and the UPC cannot order Qualcomm to produce its agreements with Huawei. *In re Smith*, 2012 WL 12885234, at *2 ("Symbolic is not a participant in the United Kingdom based lawsuit, so this factor weighs in favor of granting the [a]pplication"); Dorn PO Decl. ¶ 17. Although Huawei is a party to the UPC Proceeding and presumably possesses the 2020 Licensing Agreement, there is doubt about whether the UPC—a newly constituted tribunal whose jurisdiction extends only to EU member states—could enforce an order requiring Huawei, which is in China, to produce this document. *See* Dorn PO Decl. ¶¶ 15, 18. It is also unclear whether it would issue such an order in the first place. *Id.* As a result, Netgear's "need for § 1782(a) aid" is "apparent." *Intel*, 542 U.S. at 264; *see also In re Daimler AG*, 2021

WL 3852729, at *1 (the first *Intel* factor was satisfied where, as here, Huawei was party to agreements with Qualcomm that were sought pursuant to Section 1782); *In re Porsche Automobil Holding SE*, 2016 WL 702327, at *8 (S.D.N.Y. Feb. 18, 2016) (granting Section 1782 discovery when the non-US court "cannot and, in any case, would not order the type (and scope) of evidentiary production sought by Porsche in this Court").

*Second*, the UPC is not hostile to discovery obtained in this Section 1782 Proceeding. In evaluating this second *Intel* factor, courts should find in favor of discovery absent a "clear directive"—meaning "authoritative proof"—from the foreign authority that specifically rejects the use of evidence gathered through Section 1782. *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995); *Palantir Techs, Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 915 (N.D. Cal. 2019) ("courts tend to err on the side of . . . discovery" when no authoritative proof is offered). Here, there is no clear, authoritative proof.  To the contrary, there is every reason to believe that the UPC would appreciate and benefit from this Court's assistance. *See* Dorn Decl. ¶¶ 19-22.

*Third*, Netgear seeks to modify the Protective Order in good faith without seeking to circumvent restrictions on evidence gathering or other policies or procedures. *Id*. There is no law, rule of evidence, or rule of procedure in the UPC that bars Netgear from seeking and obtaining the discovery requested here and using it in the UPC Proceeding. *See id.* Therefore, the third *Intel* factor favors granting this Application. *In re Motorola Mobility, LLC*, 2012 WL 4936609, at *2 (N.D. Cal. Oct. 17, 2012) ("Because there is no indication in the record of an attempt to subvert a foreign tribunal's restrictions, the court finds that this factor weights in favor of [the applicant].").

*Fourth*, Netgear's request to amend the Protective Order would impose zero burden on Qualcomm. Qualcomm has already produced the documents Netgear seeks to use in the UPC Proceeding and would have to do nothing additional or different if Netgear were authorized to do so. Rather, Netgear intends to use only a single, highly relevant, and potentially dispositive document—the 2020 License Agreement—in the UPC Proceeding, subject to all the protections in the Protective Order and the

confidentiality protections that must (and will) be requested for any Designated Material submitted to the UPC. Thus, the request to amend the Protective Order is neither unduly burdensome or unduly intrusive, and the fourth *Intel* factor favors discovery.

*Finally*, Section 1782's animating purpose that must guide this Court's discretion—"providing efficient assistance to participants in international litigation," *Intel*, 542 U.S. at 252—militates heavily in favor of allowing Netgear to use Designated Material in connection with the UPC Proceeding. Requiring Netgear to start the discovery process again from scratch in a new Section 1782 Proceeding or a fresh discovery request before the UPC would needlessly waste judicial resources by requiring Netgear to undertake gratuitously duplicative discovery efforts to obtain documents that it already obtained lawfully in this Section 1782 Proceeding.

## V.    CONCLUSION

For the foregoing reasons, Netgear respectfully requests that the Court issue an order (i) modifying the Protective Order to include the UPC Proceeding in the definition of "Foreign Actions," as reflected in Exhibit E to the Hutten PO Declaration, and (ii) granting such other relief as this Court deems just and proper.

DATED:  November 9, 2023

/s/   Bentley P. Stansbury, III
BENTLEY P. STANSBURY III
KEESAL, YOUNG & LOGAN

DAVID Y. LIVSHIZ (*pro hac vice*)
HENRY V. HUTTEN (*pro hac vice*)
GRACE W. BRODY (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER US LLP

*Attorneys for Applicants Netgear Inc. and Netgear Deutschland GmbH*

Case Name:    *In Re Ex Parte Application of Netgear Inc. and Netgear Deutschland GMBH for an Order pursuant to 28 USC 1782 to obtain discovery for use in foreign proceedings*
Case No.:    3:23-mc-00794-BLM
KYL File No.: 8882-1

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is Keesal, Young & Logan, 400 Oceangate, Suite 1400, Long Beach, California  90802.

     On November 9, 2023, I served the foregoing documents described as ***MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH TO MODIFY PROTECTIVE ORDER*** on the parties in this action as follows:

| | |
|---|---|
| David A Kays<br>Donn Waslif<br>Freeda Y. Lugo<br>**MORGAN FRANICH FREDKIN SIAMAS & KAYS LLP**<br>333 W. San Carlos Street<br>Suite 1050<br>San Jose, CA 95110<br>(408)288-8288<br>Fax: (408)288-8325<br>Email: dkays@mffmlaw.com<br>dwaslif@mffmlaw.com<br>flugo@mffmlaw.com<br>mbatalla@mffmlaw.com<br>avillafana@mffmlaw.com | Attorneys for Respondent, QUALCOMM INCORPORATED |

     ☑     BY OVERNIGHT DELIVERY:  I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the above-named persons at the addresses exhibited therewith.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

     Executed on November 9, 2023 at Long Beach, California.

     I declare under penalty of perjury under the laws of the State of California and United States of America that the foregoing is true and correct.

     I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_____
CASEY L. THOMAS

1  BENTLEY P. STANSBURY III, CASB No. 229102
   bentley.stansbury@kyl.com
2  KEESAL, YOUNG & LOGAN
   400 Oceangate
3  Long Beach, California 90802
   Telephone:  (562) 436-2000
4  Facsimile:   (562) 436-7416

5  DAVID Y. LIVSHIZ (*pro hac vice*)
   david.livshiz@freshfields.com
6  HENRY V. HUTTEN (*pro hac vice*)
   henry.hutten@freshfields.com
7  GRACE W. BRODY (*pro hac vice*)
   grace.brody@freshfields.com
8  FRESHFIELDS BRUCKHAUS DERINGER US LLP
   601 Lexington Avenue, 31st Floor
9  New York, New York 10022
   Telephone:  (212) 277-4000
10 Facsimile:   (212) 277-4001

11 *Attorneys for Applicants Netgear Inc.*
   *and Netgear Deutschland GmbH.*

12

13              **UNITED STATES DISTRICT COURT**

14            **SOUTHERN DISTRICT OF CALIFORNIA**

15                                    )  CASE NO.: 3:23-MC-00794-BLM
                                      )
16                                    )
                                      )
17 IN RE: *EX PARTE* APPLICATION OF   )  **DECLARATION OF STEPHAN**
   NETGEAR INC. AND NETGEAR           )  **DORN IN SUPPORT OF *EX PARTE***
18 DEUTSCHLAND GMBH FOR AN            )  **APPLICATION OF NETGEAR INC.**
   ORDER PURSUANT TO 28 U.S.C.        )  **AND NETGEAR DEUTSCHLAND**
19 § 1782 TO OBTAIN DISCOVERY FOR     )  **GMBH TO MODIFY PROTECTIVE**
   USE IN FOREIGN PROCEEDINGS         )  **ORDER**
20                                    )
                                      )
21                                    )
                                      )
22                                    )
                                      )
23 _____)

24

25      Pursuant to 28 U.S.C. § 1746, I, Stephan Dorn declare as follows:

26      1.     I am an attorney admitted to practice in Germany and an associated lawyer

27 in the Dusseldorf office of the law firm Freshfields Bruckhaus Deringer PartGmbB

28 ("**Freshfields**"), counsel to Netgear Inc. and Netgear Deutschland GmbH (collectively

"**Netgear**") in two lawsuits in Germany (each a "**German Proceeding**" and, together, the "**German Proceedings**") brought by Huawei Technologies Co. Ltd. ("**Huawei**").

2.      Freshfields and I are also counsel to Netgear in a lawsuit (the "**UPC Proceeding**") pending in the local division of the Unified Patent Court (the "**UPC**") in Munich, Germany.

3.      I submit this declaration in support of Netgear's *Ex Parte* Application to Modify Protective Order.

### I.    The German Proceedings

4.      Netgear has already obtained discovery from Qualcomm pursuant to 28 U.S.C. § 1782 ("**Section 1782**") in the above-captioned miscellaneous proceeding (the "**1782 Proceeding**") for use in the German Proceedings.

5.      As I explained in my declaration dated June 14, 2023 (the "**June 14 Declaration**," (Dkt. No. 1-3))[1] in support of Netgear's application (the "**1782 Application**") for Section 1782 Discovery, the German Proceedings concern a patent dispute between Netgear and Huawei. Specifically, Huawei contends that certain access points[2] made by Netgear infringe two of its European patents related to the Institute of Electrical and Electronic Engineers 802.11ax wireless local area network standard (the "**Wi-Fi 6 Standard**"). *See* June 14 Declaration, ¶¶ 6-7. The Wi-Fi 6 Standard is one among the shared set of technical standards that different components within a wireless local area network must use to enable wireless network communications. *Id.* ¶ 6. In the German Proceedings, Huawei contends that its patents are "essential" to the Wi-Fi 6 Standard, and that Netgear's access points implementing this Standard thus infringe its Patents. *Id.* ¶¶ 6-7.

6.      Importantly, a significant portion of the Netgear Access points that Huawei

---

[1]      References to a Dkt. No. that are unaccompanied by a case caption are to the ECF docket numbers in this 1782 Proceeding.

[2]      An access point is a device that creates a wireless local area network.

accuses of infringement in the German Proceedings implement the Wi-Fi 6 functionality through incorporation of Wi-Fi modem chipsets supplied by Qualcomm. *See id.* ¶ 12.[3] As a result, Netgear filed its 1782 Application seeking license and other patent-related agreements between Qualcomm and Huawei in support of, *inter alia*, Netgear's defense of patent exhaustion in the German Proceedings, which can be based on, *inter alia*, any license or other rights that Huawei granted to Qualcomm in its patents, including any Huawei covenants not to sue Qualcomm with respect to Huawei's patents, or to sue Qualcomm only after exhausting other options. *See id.* ¶¶ 12-13.

7.      Huawei initiated the German Proceedings in March of 2022: one German Proceeding concerned European Patent ("**EP**") 3 337 077; the second German Proceeding concerned EP 3 143 741. *See id.* ¶¶ 7-8. On May 11, 2023, the German court dismissed Huawei's complaint in the German Proceeding concerning EP 3 143 741. *Id.* ¶ 10. As I explained in my declaration dated August 30, 2023 (the "**August 30 Declaration**," (Dkt. No. 16-1)), Huawei appealed this decision to the Dusseldorf Higher Regional Court (the "**German Appellate Court**"). *See* August 30 Declaration ¶ 4. On October 31, 2023, Netgear filed its defense of Huawei's appeal.

8.      In its defense of Huawei's appeal, Netgear submitted to the German Appellate Court a 2020 License Agreement (the "**2020 License Agreement**") between Qualcomm and Huawei that Qualcomm produced in this Section 1782 Proceeding. This 2020 License Agreement proves that Huawei granted Qualcomm a license to incorporate Huawei's patented technology into the Qualcomm chipsets that Qualcomm sells for incorporation into the access points that are accused in the German Proceedings. It proves further that Huawei's only remedy for Qualcomm's use of Huawei's intellectual property rights is a license, and that Huawei's sole financial remuneration from this license is to be determined in arbitration proceedings commencing in 2024. This is critical to

---

[3]      Wi-Fi modem chipsets are electronic components that implement the Wi-Fi 6 Standard and enable access points to provide a wireless network to client devices.

Netgear's defense of patent exhaustion because the German Federal Court of Justice recently decided that patent exhaustion can be based on a patent owner's covenant not to sue a licensee of a product, or covenant to sue such licensee last, depending on the wording of the covenant.

## II.    The UPC Proceedings

9.    On August 7, 2023, nearly two months after Netgear commenced this Section 1782 Proceeding on June 14, 2023,[4] Huawei served Netgear with a complaint that it filed against Netgear in the Munich Local Division of the UPC.[5] Huawei alleges that the same Netgear access points at issue in the German Proceedings (that incorporate the Wi-Fi 6 Standard through modem chipsets sold by Qualcomm) also infringe Huawei's EP 3 611 989. As in the German Proceedings, Huawei contends that its patent is essential to the operation of the Wi-Fi 6 Standard, and that Netgear's sale and distribution of access points that implement the Wi-Fi 6 Standard infringe Huawei's patent.

10.    Virtually identical standards will apply to Netgear's exhaustion defense in both the German Proceedings and the UPC Proceeding. German case law is well-settled that a license leads to exhaustion of patent rights insofar as the patented device or method has been put on the market or is offered on market with the consent of the patentee. The Federal Supreme Court of Germany has recently expanded the principle of exhaustion to situations where a patent owner covenants not to sue a licensee of the licensed product,

---

[4]    On July 7, 2023—well after this section 1782 Proceeding commenced—Huawei informed Netgear that it filed suit before the UPC. Netgear was unaware of the contents of the complaint until it was served on Netgear on August 7, 2023.

[5]    The UPC is a newly established court of European member states with jurisdiction over European patents that are designated to participating European Union member states and whose owners have not opted them out of UPC jurisdiction. Decisions of the UPC have effect in all UPC member states, including Germany. For a transitional period, national courts of EU Members will also have jurisdiction over European patents.

or covenants to sue such licensee last in agreement that is governed by "foreign" law, if, *inter alia*, the licensor knows or should know that the licensed device or component will be sold worldwide as part of a larger device. *See* FSC, decision January 24, 2023, X ZR 123/20 – CQI-Report II.  Exhaustion before the UPC is governed by Article 29 of the Agreement on a Unified Patent Court (the "**UPCA**,") which is the governing agreement for the UPC.  UPCA Article 29 states that "[t]he rights conferred by a European patent shall not extend to acts concerning a product covered by that patent after that product has been placed on the market in the European Union by, or with the consent of, the patent proprietor, unless there are legitimate grounds for the patent proprietor to oppose further commercialisation of the product." While there are no decisions from the UPC interpreting this provision yet, the UPC will apply a similar approach to exhaustion as the German courts.  This is because the UPC is required to apply the law of the European Union, as interpreted and applied by the European Court of Justice, which acknowledges the principle of exhaustion. *See* Bopp/Kircher/Lux, Handbook European Patent Process, 2nd ed. 2023, Part 4, § 13, marginal no. 172. In addition, the UPC panel in the UPC Proceeding includes two German judges who will take German case law into account in the UPC Proceeding, so it is likely that, in the dispute between Huawei and Netgear, the UPC will recognize and apply the doctrine of exhaustion as developed under German case law.

11.    Thus, the 2020 License Agreement that Qualcomm produced for Netgear's use in the German Proceedings is just as relevant to, and equally critical for, Netgear's exhaustion defense in the UPC Proceeding. Netgear's statement of defense in the UPC Proceeding is due on November 17, 2023, and Netgear would be substantially prejudiced if it could not submit the 2020 License Agreement to the UPC when it submits its statement of defense, as this would severely curtail its ability to assert its argument that Huawei has exhausted the patent at issue in the UPC Proceedings.

12.    The UPC assigns the highest priority for the protection of trade secrets and

confidential information submitted to the UPC. The UPC can order such information to be treated as confidential so that third parties authorized to inspect the court file are unable to access this information. The UPC can also order access to documents filed with the court to be restricted to a specific, limited number of persons (so that third-party access is prohibited) and can exclude the public from oral hearings discussing confidential information. These protections can be requested when confidential documents are filed with the UPC, and at the time someone seeks to access the court file.

13.    Specifically, the UPC can institute the following protective measures:

- Upon reasoned request, the court can order information to be treated as confidential (Art. 58 UPCA, Rule 262A.1 Rules of Procedure for the Unified Patent Court ("**ROP**"))

  - Third parties who, upon reasoned request, are granted the right to inspect the court file are only provided with the contents of the file in which the statements containing confidential information have been redacted (Art. 58 UPCA, Rules 262A.1, 262A.7 and 262.1(b) RoP); the same would apply to information not already ordered to be confidential according to the above, upon reasoned request by the parties after file inspection by a third party has been requested (Rule 262.1(b) and 262.2 RoP)

- Upon reasoned requests, the court can, in addition to the above, order the access to the documents filed with the court to be restricted to specific persons (Art. 58 UPCA, Rule 262(a).1 RoP)

- The court can exclude the public during the oral hearing, upon proper request of a party. (Art. 45 and 58 UPCA, Rules 105.2 and 115 RoP)

The UPC grants these requests for protection after weighing the different interests at issue.  However, assuming that Huawei has designated as confidential in the 1782 Proceeding materials that constitute trade secrets, confidential intellectual property, or confidential personal, business, financial trade or competitively sensitive information, this should usually result in the grant of the requested protective measures with respect to material that Qualcomm has designated for protection in this Section 1782 Proceeding.

14.    In addition, Huawei is the only party suing Netgear in the UPC Proceeding, and Qualcomm has represented to Huawei that it is "not concerned" with Huawei's access to Designated Material, since Huawei "is in possession of its agreements with

Qualcomm." *See* Exhibit A at 2.[6]  In fact, as shown in Exhibit A hereto, and in anticipation of its document production to Netgear in this 1782 Proceeding, Qualcomm sent the same documents to Huawei on October 12, 2023 that it produced to Netgear in this Section 1782 Proceeding on October 24, 2023.  *See id.* at 6.

15.    The UPC's rules might in theory allow Netgear to ask the UPC to require Huawei to produce the 2020 License Agreement.  In particular, Rule 190 of the UPC Rules of Procedure states that "[w]here a party has presented reasonably available and plausible evidence in support of its claims and has, in substantiating those claims, specified evidence which lies in the control of the other party . . . the Court may on a reasoned request by the party specifying such evidence, order that other party . . . to produce such evidence." Rule 170 of the UPC Rules of Procedure also states that the "[m]eans of obtaining evidence shall include" the "production of documents" and "ordering a party . . . to produce evidence."  However, there is uncertainty as to whether the UPC would interpret these rules to require production of the 2020 License Agreement or any other patent-related agreements between Huawei in Qualcomm. Section 142 of the German Civil Code contains a provision similar to Rule 190 of the UPC Rules of Procedure, and this provision is applied very restrictively by German courts. Because the UPC panel in the UPC Proceeding includes two German judges, a similarly restrictive interpretation of Rule 190 of the UPC Rules of Procedure can be expected in the dispute between Huawei and Netgear. In addition, there is doubt about whether the UPC could enforce an order requiring Huawei to produce documents. According to Rule 190.7 of the UPC Rules of Procedure, if a party who is ordered to produce documents refuses to comply with this order, the only remedies available are evidentiary disadvantages such as adverse inferences; the Rule does not allow for the UPC to compel production of

---

[6]    Attached as **Exhibit A** hereto is a true and correct copy of an e-mail chain between Huawei's employees and US counsel for Qualcomm, containing e-mails dated between October 10, 2023 and November 2, 2023.  This document was attached to an e-mail that German counsel for Huawei sent to me on November 6, 2023.

documents. *See* Tilmann/Plassmann, Unified Patent Protection in Europe, 1st ed 2018, Rule 190, marginal no. 50.  Finally, while enforcement of an order requiring document production is possible under Article 82 of the UPCA, this article only allows the UPC to enforce such an order in the UPC's contracting member states, which do not include China, where Huawei is located.

## III.    The Merits of Section 1782

16.    For the reasons described above, the discovery Netgear received through this Section 1782 Proceeding will materially assist the UPC in adjudicating the dispute between Huawei and Netgear. As shown above, the discovery that Netgear received is particularly relevant regarding the question of patent exhaustion, and is highly likely to prevent Huawei from asserting its exhausted patent rights against Netgear in the UPC Proceeding.

17.    The UPC does not have jurisdiction over Qualcomm, which resides in the United States and is not a party to the UPC Proceeding. As a result, the UPC has no ability to require Qualcomm to produce documents for use in the UPC Proceeding, including the documents that Qualcomm produced in this Section 1782 Proceeding.  In particular, Rule 190 of the UPC Rules of Procedure (referenced above) would not allow the UPC to order Qualcomm to produce documents in the UPC Proceeding. *See* Tilmann/Plassmann, Unified Patent Protection in Europe, 1st ed 2018, Art. 59 UPCA, marginal no. 14).

18.    While Huawei presumably has access to these documents, there is substantial uncertainty about whether the UPC has the power to compel Huawei to produce the 2020 License Agreement or any other of the Huawei/Qualcomm agreements that Qualcomm has produced to Netgear in this Section 1782 Proceeding. I have described this uncertainty fully above.

19.    Although there is substantial doubt about whether the UPC can compel Huawei to produce the same documents that Qualcomm has produced in this 1782

Proceeding, the UPC will nevertheless be receptive to evidence obtained through Section 1782 proceedings in the United States, including the documents that Netgear has already obtained from Qualcomm here. Under UPC rules, any documents obtained pursuant to Section 1782 can be formally introduced into the UPC Proceeding, and the UPC would consider this evidence—without prejudice to decisions about the admission and consideration of any particular document introduced according to the UPC's rules of admissibility.

20.     Specifically, the non-exhaustive list of means of obtaining evidence for the UPC in Article 53 of the UPCA includes, *inter alia*, the production of documents. The UPCA does not impose any restrictions on how this evidence must be obtained in order to be admissible. There are no provisions on the authenticity, the origin, or the evidentiary value of the document submitted by the parties, *see* Tilmann/Plassmann, Unified Patent Protection in Europe, 1st ed 2018, Article 53, marginal no. 38, including none that would impose restrictions on submitting material gathered in this Section 1782 Proceeding. Moreover, according to Article 76 of the UPCA, the Court is required to evaluate all evidence submitted by the parties freely and independently

21.     Therefore, the UPC imposes no restrictions on collecting evidence through this 1782 Proceeding, and Netgear is entitled to submit evidence in support of its position in the UPC Proceeding, regardless of whether the evidence has been obtained pursuant to Section 1782.

22.     Netgear therefore seeks to modify the Protective Order in good faith without seeking to circumvent restrictions on evidence gathering or other policies or procedures. Likewise, as the UPC would accept the formal introduction of documents that Netgear seeks to use in connection with the UPC Proceeding here, a US Court's order authorizing such use would not offend the UPC or violate any order of that Court.

*[remainder of page intentionally left blank]*

DECLARATION OF STEPHAN DORN IN SUPPORT OF *EX PARTE* APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH TO MODIFY PROTECTIVE ORDER

Case 3:23-mc-00794-BLM

1    I declare under penalty of perjury under the laws of the United States of
2    America that the foregoing is true and correct.

3    Executed this 9th day of November, 2023, at Dusseldorf, Germany.

4

5

6

7    Stephan Dorn

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.
Case 3:23-mc-00794-BLM

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address)<br>BENTLEY STANSBURY SBN 229102<br><br>Keesal, Young & Logan<br>400 Oceangate<br>Long Beach CA 90802<br>ATTORNEY FOR    Plaintiff | TELEPHONE NUMBER<br>(562) 436-2000<br><br><br>Ref. No. or File No.<br>8882-1 | FOR COURT USE ONLY |
|---|---|---|
| UNITED STATES DISTRICT COURT - SOUTHERN DISTRICT SAN DIEGO<br>333 W. Broadway<br>San Diego, CA 92101 | | |
| SHORT TITLE OF CASE:<br>IN RE EX PARTE APPLICATION OF NETGEAR INC. AND NETGEAR<br>DEUTSCHLAND GMBH FOR AN ORDER PURSUANT TO 28USC 1782 TO OBTAIN<br>DISCOVERY FOR USE IN FOREIGN PROCEEDINGS v. . | | |

| INVOICE NO. | DATE: | TIME: | DEP./DIV. | CASE NUMBER:<br>23-mc-794(BLM) |
|---|---|---|---|---|
| 8150434 | 09/14/2023 | 8:00 am | | |

United States District Court

Declaration of Service

I, the undersigned, declare under penalty of perjury that I was on the date herein referred to over the age of 21 years and not a party to the within entitled action. I served the:

Federal Subpoena to Produce Documents, Information, or objects or to Permit Inspection of Premises in a Civil Action; SCHEDULE A;

On: QUALCOMM INCORPORATED

At: 2710 Gateway Oaks Dr, SUITE 150-N
    Sacramento, CA 95833

In the above named action by delivering to and leaving with

KOY SAECHAO

Whose title is: AUTHORIZED TO ACCEPT

On: 8/31/2023                At: 02:28 PM

Fees Paid: 0.00

Person who served papers

CONTINUED ON NEXT PAGE

**Declaration of Service**

Billing Code: 8882-1

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.
Case 3:23-mc-00794-BLM

| PLAINTIFF/PETITIONER: | IN RE EX PARTE APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH FOR AN ORDER PURSUANT TO 28USC 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | CASE NUMBER: 23-mc-794(BLM) |
|---|---|---|
| DEFENDANT/RESPONDENT: | | |

a. Name:KATRINA WILLIAMS
b. Address: P.O. Box 7881, Long Beach, CA 90815
c. Telephone number: (562) 426-8306
d. The fee for this service was: 165.00
e. I am:
(3) [X] CA process server:
     (i)[X] Independent Contractor
     (ii) Registration No.: 2015-10
     (iii) County: Sacramento

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the return of service and statement of fees is true and correct.

9/1/2023

KATRINA WILLIAMS

> _Katrina Williams (signature)_

**Declaration of Service**

Billing Code: 8882-1

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.
Case 3:23-mc-00794-BLM

Case Name:    *In Re Ex Parte Application of Netgear Inc. and Netgear Deutschland GMBH for an Order pursuant to 28 USC 1782 to obtain discovery for use in foreign proceedings*
Case No.:      3:23-mc-00794-BLM
KYL File No.: 8882-1

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is Keesal, Young & Logan, 400 Oceangate, Suite 1400, Long Beach, California  90802.

On November 9, 2023, I served the foregoing documents described as **DECLARATION OF STEPHAN DORN IN SUPPORT OF EX PARTE APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH TO MODIFY PROTECTIVE ORDER** on the parties in this action as follows:

David A Kays                                      Attorneys for Respondent, QUALCOMM
Donn Waslif                                        INCORPORATED
Freeda Y. Lugo
**MORGAN FRANICH FREDKIN SIAMAS & KAYS LLP**
333 W. San Carlos Street
Suite 1050
San Jose, CA 95110
(408)288-8288
Fax: (408)288-8325
Email: dkays@mffmlaw.com
dwaslif@mffmlaw.com
flugo@mffmlaw.com
mbatalla@mffmlaw.com
avillafana@mffmlaw.com

☑    BY OVERNIGHT DELIVERY:  I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the above-named persons at the addresses exhibited therewith.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

Executed on November 9, 2023 at Long Beach, California.

I declare under penalty of perjury under the laws of the State of California and United States of America that the foregoing is true and correct.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_____
CASEY L. THOMAS

Proof of Service

1  BENTLEY P. STANSBURY III, CASB No. 229102
   bentley.stansbury@kyl.com
2  KEESAL, YOUNG & LOGAN
   400 Oceangate
3  Long Beach, California 90802
   Telephone:   (562) 436-2000
4  Facsimile:   (562) 436-7416

5  DAVID Y. LIVSHIZ (*pro hac vice*)
   david.livshiz@freshfields.com
6  HENRY V. HUTTEN (*pro hac vice*)
   henry.hutten@freshfields.com
7  GRACE W. BRODY (*pro hac vice*)
   grace.brody@freshfields.com
8  FRESHFIELDS BRUCKHAUS DERINGER US LLP
   601 Lexington Avenue, 31st Floor
9  New York, New York 10022
   Telephone:   (212) 277-4000
10 Facsimile:   (212) 277-4001

11 *Attorneys for Applicants Netgear Inc.*
   *and Netgear Deutschland GmbH.*

12

13           **UNITED STATES DISTRICT COURT**

14          **SOUTHERN DISTRICT OF CALIFORNIA**

15                                    )   CASE NO.: 3:23-MC-00794-BLM
                                      )
16                                    )
                                      )
17 IN RE: *EX PARTE* APPLICATION OF   )   **DECLARATION OF HENRY V.**
18 NETGEAR INC. AND NETGEAR           )   **HUTTEN IN SUPPORT OF *EX***
   DEUTSCHLAND GMBH FOR AN            )   ***PARTE* APPLICATION OF**
19 ORDER PURSUANT TO 28 U.S.C.        )   **NETGEAR INC. AND NETGEAR**
   § 1782 TO OBTAIN DISCOVERY FOR     )   **DEUTSCHLAND GMBH TO**
20 USE IN FOREIGN PROCEEDINGS         )   **MODIFY PROTECTIVE ORDER**
                                      )
21                                    )
                                      )
22                                    )
                                      )
23 _____)

24

25        Pursuant to 28 U.S.C. § 1746, I, Henry Hutten, an attorney admitted and in good

26 standing to practice in the State of New York, declare as follows:

27        1.    I am an attorney with Freshfields Bruckhaus Deringer US LLP, counsel to

28 Netgear Inc. and Netgear Deutschland GmbH (together, "**Netgear**") in the above-

captioned miscellaneous proceeding (the "**Section 1782 Proceeding**"). I am familiar with the facts set forth in this declaration from personal knowledge and documents that I have reviewed.

2.　　I submit this declaration in support of Netgear's *Ex Parte* Application to Modify Protective Order (the "**Application**") so that Netgear is allowed to use documents produced by Qualcomm Incorporated ("**Qualcomm**") in connection with a lawsuit (the "**UPC Proceeding**") that Netgear is defending in the local division of Unified Patent Court (the "**UPC**") in Munich, Germany.

3.　　On June 14, 2023, Netgear filed an application (the "**1782 Application**") seeking discovery pursuant to 28 U.S.C. § 1782 ("**Section 1782**") from Qualcomm for use in two lawsuits (the "**German Proceedings**") pending in the national courts of Germany. *See* Dkt. No. 1.[1]

4.　　This Court granted the 1782 Application on August 31, 2023, *see* Dkt. No. 17, and Netgear served a document subpoena (the "**1782 Subpoena**") on Qualcomm the same day. *See* Exhibit A.[2] Qualcomm served its responses to the 1782 Subpoena on September 14, 2023, in which it agreed to produce certain responsive documents subject to a protective order. *See* Exhibit B at 3, 7, 8.[3]

5.　　Soon thereafter, Netgear and Qualcomm began negotiating a stipulated, blanket protective order. From the date those negotiations started on September 19, 2023, Netgear informed Qualcomm that it sought to use in the UPC Proceeding the same documents that Qualcomm produced in this Section 1782 Proceeding. *See* Exhibit C at 8-9.[4] Netgear suggested that the definition of "Foreign Actions" in the proposed

---

[1]　　References to a "Dkt. No." that are unaccompanied by a case caption are to the ECF docket numbers in this Section 1782 Proceeding.

[2]　　Attached hereto as **Exhibit A** is a true and correct copy of the Declaration of Service of the 1782 Subpoena on Qualcomm's authorized agent dated August 31, 2023.

[3]　　Attached hereto as **Exhibit B** is a true and correct copy of Qualcomm's Responses and Objections to Netgear's Subpoena.

[4]　　Attached hereto as **Exhibit C** is a true and correct copy of an email chain between

DECLARATION OF HENRY V. HUTTEN IN SUPPORT OF EX PARTE APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH TO MODIFY PROTECTIVE ORDER

Case 3:23-mc-00794-BLM

Protective Order be expanded to include the UPC Proceeding so that Netgear could use the discovery that Qualcomm designates as confidential ("**Designated Material**") in that proceeding, subject to all the substantial protections in the Protective Order. *See* Exhibit C at 8-9; 2. In support of these requests, Netgear explained the nature of the UPC Proceeding, how it overlapped extensively with the German Proceedings, and the protections available for any of Qualcomm's documents or information that are submitted by Netgear in the UPC Proceeding. *See id.* at 2. Qualcomm refused Netgear's requests. *Id.* at 8; 1.

6. On October 11, 2023, Qualcomm suggested that the dispute over the UPC Proceeding should not "hold up" document production, but that it would "agree to consider" allowing Netgear to use documents in the UPC Proceeding "if [it] can get comfortable, which can be handled by an amendment at a later date." *Id.* at 1. On the same day, and in an effort to avoid burdening Qualcomm and this Court unnecessarily, Netgear agreed with Qualcomm's suggestion to stipulate to the current blanket protective order (the "**Protective Order**," or "**PO**," Dkt. No. 20) (which does not allow Netgear to use Qualcomm's discovery material in the UPC Proceeding, *see* PO ¶¶ 3, 13) and to seek amendment of the Protective Order at a later date if necessary—with the potential agreement of Qualcomm. *See* Ex. C at 1. In particular, because Netgear would not know whether it was necessary to continue the discussion (and potentially seek this Court's relief) until after it received Qualcomm's documents, Netgear agreed to Qualcomm's suggestion. *Id.*

7. Qualcomm did not produce documents until October 24, 2023. *See* Exhibit D at 10.[5] Netgear diligently reviewed the documents produced by Qualcomm and

counsel for Qualcomm and Netgear, containing email exchanges dated between September 1, 2023 and October 11, 2023.

[5] Attached hereto as **Exhibit D** is a true and correct copy of the email chain between counsel for Qualcomm and Netgear, containing email exchanges dated between October 24, 2023 and November 8, 2023.

1  informed Qualcomm on October 25, 2023—the day after Qualcomm produced

2  documents—that Netgear still sought to use the documents in the UPC Proceeding. *See*

3  Exhibit D at 7. Qualcomm still would not agree. *Id.* at 6. Rather, on October 26, 2023,

4  Qualcomm claimed that Netgear should restart the discovery process from scratch and

5  try to obtain from Huawei Technologies Co. Ltd. ("**Huawei**") in the UPC Proceeding

6  the same documents that Qualcomm had already produced to Netgear here. *See id.* at 6-

7  7. Despite Netgear's diligent and numerous attempts over the next 12 days to convince

8  Qualcomm to agree to modify the Protective Order, Qualcomm has not changed its

9  position. *See id.* at 2-6.

10      8.      Thus, in light of a pending deadline on November 17, 2023 for Netgear to

11  file its statement of defense in the UPC Proceeding, and in light of Netgear's need to

12  support its statement of defense with highly relevant discovery material that Qualcomm

13  has produced to Netgear in the Section 1782 proceeding, Netgear informed Qualcomm

14  on November 7, 2023 that it believed that the parties were at an impasse, and that Netgear

15  intended to seek court relief if the parties could not reach an agreement by November 8,

16  2023. *See* Exhibit D at 2. On November 8, 2023, Netgear informed Qualcomm that it

17  intended to file an *ex parte* Application on November 9, 2023. *See id.* at 1.

18      9.      Accordingly, Netgear respectfully requests that the Court issue an order

19  modifying the Protective Order to include the UPC Proceeding in the definition of

20  "Foreign Actions," as reflected in Exhibit E hereto,[6] while maintaining all other

21  protections and provisions in the Protective Order.

22                        [*remainder of page intentionally left blank*]

23

24

25

26  _____

27  [6]     Attached hereto as **Exhibit E** is a true and correct copy of a proposed Protective
    Order indicating via redline Netgear's proposed changes to the definition of "Foreign
28  Actions."

1    I declare under penalty of perjury that the foregoing is true and correct. Executed
2    this day November 9, 2023, in New York, NY.

3

4

5    _____

6                                  Henry V. Hutten

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.
Case 3:23-mc-00794-BLM

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address)<br>BENTLEY STANSBURY SBN 229102<br><br>Keesal, Young & Logan<br>400 Oceangate<br>Long Beach CA 90802<br>ATTORNEY FOR    Plaintiff | TELEPHONE NUMBER<br>(562) 436-2000<br><br><br>Ref. No. or File No.<br>8882-1 | FOR COURT USE ONLY |
|---|---|---|
| UNITED STATES DISTRICT COURT - SOUTHERN DISTRICT SAN DIEGO<br>333 W. Broadway<br>San Diego, CA 92101 | | |
| SHORT TITLE OF CASE:<br>IN RE EX PARTE APPLICATION OF NETGEAR INC. AND NETGEAR<br>DEUTSCHLAND GMBH FOR AN ORDER PURSUANT TO 28USC 1782 TO OBTAIN<br>DISCOVERY FOR USE IN FOREIGN PROCEEDINGS v. . | | |

| INVOICE NO. | DATE: | TIME: | DEP./DIV. | CASE NUMBER: |
|---|---|---|---|---|
| 8150434 | 09/14/2023 | 8:00 am | | 23-mc-794(BLM) |

United States District Court

Declaration of Service

I, the undersigned, declare under penalty of perjury that I was on the date herein referred to over the age of 21 years and not a party to the within entitled action. I served the:

Federal Subpoena to Produce Documents, Information, or objects or to Permit Inspection of Premises in a Civil Action; SCHEDULE A;

On: QUALCOMM INCORPORATED

At: 2710 Gateway Oaks Dr, SUITE 150-N
    Sacramento, CA 95833

In the above named action by delivering to and leaving with

KOY SAECHAO

Whose title is: AUTHORIZED TO ACCEPT

On: 8/31/2023                At: 02:28 PM

Fees Paid: 0.00

Person who served papers

CONTINUED ON NEXT PAGE

Declaration of Service

Billing Code: 8882-1

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.
Case 3:23-mc-00794-BLM

| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | IN RE EX PARTE APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH FOR AN ORDER PURSUANT TO 28USC 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | CASE NUMBER:<br>23-mc-794(BLM) |
|---|---|---|

a. Name:KATRINA WILLIAMS
b. Address: P.O. Box 7881, Long Beach, CA 90815
c. Telephone number: (562) 426-8306
d. The fee for this service was: 165.00
e. I am:
(3) [X] CA process server:
    (i)[X] Independent Contractor
    (ii) Registration No.: 2015-10
    (iii) County: Sacramento

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the return of service and statement of fees is true and correct.

9/1/2023

KATRINA WILLIAMS

> _signature_

**Declaration of Service**

Billing Code: 8882-1

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.
Case 3:23-mc-00794-BLM

# EXHIBIT B

1  DAVID KAYS, ESQ. (SBN 120798)
   DONN WASLIF, ESQ. (SBN 164538)
2  FREEDA Y. LUGO, ESQ. (SBN 244913)
   MORGAN FRANICH FREDKIN SIAMAS & KAYS LLP
3  333 W. San Carlos Street, Suite 1050
   San Jose, California  95110-2735
4  Telephone: (408) 288-8288
   Facsimile: (408) 288-8325
5
   Attorneys for Non-Party
6  *QUALCOMM INCORPORATED*

7

8                          **UNITED STATES DISTRICT COURT**
                       **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| 10  *IN RE EX PARTE APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH* | Case No.  3:23-MC-00794-BGS (S.D. Cal.) |
| 11 | |
| 12            Applicant, | |
| 13  FOR AN ORDER PURSUANT TO 28 U.S.C.§ 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FROM QUALCOMM INC. | **NON-PARTY QUALCOMM INCORPORATED'S RESPONSES AND OBJECTIONS TO NETGEAR'S SUBPOENA** |
| 14 | |
| 15 | |
| 16 | |

17

18                          **<u>PRELIMINARY STATEMENT</u>**

19        Qualcomm Incorporated ("Qualcomm"), a non-party to this dispute, provides the following

20  objections and responses to Netgear Inc. and Netgear Deutschland GMBH's ("Netgear") Subpoena

21  to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

22  ("Subpoena").

23        The following objections and responses are based solely on the information that is presently

24  available and specifically known to Qualcomm.

25        Qualcomm reserves the right to supplement the following objections and responses, and to

26  change any and all answers herein as additional information is ascertained by Qualcomm as to the

27  scope and relevance of Netgear's document requests, as analyses are made of relevant information

28  sought by the Subpoena, and legal research is completed.

---

1    Qualcomm's objections and responses are made without in any way waiving or intending to

2    waive, but, on the contrary, preserving and intending to preserve:

3        1.    All questions as to competency, relevancy, materiality, privilege, and admissibility as

4    evidence for any purpose of the response or subject matter thereof, in any subsequent proceeding in

5    or the trial of this or any other action;

6        2.    The right to object on any ground to the use of said objections and responses, or the

7    subject matter thereof, in any subsequent proceeding in or in the trial of this or any other action; and

8        3.    The right to object on any ground at any time to other discovery procedures involving

9    or relating to the subject matter of the Subpoena.

10                                **GENERAL OBJECTIONS**

11    Qualcomm sets forth its General Objections to Netgear's Subpoena. These General Objections

12    apply to each document request (the "Requests") set forth herein whether or not they are specifically

13    set forth in the objections and responses to each of the Requests.

14        1.    Qualcomm objects to the Requests to the extent they attempt to impose obligations

15    upon Qualcomm, a non-party, beyond those imposed or authorized by the Federal Rules of Civil

16    Procedure, the Federal Rules of Evidence, the Local Rules of the Southern District of California,

17    and any and all other applicable rules (the "Rules").

18        2.    Qualcomm objects to the Requests to the extent they seek disclosure of information

19    that is protected by the work product doctrine, the attorney-client privilege, joint-defense or

20    common-interest privilege, or any other applicable privilege, immunity, or protection. Qualcomm

21    hereby asserts all such applicable privileges, immunities, and protections, and excludes privileged,

22    immune, and protected information from its responses to these requests. Any disclosure of

23    privileged, immune, or protected documents and things is inadvertent and shall not be deemed a

24    waiver of any privilege, immunity, or protection.

25        3.    Qualcomm objects to the Requests to the extent they seek disclosure of information

26    that is protected by the work product doctrine, the attorney-client privilege, joint-defense or

27    common-interest privilege, or any other applicable privilege, immunity, or protection. Qualcomm

28    hereby asserts all such applicable privileges, immunities, and protections, and excludes privileged,

1    immune, and protected information from its responses to these requests.  Any disclosure of

2    privileged, immune, or protected documents and things is inadvertent and shall not be deemed a

3    waiver of any privilege, immunity, or protection.

4          4.    Qualcomm objects to the Requests as imposing undue expense on a non-party to this

5    dispute, and as unduly burdensome and irrelevant to this litigation, especially to the extent they may

6    purport to require search and production from electronic mail systems, require production of

7    documents in native file format, and/or require production of metadata.

8          5.    Qualcomm objects to the Requests to the extent they call for information, either

9    electronically stored or stored in hard copy that is not readily accessible.

10          6.    Qualcomm objects to the Requests to the extent that they seek the disclosure of

11    confidential information that is not relevant to this case, including, but not limited to, confidential

12    business information, proprietary and/or competitively sensitive information, and trade secrets.

13          7.    Qualcomm objects to the Requests to the extent they call for information or

14    documentation concerning products that are sold outside the United States, or which have not been

15    commercialized, or which have not been sold to any of the defendants to this action.

16          8.    Qualcomm objects to the Requests to the extent they call for disclosure of highly

17    confidential and competitively sensitive information, absent a protective order calling for the proper

18    protections.  Qualcomm cannot provide any such disclosures until such appropriate protections of

19    its highly confidential and competitively sensitive information are in place.

20                    **OBJECTIONS TO DEFINITIONS**

21          1.    Qualcomm objects to the term "Applicants" as vague, ambiguous and overly broad.

22    For example, it includes in the definition other terms such as "Netgear and Netgear Deutschland,

23    each as defined below," all of which are themselves vague, ambiguous, unduly burdensome, and

24    overly broad and which would require Qualcomm to have knowledge of matters beyond its custody

25    and control.

26          2.    Qualcomm objects to the terms "Document" and "Documents" as vague, ambiguous

27    and overly broad, and unduly burdensome to the extent these terms purport to impose obligations

28    on Qualcomm beyond the requirements of the Rules. Qualcomm will respond to these requests in

1    accordance with the Rules.

2        3.    Qualcomm objects to the term "Huawei" as vague, ambiguous and overly broad.  For

3    example, it includes in the definition other terms such as "Huawei Technologies Co., Ltd., a Chinese

4    corporation, including any of its past and/or present representatives, agents, employees, attorneys,

5    predecessors, successors, parents, subsidiaries, affiliates, general partners, limited partners,

6    members and/or any other person acting on its behalf," all of which are themselves vague,

7    ambiguous, unduly burdensome, and overly broad and which would require Qualcomm to have

8    knowledge of matters beyond its custody and control.

9        4.    Qualcomm objects to the term "Huawei Patents" as vague, ambiguous and overly

10   broad.  For example, it includes in the definition other terms such as "the following European Patent

11   ('EP') Applications: (i) EP 3 337 077 ('EP 077'), titled *Wireless local area network information

12   transmission method and apparatus,'* filed by Huawei on August 31, 2016; and (ii) EP 3 143 741

13   ('EP 741'), titled '*Method and transmitter for orthogonal frequency division multiple access

14   (OFDMA) resource allocation,'* filed by Huawei on June 12, 2015," all of which are themselves

15   vague, ambiguous, unduly burdensome, and overly broad.

16       5.    Qualcomm objects to the term "Netgear" as vague, ambiguous and overly broad.  For

17   example, it includes in the definition other terms such as "Netgear Inc., a Delaware corporation,

18   including any of its past and/or present representatives, agents, employees, attorneys, predecessors,

19   successors, subsidiaries, affiliates, general partners, limited partners, limited partners, members

20   and/or any other person acting on its behalf," all of which are themselves vague, ambiguous, unduly

21   burdensome, overly broad, and which would require Qualcomm to have knowledge of matters

22   beyond its custody and control.

23       6.    Qualcomm objects to the term "Netgear Deutschland" as vague, ambiguous and

24   overly broad.  For example, it includes in the definition other terms such as "Netgear Deutschland

25   GmbH, a German corporation, including any of its past and/or present representatives, agents,

26   employees, attorneys, predecessors, successors, parents, subsidiaries, affiliates, general partners,

27   limited partners, members and/or any other person acting on its behalf," all of which are themselves

28   vague, ambiguous, unduly burdensome, overly broad, and which would require Qualcomm to have

1    knowledge of matters beyond its custody and control.

2        7.    Qualcomm objects to the terms "Qualcomm" as vague, ambiguous and overly broad.

3    For example, it includes in the definition other terms such as "Qualcomm, Inc., a Delaware

4    corporation, including all of its corporate locations and any of its pat and/or present representatives,

5    agents, employees, attorneys, predecessors, successors, subsidiaries, affiliates, general partners,

6    limited partners, members, and/or any other person acting on its behalf," all of which are themselves

7    vague, ambiguous, unduly burdensome, overly broad, and which would require Qualcomm to have

8    knowledge of matters beyond its custody and control.

9        8.    Qualcomm objects to the terms "Related," "related to," "regarding," and

10    "concerning" as vague, ambiguous and overly broad.  For example, it includes in the definition other

11    terms such as "in whole or in part constituting, containing, embodying, reflecting, describing,

12    analyzing, identifying, mentioning, showing, stating, referring directly or indirectly to, dealing with,

13    or in any way pertaining to," all of which are themselves vague, ambiguous, unduly burdensome,

14    and overly broad.

15        9.    Qualcomm objects to the terms "You" and "Yours" as vague, ambiguous and overly

16    broad.  For example, it includes in the definition other terms such as "Qualcomm and any of

17    Qualcomm's agents, assigns, representatives, officers, directors, employees, parents, divisions,

18    subsidiaries, or affiliates, or anyone acting or purporting to act on behalf of Qualcomm," all of which

19    are themselves vague, ambiguous, unduly burdensome, and overly broad.

20        10.    Qualcomm further objects to paragraphs 1 - 9 of the Instructions (1) as vague,

21    ambiguous and overly broad to the extent they rely on any of the other vague, ambiguous and overly

22    broad terms objected to herein; and (2) as overly broad and unduly burdensome to the extent they

23    purport to impose obligations on Qualcomm beyond those required by the Rules.  Qualcomm will

24    respond to these requests in accordance with the Rules.

25    **SPECIFIC OBJECTIONS AND RESPONSES TO DOCUMENT REQUESTS**

26    **DOCUMENT REQUEST NO. 1:**

27        Any agreement between Qualcomm and Huawei regarding any patents, including but not

28    limited to the Huawei Patents, along with any amendments, side letters, or ancillary agreements or

QUALCOMM'S RESPONSES AND OBJECTIONS                    CASE NO. 3:23-MC-00794-BGS (S.D. Cal.)
TO NETGEAR'S SUBPOENA

1   documents. This request includes but is not limited to (i) any "long-term, global patent license
2   agreement that contains a cross license granting rights to certain of Huawei's patents" concluded
3   between Qualcomm and Huawei on or around July of 2020 (the "July 2020 Agreement"),[1] along
4   with any side letters, or ancillary agreements or documents; and (ii) any agreement between
5   Qualcomm and Huawei regarding any patents, including but not limited to the Huawei Patents, that
6   existed before, after or contemporaneously with the July 2020 Agreement,[2] along with any
7   amendments, side letters, or ancillary agreements or documents.

8   **RESPONSE TO DOCUMENT REQUEST NO. 1:**

9       In addition to its Preliminary Statement, General Objections, and Objections to Definitions
10  and Instructions, which are hereby incorporated by reference, Qualcomm objects to this request on
11  the grounds that it is overly broad, unduly burdensome, vague, and ambiguous.  Qualcomm also
12  objects to this request to the extent that it calls for information that is neither relevant nor reasonably
13  calculated to lead to the discovery of admissible evidence.  Qualcomm objects to the terms "Any
14  agreement between Qualcomm and Huawei regarding any patents," "including but not limited to
15  the Huawei Patents, along with any amendments, side letters, or ancillary agreements or
16  documents," "This request includes but is not limited to (i) any "long-term, global patent license
17  agreement that contains a cross license granting rights to certain of Huawei's patents" concluded
18  between Qualcomm and Huawei on or around July of 2020 (the "July 2020 Agreement"),[1]" "along
19  with any side letters, or ancillary agreements or documents," "(ii) any agreement between
20  Qualcomm and Huawei regarding any patents, including but not limited to the Huawei Patents, that
21  existed before, after or contemporaneously with the July 2020 Agreement,[2]" and "along with any
22  amendments, side letters, or ancillary agreements or documents," as vague, ambiguous, overly
23  broad, and imposing undue burden and expense.  Qualcomm objects to this request to the extent it
24  seeks disclosure of information that is protected by the work product doctrine, the attorney-client
25  privilege, joint-defense or common-interest privilege, or any other applicable privilege, immunity,
26  or protection. Qualcomm objects to this request to the extent it seeks information from non-party
27  Qualcomm that should be obtained, if at all, from other third parties.  Qualcomm also objects to this
28  request to the extent it calls for information within the public domain or information not in

1   Qualcomm's possession, custody or control.  Qualcomm also objects to this request to the extent it

2   seeks the disclosure of information that Qualcomm is not permitted to disclose pursuant to

3   confidentiality obligations or agreements with non-parties.  Qualcomm further objects to the extent

4   this request seeks confidential, proprietary, and/or private information.  Qualcomm objects to this

5   request on the grounds that it seeks highly confidential and competitively sensitive information that

6   cannot be disclosed until there is a protective order calling for proper protections.

7       Subject to the foregoing Preliminary Statement, General Objections, Objections to Definitions

8   and Instructions, and Specific Objections, Qualcomm responds as follows:  Qualcomm will meet

9   and confer with Netgear in order to narrow the scope of this request and identify the relevant, non-

10  privileged information, if any, sought by Netgear.

11  **DOCUMENT REQUEST NO. 2:**

12      Documents sufficient to show the termination or continued application of any agreement

13  referenced in the previous Request.

14  **RESPONSE TO DOCUMENT REQUEST NO. 2:**

15      In addition to its Preliminary Statement, General Objections, and Objections to Definitions

16  and Instructions, which are hereby incorporated by reference, Qualcomm objects to this request on

17  the grounds that it is overly broad, unduly burdensome, vague, and ambiguous.  Qualcomm also

18  objects to this request to the extent that it calls for information that is neither relevant nor reasonably

19  calculated to lead to the discovery of admissible evidence. Qualcomm objects to the terms

20  "Documents sufficient to show" and "the termination or continued application of any agreement

21  referenced in the previous Request," as vague, ambiguous, overly broad, and imposing undue burden

22  and expense.  Qualcomm objects to this request to the extent it seeks disclosure of information that

23  is protected by the work product doctrine, the attorney-client privilege, joint-defense or common-

24  interest privilege, or any other applicable privilege, immunity, or protection. Qualcomm objects to

25  this request to the extent it seeks information from non-party Qualcomm that should be obtained, if

26  at all, from other third parties. Qualcomm also objects to this request to the extent it calls for

27  information within the public domain or information not in Qualcomm's possession, custody or

28  control.  Qualcomm also objects to this request to the extent it seeks the disclosure of information

1  that Qualcomm is not permitted to disclose pursuant to confidentiality obligations or agreements

2  with non-parties.    Qualcomm further objects to the extent this request seeks confidential,

3  proprietary, and/or private information.    Qualcomm objects to this request on the grounds that it

4  seeks highly confidential and competitively sensitive information that cannot be disclosed until there

5  is a protective order calling for proper protections.

6          Subject to the foregoing Preliminary Statement, General Objections, Objections to Definitions

7  and Instructions, and Specific Objections, Qualcomm responds as follows:  Qualcomm will meet

8  and confer with Netgear in order to narrow the scope of this request and identify the relevant, non-

9  privileged information, if any, sought by Netgear.

12  Dated:  September 14, 2023              MORGAN  FRANICH  FREDKIN  SIAMAS  &
                                           KAYS LLP

16                                         By: _____

17                                             DONN WASLIF, ESQ.
                                               Attorneys for Non-Party
18                                             QUALCOMM INCORPORATED

QUALCOMM'S RESPONSES AND OBJECTIONS                    CASE NO. 3:23-MC-00794-BGS (S.D. Cal.)
TO NETGEAR'S SUBPOENA

Re:   *In re Ex Parte Application of Netgear Inc. and Netgear Deutschland GMBH,*
      Case No. 3:23-MC-00794-BGS (S.D. Cal.)

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I am over the age of eighteen years and not a party to the within action. My business address is 333 W. San Carlos Street, Suite 1050, San Jose, California 95110. On the date indicated below, I served in the manner indicated below the following document(s):

**NON-PARTY QUALCOMM INCORPORATED'S RESPONSES AND OBJECTIONS TO NETGEAR'S SUBPOENA**

| X | **BY ELECTRONIC MAIL** to the person at the electronic notification addresses listed as follows: bentley.stansbury@kyl.com |
|---|---|

Bentley P. Stansbury III
Keesal Young & Logan
400 Oceangate
Long Beach, CA 90802
(563)456-2000
bentley.stansbury@kyl.com

Executed on **September 14, 2023**, at San Jose, California. I certify that the foregoing is true and correct.

DONN WASLIF

# EXHIBIT C

THIS DOCUMENT IS A CONFIDENTIAL FILING.    Case 3:23-mc-00794-BLM
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

**BRODY, Grace**

| | |
|---|---|
| **From:** | HUTTEN, Henry |
| **Sent:** | Wednesday, October 11, 2023 12:03 PM |
| **To:** | David Kays |
| **Cc:** | LIVSHIZ, David (DYL); GUTHEIL, Henning; BRODY, Grace; Stansbury, Bentley; DORN, Stephan; Freeda Lugo; William Siamas; Donn Waslif |
| **Subject:** | RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.) |

David,

Thanks for your note.  You are right, if QC is not prepared to agree now on the UPC issue, we prefer to get the PO in place and to get the documents, without holdup while we consider the UPC issue further.  We can all reserve rights on the issue.

Please also let me know who will be taking the PO forward.  Time is of the essence, so it will be imperative to get the PO finalized and the documents produced as soon as possible.  Best of luck with trial.

Best,
Henry

**Henry Hutten**
Counsel
**Freshfields Bruckhaus Deringer US LLP**
T +1 212 277 4036
M +1 646 753 3080

---

**From:** David Kays <dkays@mffmlaw.com>
**Sent:** Wednesday, October 11, 2023 11:56 AM
**To:** HUTTEN, Henry <Henry.HUTTEN@freshfields.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; GUTHEIL, Henning <Henning.Gutheil@freshfields.com>; BRODY, Grace <Grace.Brody@freshfields.com>; Stansbury, Bentley <Bentley.Stansbury@kyl.com>; DORN, Stephan <Stephan.DORN@freshfields.com>; Freeda Lugo <flugo@mffmlaw.com>; William Siamas <wsiamas@mffmlaw.com>; Donn Waslif <dwaslif@mffmlaw.com>
**Subject:** RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

Henry –

This is good news.  I have limited time to deal with this as I am preparing for a trial that starts on Monday.  If things are as you say, then hopefully, one of my colleagues on this string can take the PO and joint motion to the finish line with you.  We will be giving Huawei notice today.  Regarding the UPC, we cannot agree to add it to the PO now and I assume you don't want to hold up the process any more than has already occurred.  We will, however, agree to consider adding it to the PO for this case if we can get comfortable, which can be handled by an amendment to the PO at a later date. Thanks,

D

---

**From:** HUTTEN, Henry <Henry.HUTTEN@freshfields.com>
**Sent:** Wednesday, October 11, 2023 6:56 AM
**To:** David Kays <dkays@mffmlaw.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; GUTHEIL, Henning <Henning.Gutheil@freshfields.com>; BRODY, Grace <Grace.Brody@freshfields.com>; Stansbury, Bentley <Bentley.Stansbury@kyl.com>; DORN, Stephan <Stephan.DORN@freshfields.com>; Freeda Lugo <flugo@mffmlaw.com>; William Siamas <wsiamas@mffmlaw.com>; Donn Waslif <dwaslif@mffmlaw.com>
**Subject:** RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

THIS DOCUMENT IS A CONFIDENTIAL FILING.   Case 3:23-mc-00794-BLM
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

David,

Thanks for your comments.  As you'll see in the attached, we've accepted your proposed changes.  I've attached both a clean copy as well as a redline showing how we fixed some nits and made other minor changes to finalize the document.  I don't expect any of these edits will be objectionable.

I've also attached a proposed joint motion for your review and comment.

One last point:  Netgear would like this PO to authorize the use of QC's discovery material in the UPC proceeding. So here is more information about the proceeding that hopefully will allow QC to get comfortable with this.  This information comes from Netgear's German counsel, cc'd:

- Nature of the UPC
    - Huawei has sued Netgear for alleged infringement of European Patent 3 611 989 B1, in a proceeding with docket number ACT 459771/2023 CFI 09/2023, and pending before the Munich Local Division of the UPC.
    - Just as in the proceedings before the German Court in Dusseldorf, Huawei alleges that Netgear's modem chipsets contain technology that infringes Huawei's WiFi-related patents.
- Protections for QC's confidential information submitted to the UPC
    - Before the UPC, the protection of trade secrets is governed by the Agreement on a Unified Patent Court ("UPCA") and the Rules of Procedure for the Unified Patent Court ("RoP"). In addition, recital 20 of the European Union's Enforcement Directive, that is also applicable to the UPC, assigns highest priority to the protection of trade secrets.
    - The possible orders of the court are laid down in Art. 58 UPCA and Rules 262(a) RoP:
        - Upon request, the court can order information to be declared and treated as confidential (Art. 58 UPCA, Rule 262(a).1 RoP)
        - Third parties who, upon request, are granted the right to inspect the court file are only provided with the contents of the file in which the statements containing confidential information have been redacted (Art. 58 UPCA, Rules 262(a).1, 262(a).7 and 262.1(b) RoP); the same would apply to information not already ordered to be confidential according to the above, upon request by the parties after a third party had requested to inspect the file (Rule 262.1(b) and 262.2 RoP)
        - Upon request, the court can, in addition to the above, order that access to documents filed with the court be restricted to specific persons (Art. 58 UPCA, Rule 262(a).1 RoP)
        - Upon request, the court can exclude the public during an oral hearing (Art. 45 and 58 UPCA, Rules 105.2 and 115 RoP)
    - The protective measures described above can be requested upon filing confidential documents with the UPC. The UPC grants those kind of orders after weighing competing interests (Rules 262(a).5 and 262.6 RoP), which, in the event QC is producing sensitive, confidential material, should usually result in the grant of the requested protective measures.

Based on this, please let me know if we can make one final edit to the PO to allow Netgear to use documents in the UPC proceedings.

Netgear is eager to finalize the PO and for Qualcomm to produce documents, so we'd much appreciate your prompt attention to this.  Thanks.

Best,
Henry

**Henry Hutten**
Counsel
**Freshfields Bruckhaus Deringer US LLP**
T +1 212 277 4036
M +1 646 753 3080

---

**From:** David Kays <dkays@mffmlaw.com>
**Sent:** Monday, October 9, 2023 6:09 PM
**To:** HUTTEN, Henry <Henry.HUTTEN@freshfields.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; GUTHEIL, Henning <Henning.Gutheil@freshfields.com>; BRODY, Grace <Grace.Brody@freshfields.com>; Stansbury, Bentley <Bentley.Stansbury@kyl.com>; DORN, Stephan <Stephan.DORN@freshfields.com>; Freeda Lugo <flugo@mffmlaw.com>; William Siamas <wsiamas@mffmlaw.com>; Donn Waslif <dwaslif@mffmlaw.com>
**Subject:** RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

THIS DOCUMENT IS A CONFIDENTIAL FILING.   Case 3:23-mc-00794-BLM
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

Henry –

As I mentioned before, I don't think any of your proposed edits are necessary. Nevertheless, I have made a significant and good faith effort to review and consider your proposed edits, accepting many of them. To the extent I rejected your edits, in some cases they are shown as line-outs of your proposed language in redline and others (where you deleted original language) I rejected those edits to avoid having to retype that text. In many cases I added comments or responded to your comments. I believe what remains is fair and reflects a good faith effort to compromise where possible.

At this point, the only thing holding up the process and ultimately production of the agreements is this PO negotiation process – so let's end it and move on.

Thanks,

D

---

**From:** David Kays
**Sent:** Sunday, October 8, 2023 5:49 PM
**To:** HUTTEN, Henry <Henry.HUTTEN@freshfields.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; GUTHEIL, Henning <Henning.Gutheil@freshfields.com>; BRODY, Grace <Grace.Brody@freshfields.com>; Stansbury, Bentley <Bentley.Stansbury@kyl.com>; DORN, Stephan <Stephan.DORN@freshfields.com>; Freeda Lugo <flugo@mffmlaw.com>; William Siamas <wsiamas@mffmlaw.com>; Donn Waslif <dwaslif@mffmlaw.com>
**Subject:** RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

Henry –

I am waiting for client feedback and hope to get back to you tomorrow. Thanks,

D

---

**From:** Donn Waslif <dwaslif@mffmlaw.com>
**Sent:** Thursday, October 5, 2023 5:36 PM
**To:** HUTTEN, Henry <Henry.HUTTEN@freshfields.com>; David Kays <dkays@mffmlaw.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; GUTHEIL, Henning <Henning.Gutheil@freshfields.com>; BRODY, Grace <Grace.Brody@freshfields.com>; Stansbury, Bentley <Bentley.Stansbury@kyl.com>; DORN, Stephan <Stephan.DORN@freshfields.com>; Freeda Lugo <flugo@mffmlaw.com>; William Siamas <wsiamas@mffmlaw.com>
**Subject:** RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

Henry,

David has a family emergency he is attending to and, likely, is unavailable the rest of the evening. He is aware of your message and will get back to you as soon as he is able.

Thanks,

**Donn Waslif**
**Partner**
**Morgan Franich Fredkin Siamas & Kays LLP**
333 W. San Carlos Street, Suite 1050
San Jose, CA 95110
Telephone: 408.288.8288 X120
dwaslif@mffmlaw.com
https://www.morganfranich.com

THIS DOCUMENT IS A CONFIDENTIAL FILING.   Case 3:23-mc-00794-BLM
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

THIS E-MAIL TRANSMISSION CONTAINS CONFIDENTIAL INFORMATION BELONGING TO THE SENDER WHICH IS
LEGALLY PRIVILEGED.  THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED
ABOVE.  IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING,
DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS E-MAIL INFORMATION IS
STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE IMMEDIATELY DELETE IT AND NOTIFY
US.

---

**From:** HUTTEN, Henry <Henry.HUTTEN@freshfields.com>
**Sent:** Thursday, October 5, 2023 1:27 PM
**To:** David Kays <dkays@mffmlaw.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; GUTHEIL, Henning <Henning.Gutheil@freshfields.com>;
BRODY, Grace <Grace.Brody@freshfields.com>; Stansbury, Bentley <Bentley.Stansbury@kyl.com>; DORN, Stephan
<Stephan.DORN@freshfields.com>; Donn Waslif <dwaslif@mffmlaw.com>; Donn Waslif <dwaslif@mffmlaw.com>;
Freeda Lugo <flugo@mffmlaw.com>; William Siamas <wsiamas@mffmlaw.com>
**Subject:** RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

Hi David,

I appreciate that you were in a deposition yesterday, but it has been over 2 days since I've asked for a time that you
are available to discuss the PO.  Please let me know what time works for you.  I have some availability this
afternoon/evening (Eastern) and am generally available tomorrow.  Thank you.

Best,
Henry

**Henry Hutten**
Counsel
**Freshfields Bruckhaus Deringer US LLP**
T +1 212 277 4036
M +1 646 753 3080

---

**From:** HUTTEN, Henry
**Sent:** Wednesday, October 4, 2023 12:11 PM
**To:** David Kays <dkays@mffmlaw.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; GUTHEIL, Henning <Henning.Gutheil@freshfields.com>;
BRODY, Grace <Grace.Brody@freshfields.com>; Stansbury, Bentley <Bentley.Stansbury@kyl.com>; DORN, Stephan
<Stephan.DORN@freshfields.com>; Donn Waslif <dwaslif@mffmlaw.com>; Donn Waslif <dwaslif@mffmlaw.com>;
Freeda Lugo <flugo@mffmlaw.com>; William Siamas <wsiamas@mffmlaw.com>
**Subject:** RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

Thank you David.  Good luck.

I think we could have a productive discussion, so please do let me know when you can discuss.

**Henry Hutten**
Counsel
**Freshfields Bruckhaus Deringer US LLP**
T +1 212 277 4036
M +1 646 753 3080

---

**From:** David Kays <dkays@mffmlaw.com>
**Sent:** Wednesday, October 4, 2023 12:06 PM
**To:** HUTTEN, Henry <Henry.HUTTEN@freshfields.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; GUTHEIL, Henning <Henning.Gutheil@freshfields.com>;
BRODY, Grace <Grace.Brody@freshfields.com>; Stansbury, Bentley <Bentley.Stansbury@kyl.com>; DORN, Stephan
<Stephan.DORN@freshfields.com>; Donn Waslif <dwaslif@mffmlaw.com>; Donn Waslif <dwaslif@mffmlaw.com>;

THIS DOCUMENT IS A CONFIDENTIAL FILING.   Case 3:23-mc-00794-BLM
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

Freeda Lugo <flugo@mffmlaw.com>; William Siamas <wsiamas@mffmlaw.com>
**Subject:** RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

Henry, I am in deposition today and will respond once I come up for air. Thanks, D

---

**From:** HUTTEN, Henry <Henry.HUTTEN@freshfields.com>
**Sent:** Tuesday, October 3, 2023 3:44 PM
**To:** David Kays <dkays@mffmlaw.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; GUTHEIL, Henning <Henning.Gutheil@freshfields.com>; BRODY, Grace <Grace.Brody@freshfields.com>; Stansbury, Bentley <Bentley.Stansbury@kyl.com>; DORN, Stephan <Stephan.DORN@freshfields.com>; Donn Waslif <dwaslif@mffmlaw.com>; Donn Waslif <dwaslif@mffmlaw.com>; Freeda Lugo <flugo@mffmlaw.com>; William Siamas <wsiamas@mffmlaw.com>
**Subject:** RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

David,

QC's license agreements with Huawei are plainly within the scope of the subpoena, even if they don't concern Wi-Fi, and we've explained previously why these agreements are relevant to the actions in Germany. Qualcomm is obligated to produce them.

Leaving that aside, Netgear's proposed revisions to the PO are far from "wholesale" or cause for alarm. For example:

- Netgear added Section C (revised paras 15-18) so that the PO includes a requirement that QC designate confidential material upon production, and do so in good faith to designate only material that qualifies for protection. Not only is this routine, it will help protect QC's confidential information by making sure it is clearly marked as such on the documents QC produces. Is this really objectionable to QC?
- Netgear added Section D (revised paras 19-21) so that the PO includes a process, routinely included in protective orders, by which QC and Netgear must meet and confer to resolve any disagreements over confidentiality designations and, barring such resolution, seek a ruling from the court (during which time the confi restrictions will still apply). Is that truly objectionable?
- Other additions, like the language in footnote 1 and revised paragraph 30, are required by our judge's rules. Does Qualcomm object to those?
- Yet other changes simply adjust the names of the defined terms so that they are used consistently throughout the PO.

As the examples above show, both Netgear and QC would be better served—and better comply with the meet-and-confer requirements in the local and individual rules—if we could have a substantive discussion instead of taking the all-or-nothing approach QC put forth below.

So let's please have a thirty-minute call to walk through Netgear's proposed changes to the PO. That way we can identify the changes, if any, that QC doesn't object to, and QC can explain why it objects to the other proposals. Netgear's goal here is to revise the PO so that it addresses QC's concerns while allowing Netgear to use discovery material in Germany (subject to confidentiality protections ordered by the German Court). A call to discuss the PO is going to help on both accounts, and almost certainly narrow any disagreements that we need to bring to the court's attention.

Please let me know when you can discuss tomorrow. I can do so at any time except from 5-6 pm Eastern. Thanks.

Best,
Henry

**Henry Hutten**
Counsel
**Freshfields Bruckhaus Deringer US LLP**
T +1 212 277 4036
M +1 646 753 3080

---

**From:** David Kays <dkays@mffmlaw.com>
**Sent:** Tuesday, October 3, 2023 4:24 PM
**To:** HUTTEN, Henry <Henry.HUTTEN@freshfields.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; GUTHEIL, Henning <Henning.Gutheil@freshfields.com>; BRODY, Grace <Grace.Brody@freshfields.com>; Stansbury, Bentley <Bentley.Stansbury@kyl.com>; DORN, Stephan

THIS DOCUMENT IS A CONFIDENTIAL FILING.  Case 3:23-mc-00794-BLM
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

<Stephan.DORN@freshfields.com>; Donn Waslif <dwaslif@mffmlaw.com>; Donn Waslif <dwaslif@mffmlaw.com>;
Freeda Lugo <flugo@mffmlaw.com>; William Siamas <wsiamas@mffmlaw.com>
**Subject:** RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

Henry –

Thanks for the email.

We are trying to work with you here to produce the Qualcomm/Huawei agreements, notwithstanding that they
contain no pass-through rights for WiFi that Netgear can use in the German litigation, which was the underlying
premise of Netgear's 1782 application.  I previously sent you the form of protective order that we need before we
will make any such production.  That same basic PO has been entered by the Southern District of California in
numerous 1782 proceedings, including those related to foreign proceedings in Germany, and the parties to those
proceedings have had no trouble complying with it..  While we might consider a few minor changes, we are not
going to negotiate the basic terms of the PO or compromise on the basic protections contained therein.  And the
wholesale changes you propose are not only a non-starter, but give us grave concerns about Netgear's willingness to
protect Qualcomm's highly confidential business information in the event it is produced.  So you know what we
need.  Please let me know how you want to proceed.  Thanks,

D

**From:** HUTTEN, Henry <Henry.HUTTEN@freshfields.com>
**Sent:** Tuesday, October 3, 2023 6:57 AM
**To:** David Kays <dkays@mffmlaw.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; GUTHEIL, Henning <Henning.Gutheil@freshfields.com>;
BRODY, Grace <Grace.Brody@freshfields.com>; Stansbury, Bentley <Bentley.Stansbury@kyl.com>; DORN, Stephan
<Stephan.DORN@freshfields.com>; Donn Waslif <dwaslif@mffmlaw.com>; Rick C. Chang <rchang@mffmlaw.com>;
Freeda Lugo <flugo@mffmlaw.com>; William Siamas <wsiamas@mffmlaw.com>
**Subject:** RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

David,
I hope you had a nice weekend.  Following up on my note below, please let us know if our proposed changes to the
PO are acceptable to Qualcomm, or if QC has any further suggestions.  I'm generally available to discuss today if
you'd find it helpful.  Thanks.
Best,
Henry

**Henry Hutten**
Counsel
**Freshfields Bruckhaus Deringer US LLP**
T +1 212 277 4036
M +1 646 753 3080

**From:** HUTTEN, Henry
**Sent:** Friday, September 29, 2023 10:47 AM
**To:** David Kays <dkays@mffmlaw.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; GUTHEIL, Henning <Henning.Gutheil@freshfields.com>;
BRODY, Grace <Grace.Brody@freshfields.com>; Stansbury, Bentley <Bentley.Stansbury@kyl.com>; DORN, Stephan
<Stephan.DORN@freshfields.com>; Donn Waslif <dwaslif@mffmlaw.com>; Rick C. Chang <rchang@mffmlaw.com>;
Freeda Lugo <flugo@mffmlaw.com>; William Siamas <wsiamas@mffmlaw.com>
**Subject:** RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

David,

Thank you for sharing your form of protective order, and for our discussion yesterday.  I've attached Netgear's
proposed revisions to the protective order.  I've also left comments in the document that explain the purpose behind
those revisions, and how the PO will continue to protect QC's confidential information, while still allowing Netgear
to use QC's discovery material in the German proceedings.

THIS DOCUMENT IS A CONFIDENTIAL FILING.   Case 3:23-mc-00794-BLM
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

Please let us know if you have further edits to the PO.  I expect it will be helpful to discuss some of Netgear's proposals.  I'm generally available to do that today and Monday.

Best,
Henry

**Henry Hutten**
Counsel
**Freshfields Bruckhaus Deringer US LLP**
T +1 212 277 4036
M +1 646 753 3080

**From:** David Kays <dkays@mffmlaw.com>
**Sent:** Thursday, September 28, 2023 4:20 PM
**To:** HUTTEN, Henry <Henry.HUTTEN@freshfields.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; GUTHEIL, Henning <Henning.Gutheil@freshfields.com>; BRODY, Grace <Grace.Brody@freshfields.com>; Stansbury, Bentley <Bentley.Stansbury@kyl.com>; DORN, Stephan <Stephan.DORN@freshfields.com>; Donn Waslif <dwaslif@mffmlaw.com>; Rick C. Chang <rchang@mffmlaw.com>; Freeda Lugo <flugo@mffmlaw.com>; William Siamas <wsiamas@mffmlaw.com>
**Subject:** RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

sure

**From:** HUTTEN, Henry <Henry.HUTTEN@freshfields.com>
**Sent:** Thursday, September 28, 2023 1:09 PM
**To:** David Kays <dkays@mffmlaw.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; GUTHEIL, Henning <Henning.Gutheil@freshfields.com>; BRODY, Grace <Grace.Brody@freshfields.com>; Stansbury, Bentley <Bentley.Stansbury@kyl.com>; DORN, Stephan <Stephan.DORN@freshfields.com>; Donn Waslif <dwaslif@mffmlaw.com>; Rick C. Chang <rchang@mffmlaw.com>; Freeda Lugo <flugo@mffmlaw.com>; William Siamas <wsiamas@mffmlaw.com>
**Subject:** RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

Thanks David.  Does 4:30 Eastern/1:30 Pacific work?

**Henry Hutten**
Counsel
**Freshfields Bruckhaus Deringer US LLP**
T +1 212 277 4036
M +1 646 753 3080

**From:** David Kays <dkays@mffmlaw.com>
**Sent:** Thursday, September 28, 2023 3:46 PM
**To:** HUTTEN, Henry <Henry.HUTTEN@freshfields.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; GUTHEIL, Henning <Henning.Gutheil@freshfields.com>; BRODY, Grace <Grace.Brody@freshfields.com>; Stansbury, Bentley <Bentley.Stansbury@kyl.com>; DORN, Stephan <Stephan.DORN@freshfields.com>; Donn Waslif <dwaslif@mffmlaw.com>; Rick C. Chang <rchang@mffmlaw.com>; Freeda Lugo <flugo@mffmlaw.com>; William Siamas <wsiamas@mffmlaw.com>
**Subject:** RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

Henry –

Following up, I have heard from my client.  Let me know when you would like to discuss.

Thanks,  D

**From:** David Kays <dkays@mffmlaw.com>
**Sent:** Wednesday, September 27, 2023 6:51 PM

THIS DOCUMENT IS A CONFIDENTIAL FILING.    Case 3:23-mc-00794-BLM
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

**To:** HUTTEN, Henry <Henry.HUTTEN@freshfields.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; GUTHEIL, Henning <Henning.Gutheil@freshfields.com>; BRODY, Grace <Grace.Brody@freshfields.com>; Stansbury, Bentley <Bentley.Stansbury@kyl.com>; DORN, Stephan <Stephan.DORN@freshfields.com>; Donn Waslif <dwaslif@mffmlaw.com>; Rick C. Chang <rchang@mffmlaw.com>; Freeda Lugo <flugo@mffmlaw.com>; William Siamas <wsiamas@mffmlaw.com>
**Subject:** RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

Henry –

Thanks for your email.  I have forwarded it to my client and am waiting for feedback.

Subject to hearing from Qualcomm, here are some preliminary thoughts:

1. Qualcomm 's form of 1782 PO, which I previously said we would provide (an require), is attached.  We have used this same basic form in numerous 1782 proceedings, including those involving German proceedings and we are not going to agree to a different form at this point.
2. Our draft 1782 PO currently covers the two Dusseldorf actions that were the subject of Netgear's 1782 application.  Where Qualcomm's confidential materials are going to be used is a critical factor in every 1782 application, and there has been no showing or information provided whatsoever – not to mention any application to obtain, or order allowing, the use of Qualcomm's confidential material in the UPC action.  So we are not going to agree to such use at this point.  However, if you can provide more information on how confidential information is handled/protected in the UPC we are willing to discuss the issue.  But I  don't think it makes sense to hold up getting the agreements for use in the Dusseldorf action while we are working that out (assuming it can be worked out without a separate 1782 application).
3. As David Greenfield mentioned during our call, Qualcomm has no WiFi rights from Huawei and thus, there are no pass-through rights for Netgear.  Nevertheless, we are pulling the operative Huawei agreements for production assuming we can get our protective order in place.
4. Regarding redactions, that is Qualcomm's (and perhaps Huawei's) call.  However, the only relevant provisions of those agreements raised by your 1782 application relates to the license grant, and the highly confidential financial provisions have no relevance to that.
5. As I have noted, before Qualcomm can produce any agreements with Huawei we have to give them notice.  And we will do that.  At this point, however, notice to Huawei from Qualcomm is premature, as we only provide notice when we know (1) we are going to produce something, (2) can identify exactly what we are producing and (3) the protections that will apply.  And of course all of that is still up in the air. However, if you want to let Huawei know about this 1782 proceeding, that's your call.

I will let you know as soon as I hear back from Qualcomm.  Thanks,

D

---

**From:** HUTTEN, Henry <Henry.HUTTEN@freshfields.com>
**Sent:** Wednesday, September 27, 2023 11:20 AM
**To:** David Kays <dkays@mffmlaw.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; GUTHEIL, Henning <Henning.Gutheil@freshfields.com>; BRODY, Grace <Grace.Brody@freshfields.com>; Stansbury, Bentley <Bentley.Stansbury@kyl.com>; DORN, Stephan <Stephan.DORN@freshfields.com>; Donn Waslif <dwaslif@mffmlaw.com>; Rick C. Chang <rchang@mffmlaw.com>; Freeda Lugo <flugo@mffmlaw.com>
**Subject:** RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

David,

I hope you (and your family) are well.  Following up on our last call, Netgear prefers to handle QC's confidentiality concerns with a protective order ensuring that any of QC's information that deserves protection remains confidential.  Which should eliminate the need to redact financial information from the documents produced by Qualcomm.  To that end, I've attached a proposed stipulated protective order, which includes protections for, *inter alia*, any of QC's confidential information that gets filed in the German lawsuits.

8

In addition, as I previewed during our last call, the draft protective order would allow Netgear to use QC's discovery material in connection with the patent-infringement lawsuit that Huawei has brought against Netgear before the Unified Patent Court in Munich.  *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017) ("In sum, we hold that Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise.").  The same protections would apply to any confidential QC discovery material that Netgear files in that proceeding.

In addition, during our last call, you said that you would ask your client to describe what responsive documents it has.  Qualcomm should please keep in mind that through our meet-and-confer process, Netgear has explained that its requests cover any agreement that includes any contractual rights protecting Qualcomm from being sued by Huawei based on any patents, irrespective of subject matter, including without limitation, (1) stand still agreements, or any other agreement that aims to secure patent peace between Qualcomm and Huawei, (2) covenants barring Huawei from suing Qualcomm for patent infringement, and (3) covenants barring Huawei from suing Qualcomm before exhausting all other options for relief.

Finally, I understand that QC must inform Huawei before it produces documents.  Given the timing, Huawei should be informed promptly.  In deference to Qualcomm's relationship with Huawei, Netgear is willing to wait another day or so for Qualcomm to inform Huawei (if it has not done so already). After that, Netgear will inform Huawei on its own.

In sum, please let us know:

1. If Qualcomm has any comments or questions on the proposed Protective Order;
2. What documents Qualcomm intends to produce; and
3. If Qualcomm has informed Huawei of Netgear's 1782 subpoena.

Stephan and I can join a call tomorrow between noon and 1:30 PM Eastern to discuss any of this.  Given timing, we should finalize the protective order and post Huawei promptly so that Qualcomm can produce documents next week.

Best,
Henry

**Henry Hutten**
Counsel
**Freshfields Bruckhaus Deringer US LLP**
T +1 212 277 4036
M +1 646 753 3080

---

**From:** HUTTEN, Henry
**Sent:** Tuesday, September 19, 2023 1:01 PM
**To:** David Kays <dkays@mffmlaw.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; DORN, Stephan <Stephan.DORN@freshfields.com>; GUTHEIL, Henning <Henning.Gutheil@freshfields.com>; BRODY, Grace <Grace.Brody@freshfields.com>; Stansbury, Bentley <Bentley.Stansbury@kyl.com>; Donn Waslif <dwaslif@mffmlaw.com>; Rick C. Chang <rchang@mffmlaw.com>; Freeda Lugo <flugo@mffmlaw.com>
**Subject:** RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

David,

I'm really sorry to hear that, and hope everything is as well as it can be under the circumstances.

My schedule is flexible today, and I'm happy to take your call when you have a few minutes.  Thanks.

Best,
Henry

**Henry Hutten**
Counsel
**Freshfields Bruckhaus Deringer US LLP**
T +1 212 277 4036
M +1 646 753 3080

THIS DOCUMENT IS A CONFIDENTIAL FILING.   Case 3:23-mc-00794-BLM
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

**From:** David Kays <dkays@mffmlaw.com>
**Sent:** Tuesday, September 19, 2023 12:42 PM
**To:** HUTTEN, Henry <Henry.HUTTEN@freshfields.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; DORN, Stephan <Stephan.DORN@freshfields.com>;
GUTHEIL, Henning <Henning.Gutheil@freshfields.com>; BRODY, Grace <Grace.Brody@freshfields.com>; Stansbury,
Bentley <Bentley.Stansbury@kyl.com>; Donn Waslif <dwaslif@mffmlaw.com>; Rick C. Chang
<rchang@mffmlaw.com>; Freeda Lugo <flugo@mffmlaw.com>
**Subject:** Re: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

Henry, I would like to move things forward and see if we can find a solution. Unfortunately, I am not in a position to
commit to a call at a specific time today, as I am dealing with a family health emergency that has had me sleeping at
the hospital for the last 10 days, in addition to managing numerous other professional obligations.  Obviously, not
your problem.  That said, I would like to connect today and will try to call you when I free up, assuming you can be
flexible.  Thanks,  D

Sent from my iPhone


On Sep 19, 2023, at 9:08 AM, HUTTEN, Henry <Henry.HUTTEN@freshfields.com> wrote:


Hi David,

I hope you are well.  I'm following up on my e-mail below.  Please let us know.  Thanks.

Best,
Henry

**Henry Hutten**
Counsel
**Freshfields Bruckhaus Deringer US LLP**
T +1 212 277 4036
M +1 646 753 3080

---

**From:** HUTTEN, Henry
**Sent:** Monday, September 18, 2023 3:03 PM
**To:** David Kays <dkays@mffmlaw.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; DORN, Stephan
<Stephan.DORN@freshfields.com>; GUTHEIL, Henning <Henning.Gutheil@freshfields.com>; BRODY,
Grace <Grace.Brody@freshfields.com>; Stansbury, Bentley <Bentley.Stansbury@kyl.com>; Donn
Waslif <dwaslif@mffmlaw.com>; Rick C. Chang <rchang@mffmlaw.com>; Freeda Lugo
<flugo@mffmlaw.com>
**Subject:** RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

David,
Are you available to meet and confer tomorrow at 1:30 Eastern/10:30 AM Pacific?  Thanks.
Best,
Henry

**Henry Hutten**
Counsel
**Freshfields Bruckhaus Deringer US LLP**
T +1 212 277 4036
M +1 646 753 3080

---

**From:** HUTTEN, Henry
**Sent:** Monday, September 18, 2023 10:33 AM
**To:** David Kays <dkays@mffmlaw.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; DORN, Stephan

THIS DOCUMENT IS A CONFIDENTIAL FILING.   Case 3:23-mc-00794-BLM
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

<Stephan.DORN@freshfields.com>; GUTHEIL, Henning <Henning.Gutheil@freshfields.com>; BRODY, Grace <Grace.Brody@freshfields.com>; Stansbury, Bentley <Bentley.Stansbury@kyl.com>; Donn Waslif <dwaslif@mffmlaw.com>; Rick C. Chang <rchang@mffmlaw.com>; Freeda Lugo <flugo@mffmlaw.com>
**Subject:** RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

David,

I'm informed that QC sent the R&Os to Bentley's firm last week, which we (Freshfields) have now received this morning.  We'll review the R&Os and revert shortly.

Best,
Henry

**Henry Hutten**
Counsel
**Freshfields Bruckhaus Deringer US LLP**
T +1 212 277 4036
M +1 646 753 3080

---

**From:** HUTTEN, Henry
**Sent:** Monday, September 18, 2023 10:06 AM
**To:** David Kays <dkays@mffmlaw.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; DORN, Stephan <Stephan.DORN@freshfields.com>; GUTHEIL, Henning <Henning.Gutheil@freshfields.com>; BRODY, Grace <Grace.Brody@freshfields.com>; Stansbury, Bentley <Bentley.Stansbury@kyl.com>; Donn Waslif <dwaslif@mffmlaw.com>; Rick C. Chang <rchang@mffmlaw.com>; Freeda Lugo <flugo@mffmlaw.com>
**Subject:** RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

David,

I hope you are well.  As you know, 14 days from service of Netgear's 1782 subpoena have elapsed without Qualcomm responding to the subpoena as required by, *inter alia*, the Court's order of August 31, 2023.  As a result, any objections to the subpoena have been waived.  Please produce the requested documents right away.  Thank you.

Best,
Henry

**Henry Hutten**
Counsel
**Freshfields Bruckhaus Deringer US LLP**
T +1 212 277 4036
M +1 646 753 3080

---

**From:** David Kays <dkays@mffmlaw.com>
**Sent:** Friday, September 1, 2023 9:33 PM
**To:** HUTTEN, Henry <Henry.HUTTEN@freshfields.com>
**Cc:** LIVSHIZ, David (DYL) <David.LIVSHIZ@freshfields.com>; DORN, Stephan <Stephan.DORN@freshfields.com>; GUTHEIL, Henning <Henning.Gutheil@freshfields.com>; BRODY, Grace <Grace.Brody@freshfields.com>; Stansbury, Bentley <Bentley.Stansbury@kyl.com>; Donn Waslif <dwaslif@mffmlaw.com>; Rick C. Chang <rchang@mffmlaw.com>; Freeda Lugo <flugo@mffmlaw.com>
**Subject:** RE: Netgear's Application to Obtain Discovery from Qualcomm (S.D. Cal.)

Thanks Henry, so I heard.  D

---

**From:** HUTTEN, Henry <Henry.HUTTEN@freshfields.com>
**Sent:** Friday, September 1, 2023 6:29 PM

11

# EXHIBIT D

**BRODY, Grace**

| | |
|---|---|
| **From:** | HUTTEN, Henry |
| **Sent:** | Wednesday, November  , 2023 12:0  PM |
| **To:** | David Kays |
| **Cc:** | Donn Waslif; Melissa Batalla; LIVSHIZ, David (DYL); GUTHEIL, Henning; BRODY, Grace; Stansbury, Bentley; DORN, Stephan; William Siamas; Antonio Villafana; Freeda Lugo |
| **Subject:** | RE: Netgear 1  2 Case No. 3:23  mc  00     BLM: Document Production |

David,

Thanks for your e-mail.

Despite our lengthy back-and-forth on this issue, Qualcomm has rejected all of Netgear's requests to modify the PO.  In light of the November 17 deadline in the UPC Proceeding, Netgear intends to file an *ex parte* application with the court tomorrow seeking to modify the protective order.

That being said, Netgear would be happy to withdraw the application or refrain from filing it, as applicable, if Qualcomm will agree promptly to the modest PO amendment Netgear requests.  To that end, I'm happy to confer tomorrow at 11 tomorrow (Pacific).

Best,
Henry

**Henry Hutten**

**Freshfields Bruckhaus Deringer US LLP**

| | |
|---|---|
| **From:** | |
| **Sent:** | |
| **To:** | |
| **Cc:** | |

**Subject:**

| | |
|---|---|
| **From:** | |
| **Sent:** | |
| **To:** | |
| **Cc:** | |

Case 3:23-mc-00794-BLM

**Subject:** _____     _____

Thank you David.  Safe travels.

While I appreciate that you are on the road, Netgear has a deadline of November 17 to file its statement of defense in the UPC proceeding, and we've been trying to resolve this issue since the day after Qualcomm produced documents on October 24 (we were also trying to do so even before that). So we don't really have time to spare before Netgear needs to seek court relief.

Best,
Henry

**Henry Hutten**

**Freshfields Bruckhaus Deringer US LLP**

---

**From:** _____
**Sent:**
**To:**          _____
**Cc:**       _____          _____

_____          _____
_____          _____
_____          _____
_____          _____

**Subject:**

_____

David,

Modifying the Protective Order will require Qualcomm to do nothing aside from review a minor proposed amendment to the definition of "Foreign Actions" therein.  Every other protection in the Protective Order will remain the same, and in place.  That is hardly burdensome for Qualcomm.  By contrast, Qualcomm seems to suggest that Netgear should undertake the needlessly burdensome and wasteful process of starting discovery from scratch    either in a new 1782 proceeding or in the UPC proceeding    to try to obtain the same documents that Qualcomm has already produced to it.  Which is of course the exact opposite of the goals articulated in *Foltz*:  to avoid duplicative discovery efforts and the necessary waste of judicial resources they create.

Qualcomm's contention that there is no longer a live legal controversy is belied by the facts and the law.  In *Mangouras v. Boggs*, the foreign proceedings for which discovery was sought were over, making the appeal moot.  980 F.3d 88, 96-97 (2d Cir. 2020).  That is of course not the case here.  There are also provisions all over the Protective Order allowing Netgear to ask the Court to resolve disputes that arise under that Order, including a provision allowing Netgear to ask the Court to modify the PO "at any time." Dkt. No. 20 at    32.  Which means there is still a very live dispute that the Court has expressly retained the ability to resolve.  In any event, it is black letter law that district courts retain "inherent authority to grant a motion to modify a protective order." *E.g.*, *CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 201 (N.D. Cal. 2009).

Also, in your e-mail to me dated October 11, 2023, it was Qualcomm itself that offered to resume the discussion of this UPC issue after entry of the Protective Order and potentially make "an amendment

Case 3:23-mc-00794-BLM

to the PO at a later date."  I presume that Qualcomm made that offer in good faith, and did not truly believe that Netgear would lack court recourse to modify the protective order the moment Qualcomm produced documents.

Finally, if the Court finds it helpful to look to Section 1782, it will find that the statutory requirements are met easily, and the *Intel* factors heavily favor discovery.  Critically, district courts must exercise their discretion in light of Section 1782's aim "of providing *efficient* assistance to participants in international litigation."  *Intel Corp. v. Advance Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004) (emphasis added).  Amending the Protective Order is by far the most efficient, least judicially burdensome manner of providing discovery assistance here.

Notwithstanding all our efforts here, it seems like the parties are at an impasse. Thus, unless I hear differently by 9:30 AM Pacific time tomorrow, Netgear will consider this discussion exhausted and seek appropriate court relief.

Best,
Henry

**Henry Hutten**

**Freshfields Bruckhaus Deringer US LLP**

**From:** _____
**Sent:**
**To:**           _____
**Cc:**     _____          _____
     _____
   _____          _____
       _____          _____
     _____          _____
   _____
**Subject:**

Case 3:23-mc-00794-BLM

**From:**
**Sent:**
**To:**
**Cc:**

**Subject:**

David,

I hope you had a nice weekend.  Three items.

First, Netgear will ask the persons in Germany who could receive access to the 2020 license agreement by virtue of Netgear's German court filing to sign the undertaking.  But even if these people will not sign the undertaking, the Protective Order still allows Netgear to file the document with the Dusseldorf Higher Regional Court.  Paragraph 19(e) allows Netgear to file designated material with the German court so long as Netgear complies with paragraph 23's requirements.  And paragraph 23 allows Netgear to file materials with the German court so long as Netgear takes the steps I described in my e-mail below from October 25.  Paragraph 22 independently permits Netgear to file designated materials with the German court so long as Netgear provides Qualcomm notice of the filing (which it has) and asks the German court for the protections I've described in my e-mail of October 25 (which it will).

Second, attached is an undertaking signed by another of Netgear's "Counsel of Record" in Germany.

Third, as for the UPC proceeding, Netgear was not served in that proceeding until well after it filed its 1782 application.  Binding, well-settled precedent forecloses Qualcomm's contention that Netgear should have to start the discovery process over from scratch in order to use in the UPC proceeding the exact same material it has already obtained in the instant case. *See Foltz v. State Farm Mutual Automobile Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) (the Ninth Circuit "strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation" because " a lowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery."); *Beckman Indus. v. Int'l Ins. Co.*, 966 4.2d 470, 475-76 (9th Cir. 1992) ("Ninth Circuit precedent strongly favors disclosure to meet the needs of parties in pending litigation," including "the reasonable needs of other parties in other litigation").

This binding precedent applies just as forcefully when parties seek to modify a protective order to allow the use of discovery materials in litigation abroad. *See*, *e.g.*, *Oracle Corp. v. SAP AG*, 2010 WL 545842, at  2-3 (N.D. Cal. Feb. 12, 2010) (holding that "*Foltz* rather than    1782 governs" a request for a protective order to be modified to use documents in litigation in Europe).  It is equally clear that "Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise."  *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 133-34 (2d Cir. 2017) (rejecting the

argument that "a Section 1782 applicant must satisfy the statutory requirements for each proceeding for which he or she wishes to use the requested discovery"); *see also Glock, Inc.*, 979 F.3d 1002, 1007 (11th Cir. 2005) (finding "nothing in the language of Section 1782 that purports to limit later uses of evidence that have been properly obtained under Section 1782."). Rather, a 1782 applicant should be permitted to use discovery material in non-US proceedings beyond those named in an original 1782 application unless the opposing party "can show bad faith or other chicanery," which is palpably absent here. *In re Accent Delight Int'l Ltd.*, 2017 U.S. Dist. LE IS 211058, at 6 (S.D.N.Y. Dec. 22, 2017) (granting leave to use previously obtained 1782 discovery material in additional non-US proceedings).

Given that Qualcomm is now aware of this binding (and overwhelming) case law, we hope that it will reconsider its position and agree to allow Netgear to use the discovery material in connection with the UPC proceeding. If Qualcomm still will not agree, please let me know when we can meet and confer. The court's individual rules requires us to discuss this issue on the phone in advance of Netgear's request for a discovery conference.

Best,
Henry

**Henry Hutten**

**Freshfields Bruckhaus Deringer US LLP**

**From:** _____
**Sent:**
**To:** _____    _____
**Cc:** _____    _____
_____
_____    _____
_____    _____
_____    _____
**Subject:**

**From:** _____
**Sent:**
**To:** _____    _____
**Cc:** _____    _____
_____
_____    _____
_____    _____
_____    _____

**Subject:**

David, All,

I was able to access the documents.  Thank you for your help.

Pursuant to paragraphs 19(e), 22 and 23 of the Protective Order, I'm providing notice that Netgear through its external counsel in Germany   intends to file the 2020 license agreement, QCNETGEAR1782  00794  0000202-000243 (the "                              "), in the Dusseldorf Higher Regional Court, which is presiding over the Foreign Action concerning EP 741.

Consistent with the Protective Order, Netgear intends to ask the German court to restrict access to the License Agreement, including information derived therefrom, as much as is allowed by German law, including by declaring that the License Agreement and information derived therefrom are confidential.  German law does typically require that external attorneys of record for each party, as well as at least one internal employee from each party, have access to information in the court file.  Nevertheless, Netgear will request that access to information from the License Agreement is limited to the fullest extent the law allows, and that each person with access to the License Agreement or information derived therefrom be required to maintain the document/information in confidence.

Finally, Netgear would like to use the License Agreement, and potentially other documents produced by Qualcomm, in connection with its defense of the UPC proceeding.  Therefore, Netgear requests that Qualcomm agree to amend the Protective Order to include the UPC proceeding in the definition of "Foreign Actions."  This would allow Netgear to use the materials in the UPC proceeding, subject to the same substantial protections for Qualcomm's information that are in the Protective Order.  In my e-mail dated Wednesday October 11, 2023, I described the nature of the UPC proceedings, as well as the substantial protections for any of QC's confidential information that is submitted to the UPC.  Please let me know what more, if anything, you would like before agreeing to Netgear's request.  We'd very much like to resolve this issue consensually, but will seek court relief if necessary.  Thanks.

Best,
Henry

**Henry Hutten**

**Freshfields Bruckhaus Deringer US LLP**

**From:** _____
**Sent:**
**To:** _____    _____
_____
**Cc:** _____    _____

Case 3:23-mc-00794-BLM

**Subject:**

Henry,

You and Stephan should have received an email directly from ShareFile to sign up (see attached). Once you do that you will be able to access the link. You will not be able to access the link in the transmittal letter without first signing up.

Stay Well,

**Antonio Villafaña**
*Paralegal (he/his)*
**Morgan Franich Fredkin Siamas & Kays LLP**
333 W. San Carlos Street, Suite 1050
San Jose, CA  95110
Telephone: 408.288.8288
Direct: 408.200.1280
Facsimile: 408.288.8325
**avillafana@mffmlaw.com**
**www.morganfranich.com**

THIS E-MAIL TRANSMISSION CONTAINS CONFIDENTIAL INFORMATION BELONGING TO THE SENDER WHICH IS LEGALLY PRIVILEGED.  THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE.  IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS E-MAIL INFORMATION IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE IMMEDIATELY DELETE IT AND NOTIFY US.

**From:**
**Sent:**
**To:**
**Cc:**

**Subject:**

Thanks David.

Unfortunately, I still get the same error message.

**Henry Hutten**

**Freshfields Bruckhaus Deringer US LLP**

**From:**
**Sent:**
**To:**
**Cc:**

Case 3:23-mc-00794-BLM

**Subject:**

_____          _____

**From:**        _____
**Sent:**
**To:**          _____          _____
**Cc:**              _____          _____
            _____          _____
            _____          _____
                _____          _____
**Subject:**    _____          _____

Thanks David.  Unfortunately not.  I put a screenshot below if helpful:


**Henry Hutten**

**Freshfields Bruckhaus Deringer US LLP**


**From:**        _____
**Sent:**
**To:**              _____          _____
**Cc:**              _____          _____
            _____          _____
            _____          _____
                _____          _____
**Subject:**    _____          _____


**From:**        _____
**Sent:**
**To:**          _____
**Cc:**              _____          _____
        _____          _____
        _____          _____
            _____          _____
**Subject:**    _____          _____

Freeda,

Thanks very much. The ShareFile site tells me that the following e-mail and password combination is incorrect, and I am unable to access the materials:

henry.hutten    frehsfields.com
9840751648

Could you please advise?

Case 3:23-mc-00794-BLM

Stephan Dorn, cc'd (stephan.dorn___freshfields.com), has also signed Exhibit A to the protective order.  He is a principal associate employed by Freshfields.   Could you please also add Stephan as a user who is authorized to download the files as well?

Thanks again.

Best,
Henry

**Henry Hutten**

**Freshfields Bruckhaus Deringer US LLP**

---

**From:**          _____
**Sent:**
**To:**             _____
**Cc:**             _____          _____
       _____          _____
       _____          _____
            _____          _____
            _____          _____

**Subject:**

**IN RE EX PARTE APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH FOR AN ORDER PURSUANT TO 27 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**
Case No. 3:23-mc-00794-BLM (S.D. Cal.)

Henry:

Today I sent a letter containing a ShareFile link to download Qualcomm's document production, Bates labeled QCNETGEAR1782_00794_0000001 - QCNETGEAR1782_00794_0000243, in the above-referenced matter. This production is designated as "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY," pursuant to the Supplemental Protective Order in this matter and must be treated accordingly. This separate email is being sent with the password, as these documents are encrypted.

RAR Password:  9840751648

Please note that **you are the only user authorized to download these documents**.  If you would like anyone else added to the folder to assist with downloading the production, please send us their name, title, and email address so we can add them to the ftp folder.

Thanks,
Freeda



Freeda Yllana Lugo
**Morgan Franich Fredkin Siamas & Kays LLP**
333 W. San Carlos Street, Suite 1050
San Jose, CA  95110
Telephone: 408.288.8288 x121
Facsimile:  408.288.8325
**flugo@mffmlaw.com**

Case 3:23-mc-00794-BLM

Case 3:23-mc-00794-BLM    Document 40    Filed 02/14/24    PageID.771    Page 87 of
107
www.morganfranich.com

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk    freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon    alley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong    ong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and    ietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk    freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon    alley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong    ong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and    ietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk    freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon    alley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong    ong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and    ietnam.

Case 3:23-mc-00794-BLM

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk   freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon   alley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong   ong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and   ietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk   freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon   alley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong   ong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and   ietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk   freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon   alley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong   ong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and   ietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

Case 3:23-mc-00794-BLM

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk    freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon   alley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong   ong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and   ietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

Case 3:23-mc-00794-BLM

# EXHIBIT E

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11
12
13
14
15

| | |
|---|---|
| IN RE: EX PARTE APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | CASE NO.: 23-MC-794-BLM<br><br>**[PROPOSED] AMENDED PROTECTIVE ORDER** |

16
17
18
19
20
21
22
23
24
25
26
27
28

The Court having reviewed the Joint Motion for Protective Order submitted by petitioners Netgear Inc. and Netgear Deutschland GmbH (together, the "**Applicants**") and Respondent Qualcomm Incorporated ("Qualcomm") and finding good cause therefore, IT IS HEREBY ORDERED THAT: The Motion is granted and the parties are ordered to comply with the terms of the provisions herein.

**A.**    **Definitions**

1.    "Material" means all information, documents, testimony, and things produced, served, or otherwise provided in this action or one or more of the Foreign Actions.

2.    "Confidential Information" means information (regardless of how it is generated, stored, or maintained) or tangible things that qualify for protection under Rule 26(c) of the Federal Rules of Civil Procedure.

3.    The "Foreign Actions" means the following legal proceedings initiated by Huawei Technologies Co., Ltd ("Huawei") against Applicants: (a) a patent infringement action regarding European Patent ("EP") 3 337 077 B1, docket number 4c O 8/22, pending before the Dusseldorf Regional Court in the Federal Republic of Germany, involving allegations that Applicants infringed certain patents held by Huawei relating to Wi-Fi technology, (b) a patent infringement action regarding EP 3 143 741 B1, docket number 4c O 9/22, pending before the Dusseldorf Regional Court in the Federal Republic of Germany involving allegations that Applicants infringed certain patents held by Huawei relating to Wi-Fi technology, (c) a patent infringement action regarding EP 3 611 989, docket number ACT 459771/2023 CFI 09/2023, pending before the Munich Local Division of the Unified Patent Court, involving allegations that Applicants infringed certain patents held by Huawei relating to Wi-Fi technology, and (de) any appeals from either any of the aforementioned proceedings.

4.    "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" material means the information, documents, and things subpoenaed by Applicants in this

[PROPOSED] AMENDED PROTECTIVE ORDER
CASE NO. 23-MC-794-BLM
US-LEGAL-12299978/4  177023-0001

proceeding that Qualcomm believes in good faith constitute or incorporate Qualcomm's Confidential Information.

5.    "Party" means Applicants Netgear Inc. and Netgear Deutschland GmbH, including all of its respective officers, directors, employees, consultants, retained experts, and Counsel of Record (and their support staff). In addition to Applicants, this definition shall also include Huawei in the Foreign Actions, including all of its respective officers, directors, employees, consultants, retained experts, and Counsel of Record (and their support staff), to the extent each such person or entity returns to Qualcomm and Applicants an executed copy of the "Acknowledgment and Agreement to Be Bound by the Protective Order" attached hereto as Exhibit A.

6.    "Authorized Reviewer(s)" means persons authorized to review "QUALCOMM — OUTSIDE ATTORNEYS' EYES ONLY" material in accordance with this Order.

7.    "Designated Qualcomm Material" means material that is designated "QUALCOMM — OUTSIDE ATTORNEYS' EYES ONLY" under this Order.

8.    "Counsel of Record" means attorneys for a Party who are not employees of a Party that have either (a) appeared in this action or (b) executed Exhibit A and either appeared in one or more of the Foreign Actions or been retained to represent or advise a Party in one or more of the Foreign Actions (including any necessary support personnel employed by the law firms of the attorneys described in this paragraph).

9.    "Outside Consultant" means a person with specialized knowledge or experience in a matter pertinent to one or more of the Foreign Actions who has been retained by Counsel of Record or a Party to serve as an expert witness or consultant in one or more of the Foreign Actions (including any necessary support personnel of such person to whom disclosure is reasonably necessary for one or more of the Foreign Actions), and who is not a current employee of a Party, of a competitor of a Party, or of Non-Party Qualcomm, and who, at the time of retention, is not anticipated

to become an employee of, or a non-litigation consultant of (a) a Party, (b) a competitor of a Party, or (c) a competitor of Qualcomm.

10.    "Producing Party" means Qualcomm.

11.    "Receiving Party" means a Party that receives Designated Qualcomm Material in this action or in one or more of the Foreign Actions.

12.    "Professional Vendors" means persons or entities that provide support services in this action or one or more of the Foreign Actions (*e.g.*, court reporting, photocopying; videotaping; translating; designing and preparing exhibits, graphics, or demonstratives; organizing, storing, retrieving data in any form or medium; etc.) and their employees and subcontractors who have been retained or directed by Counsel of Record in one or more of the Foreign Actions, and who are not current employees of a Party, of a competitor of a Party, or of Non-Party Qualcomm, and who, at the time of retention, are not anticipated to become employees of (a) a Party, (b) a competitor of a Party, or (c) a competitor of Qualcomm. This definition includes ESI vendors, and professional jury or trial consultants retained in connection with one or more of the Foreign Actions to assist a Party, Counsel of Record, or any Outside Consultant in their work. Professional vendors do not include consultants who fall within the definition of Outside Consultant.

**B.    Scope**

13.    Material produced in this action that includes Qualcomm's Confidential Information shall contain the legend "QUALCOMM — OUTSIDE ATTORNEYS' EYES ONLY" on each page of the Material. A Receiving Party may use Designated Qualcomm Material only for prosecuting, defending, or attempting to settle or otherwise resolve this action or one or more of the Foreign Actions. Designated Qualcomm Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the Foreign Actions have been terminated, a Receiving Party must comply with the provisions of Section I below ("Final Disposition").

14.     The protections conferred by this Order cover not only Designated Qualcomm Material, but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof. This Order shall not prevent a disclosure to which Qualcomm consents in writing before that disclosure takes place.

## C.     Challenges to Qualcomm's Designation

15.     The Applicants may, at any time prior to Final Disposition, object in writing to Qualcomm's designation of material it produces in this proceeding as "QUALCOMM — OUTSIDE ATTORNEYS' EYES ONLY" if they have a good faith basis to believe that it does not constitute Qualcomm's Confidential Information.

16.     Within seven (7) business days after receipt of a written challenge, which sets forth in detail the basis for the challenge, Qualcomm must advise the Applicants whether it will change the designation.

17.     If Qualcomm and Applicants are unable to reach agreement after the expiration of this seven (7)-day period, they shall meet and confer in an attempt to resolve the matter.  If they cannot resolve the issue, the Applicants may seek an order from this Court to alter the status of the Designated Qualcomm Material.  While any such motion or request is pending, the Material shall remain Designated Qualcomm Material, and it will continue to be protected by this Order during such time.

## D.     Access To Designated Qualcomm Material

18.     Designated Qualcomm Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures, to the greatest extent possible, that access is limited to the persons authorized under this Order.

19.     Unless otherwise ordered by the Court or permitted in writing by Qualcomm, a Party may disclose Designated Qualcomm Material only to:

a.     Persons who appear on the face of the Designated Qualcomm Material as an author, addressee, or recipient thereof, or persons who

are a corporate representative of a company that appears on the face of the Designated Qualcomm Material;

b.    Counsel of Record who have signed the "Acknowledgement and Agreement to Be Bound by the Protective Order" attached hereto as Exhibit A;

c.    Any party (and its counsel and employees) that, by virtue of the law applicable to the Foreign Action(s), is required to have access to Material that is filed with the court(s) presiding over the Foreign Actions, provided such persons have signed the "Acknowledgement and Agreement to Be Bound by the Protective Order" attached hereto as Exhibit A;

d.    Outside Consultants of the Receiving Party to whom disclosure is reasonably necessary for one or more of the Foreign Actions, and who have signed the "Acknowledgement and Agreement to Be Bound by the Protective Order" attached hereto as Exhibit A and the "Certification of Consultant" attached hereto as Exhibit B;

e.    This Court and the courts presiding over the Foreign Actions, including such courts' personnel (*e.g.*, attorneys, court representatives, employees, judges, magistrates, secretaries, special masters, stenographic reporters, staff, transcribers, and all other personnel necessary to assist these courts in their functions, including any person appointed by a court to provide expert assistance in relation to technical issues in dispute) provided however, that when disclosing Designated Qualcomm Material to this Court or the courts presiding over the Foreign Actions, the Applicants must comply with the terms of paragraphs 23 and 24 below, as applicable;

f.    Professional Vendors to whom disclosure is reasonably necessary for one or more of the Foreign Actions, and a representative of which

5

has signed the "Acknowledgement and Agreement to Be Bound by the Protective Order" attached hereto as Exhibit A; and

g.      Any mediators or arbitrators, including their necessary staff, engaged by the Applicants (either on their own, or jointly with any other party to the Foreign Actions) to help settle or resolve the Foreign Actions, provided that such mediators or arbitrators to the Foreign Action have signed the "Acknowledgement and Agreement to Be Bound by the Protective Order" attached hereto as Exhibit A.

h.      The Parties will provide Qualcomm with copies of all signed "Acknowledgement and Agreement to Be Bound by the Protective Order" attached hereto as Exhibit A and "Certification of Consultant" attached hereto as Exhibit B within 10 business days of their execution.

20.      Absent a court order or agreement of Qualcomm, Designated Qualcomm Material may not be disclosed to employees of a Receiving Party, including its in-house attorneys and support staff, unless otherwise permitted herein.

21.      The Parties acknowledge that Designated Qualcomm Material also may be subject to the US government export control and economic sanctions laws, including (1) the Export Administration Regulations ("EAR," 15 CFR 730 *et seq.*, http://www.bis.doc.gov/) administered by the Department of Commerce, Bureau of Industry and Security, and (2) the Foreign Asset Control Regulations (31 CFR 500 *et seq.*, http://www.treas.gov/offices/enforcement/ofac/) administered by the Department of Treasury, Office of Foreign Assets Control ("OFAC"). Receiving Parties may not directly or indirectly export, re-export, transfer, or release (collectively, "Export") any Designated Qualcomm Material to any destination, person, entity, or end use prohibited or restricted under US law without prior US government authorization to the extent required by regulation. The US government maintains embargoes and sanctions against the countries listed in Country Groups E: 1/2 of the EAR (Supplement 1 to part 740). Export controlled information disclosed

6

in this action will be used only for the purposes of this action and the Foreign Actions. Counsel of Record or other individuals authorized to receive Export Controlled Information will not disclose, export, or transfer, in any manner, Export Controlled Information to any foreign person except as permitted by U.S. law.

22.     Absent written permission from Qualcomm, an order of this Court, or unless disclosure is made pursuant to paragraphs 23 or 24 below, persons not permitted access to Designated Qualcomm Material under the terms of this Protective Order shall not be present while Designated Qualcomm Material is discussed or otherwise disclosed. All proceedings shall be conducted in a manner, subject to the supervision of the applicable court, to protect Designated Qualcomm Material from disclosure to persons not authorized to have access to such Designated Qualcomm Material. Any Party intending to disclose or discuss Designated Qualcomm Material must give advance notice to Qualcomm. To the extent that this provision is inconsistent with the procedural law governing one or more of the Foreign Actions, the Party intending to disclose or discuss Designated Qualcomm Material shall, in connection with the Foreign Action: (a) provide Qualcomm with notice of the nature and extent of such inconsistency, (b) comply with the provisions of this Order to the extent permissible under applicable procedural law, and (c) formally request that the court hearing the Foreign Action restrict third party access to Designated Qualcomm Material to the greatest extent permissible under applicable law.

23.     If a Party files or submits Designated Qualcomm Material with any court presiding over the Foreign Actions, the Party shall give advance notice to Qualcomm, and make all reasonable efforts to ensure that access to such Material is accorded the maximum level of protection available under applicable law so that access to Designated Qualcomm Material is restricted to only those identified in paragraph 19 above).

24.     If the Applicants file or submit any Designated Qualcomm Material in the above-captioned action, the Applicants shall coordinate in good faith with

Qualcomm to ensure that such Material is accorded the maximum level of protection available under applicable law, including by seeking to file such Designated Qualcomm Material under seal.[1]  When filing Designated Qualcomm Material in this action, the Applicants comply with their obligations in this paragraph if they seek an order temporarily placing the Designated Qualcomm Material under seal until such time as Qualcomm has a reasonable opportunity to ask this Court to keep the Material under seal.

### E. **Access By Outside Consultants**

25.    <u>Notice</u>: If a Receiving Party wishes to disclose Designated Qualcomm Material to any Outside Consultant, the Receiving Party must, prior to the Outside Consultant being granted access to any Designated Qualcomm Material, provide notice to counsel for Qualcomm, which notice shall include: (a) the individual's name, business title, and country of citizenship; (b) the individual's business address; (c) the individual's

---

[1]    Pursuant to Rule VII of the Chambers Rules-Civil Cases of the Honorable Barbara Lynn Major, U.S. Magistrate Judge, before any Designated Qualcomm Material is filed with the Court in this action, the Party seeking to file such Material must seek permission of the Court to file the Material under seal.  No document may be filed under seal, *i.e.*, closed to inspection by the public except pursuant to a Court order that authorizes the sealing of the particular document, or portions of it. A sealing order may issue only upon a showing that the Material is privileged or protectable under the law. The request must be narrowly tailored to seek sealing only of the confidential or privileged material. To file a document under seal, the filer must comply with the procedures explained in Section 2.j of the Electronic Case Filing Administrative Policies and Procedures Manual for the United States District Court for the Southern District of California and Civil Local Rule 79.2.  In addition, in accordance with Hon. Judge Major's preferences, the filer must file a public version of any document that it seeks to file under seal. In the public version, the filer may redact only that information that is deemed Designated Qualcomm Material. The filer should file the redacted document(s) simultaneously with a joint motion or *ex parte* application requesting that the confidential portions of the document(s) be filed under seal and setting forth good cause for the request, or requesting that the confidential portions of the document(s) be filed temporarily under seal until Qualcomm has a reasonable opportunity to file a motion or *ex parte* application demonstrating good cause for filing under seal.

business or profession; (d) the individual's curriculum vitae; (e) any previous or current relationship (personal or professional) with Qualcomm or any of the Parties to this action; (f) a list of other cases in which the individual has testified (at trial or deposition) within the last six years; and (g) a list of all companies with which the individual has consulted or by which the individual has been employed within the last four years, the dates of the consultancy or employment, a brief description of the subject matter of the consultancy (including technology at issue) or employment, the case name and information if the consultancy is litigation-related, along with a copy of (1) the "Acknowledgement and Agreement to Be Bound by the Protective Order" attached hereto as Exhibit A and (2) the "Certification Of Consultant" attached hereto as Exhibit B, each signed by that Outside Consultant. Nothing in this provision shall be construed to require the disclosure of any information that (i) is protected by any applicable privilege or protection from disclosure, or (ii) a Party is prohibited from disclosing by applicable law or by the Outside Consultant's confidentiality or other obligations, provided sufficient information is provided to Qualcomm in order to assess whether disclosure of Designated Qualcomm Material to the Outside Consultant poses undue risk to Qualcomm.

26. <u>Objections</u>: With respect to Outside Consultants disclosed to Qualcomm pursuant to Paragraph 25 of this Order, Qualcomm shall have five (5) business days from receipt of notice and all of the information specified in Paragraph 25 of this Order to object for good cause in writing to such disclosure (plus three (3) extra days if notice is given in any manner other than hand delivery or e-mail delivery). After the expiration of the 5-day (plus 3-day, if appropriate) period, if no objection for good cause has been asserted by Qualcomm, then Designated Qualcomm Material may be disclosed to the Outside Consultant pursuant to the terms of this Order. Any objection by Qualcomm must be made for good cause, must set forth in detail the grounds on which it is based and must explain why the Outside Consultant is not authorized to receive Designated Qualcomm Material pursuant to the terms of this Order. Should Receiving Party disagree with the basis for the objection(s), Receiving Party and Qualcomm must first attempt to

resolve the objection(s) informally.   If the informal efforts do not resolve the dispute within ten (10) business days from the date upon which Receiving Party was first notified of any objection(s) for good cause by Qualcomm, Receiving Party may seek relief in this action requesting that the objection(s) be quashed.   Qualcomm shall have the burden of proof by a preponderance of the evidence on the issue of the sufficiency of the objection(s).   Pending a ruling by the Court upon any such objection(s), or the subsequent resolution of the objection(s) for good cause by Receiving Party and Qualcomm, the Designated Qualcomm Material shall not be disclosed to the person objected to by Qualcomm.

> **F.    Protected Material Subpoenaed or Ordered Produced in Other Litigation or the Foreign Actions**

27.    If a Receiving Party is served with a subpoena or a court order that would compel disclosure of any Designated Qualcomm Material, Receiving Party must notify the Producing Party and Qualcomm of such information, documents, or things, in writing (by email) promptly, and in no event more than ten (10) calendar days after receiving the subpoena or order.   Such notification must include a copy of the subpoena or order, if one exists.   Receiving Party also must, within five (5) business days after receiving the subpoena, inform, in writing, the party who caused the subpoena or order to issue that some or all of the material covered by the subpoena or order is subject to this Protective Order.  In addition, the Receiving Party must, within five (5) business days after receiving the subpoena, provide a copy of this Protective Order to the party in the action that caused the subpoena or order to issue.   The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order, and to afford the Producing Party an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued.   Producing Party shall bear the burdens and expenses of seeking protection of its Designated Qualcomm Material in that court.  Nothing in these provisions should be construed as authorizing or encouraging any Authorized Reviewer or Receiving Party to disobey a lawful directive from another court.

### G.    Unauthorized Disclosure of Designated Qualcomm Material

28.    If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Designated Qualcomm Material to any person or in any circumstance not authorized under this Protective Order, the Receiving Party must immediately (a) notify in writing the Producing Party and Qualcomm of the unauthorized disclosure(s), (b) use its best efforts to retrieve all copies of the Designated Qualcomm Material, (c) inform the person or persons to whom unauthorized disclosure(s) was made of all the terms of this Protective Order, and (d) request that such person or persons execute the "Acknowledgment and Agreement to Be Bound by the Protective Order" attached hereto as Exhibit A. Nothing in these provisions should be construed as limiting any Producing Party's or Qualcomm's rights to seek remedies for a violation of this Protective Order.

### H.    Duration

29.    The confidentiality obligations imposed by this Protective Order shall remain in effect following the termination of this action, or until Qualcomm agrees otherwise in writing or a court order otherwise directs.

### I.    Final Disposition

30.    Unless otherwise ordered by this Court or agreed in writing by Producing Party, within sixty (60) days of the termination of the Foreign Actions, whether through settlement or final judgment (including any and all appeals therefrom), each Receiving Party, will destroy all Designated Qualcomm Material produced by Qualcomm or any other Party in this action, including any such Material that is maintained in the possession of any of its counsel or Outside Venders, as well as destroy or redact all work product, pleadings, motion papers, legal memoranda, correspondence, trial transcripts and trial exhibits admitted into evidence containing information from such Designated Qualcomm Material ("derivations") and all copies thereof, with the exception of copies stored on back-up tapes or other disaster recovery media. Within sixty (60) days of the date of settlement or final judgment, each Receiving Party shall serve Producing Party with a

certification stating that it, including its outside counsel, has complied with its obligations under this paragraph.   With respect to any copy of Designated Qualcomm Material or derivation thereof that remains on back-up tapes and other disaster storage media of an Authorized Reviewer(s), neither the Authorized Reviewer(s) nor its consultants, experts, counsel or other party acting on its behalf shall make copies of any such information available to any person for any purpose other than backup or disaster recovery unless compelled by law and, in that event, only after thirty (30) days prior notice to Producing Party or such shorter period as required by court order, subpoena, or applicable law.

### J.    Miscellaneous

31.    The Parties and Qualcomm agree that this Protective Order will be legally binding from the date upon which it is submitted to the Court for entry, in the form that it is submitted to the Court.

32.    This Protective Order is entered without prejudice to the right of any Party or Qualcomm to apply to this Court at any time for modification or amendment of this Protective Order.  The Court may modify the terms and conditions of the Order for good cause, or in the interest of justice, or on its own order at any time during these proceedings.

33.    All notices to Qualcomm required by this Protective Order shall be made to David Kays, Donn Waslif and Freeda Lugo, 333 West San Carlos Street, Suite 1050, San Jose, CA 95110, via email to dkays@mffmlaw.com, dwaslif@mffmlaw.com, and flugo@mffmlaw.com.

**IT IS SO ORDERED:**

DATED:

_____
Hon. Barbara L Major
United States Magistrate Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[PROPOSED] AMENDED PROTECTIVE ORDER
CASE NO. 23-MC-794-BLM

# **EXHIBIT A**

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

## BY THE PROTECTIVE ORDER

I,_____, declare and say that:

    1.    I am employed as _____ by

_____ .

    2.    I have read the Protective Order entered in *In re Ex Parte Application of Netgear Inc. and Netgear Deutschland GmbH*, Case No. 23-MC-794-BLM (S.D. Cal.), and have received a copy of and agree to be bound by the Protective Order.

    3.    I promise that I will use any and all "Designated Qualcomm Material" information, as defined in the Protective Order, given to me only in a manner authorized by the Protective Order.

    4.    I promise that I will not disclose or discuss such "Designated Qualcomm Material" information with anyone other than the persons authorized under the Protective Order.

    5.    I acknowledge that, by signing this agreement, I am subjecting myself to the jurisdiction of the United States District Court for the Southern District of California with respect to enforcement of the Protective Order.

    6.    I understand that any disclosure or use of information designated "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" in any manner contrary to the provisions of the Protective Order may subject me to sanctions for contempt of court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _____

[Printed name]: _____

[Signature]: _____

## **EXHIBIT B**

### <u>CERTIFICATION OF CONSULTANT</u>

I,_____ , of _____

_____ declare and say that:

      1.    I am not an employee of the Party who retained me or of a competitor of any Party or Qualcomm and will not use any information, documents, or things that are subject to the Protective Order entered in *In re Ex Parte Application of Netgear Inc. and Netgear Deutschland GmbH*, Case No. 23-MC-794-BLM (S.D. Cal.), for any purpose other than one or more of the Foreign Actions and as permitted in the Protective Order.

      2.    I acknowledge that, by signing this agreement, I am subjecting myself to the jurisdiction of the United States District Court for the Southern District of California with respect to enforcement of the Protective Order.

      3.    I understand that any disclosure or use of information designated "QUALCOMM – OUTSIDE ATTORNEYS' EYES ONLY" in any manner contrary to the provisions of the Protective Order may subject me to sanctions for contempt of court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _____

[Printed name]: _____

[Signature]: _____

[PROPOSED] AMENDED PROTECTIVE ORDER
CASE NO. 23-MC-794-BLM

Case Name:    *In Re Ex Parte Application of Netgear Inc. and Netgear Deutschland GMBH for an Order pursuant to 28 USC 1782 to obtain discovery for use in foreign proceedings*
Case No.:      3:23-mc-00794-BLM
KYL File No.: 8882-1

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is Keesal, Young & Logan, 400 Oceangate, Suite 1400, Long Beach, California 90802.

On November 9, 2023, I served the foregoing documents described as **DECLARATION OF HENRY V. HUTTON IN SUPPORT OF EX PARTE APPLICATION OF NETGEAR INC. AND NETGEAR DEUTSCHLAND GMBH TO MODIFY PROTECTIVE ORDER** on the parties in this action as follows:

David A Kays                                         Attorneys for Respondent, QUALCOMM
Donn Waslif                                          INCORPORATED
Freeda Y. Lugo
**MORGAN FRANICH FREDKIN SIAMAS & KAYS LLP**
333 W. San Carlos Street
Suite 1050
San Jose, CA 95110
(408)288-8288
Fax: (408)288-8325
Email: dkays@mffmlaw.com
dwaslif@mffmlaw.com
flugo@mffmlaw.com
mbatalla@mffmlaw.com
avillafana@mffmlaw.com

☑      BY OVERNIGHT DELIVERY: I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the above-named persons at the addresses exhibited therewith. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

Executed on November 9, 2023 at Long Beach, California.

I declare under penalty of perjury under the laws of the State of California and United States of America that the foregoing is true and correct.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_____
CASEY L. THOMAS

Proof of Service